UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ARAZ ALALI,

                              Plaintiff,                    **07 CV 2916 (CLB)**

        -against-

ALBERTO DeBARA, individually, KYLE WILSON,
Individually, EDWARD AUSTIN, individually, GEORGE
MARSHALL, individually, HUMBERTO MORRELL,
Individually, MATTHEW BRADY, individually,
ANTHONY MURPHY, individually, ROBERT GAZZOLA,
Individually, PATRICK J. CARROLL, individually,
and the CITY OF NEW ROCHELLE, New York,

                              Defendants.
------------------------------------------------------------------x


### PLAINTIFF'S MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS'
### MOTION TO DISMISS


LOVETT & GOULD, LLP
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, New York 10605
(914) 428-8401

# Table of Contents

**Page**

Table of Authorities ...………………………………………………………………….iii

Preliminary Statement…..……………………………………………...…………..…..1

Background…………………………………………………………………………….2

    I.    Plaintiff's first Complaint "Alali I", 07 Civ. 1296 (CLB)

        A.  The Parties…………………………………………………………….2

        B.  The facts of Alali I which must be accepted as true
           for purposes of the instant motion……………………………….…....2

    II.   The facts asserted in Plaintiff's second Complaint
         "Alali II", 07 Civ 2916 (CLB)

        A.  Basis for Alali II………………………………………………………6

        B.  The facts of Alali II which must be accepted as true
           for purposes of the instant motion……………………………………6

POINT I
    RATHER THAN DISMISS PORTIONS OF ALALI II, THE COURT
    SHOULD CONSOLIDATE THE TWO PENDING ACTIONS………………...10

POINT II
    DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
    TITLE VII CLAIMS SHOULD BE DENIED …………………………………11

POINT III
    DEFENDANTS' MOTION TO DISMISS CLAIMS THAT WERE
    NEVER BROUGHT HERE IS MOOT…………………………………………13

POINT IV
    DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
    §1981 AND §296 CLAIMS SHOULD BE DENIED……………………………14

POINT V
     DEFENDANTS' MOTION TO DISMISS THE CLAIMS AGAINST
     THE INDIVIDUALLY NAMED DEFENDANTS SHOULD BE
     DENIED................................................................................17

        A.  The actions of the individual Defendants...............................17

        B.  Defendants Murphy, Gazzola and Carroll are not entitled
            to absolute immunity.....................................................20

        C.  When the pleading is read in its entirety and the totality of the
            circumstances considered, Defendants' motion to dismiss
            must be denied..........................................................22


POINT VI
     THE CLAIMS AGAINST THE CITY SHOULD NOT BE
     DISMISSED............................................................................23

Conclusion...............................................................................24

## TABLE AUTHORITIES

**Cases**                                                                 **Page**

Alexander v. Holden, 66 F.3d 62 (4th Cir. 1995)……………………….……..21

Alfano v. Costello, 294 F.3d 365 (2nd Cir. 2001)…………………………….11, 12

Burns v. Reed, 500 U.S. 478 (1991)………………………………………………20

Butz v. Economou, 438 U.S. 478 (1978)……………………………………..…21

Clue v. Johnson, 179 F.3d 57 (2nd Cir. 1999)……………………………………23

Dobosz v. Walsh, 892 F.2d 1135 (2nd cir. 1989)……………………………21, 22

Fairbairn v. Bd. Of Educ. of South Country Central School Dist.,
    876 F.Supp. 432 (E.D.N.Y. 1995)……………………….……………………..13

Forrester v White, 484 U.S. 219 (1988)………………………………………..21

Gorman-Bakos v. Cornell Cooperative Extension of Schenectady County,
    252 F.3d 545 (2nd Cir. 2001) ……………………………………………...20

Harhay v. Town of Ellington Board of Education, 323 F.3d 206 (2nd Cir. 2003)……….22

Hernandez v. Coughlin, 18 F.3d 133 (2nd Cir. 1994), *cert. denied*,
    513 U.S. 836 (1994)………………………………………………………16

Imbler v. Pachtman, 424 U.S. 409 (1976)……………………………….……21

Khan v. Abercrombie & Fitch, Inc., 35 F.Supp. 2d 272 (E.D.N.Y. 1999) ……………...13

Litzler v. CC Investments, LLC, 362 F.3d 203 (2nd Cir. 2004)...……………...……16, 23

Lopez v. S.B. Thomas, 831 F.2d 1184 (2nd Cir. 1987)…………………………..13

Mandell v. County of Suffolk, 316 F.3d 368 (2nd Cir. 2003)……………………23

Melnitzky v. Rose, 299 F.Supp.2d 219 (S.D.N.Y. 2004)………………………..16

Morris v. Landau, 196 F.3d 102 (2nd Cir. 1999)…………………………………20

Philips v. Bowen, 278 F.3d 103 (2nd Cir. 2002) ………………………………...14

Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2nd Cir. 1998) …………………13

Raniola v. Bratton, 243 F.3d 610 (2nd Cir. 2001)………………………………………..23

Richardson v. New York State Department of Correctional Service,
    180 F.3d 426 (2nd Cir. 1999)…………………………...………………………………14

Rucci v. Thoubboron, 68 F.Supp.2d 311 (S.D.N.Y. 1999)……………………………...23

Spear v. Town of West Hartford, 954 F.2d 63 (2nd Cir. 1992),
    *cert. denied*, 506 U.S. 819 (1992)……………………………………………………...20

Sykes v. James, 13 F.3d 515 (2nd Cir. 1993), *cert. denied*, 512 U.S. 1240 (1994)………16

