WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY  10604
(914) 323-7000
Attn:   Peter A. Meisels, Esq. (PM-5018)
        Lalit K. Loomba, Esq. (LL-9755)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x     07 Civ. 2916 (CLB)

ARAZ ALALI,

                 Plaintiff,

    -against-

ALBERTO DeBARA, individually, KYLE
WILSON, individually, EDWARD AUSTIN,
individually, GEORGE MARSHALL,
individually, HUMBERTO MORRELL,
individually, MATTHEW BRADY, individually,
ANTHONY MUPRHY, individually, ROBERT
GAZZOLA, individually, PATRICK J.
CARROLL, individually, and the CITY OF NEW
ROCHELLE, New York,

                 Defendants.

-------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
**Attorneys for Defendants**
**3 Gannett Drive**
**White Plains, NY  10604**
**(914) 323-7000**

## TABLE OF CONTENTS

Page

Introduction ................................................................................................................... 1

POINT I

THE TITLE VII CLAIM SHOULD BE DISMISSED FOR
FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES ......................... 1

POINT II

ALALI DOES NOT ALLEGE VIABLE CLAIMS UNDER
42 U.S.C. §1981 OR §296 OF THE N.Y. EXECUTIVE LAW ......................... 2

    A.    The Complaint Does Not Allege an Adverse Employment Action ............. 2

    B.    Alali Fails to Plead a Hostile Work Environment Claim............................ 5

POINT III

CARROLL, MURPHY AND GAZZOLA ARE PROTECTED
BY ABSOLUTE IMMUNITY ............................................................................ 7

POINT IV

THE COMPLAINT DOES NOT STATE A VIABLE
CLAIM AGAINST THE CITY ........................................................................... 8

POINT V

THE DUPLICATIVE CLAIMS AGAINST GAZZOLA,
CARROLL AND THE CITY SHOULD BE DISMISSED ................................ 9

Conclusion ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Alfano v. Costello,*
294 F.3d 365 (2d Cir. 2001)..............................................................................1, 2

*Banks v. State Univ. of New York,*
 2007 U.S. LEXIS 20529 (W.D.N.Y. Mar. 21, 2007) ....................................5, 7

*Buckley v. Fitzsimmons,* 509 U.S. 259 (1993) ....................................................8

*Butts v. New York Dep't of Hous. Preservation & Dev.,*
990 F.2d 1397 (2d Cir. 1993)................................................................................1

*Clue v. Johnson,*
179 F.3d 57 (2d Cir. 1999)....................................................................................8

*Cuoco v. Moritsugu,*
222 F.3d 99 (2d Cir. 2000)....................................................................................7

*Dobosz v. Walsh,*
892 F.2d 1135 (2d Cir. 1989)................................................................................7

*Dory v. Ryan,*
25 F.3d 81 (2d Cir. 1994)......................................................................................8

*Ferlito v. City of Oswego,*
2006 U.S. Dist. LEXIS 54561 (N.D.N.Y. Aug. 4, 2006) ....................................9

*Flower v. Mayfair Joint Venture,*
1996 U.S. Dist. LEXIS 6122 (S.D.N.Y. May 8, 1996).........................................2

*Forrester v. White,*
 484 U.S. 219 (1988)..............................................................................................7

*Galabya v. New York City Board of Ed.,*
 202 F.3d 636 (2d Cir. 2000)..................................................................................4

*Green v. New York City Dep't of Corr.,*
2006 U.S. Dist. LEXIS 32200 (E.D.N.Y. May 22, 2006) ....................................2

*Harris v. Forklift Sys., Inc.,*
510 U.S. 17, 21 (1993)...........................................................................................6

**Cases**                                                                                                          **Page**

*Hernandez v. Industrial Medicine Assocs.,*
2006 U.S. Dist. LEXIS 69155 (E.D.N.Y. Sept. 14, 2006)...................................................2

*Hodge v. The New York College of Podiatric Medicine,*
157 F.3d 164 (2d Cir. 1998).................................................................................2

*Julian v. New York City Transit Auth.,*
857 F. Supp. 242 (E.D.N.Y. 1994) ......................................................................1

*National R.R. Passenger Corp. v. Morgan,*
536 U.S. 101 (2002)............................................................................................2