Weeks v. New York State, 273 F.3d 76 (2nd Cir. 2001)…………………………………14

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62 (2nd Cir. 2000)……………..23

## PRELIMINARY STATEMENT

Plaintiff Araz Alali commenced an action against Robert Gazzola, Patrick Carroll and the City of New Rochelle, New York on February 21, 2007 under docket number 07 Civ. 1296 (CLB). In that initial filing, Plaintiff in sum alleged that he was subjected to an on-going, unlawful, hostile work environment motivated by his national origin/race. Plaintiff further alleged that he was subjected to adverse employment action in retaliation for having expressed his concerns internally and in an EEOC Charge of Discrimination that Defendants had discriminated against him on account of his national origin, ethnicity and race. Plaintiff brought the claims in his first lawsuit pursuant to 42 U.S.C. §§1981 and 1983, Title VII, and Section 296 of the New York State Executive Law.[1]

Subsequent to that action, Plaintiff was subjected to further acts of retaliation carried out by numerous individual defendants. As a result of the series of retaliatory actions, and on April 11, 2007, Plaintiff commenced a second action under docket number 07 Civ. 2916 (CLB). The second action was brought against the same defendants in addition to several Sergeants, Lieutenants and a Deputy Police Commissioner. In that second filing Plaintiff brought claims pursuant to 42 U.S.C. §§1981 and 1983, Title VII, and Section 296 of the New York State Executive Law.[2]

Defendants now move pre-discovery to dismiss the second action only. For the reasons set forth *infra*, Defendants' motion should be denied in all respects.

---

[1] The first Complaint is annexed to the Declaration of Peter A. Meisels as Exhibit 1. This filing is referred to herein as "Alali I".

[2] The second Complaint is annexed to the Declaration of Peter A. Meisels as Exhibit 2. This filing is referred to herein as "Alali II".

## BACKGROUND

### I. Plaintiff's first Complaint "Alali I", 07 Civ. 1296 (CLB)

#### A. The Parties

Plaintiff Araz Alali, at all times relevant, was employed as a Police Officer by the City of New Rochelle, New York (Alali I ¶3). Prior to working for the City of New Rochelle, Plaintiff was employed as a police officer by the City of New York (Alali I, ¶3).

In Alali I Plaintiff brought claims against: (1) Defendant Gazzola, who at all times relevant to this complaint was employed as a Police Captain by the City. By reason of the departmental chain of command Gazzola has direct supervisory authority over Plaintiff (Alali I, ¶4); (2) Defendant Patrick J. Carroll, who at all times relevant to this complaint was employed as the Commissioner of Police by the City (Alali I ¶5); and (3) Defendant City of New Rochelle.

#### B. The facts of Alali I which must be accepted as true for purposes of the instant motion

Plaintiff is of Iraqi national origin and as such is the only Police Officer of Middle Eastern descent ever employed by the City of New Rochelle (Alali I ¶3).

Commencing almost immediately following Plaintiff's February 2002 transfer to the City's Police Department, and continuing to date, he has been systematically and deliberately subjected to discriminatory and disparate treatment by reason of his national origin, ethnicity and/or color (Alali I ¶7).

In that connection Plaintiff has, to Defendants' knowledge and/or at their direction and/or with their active encouragement and condonation, been:

> a. Repeatedly been addressed as: "terrorist"; "Ali Baba", "Camel Jockey" and *inter alia*, "Ali" (Alali I ¶8a).

b. Repeatedly been denied any meaningful specialized training, which training is routinely provided by Defendants to Police Officers junior to Plaintiff in seniority (Alali I ¶8b),

c. Forced to attend a seminar concerning "Tools for Tolerance Post 911", which assignment was calculated by Defendants to humiliate and embarrass Plaintiff since he alone has been the departmental target of systemic intolerance by reason of his ethnicity (Alali I ¶8c),

d. Systematically been given calculatedly false "below standard" job performance evaluations (when in fact his job performance has consistently been above average), replete with fabrications and/or falsehoods, which evaluations have served as Defendants' predicate for barring Plaintiff from working on an overtime basis - - thus causing him substantial pecuniary losses (Alali I first ¶8d)

e. Assigned for months at a time as a "dispatcher" in the Police Department's Communications Room - - even though the dispatcher function is civilian in nature and otherwise performed by non-police employees of the Department (Alali I second ¶8d).

f. Forced to work walking posts during a midnight to 8:00 a.m. tour of duty, in heavy rain and/or snow, when there otherwise is no walking post assigned on such a shift (Alali I ¶8e).

g. Forbidden, for substantial periods of time, to operate a police vehicle (Alali I ¶8f).

h. Forbidden, for substantial periods of time, to interact with members of the public while on duty (Alali I ¶8g).

i. Prohibited, by reason of the false "below standard" job performance evaluations, to engage in so-called "mutual switches" of job duty assignments with other sworn members of the Police Department (Alali I ¶8h).

j. Subjected repeatedly to "investigations" of supposed wrong doing under circumstances where no wrongdoing occurred and Defendants knew that no wrongdoing had occurred (Alali I ¶8i).

k. For substantial periods of time being restricted to issuing parking tickets on one street in the City for the purpose of humiliating and degrading him (Alali I ¶8j).

As a result, Plaintiff non-disruptively expressed to Defendants his concerns about the discriminatory treatment accorded him.  For example, on January 7, 2007, Plaintiff advised Carroll that he was the subject of "[p]ersecution based on heritage" and that he was the subject of retaliatory actions "solely based upon [his] middle-eastern heritage" (Alali I ¶9a).