*Pembaur v. City of Cincinnati,*
 475 U.S. 469 (1986)...........................................................................................9

*Phillips v. Bowen,*
278 F.3d 103 (2d Cir. 2002)............................................................................ 3

*Richardson v. New York State Dept. of Corr. Serv.,*
180 F.3d 426 (2d Cir. 1999)...............................................................................3

*Schwapp v. Town of Avon,*
118 F.3d 106 (2d Cir. 1997)...............................................................................6

*Spear v. Town of West Hartford,*
954 F.2d 63 (2d Cir. 1992).................................................................................7

*St. Louis v. Praprotnick,*
485 U.S. 112 (1988)............................................................................................9

*Torres v. Pisano,*
116 F.3d 625 (2d Cir. 1997)...............................................................................6

*Valenzuela v. Riverbay Corp.,*
 2007 U.S. Dist. LEXIS 8848 (S.D.N.Y. Jan. 31, 2007).....................................2

*Verbeek v. Teller,*
158 F. Supp.2d 267 (E.D.N.Y. 2001) .................................................................8

*Weeks v. New York State,*
273 F.3d 76 (2d Cir. 2001)...............................................................................3, 5

**Cases**                                                                                          **Page**

*Williams v. New York City Housing Auth.,*
458 F.3d 67 (2d Cir. 2006)..................................................................................................1

*Williams v. R.H. Donnelley Corp.,*
368 F.3d 123 (2d Cir. 2004)................................................................................................4

*Wilson v. New York City Dep't of Transp.,*
2005 U.S. Dist. LEXIS 21520 (S.D.N.Y. Sept. 28, 2005)...................................................5

*Woodcock v. Montefiore Med. Ctr.,*
2002 U.S. Dist. LEXIS 2965 (E.D.N.Y. Jan. 29, 2002) ..................................................5, 7


***Statutes and Regulations***

42 U.S.C. §1981 and §296............................................................................................2, 5

42 U.S.C. §§1981 and 1983 ........................................................................................8, 10

New Rochelle City Charter §§ 4, 5, 44, 60, 63 ..............................................................8, 9

Title VII, 42 U.S.C. §§ 2000e-2000e-17 ..........................................................................1

1606139.1

## Introduction

Defendants respectfully submit this reply memorandum of law in response to Araz Alali's ("Alali") memorandum of law in opposition to Defendants' motion to dismiss and in further support of the motion.

### POINT I

### THE TITLE VII CLAIM SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants demonstrated in their main brief that before a plaintiff may bring suit under Title VII, 42 U.S.C. §§ 2000e-2000e-17, the claims forming the basis for the suit first must be presented to the EEOC and the plaintiff must receive a "Notice of Right to Sue" letter from the EEOC. *Williams v. New York City Housing Auth.*, 458 F.3d 67, 69 (2d Cir. 2006); *see also Julian v. New York City Transit Auth.,* 857 F. Supp. 242, 249 (E.D.N.Y. 1994) ("As a condition precedent to bringing a Title VII action, a plaintiff must file a complaint with the Equal Employment Opportunity Commission . . . and obtain a right-to-sue letter."). The obligation to exhaust administrative remedies also applies to retaliation claims, as such claims are specifically recognized in the statute. 42 U.S.C. §§2000e-3(a), 2000e-5(e), 2000e-5(f).

Alali admits that he did not receive a right-to-sue letter, but citing *Alfano v. Costello,* 294 F.3d 365 (2d Cir. 2001), he asserts that a right-to-sue letter is not required. In particular, Alali relies on the so-called "reasonably related" exceptions, recognized in *Butts v. New York Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397, 1402-1403 (2d Cir. 1993), and discussed in *Alfano. See Alfano,* 294 F.3d at 381-82. The *Butts* exceptions apply to the general rule that Title VII claims set forth in a federal court complaint must first be presented to the EEOC. *See Williams,* 458 F.3d at 70 ("Claims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency."). However, contrary to Alali's