By way of further example, on February 2, 2007, Plaintiff advised Gazzola in a rebuttal to one of many calculated false "below standard" job performance evaluations: "I am being singled out due to my heritage. Being the sole middle-eastern police officer has been hopeless" (Alali I ¶9b).

Plaintiff further alleged in Alali I that as a result of his engaging in the protected activity of complaining about national origin discrimination, Defendants agreed to punish him by denying Plaintiff tuition reimbursement in the amount of $10,180 which was payable to Iona College for courses taken by Plaintiff in accordance with police departmental policy (Alali I ¶10).

On February 12, 2007, Plaintiff therefore filed a Charge of Discrimination with the EEOC premised upon discrimination on the basis of "race", "color" and "national origin" (Alali I ¶11).[3]

Also on February 12, 2007, Plaintiff, through counsel, notified Defendants by facsimile of the EEOC filing and cautioned that "any retaliation causally the result of that filing is independently actionable in Federal Court for damages" (Alali I ¶12).

Obviously aware of Plaintiff's EEOC filing by reason of that facsimile, and only three days later, Defendants again agreed to further retaliate against Plaintiff by serving him on February 15, 2007, with a series of frivolous disciplinary charges for the stated objective of penalizing him through the forfeiture of one month's salary (Alali I ¶13).

By way of contrast other members of the Police Department and personnel employed in the City's Court, who are known to Defendants to have committed both felonies and misdemeanors, have not been subjected to similar disciplinary action - - much less arrest and prosecution (Alali I ¶13).

Thus in Alali I Plaintiff asserted claims for: national origin/race discrimination pursuant to §1981 and 1983 and Section 296 of the New York State Executive Law; selective prosecution pursuant to §1983; and retaliation pursuant to Title VII and Section 296 (Alali I ¶¶15-24).

---

In Alali I, Plaintiff specifically stated he would seek to amend his Complaint to assert a Title VII discrimination claim once the EEOC issued a Notice of Right to Sue (Alali I ¶2). In Alali I, the Title VII claim asserted was solely premised upon the retaliatory act of preferring disciplinary charges against Plaintiff (Alali I ¶22).

## II. The facts asserted in Plaintiff's second Complaint "Alali II", 07 Civ. 2916 (CLB)

### A. Basis for Alali II

Subsequent to the filing of Alali I, Plaintiff was the target of further unlawful and retaliatory conduct. As a result, he initiated a second action referred to herein as Alali II.

### B. The facts of Alali II which must be accepted as true for purposes of the instant motion

By way of background Plaintiff alleged in Alali II facts that were also alleged in Alali I, namely that: (1) on February 12, 2007, Defendant Carroll was notified by fax that Plaintiff had filed a Charge of Discrimination with the EEOC (Alali II ¶14); and (2) on February 15, 2007, Carroll, Murphy and Gazzola while acting in concert, preferred against Plaintiff frivolous, retaliatory disciplinary charges in retaliation for Plaintiff having complained about national origin discrimination (Alali II ¶16).

In Alali II Plaintiff's allegations continue with allegations of additional and new instances of discrimination and retaliation. To that end, Plaintiff alleged that on February 21, 2007, he filed an action in this Court (Alali I) asserting claims under *inter alia* 42 U.S.C. §§1981, 1983 and 2000e *et. seq.* (Alali II ¶17). He further alleged that as a proximate result of Plaintiff's EEOC filing and the filing of Alali I, Defendants entered into a retaliatory plan and in that connection *inter alia*:

> a. At roll call on February 21, 2007, and in the presence of a number of Plaintiff's co-workers, Defendant DeBara intentionally assigned Plaintiff to a fixed hospital post (normally a post assigned to either probationary and/or junior officers) to watch a prisoner - - despite the availability of at least four probationary police officers any one of whom should have been given that assignment (Alali II ¶18a).

6

b. When Plaintiff inquired of Defendant Wilson as to why he was given the fixed hospital post when any of the four probationary officers should have been so assigned, Wilson responded (in the presence of several civilian members of the Police Department):

"Get the fuck out of my face now Raz. Not another fucking word,

get out of my face".

At the conclusion of Plaintiff's hospital post shift he was relieved at that post by a probationary police officer (Alali II ¶18b).

c. Subsequently that day DeBara informed Plaintiff that prospectively he (Plaintiff) would be primarily assigned to a "utility car" - - a degrading assignment usually reserved for probationary officers and/or junior officers - - and in the event that utility car services were not required Plaintiff would be assigned to other such assignments including directing traffic, watching suicidal prisoners, performing civilian dispatch work, and transporting prisoners to the County jail (Alali II ¶18c).

d. At roll call on March 7, 2007, in the presence of a number of Plaintiff's co-workers, DeBara assigned Plaintiff to a fixed, foot patrol post in the snow - - to the laughter of Plaintiff's co-workers and despite the availability of a number of probationary police officers who should have been assigned to that post. When Plaintiff inquired of DeBara as to why he, rather than any of the probationary officers was given that degrading assignment, DeBara advised: "because we can, we could put you anywhere Bin Laden" (Alali II ¶18d).

e. That same date when Plaintiff inquired of Defendant Morrell (who was serving as desk officer) as to why he, rather than a probationary police officer was put on that

fixed post, Morrell responded: "because even though you are the most talented police officer you are not above scrutiny and I don't like you, ok, so hurry up and go outside. It's really cold out - - bundle up" (Alali II ¶18e).