-1-

suggestion, these exceptions, whatever their continued validity,[1] do not abrogate the rule that a plaintiff must first obtain a right-to-sue letter is a precondition to filing a Title VII claim in federal court. *See Hodge v. The New York College of Podiatric Medicine,* 157 F.3d 164, 168 (2d Cir. 1998) ("Title VII plaintiffs must receive a 'right-to-sue' letter from the EEOC before filing suit in court"); *Valenzuela v. Riverbay Corp.,* 2007 U.S. Dist. LEXIS 8848, at *6 (S.D.N.Y. Jan. 31, 2007) (same); *Green v. New York City Dep't of Corr.,* 2006 U.S. Dist. LEXIS 32200, at *4 (E.D.N.Y. May 22, 2006) (same); *Flower v. Mayfair Joint Venture,* 1996 U.S. Dist. LEXIS 6122, at *4 (S.D.N.Y. May 8, 1996) (same). Indeed, the plaintiff in *Alfano* obtained a right-to-sue letter before commencing his Title VII claims in federal court. *Alfano,* 294 F.3d at 372. Alali did not.

Therefore, Alali's Title VII claims must be dismissed.[2]

## POINT II

### ALALI DOES NOT ALLEGE VIABLE CLAIMS UNDER 42 U.S.C. §1981 OR §296 OF THE N.Y. EXECUTIVE LAW

A.    The Complaint does not Allege an Adverse Employment Action

In their main brief, Defendants demonstrated that Alali failed to sufficiently allege an adverse employment action, a required element of claims under 42 U.S.C. §1981 and §296 *et seq.* of the New York Executive Law. In opposition, Alali places improper reliance on cases distinguishable on the law and on the facts.

---

[1] The continued validity of the second and third exceptions set forth in *Butts* has been questioned in light of the Supreme Court's decision in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), *see Hernandez v. Industrial Medicine Assocs.,* 2006 U.S. Dist. LEXIS 69155, at *27-35 (E.D.N.Y. Sept. 14, 2006).

[2] Alali concedes that he is not raising any claim for retaliation based on the First Amendment. Alali further concedes that a Title VII claim cannot be brought against an individual defendant.

*Phillips v. Bowen,* 278 F.3d 103 (2d Cir. 2002), is distinguishable because the plaintiff in that case alleged retaliation in violation of the First Amendment, a claim that Alali admits he is not bringing in this case. Moreover, the alleged retaliation in *Philips* occurred over a period of several years. Here, the facts alleged in the Alali II complaint relate to incidents on seven specific dates during the period February 12, 2007 to April 8, 2007, a period of less than two months. *See* Alali II Complaint, at ¶¶14-20. The court in *Phillips* did refer to "a combination of seemingly minor incidents [that] form the basis of a constitutional retaliation claim once they reach a critical mass." *Id.* at 109. But this was in the context of "otherwise minor incidents that occur often and over a longer period of time." *Id.* Again, the allegations in Alali II cover a period of less than two months. This is insufficient under *Phillips* to make out an adverse employment action.

*Weeks v. New York State,* 273 F.3d 76 (2d Cir. 2001), is unhelpful to Alali because in that case the court held that none of the acts alleged in plaintiff's complaint constituted an adverse employment action. *Id.* at 84-87. Specifically, the Second Circuit held that filing a grievance; receiving notice of discipline for misconduct and incompetence; a transfer from one office to another; being physically removed from an office; and the seizure of plaintiff's work files after her removal did not amount to an adverse employment action where plaintiff failed to allege tangible adverse effects of these acts. *Id.* at 87. In the instant case, Alali does not allege consequences materially more severe than the plaintiff in *Weeks.* Hence, under *Weeks,* Alali has failed to allege an adverse employment action.

In *Richardson v. New York State Dept. of Corr. Serv.,* 180 F.3d 426 (2d Cir. 1999), the key fact underpinning the finding of an adverse employment action was plaintiff's transfer to a

post where she was exposed to more personal danger as a result of increased contact with the prisoner population. *Id.* at 444. In the instant case, Alali has pled no such facts.

Alali attempts to create an adverse employment action by relying on his *personal perception* that certain assignments, such as a fixed post at a hospital, the "utility car," a foot patrol and dispatch, were inferior and degrading. This attempt fails. To be "adverse," a plaintiff must allege employment-related actions that are "material" and "significant." *Galabya v. New York City Board of Ed.,* 202 F.3d 636, 640 (2d Cir. 2000). Hence, "[t]o be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (citation omitted). As the Second Circuit has stated, where a change in job circumstances "involves no significant changes in an employee's conditions of employment, the fact that the employee views the [change] either positively or negatively does not of itself render the [change] an adverse employment action." *Williams v. R.H. Donnelley Corp.,* 368 F.3d 123, 128 (2d Cir. 2004) (internal quote omitted). Here, the fact that Alali subjectively views certain assignments as inferior or degrading does not make them "adverse."