 f. On March 8, 2007, Defendants Austin and Morrell advised Plaintiff that he was routinely going to be given "undesirable assignments" because he (Plaintiff) was "a below standards officer" - - a descriptive falsely given to Plaintiff by reason of his skin color, national origin and/or ethnicity. In that connection Morrell further advised Plaintiff, in Austin's presence, that his co-defendants Gazolla and Marshall had both directed him (Morrell) as well as other supervisors to give Plaintiff "bad assignments" by reason of his being rated "below standards" (Alali II ¶18f).

 g. On March 21, 2007, Gazzola advised Plaintiff in writing that he (Gazzola) rejected Plaintiff's then pending challenge to a job performance evaluation as authored by Wilson in which Wilson falsely characterized Plaintiff as "below standards" (Alali II ¶18g).

 h. On March 22, 2007, Gazzola issued to Plaintiff a calculatedly false memorandum describing him (Plaintiff) as "below standard" and advising him that as a result of that status he was: barred from performing overtime work; forbidden to perform special detail assignments; forbidden to engage in tour switches with other officers; and precluded from consideration for any specialized unit assignments (Alali II ¶18h).

 i. At roll call on April 7, 2007, in the presence of a number of Plaintiff's co-workers Austin deliberately assigned Plaintiff to perform the civilian functions of dispatching police vehicles from the Department's radio room - - despite the availability

of four probationary police officers any one of whom should have been given that assignment instead. In that connection first Austin advised Plaintiff:

> "It looks like you are going backwards like the
>
> good old times",

and then Defendant Brady added: "you better get a good lunch at 800 [hours] since you won't be able to leave the [radio] room, good luck" (Alali II ¶18i).

j. On April 8, 2007, Wilson assigned Plaintiff to work with civilian employees of the Department - - despite the availability of four probationary police officers any one of whom should have been given that assignment. When Plaintiff questioned Wilson as to why he rather than a probationary officer was given that degrading assignment, Wilson advised: "You are an Arab and its Easter. Camel jockeys don't celebrate Easter" (Alali II ¶18j).

In furtherance of Defendants' retaliatory plan Murphy, with the agreement, approval and condonation of Gazzola and Carroll, has intentionally withheld from Plaintiff college tuition reimbursement to which he is entitled. As a result Plaintiff is in arrears on tuition payments to Iona College in the amount of approximately $17,000 (Alali II ¶19).

Under the premises, Plaintiff brought claims against all of the Defendants in Alali II for national origin/race discrimination and retaliation pursuant to §1981 and 1983 and Section 296 of the New York State Executive Law; and against the City pursuant to Title VII (Alali II ¶¶21-26).

# ARGUMENT

## POINT I

### RATHER THAN DISMISS PORTIONS OF ALALI II, THE COURT SHOULD CONSOLIDATE THE TWO PENDING ACTIONS

Subsequent to the filing of Alali I, Plaintiff was the target of further unlawful and retaliatory conduct. As a result, he initiated a second action referred to herein as Alali II.

In that connection, and by way of background, Plaintiff alleged in Alali II certain facts that were also alleged in Alali I, namely that: (1) on February 12, 2007, Defendant Carroll was notified by facsimile that Plaintiff filed a Charge of Discrimination with the EEOC; and (2) on February 15, 2007, Carroll, Murphy and Gazzola while acting in concert, preferred against Plaintiff frivolous, retaliatory disciplinary charges (Alali II ¶16).

The allegations set forth in Alali II continue thereafter to plead a continual pattern of retaliatory conduct which conduct followed very close in time after Plaintiff engaged in the protected activities of filing the EEOC Charge of Discrimination and federal Complaint in Alali I.

Clearly, a review of Alali II shows that the allegations that are duplicative of Alali I are alleged by way of background information in that pleading.   Contrary to Defendants concerns, it is not as if Plaintiff is seeking to or possibly could collect damages twice by reason of the same acts being alleged in two separate proceedings.

However, rather than dismiss two paragraphs in the Alali II Complaint (¶14 and 16), and for reasons of judicial economy, the Court should consolidate both actions.   The factual allegations in Alali II simply continue the timeline and chain of events that Alali I ended.

Consolidation under these circumstances would avoid duplicative litigation efforts between the two matters and streamline discovery which has yet to occur in either action.

## POINT II

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S TITLE VII CLAIMS SHOULD BE DENIED

Defendants also move to dismiss Plaintiff's Title VII claim in Alali II because: (1) Plaintiff has not yet received a "Notice of Right to Sue" from the EEOC (which really pertains to the facts asserted in Alali I); and (2) the allegations in the Charge of Discrimination filed by Plaintiff do not reference the allegations plead in Alali II.

However, contrary to Defendants' arguments, a "Right to Sue" letter is not required in order for Plaintiff to proceed with claims of retaliation asserted in Alali II. Further, the fact that the Plaintiff's Charge of Discrimination filed with the EEOC on February 12, 2007 does not include the precise factual allegations asserted in Alali II does not mandate dismissal of the Title VII claim in Alali II.

For it is axiomatic that "jurisdiction exists over Title VII claims only if they have been included in an EEOC charge '**or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge.**'" Alfano v. Costello, 294 F.3d 365, 381 (2nd Cir. 2001) (emphasis added).

The Second Circuit has clearly defined "reasonably related" to include when: (1) the facts alleged would "fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) the claim is one for retaliation for filing the EEOC charge; or (3) the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" Alfano, 294 F.3d at 381, citing Butts v. City of N.Y. Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 140-03 (2nd Cir. 1993).