Alali argues that he has alleged monetary losses in paragraph 18(h) and 19 of the Alali II complaint, which amount to a materially adverse employment action. The complaint does not bear this out. Paragraph 18(h) states that, as a result of a "below standard" evaluation given on March 22, 2007, he was "barred from performing overtime work" and "forbidden to perform special detail assignments." Alali II Complaint, at ¶18(h). Alali filed his complaint on April 11, 2007, about two weeks later. But Alali does not allege how many assignments he wanted to work or the amount of overtime compensation, if any, that he accordingly failed to earn. To preserve Alali's claim based on loss of overtime compensation, this court "would have to do

more than read [Alali's allegations] in a light favorable to [his] claim; [it] would in effect have to

invent that portion of [his] complaint explaining why those actions are adverse to [him]." *Weeks*

*v. New York State,* 273 F.3d 76, 87 (2d Cir. 2001). There is no obligation to do so, and this Court

should not fill in the missing blanks. "A pleading that omits facts to show that an employment

action is adverse in character is plainly insufficient." *Id.* Moreover, Alali failed to mention,

much less distinguish, *Wilson v. New York City Dep't of Transp.,* 2005 U.S. Dist. LEXIS 21620,

at *53-55 (S.D.N.Y. Sept. 28, 2005), which held that the mere allegation of loss of overtime was

insufficient to state a claim.

Paragraph 19 of the Alali II complaint alleges that Anthony Murphy intentionally

withheld tuition reimbursement payments in the amount of $17,000. The complaint, however,

does not allege that an invoice was submitted to the City for reimbursement. In any event, to the

extent this alleges an adverse employment action, it is still insufficient to make out a claim under

Section 1981 (or Section 296) because Alali offers no more than a conclusory allegation that

withholding tuition reimbursement, assuming that was done, was motivated by discriminatory

intentions. *Banks v. State Univ. of New York,* 2007 U.S. LEXIS 20529, at *12-13 (W.D.N.Y.

Mar. 21, 2007).

B.      Alali Fails to Plead a Hostile Work Environment Claim

In their main brief, Defendants established that Alali's complaint failed to allege that the

individual defendants were personally involved in any actionable conduct. In opposition, Alali

asserts that the individual defendants created a "hostile work environment." *See* Opp. Brief at

19. A hostile work environment claim under 42 U.S.C. §1981 is assessed under the same

standards that apply to Title VII claims. *See Woodcock v. Montefiore Med. Ctr.,* 2002 U.S. Dist.

LEXIS 2965, at *15-16 (E.D.N.Y. Jan. 29, 2002). To plead a hostile work environment claim, a

1606139.1

plaintiff must allege facts showing that "'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe to alter the conditions of the victim's employment.'" *Torres v. Pisano,* 116 F.3d 625, 630-31 (2d Cir. 1997) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). A few isolated incidents or the utterance of a comment that "engenders offensive feelings in an employee" is not sufficient to plead a hostile work environment claim. *Harris,* 510 U.S. at 21.

In the instant case, Alali's complaint covers a period of about two months over which he alleges that various individual defendants assigned him what Alali perceived to be unappealing posts, while two allegedly made comments directed at Alali's alleged Middle-Eastern national origin. However, even assuming the truth of Alali's allegations, at most they demonstrate insensitive behavior. Alali's allegations "fall far short of the 'steady barrage of opprobrious . . . comments necessary' to establish a hostile work environment." *Woodcock,* 2002 U.S. Dist. Lexis at *18 (quoting *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997)).

In fact, a careful review of paragraph 18 of the Alali II complaint shows that Alali only focused on events occurring on 7 days: February 21, March 7, March 8, March 21, March 22, April 7 and April 8, 2007. Complaint, at ¶18. The vast majority of the conduct listed in paragraph 18 lacks any specific reference to Alali's alleged Middle-Eastern heritage and thus does not create an inference of discriminatory intent. The only exceptions are an alleged comment by Alberto DeBara on March 7, 2007, *see* Complaint, at ¶18(d), and one by Kyle Wilson on April 8, 2007. *Id.* at ¶18(j). These comments, isolated by over a month, hardly represent the steady barrage necessary to support a hostile work environment claim.