Here, the allegations in Alali II fall squarely within the two, if not all three, of the categories of the "reasonably related" test enunciated by the Second Circuit.

First, and as specifically plead in the Complaint in Alali II, Plaintiff states that "as a proximate result of Plaintiff's EEOC filing and the filing of Alali I, Defendants entered into a retaliatory plan and in that connection" carried out a host of retaliatory adverse actions against Plaintiff (Alali II ¶¶16-18). Under these circumstances, a second EEOC charge of discrimination is not required since the allegations in Alali II are reasonably related to the Charge already failed – namely because the facts claim direct "retaliation for filing the EEOC charge." Alfano, 294 F.3d at 381, *citing* Butts v. City of N.Y. Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 140-03 (2nd Cir. 1993).

Additionally, the allegations in Alali II are "reasonably related" to the EEOC Charge in that they are "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Id.

In his EEOC Charge, Plaintiff alleges that he was: "repeatedly given job performance evaluations falsely characterizing my work as 'below standards' when in fact my job performance is above standards"; "punitively assigned to exclusively issue traffic tickets…"; "punitively assigned to work as a dispatcher – an assignment no other Police Officer has had given the employment by Respondent of civilian dispatchers"; and, *inter alia*, "assigned foot patrol…in snow and rainy conditions." (Meisels Decl. Ex. C). Plaintiff also specifically referenced being "targeted for retaliation" in his EEOC Charge (id.).

A review of the pleading in Alali II shows that further incidents of discrimination were carried out in the same manner as that alleged in the EEOC Charge. For in Alali II nearly identical actions were taken by the Defendants, including falsely describing Plaintiff's job

performance as "below standards" and assigning Plaintiff to degrading positions typically reserved for junior, probationary and civilian members of the Department.

More specifically, in Alali II Plaintiff alleges that he was: advised that he was "a below standards officer" and given a memorandum falsely describing Plaintiff as "below standards" (Alali II ¶¶18f, g and h); and assigned to numerous degrading posts typically assigned to probationary or junior officers, including a fixed hospital post, utility car, foot patrol in the snow, dispatching, and working with civilian employees of the Department (Alali II ¶¶18a, b, c, d, e, i and j).

Since the allegations in Alali II meet the "reasonably related" standard set forth by the Second Circuit, Defendants' arguments for dismissal of Plaintiff's Title VII claims should be denied.[4]

## POINT III

### DEFENDANTS' MOTION TO DISMISS CLAIMS THAT WERE NEVER BROUGHT HERE IS MOOT

For reasons unknown to Plaintiff, Defendants seek to dismiss claims that were never brought in Alali II.

First, Defendants seek to dismiss the Title VII claims against the individual defendants (Defendants' Memorandum of Law, p. 4). However, a plain read of the Complaint in Alali II reveals that the claim is in fact plead only against the City of New Rochelle (Alali II ¶¶21-22 stating: "As and For a First Claim Against the City of New Rochelle").

---

[4] In the alternative, Plaintiff's Title VII claim should be dismissed without prejudice to Plaintiff's right to amend the Complaint to assert this claim once a Notice of Right to Sue is received. No prejudice can result to Defendants since the proof on the §1981, 1983 and New York State Law claims is the same as that which would support a Title VII violation *See* Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2nd Cir. 1998) (citations omitted); Fairbairn v. Bd. of Educ. of South Country Central School Dist. 876 F.Supp. 432 (E.D.N.Y. 1995); Khan v. Abercrombie & Fitch, Inc., 35 F.Supp.2d 272, FN 2 (E.D.N.Y. 1999), *citing* Choudhury v. Polytechnic Institute of NY, 735 F.2d 38 (2nd Cir. 1984); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir.1987)

Similarly, Defendants seek to dismiss a non-existent First Amendment claim on the basis that Plaintiff's complaints about national origin discrimination did not rise to the level of a matter of public concern (Defendants' Memorandum of Law, pp. 4-5). Here again, a plain read of the Complaint in Alali II reveals that no such claim was ever brought by Plaintiff (see Meisels Decl. Ex. B).[5]

As a result, those portions of Defendants' motion to dismiss which seek dismissal of claims never plead should be denied as moot.

## POINT IV

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S §1981 AND §296 CLAIMS SHOULD BE DENIED

Defendants also move to dismiss Plaintiff's §1981 and 296 claims solely on the ground that Plaintiff did not allege adverse employment action (Defendants' Memorandum of Law, p. 6-7). In so arguing, Defendants speciously claim that the undesirable assignments Plaintiff was given do not amount to adverse employment actions (id.).

Unfortunately for Defendants, their motion must fail because it ignores the fact that adverse employment action exists in more than just the traditional examples of termination, demotion, failure to hire or promote, or reduction in pay and benefits. The element of adverse action also is met when a transfer or reassignment occurs and when the Plaintiff is the recipient of a transfer, reassignment, less distinguished title, diminished material responsibilities, reprimand, and even other indices that are unique to a particular case. See Philips v. Bowen, 278 F.3d 103, 109 (2nd Cir. 2002); Weeks v. New York State, 273 F.3d 76, 87 (2nd Cir. 2001); Richardson v. New York State Department of Correctional Service, 180 F.3d 426, 443-445 (2nd Cir. 1999).

---

[5] As in Alali I, the §1983 claim brought here is one for national origin discrimination and violation of Plaintiff's right to be free from selective treatment/prosecution (Alali II ¶24).