Alali makes a conclusory allegation that his "below standard" evaluation was given as a result of his "skin color, national origin and/or ethnicity." Complaint, at ¶18(f). But, as noted,

-6-

conclusory allegations of discriminatory intent are not sufficient to avoid dismissal of an

employment discrimination complaint under Rule 12(b)(6). *Banks v. State Univ. of New York,*

2007 U.S. LEXIS 20529, at *12-13 (W.D.N.Y. Mar. 21, 2007). In the absence of any specific

allegation showing a discriminatory motive, plaintiff's hostile work environment claim fails. *See*

*also Woodcock,* 2002 U.S. Dist. Lexis at *19-20.

**POINT III**

**CARROLL, MURPHY AND GAZZOLA ARE**
**PROTECTED BY ABSOLUTE IMMUNITY**

Alali alleges that "[o]n February 15, 2007, Carroll, Murphy and Gazzola while acting in

concert, preferred against Plaintiff frivolous, retaliatory disciplinary charges." Alali II

Complaint, at ¶16. Even assuming the truth of this allegation, the preferment of disciplinary

charges is protected by absolute immunity. *Spear v. Town of West Hartford,* 954 F.2d 63, 66 (2d

Cir. 1992).[3]

In opposition, Alali argues that a decision to prefer disciplinary charges is

"administrative" in nature, and thus absolute immunity does not attach. He is wrong. Alali's

reliance on *Dobosz v. Walsh,* 892 F.2d 1135 (2d Cir. 1989), is misplaced. In *Dobosz,* the

defendant -- the superintendent of a police department -- suspended the plaintiff, a police officer

in that department, from his job. The Second Circuit held that "[i]n suspending [the officer], [the

superintendent] was acting not as the Department's legal advocate but as a supervisor of public

employees." *Id.* at 1139. Citing *Forrester v. White,* 484 U.S. 219 (1988), the court held that

absolute immunity did not apply. *Id.* Here, by contrast, Alali has not been suspended from his

job. The only action alleged is the preferment of disciplinary charges. The act of preferring

disciplinary charges is a prosecutorial, not an administrative, function and absolute immunity

---

[3] Absolute, like qualified, immunity should be considered at the earliest possible stages of the case. *See Cuoco v. Moritsugu,* 222 F.3d 99, 105-106 (2d Cir. 2000).

1606139.1

therefore applies. *Verbeek v. Teller,* 158 F. Supp.2d 267, 281 (E.D.N.Y. 2001) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 272-73 (1993)). Alali's conclusory allegation that defendants Carroll, Murphy and Gazzola entered into a conspiracy to fabricate the charges does "not negate [their] entitlement to absolute immunity." *Id.* (citing *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994)).

**POINT IV**

**THE COMPLAINT DOES NOT STATE
A VIABLE CLAIM AGAINST THE CITY**

Alali observes that "[w]here an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy." *Clue v. Johnson,* 179 F.3d 57, 62 (2d Cir. 1999). The problem with Alali's argument is his assertion, made only in his opposition brief, that defendants Anthony Murphy, Robert Gazzola and Patrick Carroll, are policymaking officials, capable of binding the City of New Rochelle for purposes of municipal liability. Opp. Brief at 23. Alali references paragraph 16 of the complaint, but that paragraph states, in its entirety: "On February 15, 2007, Carroll, Murphy and Gazzola while acting in concert, preferred against Plaintiff frivolous, retaliatory disciplinary charges." Alali II Complaint, at ¶16. There is no allegation that either Carroll, Murphy or Gazzola has final authority to bind the city and thus could be a policy maker. Alali also refers to conduct by defendant George Marshall and Robert Gazzola in allegedly directing subordinates to give Alali "bad assignments," and in allegedly precluding Alali from working overtime and special duty assignments. But again, the complaint does not ever allege that Marshall or Gazzola are policymakers.