14

In addition, the Second Circuit has held that adverse employment action exists where, using an objective standard, the totality of the circumstances of the working environment changed to become inferior and adverse in comparison to a typical or normal workplace. Philips, 278 F.3d at 109.  In that regard, relatively minor incidents that occur often and over a period of time can amount to adverse employment action "once they reach a critical mass." Id.

Here, Plaintiff clearly suffered adverse action in that he was repeatedly given undesirable and inferior assignments which were accompanied by significantly diminished responsibilities. This is patently clear from the fact that these assignments were typically given to junior and probationary officers or civilian employees. In fact, in connection with one such assignment Defendant Austin specifically told Plaintiff that "it looks like you are going backwards" (Alali II ¶18).

More specifically, and in direct contrast to Defendants' version of events, here Plaintiff in fact pleads several instances of being assigned posts that were inferior and had diminished responsibilities, to wit: (1) a fixed hospital post which is normally assigned to either probationary and/or junior officers under circumstances where there were at least four probationary police officers who should have received the assignment and where that post was in fact given to a probationary police officer when Plaintiff's shift concluded (Alali II ¶18a and b); (2) a "utility car" which is a "degrading assignment usually reserved for probationary officers and/or junior officers" (Alali II ¶18c); (3) a fixed foot patrol post in the snow under circumstances where a number of probationary officers were available and should have received the assignment – and in fact Plaintiff was told the reason was "we could put you anywhere Bin Laden" (Alali II ¶18d); (4) a dispatching position despite the fact that those are civilian functions and that there were four probationary police officers who should have instead been given that assignment (Alali II

¶18i); and (5) an assignment to work with a civilian despite the availability of four probationary police officers who should have been given that assignments under circumstances where Plaintiff was told the reason "You are an Arab and its Easter. Camel jockeys don't celebrate Easter." (Alali II ¶18j).

Furthermore, in addition to these assignments constituting adverse employment action, Plaintiff suffered the more traditional adverse action when he suffered monetary losses cause by Defendants: (1) barring Plaintiff from performing overtime work, performing special detail assignments, engaging in tour switches with other officers, and receiving any specialized unit assignments (Alali II ¶18h); and (2) unlawfully withholding from Plaintiff tuition reimbursement payments in the amount of $17,000 (Alali II ¶19).[6]

Thus, when the Court reviews the factual allegations in the Complaint, Defendants' motion to dismiss should be denied since the element of adverse action has been met.

---

[6] Defendants' version of the facts of this case, namely that Plaintiff did not allege he actually sought and was denied overtime work cannot be credited. Clearly, as phrased, Plaintiff alleges he was "prohibited" from overtime assignments. Also contrary to Defendants' version of the facts, namely that the City paid its share of the tuition reimbursement in the amount of $5714.00, the Complaint alleges that $17,000 is in arrears (Alali II ¶19). In fact, rather than attach the most recent invoice from Iona College, Defendants attach an older invoice which does not reflect the approximately $17,000 owed (see Berg Aff. Ex. 1, invoice showing amount of $16,744.00 due). Simply stated, in connection with this 12(b)(6) motion, without the benefit of any discovery, Defendants' version of the facts should not be credited but rather the allegations in the Complaint must be accepted as true. See Melnitzky v. Rose, 299 F.Supp.2d 219, 223 (S.D.N.Y. 2004), citing Levy v. Southbrook Inter'l Invs. Ltd., 263 F.2d 10. 14 (2nd Cir. 2001); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994), cert. denied, 513 U.S. 836 (1994); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993), cert. denied, 512 U.S. 1240 (1994). It is equally well settled that a complaint may only be dismissed when it appears beyond any doubt that the Plaintiff cannot prove any set of facts in support of his claims which would entitle him to relief. Litzler v. CC Investments, LLC, 362 F.3d 203, 206 (2nd Cir. 2004).

## POINT V

## DEFENDANTS' MOTION TO DISMISS THE CLAIMS AGAISNT THE INDIVIDUALLY NAMED DEFENDANTS SHOULD BE DENIED

Contrary to Defendants' arguments, Plaintiff has sufficiently alleged the personal involvement of each of the individually named Defendants – particularly at this pre-discovery stage of this matter.

Initially, with respect to Defendants' motion on this point it is important to note that Defendants ignore some of the allegations actually plead against each of these individual defendants as well as the pattern and practice of retaliatory action that they each played a significant role in by: (1) actually carrying out the adverse actions; and (2) failing to take remedial action when Plaintiff questioned why he was receiving the undesirable assignments, instead slinging racial slurs at Plaintiff, cursing at him, and further harassing him.

### A. The actions of the individual Defendants

With respect to Defendant DeBara, and as part of his role in the retaliatory plan, he carried out the adverse employment actions against Plaintiff by assigning Plaintiff to undesirable posts typically assigned to probationary and/or junior officers, including the fixed post at the hospital, the utility vehicle and the foot patrol in the snow (Alali II ¶¶18a-d). These acts Defendants' concede (Defendants' Memorandum of Law, pp. 8-9).

However, Defendants' ignore that in connection with the foot patrol assignment, and in response to Plaintiff's inquiry as to why he received the degrading assignment typically reserved for probationary officers, Defendant DeBara stated "because we can, we could put you anywhere Bin Laden." (Alali II ¶18d). Put differently, rather than act to remedy the unlawful conduct, which DeBara was in a position to do as a Lieutenant in the Department, he fostered the hostility and furthered the retaliation.