Whether a municipal official has policy-making authority sufficient to bind the municipality for liability purposes under 42 U.S.C. §§1981 and 1983 is determined by state and

-8-

local law. *St. Louis v. Proprotnik,*, 485 U.S. 112, 118 (1988). Here, the New Rochelle City Charter[4] makes clear that neither Carroll, Murphy, Gazzola nor Marshall has employment policy-making authority for the City of New Rochelle. Under the Charter, "all powers conferred upon the city" shall be exercised by the City Council, a body consisting of five members (four Councilmen and the Mayor). Charter, §§4-5. The City Council appoints a City Manager who, under the Charter, supervises "the administration of the affairs of the city." *Id.,* §44. Hence, employment policy for the City of New Rochelle, is set by the City Council and the City Manager. The Commissioner of Police is authorized to remove employees of the department for cause, after an investigation, *see id.,* §§60, 63, but, as the Supreme Court made clear in *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), an official who has discretionary authority to hire and fire municipal employees, without authority to establish employment policy as a whole, does not by his actions create municipal "policy." *Id.* at 484 n.12.

In the instant case, final policy-making authority is vested within the City Council and City Manager. Accordingly, neither Carroll, nor any of the other individual defendants, have the authority necessary to bind the City in the instant action. *See Ferlito v. City of Oswego,* 2006 U.S. Dist. LEXIS 54561, at *16-17 (N.D.N.Y. Aug. 4, 2006) (police commissioner not a policy-making official where, under the city charter, Mayor had duty to administer all city departments).

### POINT V

### THE DUPLICATIVE CLAIMS AGAINST GAZZOLA, CARROLL AND THE CITY SHOULD BE DISMISSED

As demonstrated in Defendant's main brief, and above, the complaint in the instant case fails to state a viable claim against the City or any of the individual defendants under Title VII

---

[4] For the Court's convenience, the cited sections the New Rochelle City Charter are attached.

1606139.1

(first claim); 42 U.S.C. §1981 (second claim); or Section 296 *et seq.* of the New York State Executive Law (third claim).

As an independent ground for dismissal of the claims set forth against Carroll, Gazzola and the City, the Defendants demonstrated in their main brief that such claims are duplicative of the claims alleged against said defendants in Alali I. In his opposition, Alali does not contest this point. Instead he suggests, without citation to any authority, that Alali I and the instant action should be consolidated. Where, as here, there are no valid claims alleged in the instant action, and, in any event, the claims set forth against Carroll, Gazzola and the City are admittedly duplicative of claims made in Alali I, defendants respectfully suggest that there are no grounds for consolidation. Instead, this Court should dismiss Alali II.

### Conclusion

The complaint should be dismissed.

Dated: White Plains, New York
      July 9, 2007

                     Respectfully submitted,

                     WILSON, ELSER, MOSKOWITZ,
                     EDELMAN & DICKER LLP
                     Attorneys for Defendants

                     By: Lalit K. Loomba (LL-9755)

                     3 Gannett Drive
                     White Plains, NY 10604
                     (914) 323-7000
                     File No. 07367.00059

*Of Counsel*:
Peter A. Meisels, Esq.
Lalit K. Loomba, Esq.

1606139.1

[Amended by Local Law No. 4-1982 (June 15, 1982).[1]]

Section 3A. Off-shore boundaries.

The off-shore boundaries of the City of New Rochelle in Long Island Sound are hereby fixed and described as follows:

Beginning at a point southerly of Glen Island, said point being formed by the intersection of the boundary lines of Bronx County, Pelham Manor and New Rochelle; thence proceeding in a southeasterly direction along the Westchester County and Bronx County boundary line for approximately 10,200 feet to a point in Long Island Sound, said point being formed by the intersection of the boundary lines of Westchester County, Bronx County and Nassau County; thence northeasterly along the Westchester County and Nassau County boundary line approximately 3,700 feet to Execution Rock Lighthouse; thence still along the said county boundary line approximately 1,000 feet to a point; thence northwesterly in a straight line approximately 12,300 feet to meet the westerly boundary line of the Town of Mamaroneck between Echo Island and Premium Point, including all of the islands and islets within the limits of the aforementioned boundaries. (L. 1966, c. 152.)

## ARTICLE III
### The Council and Mayor

Section 4. Creation, composition and powers.