Similarly, Defendant Wilson assigned Plaintiff to work with civilian employees, again despite the availability of probationary officers at least one of whom should have been given that assignment. Although Defendants' concede that Wilson made this assignment and also when questioned about an assignment made by DeBara used profanity directed at Plaintiff, Defendants' characterization that Wilson did not use any reference to racial identification is blatantly false (Defendants' Memorandum of Law, p. 9). For Plaintiff alleged that Wilson told him the reason for the assignment to work with civilian employees was because "You are an Arab and its Easter. Camel jockeys don't celebrate Easter." (Alali II ¶18b and j).

Plaintiff also alleged that Wilson's use of profanity was in direct response to Plaintiff asking why he received the degrading assignment. Again, and like DeBara, rather than take appropriate, remedial measures, Wilson instead fostered and condoned the discrimination and relations when he cursed at Plaintiff in front of other members of the Department "Get the fuck out of my fact now Raz. Not another fucking word, get out of my face." (id.).

Finally, Defendants ignore the allegation in Alali II that Defendant Wilson authored a job performance evaluation in which he falsely characterized Plaintiff as "below standards" (Alali II ¶18g).

Next, with respect to Defendants Morrell and Austin, Plaintiff alleges that they stated they were directed to give Plaintiff bad assignments -- which assignments Plaintiff references in part in his Complaint (¶¶18e, f and i). In addition, when Plaintiff asked Morrell about the undesirable foot patrol post Morrell, like his co-defendants, not only failed to take remedial action but instead taunted Plaintiff stating "I don't like you, ok, so hurry up and go outside. It's really cold out – bundle up." (Alali II ¶18e and f).  Similarly, when Austin gave Plaintiff the civilian dispatch post he, consistent with the actions of his co-defendants, engaged in taunting

type behavior stating "It looks like you are going backwards like the good old times." (Alali II ¶18i).

As for Defendant Brady, Plaintiff alleges that Brady also participated in the joint campaign of creating a hostile work environment and retaliating against Plaintiff when he (Brady) added "you better get a good lunch at 800 [hours] since you won't be able to leave the [radio] room, good luck." (Alali II ¶18i). Contrary to Defendants' "spin" on this fact, it is clearly not Brady simply giving Plaintiff "nutritional advice." (Defendants' Memorandum of Law, p. 10). Rather, when read in context and viewed in connection with the total circumstances, Brady's conduct is another example of action taken to perpetrate the creation of a hostile work environment and retaliatory actions.

With respect to the next defendant, Plaintiff alleges that Defendant Marshall also gave directives to his subordinates to assign Plaintiff to "bad assignments" – assignments which are referenced in Alali II (Alali II ¶¶18f). As with his co-defendants, Marshall's participation in the creation, condonation, and furtherance of the hostile work environment and retaliation actions renders him a proper defendant -- especially since Plaintiff also alleges he was in fact given undesirable assignments usually reserved for junior and/or probationary officers and/or civilian employees.

Finally, with respect to Defendants Murphy, Gazzola and Carroll, the Complaint alleges that they jointly acted in concert to prefer the disciplinary charges against Plaintiff (Alali II ¶16). Defendants do not contend that these actions are insufficient to hold these defendants liable in this case. Rather, their contention is that the causal link is not plead.

Defendants' arguments, unfortunately for them, ignore the timing of the preferral of those disciplinary charges – namely a mere three days after Defendants were notified that Plaintiff filed his Charge of Discrimination with the EEOC (Alali II ¶¶14-16).

In addition, and again with respect to the actions of Murphy, Gazzola and Carroll, Plaintiff alleges that they acted together in furtherance of their retaliatory plan to withhold from Plaintiff the college tuition reimbursement funds to which he is entitled resulting in an arrearage of $17,000 (Alali II, ¶19; see also Berg Aff. Ex. 1).

Contrary to Defendants' arguments, the timing and sequence of events alleged in the pleading is sufficient to meet the causation requirement. For it is well settled that a Plaintiff can plead causation with reference to facts showing that the protected activity was followed close in time by adverse treatment in employment. Morris v. Lindau, 196 F.3d 102, 110 (2nd Cir. 1999), citing Sumner v. US Postal Service, 899 F.3d 203, 209 (2nd Cir. 1990); Gorman-Bakos v. Cornell Cooperative Extension of Schenectady County, 252 F.3d 545, 558 (2nd Cir. 2001).

Against these factual allegations, the Complaint should not be dismissed.

## B. Defendants Murphy, Gazzola and Carroll are not entitled to absolute immunity

Defendants then assert, in one-half sentence in their brief, that the act of preferring disciplinary charges is protected by absolute immunity.

Importantly, the applicability of absolute immunity is limited and not favored, particularly in §1983 actions where it has been held to detract from §1983's broad remedial purposes. Spear v. Town of West Hartford, 954 F.2d 63, 66 (2nd Cir. 1992), cert. denied, 506 U.S. 819 (1992); Burns v. Reed, 500 U.S. 478, 486 (1991) (Courts have been "'quite sparing' in their recognition of absolute immunity").

And here, the Defendants' conduct of preferring charges against Plaintiff is clearly an administrative, personnel type, decision aimed at one particular individual for which no immunity can attach. "Such decisions, like personnel decisions made by judges, are often crucial to the efficient operation of public institutions (some of which are at least as important as the courts), yet no one suggests that they give rise to absolute immunity from liability in damages under §1983." Forrester v. White, 484 U.S. 219, 229 (1988).  For it is axiomatic that employment and personnel decisions generally speaking are administrative acts for the purposes of evaluating official immunity. Dobosz v. Walsh, 892 F.2d 1135 (2nd Cir. 1989); Alexander v. Holden, 66 F.3d 62, 66 (4th Cir. 1995).