A Council of seven members, each having one vote, consisting of a Mayor, nominated and elected from the city at large, and six Council members, each nominated and elected from one of six Council Districts into which the city shall be apportioned, shall exercise, except as herein otherwise provided, all powers conferred upon the city. [Amended by Local Law No. 1-1993 (March 2, 1993).]

Section 5. Term of office of Council members.

The two Council members elected at the general city election held in 1991 shall continue in office for the unexpired balance of their present terms as if they had been elected from the Council Districts established to include their respective residences as of March 2, 1993. At the general city election held in 1993, there shall be elected one Council member from each of the other four Council Districts of the city whose terms of office shall be two (2) years from the first day of January 1994.

Beginning with the general city election held in 1995, the term of the Council members elected from Council Districts shall be four years from the first day of January next following their election. [Amended by Local Law No. 1-1987 (February 24, 1987); Local Law No. 1-1993 (March 2, 1993).]

---

1. Editor's Note: Local Law No. 4-1982 also repealed former Section 3, Ward boundaries, as amended by L.L. No. 3-1965 (June 16, 1965); 2, 1967 (June 2-1967); and 2-1972 (March 13, 1972).

of such appointees in the work which they are to perform. All such appointments shall be without definite term, unless for temporary service not to exceed 60 days. [Amended by Local Law No. 3-1982 (May 18, 1982); Local Law No. 10-1997 (July 16, 1997).]

Section 42. Removals.

Except as otherwise provided in this Charter and except as may be required by the Civil Service rules if applicable thereto, any officer or employee of the city appointed by the City Manager or another appointing authority may be laid off, suspended or removed from office or employment by the respective appointing authority. Verbal or written notice of layoff, suspension or removal personally given to an officer or employee or written notice mailed by certified mail return receipt requested to such person's usual place of residence shall be sufficient to put any such layoff, suspension or removal into effect. If the civil service rules apply, then the officer or employee sought to be removed shall receive such notice and hearing as such civil service rules require, and all further proceedings therein shall be pursuant to such civil service rules. The decision of the Manager or other appointing authority in any such case shall be final. A copy of the written statement of reasons given for any layoff, suspension or removal, and a copy of any written reply thereto by the officer or employee involved, together with a copy of the decision of the Manager or other such authority, shall be filed as a public record in the office of the Manager.
[Amended by Local Law No. 10-1997 (July 16, 1997); Local Law No. 2-1998 (January 20, 1998).]

Section 43. Council not to interfere in appointments or removals.

Neither the Council nor any of its committees or members shall direct or request the appointment of any person to, or his removal from, office or employment by the City Manager or any of his subordinates. Except for the purpose of inquiry, the Council and its members shall deal with that portion of the administrative service for which the Manager is responsible solely through the Manager, and neither the Council nor any member thereof shall give orders to any subordinate of the city, either publicly or privately.

Section 44. Duties of Manager.

It shall be the duty of the City Manager to act as chief conservator of the peace within the city; to supervise the administration of the affairs of the city; to see that the ordinances of the city and the laws of the state are enforced, except as otherwise in this Charter provided; to sign all contracts, deeds or leases that may be authorized by the Council; to make such recommendations to the Council concerning the affairs of the city as may seem to him desirable; to keep the Council advised of the financial conditions and future needs of the city; to prepare and submit to the Council the annual budget estimate; to prepare and submit to the Council such reports as may be required by that body; and to perform such other duties as may be prescribed by this Charter or required of him by ordinance or resolution of the Council.

Section 59. Constitution of the Police and Fire Departments.

The Police and Fire Departments shall as to their membership and organization remain as now constituted until the same shall be changed by the Council.

All members of the Police and Fire Departments, subject to the powers of removal hereinafter specified, shall hold their respective positions and offices during good behavior or until by age or disease they shall be permanently incapacitated, or for any reason become unfit to discharge their duties.
[Enacted by Local Law No. 1-1964 (January 8, 1964).]


Section 60. Employees.

The Director of Police and the Fire Chief may appoint, with the approval of the City Manager, such employees in addition to the uniformed forces as may be necessary, provided that the positions have been authorized and the salaries therefor fixed by the Council and may for their respective departments for cause remove employees after hearing of charges on notice.
[Enacted by Local Law No. 1-1964 (January 8, 1964); amended by Local Law No. 3-1970 (June 8, 1970).]