In fact, Defendants' arguments for absolute immunity have been previously rejected by the Second Circuit in Dobosz. 892 F.2d 1135.

In Dobosz, the Second Circuit assessed the Defendant's argument that "because he acted as a prosecutor in presenting the charges against Dobosz before the Board of Commissioners he was entitled to absolute immunity under Imbler v. Pachtman, 424 U.S. 409 (1976) and Butz v. Economou, 438 U.S. 478 (1978)."

The Second Circuit also noted the "important difference" between the holdings of these cases and the facts present where a supervisor initiates disciplinary action and a suspension against a subordinate employee.  The Court held that such actions are more appropriately governed by the holding in Forrester v. White, 484 U.S. 210 (1988). See Dobosz, 892 F.3d at 1139-1140.

Thus, citing to Forrester, the Second Circuit highlighted the applicability of the Supreme Court decision to this case:

> "a judge who hires or fires a probation officer cannot meaningfully be
> distinguished from a district attorney who hires and fires assistant district

attorneys, or indeed from any other executive branch official who is responsible for making employment decisions. Such decisions, like personnel decision made by judges, are often crucial to the efficient operation of public institutions (some of which are at least as important as the courts), yet no one suggests that they give rise to absolute immunity from liability in damages under §1983." Dobosz, 892 F.2d at 1139-1140, *citing* Forrester, 484 U.S. at 229.

*See also* Harhay v. Town of Ellington Board of Education, 323 F.3d 206, 210-211 (2nd Cir. 2003) ("Discretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity because such decision making is no different in substance from that which is enjoyed by other actors, *citing* Forrester, 484 U.S. at 229-30 and noting that the determination of the Board, even though done by a vote, was "part of a process by which an employment situation regarding a single individual was resolved.").

Clearly, when viewed against this binding precedent, Defendants' unsupported statement that they are entitled to absolute immunity must be rejected.

**C. When the pleading is read in its entirety and the totality of the circumstances considered, Defendants' motion to dismiss must be denied**

Thus, defeating Defendants' arguments entirely, when these allegations are read in the context of facts asserted in both Alali I and II, it is patently clear that the actions complained of and carried out by these defendants were: (1) motivated by a desire to discriminate against Plaintiff on account of his national origin; and (2) motivated by a desire to retaliate against Plaintiff on account of his protected complaints of discrimination.

It is self-evident from the pleadings that Plaintiff was treated differently than even the probationary and junior officers in the Department – who were not of Middle Eastern descent since Plaintiff was the only such person in the Department's history -- thus showing Plaintiff was treated differently than individuals who were not in the same protected group.

Furthermore, the actions of the defendants individually and taken together amount to adverse action – especially when the total circumstances are viewed rather than the piecemeal approach adopted by Defendants (*see also* Point IV, *supra*). *See e.g.* Raniola v. Bratton, 243 F.3d 610, 617 (2nd Cir. 2001) (the totality of the environment should be examined); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2nd Cir. 2000) (same).

At a very minimum, a review of the facts alleged shows that the Defendants' motion to dismiss should be denied. For it cannot be said that Plaintiff cannot prove any set of facts in support of his claims which would entitle him to relief. Litzler v. CC Investments, LLC, 362 F.3d 203, 206 (2nd Cir. 2004).

## POINT VI

## THE CLAIMS AGAINST THE CITY SHOULD NOT BE DISMISSED

Defeating Defendants' arguments for dismissal of the claims against the City is the well-settled case law that "[w]here an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy." Clue v. Johnson, 179 F.3d 57, 62 (2nd Cir. 1999), *citing* Rookard v. Health & Hosps. Corp, 710 F.2d 41, 45 (2nd Cir. 1983).

Thus, even a "single act of a municipal officer is sufficient to establish municipal liability if that individual officer possesses 'final policy-making authority with respect to the area in which the action is taken.'" Rucci v. Thoubboron, 68 F.Supp.2d 311, 325 (S.D.N.Y. 1999), *citing* McMilian v. Monroe Cty., 520 U.S. 781, 785 (1997); *see also* Mandell v. County of Suffolk, 316 F.3d 368, 385 (2nd Cir. 2003) (same).

Here, at a very minimum, the claim against the City should not be dismissed due to the acts of the three policy making Defendants – namely Murphy, Gazzola, and Carroll – each of

whom had the discretionary decision making authority to prefer disciplinary charges against Plaintiff and each of whom participated in that determination (Alali II ¶16).

However, in addition to these actions which clearly bind the municipality, Gazolla and Marshall's conduct of directing subordinates to give Plaintiff "bad assignments" is another example of the individually named Defendant officials carrying out their discretionary authority in a personnel related area (Alali II ¶18f).

Similarly, Gazolla's conduct of precluding Plaintiff from working overtime, performing special detail assignments, engaging in tour switches with other officers and being considered for specialized unit assignment are all acts in which Gazolla possessed and then actually carried out his policy making authority in an area involving the making of personnel related decisions (Alali II ¶18g and h).

Under the circumstances, and on the basis of the facts plead in Alali II, the claims against the City should not be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in all respects.

Dated: White Plains, NY
      July 2, 2007

LOVETT & GOULD LLP
By:_____
Kim Berg (KB 1425)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, NY 10605
(914) 428-8401

24