Section 61. Appointment and promotion.

All appointments and promotions of officers and members of the uniformed forces of the Police and Fire Departments shall be made by the Commissioner of Police and the Fire Commissioner for their respective Departments with the authorization of the City Manager in the manner prescribed by the Constitution of the State of New York and in accordance with the provisions of the civil service laws of the State of New York.

All promotions shall be made on the basis of seniority, meritorious service in the Departments and superior capacity as shown by competitive examinations. Individual acts of personal bravery may be treated as an element of meritorious service in such examination, the relative rating therefor to be fixed by the Municipal Civil Service Commission. The Commissioner of Police and the Fire Commissioner for their respective Departments shall transmit to the Municipal Civil Service Commission, in advance of such examination, the complete record of each candidate for promotion.
[Enacted by Local Law No. 1-1964 (January 8, 1964); amended by Local Law No. 3-1970 (June 8, 1970); Local Law No. 14-1997 (December 9, 1997).]


Section 62. Compensation for loss and injury.

The Director of Police and Fire Chief acting for their respective Departments shall have power to compensate officers and members of the Police and Fire Departments for loss of personal property and for any medical expenses arising from injuries incurred in the performance of duty.
[Enacted by Local Law No. 1-1964 (January 8, 1964).]


Section 63. Trial charges.

a.     The Director of Police and Fire Chief for their respective Departments may investigate, try and determine charges made against any member of the uniformed force for neglect of duty, incompetency and incapacity in the performance of his duties or any delinquency affecting his general character or fitness for the office. The Director and Fire Chief shall have power to issue subpoenas to compel the attendance of witnesses upon any proceeding authorized by the rules and regulations of his Department; and any person served with a subpoena shall attend and testify in obedience to the command thereof. The accused shall have the right to be present at his trial and to be heard in person and by counsel and to give and furnish evidence in his defense. If the accused is found guilty, the Director, in his discretion, may punish him by reprimand, imposition of fine, forfeiture of pay for a specified time, suspension during a fixed period or dismissal from office. No member of the uniformed force shall be removed or otherwise punished for any cause other than those hereinbefore specified.

b.     The procedure, right of suspension, penalties, appeals and all other rights and duties of the accused and the Director of Police or Fire Chief shall be governed by and conducted pursuant to the provisions of Article V, Title B, of the Civil Service Law of the State of New York.
[Enacted by Local Law No. 4-1964 (November 19, 1964).]


Section 64. Commitment to police station.

The Judge of the City Court, the Director of Police or the Chief of Police may commit any person charged with crime, pending an examination, to the police station in the city, and the officer in charge of the police station is authorized and required to receive any such person so committed and retain him in custody in accordance with such commitment.
[Enacted by Local Law No. 1-1964 (January 8, 1964); amended by Local Law No. 3-1985 (April 16, 1985).]


Section 65. Expenses chargeable to the county.

The Director of Police shall render annually to the Board of Supervisors of Westchester County an itemized account of such expenses, incurred in criminal proceedings, as are properly chargeable to the County of Westchester. Such expenses shall include a proportionate part of the lighting, heating, cleaning and rent of the station house, of the board of prisoners, of traveling and other expenses incurred in the apprehension of criminals and expenses of transportation of prisoners under sentence to the place of confinement. Such account shall be audited by the Board of Supervisors and provided for and paid to the City of New Rochelle in the same manner as all other county charges.


Section 66. Pension funds.

The Police Pension Fund and the Firemen's Pension Fund as now constituted by law are hereby continued.


Section 67 and 67A. Department of Public Welfare.

– 24 –

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                            ) ss.:

COUNTY OF WESTCHESTER    )

      Patricia Harris, being duly sworn, says:  that I am not a party to this action, am over 18 years of age and reside in Fairfield County, State of Connecticut.

      On the 9th day of July 2007, I served the within document entitled **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS** on:

> Lovett & Gould, LLP
> 222 Bloomingdale Road
> White Plains, NY  10605
> (914) 428-8401

at the address(es) designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

*Patricia Harris*
Patricia Harris

Sworn to before me this
9th day of July 2007

Notary Public

LALIT K. LOOMBA
Notary Public, State of New York
No. 60-5006806
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires Jan. 11, 2011

-11-

1606139.1