WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn:  Peter A. Meisels (PM-5018)
        Lalit K. Loomba (LL-9755)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X   07 Civ. 2916 (CLB)

ARAZ ALALI,                                                          :

                          Plaintiff,                                 :

        -against-                                                    :

ALBERTO DeBARA, individually, KYLE WILSON,           :   **STATEMENT OF**
individually, EDWARD AUSTIN, individually,               **UNDISPUTED FACTS**
GEORGE MARSHALL, individually, HUMBERTO   :   **PURSUANT TO LOCAL**
MORRELL, individually, MATTHEW BRADY,                    **RULE 56.1**
individually, ANTHONY MUPRHY, individually,          :
ROBERT GAZZOLA, individually, PATRICK J.
CARROLL, individually, and the CITY OF NEW           :
ROCHELLE, New York,
                                                                     :
                          Defendants.

-------------------------------------------------------------------- X

        Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the

Southern District of New York, defendants Alberto DeBara, Kyle Wilson, Edward Austin,

George Marshall, Humberto Morrell, Matthew Brady, Anthony Murphy, Robert Gazzola, Patrick

J. Carroll (the "Individual Defendants") and the City of New Rochelle (the "City") (collectively,

the "Defendants") hereby submit the following statement of material facts as to which they

contend there are no genuine issues to be tried.  This Rule 56.1 Statement is submitted in support

of the Defendants' motion for summary judgment on grounds of qualified immunity.

**The Parties**

1.    Plaintiff Araz Alali ("Alali") is, and at all relevant times has been, a Police Officer with the New Rochelle Police Department ("NRPD" or the "Department").

2.    Defendant Alberto DeBara ("DeBara") was at all relevant times herein a Lieutenant with the NRPD.  He is currently retired.

3.    Defendant Kyle Wilson ("Wilson") is, and at all relevant times was, a Sergeant with the NRPD.

4.    Defendant Edward Austin ("Austin") is, and at all relevant times was, a Sergeant with the NRPD.

5.    Defendant George Marshall ("Marshall") is, and at all relevant times was, a Lieutenant with the NRPD.

6.    Defendant Humberto Morrell ("Morrell") is, and at all relevant times was, a Sergeant with the NRPD.

7.    Defendant Matthew Brady ("Brady") is, and at all relevant times was, a Sergeant with the NRPD.

8.    Defendant Anthony Murphy ("Murphy") is, and at all relevant times was, the Deputy Commissioner of the NRPD.

9.    Defendant Robert Gazzola ("Gazzola") is, and at all relevant times was, a Captain with the NRPD.

10.    Defendant Patrick J. Carroll ("Carroll") is, and at all relevant times was, the Commissioner of Police for the City of New Rochelle.

11.    Defendant the City of New Rochelle ("City") is a municipal corporation existing under the laws of the state of New York.

### Related Litigation

12.     The instant case (hereinafter, "*Alali II*") is the second of four cases commenced in the United States District Court for the Southern District of New York in which Alali alleges unlawful discrimination and retaliation on the basis of his alleged Iraqi national origin.

13.     The first case is entitled *Araz Alali v. Robert Gazzola, Patrick J. Carroll, Individually, City of New Rochelle, New York,* 07 Civ. 1296 (CLB) (hereinafter, "*Alali I*").

14.     The third case is entitled *Araz Alali v. City of New Rochelle,* 07 Civ. 9912 (CLB) (hereinafter, "*Alali III*").

15.     The fourth case is entitled *Araz Alali v. City of New Rochelle,* 08 Civ. 4273 (CLB) (hereinafter, "*Alali IV*").

16.     In addition, on or about February 13, 2007, Alali filed a complaint with the United States Equal Employment Opportunity Commission (EEOC), alleging that he was discriminated against because of his alleged Iraqi national origin.  The EEOC issued a right to sue letter to Alali on or about August 24, 2007.

A.     Proceedings in *Alali I*

17.     Alali filed his complaint in *Alali I* on February 21, 2007.  A copy of the *Alali I* complaint is annexed as **Exhibit A**.[1]

18.     The complaint in *Alali I* alleges that Alali was subjected to unlawful discrimination because of his claimed Iraqi national origin and in retaliation for his filing the EEOC complaint.  He asserted violations of 42 U.S.C. §1981, 42 U.S.C. §1983 (equal protection), 42 U.S.C. §1983 (selective prosecution), Title VII (42 U.S.C. §2000e, *et seq.*), and Section 296 of the New York State Human Rights Law. Ex. A.

---

[1]  All Exhibits referenced herein are annexed to the accompanying declaration of Lalit K. Loomba, Esq., dated May 29, 2008.

19.      Plaintiff Araz Alali was deposed in *Alali I* for purposes of qualified immunity on June 25, 2007 and July 10, 2007. Copies of relevant pages from Alali's deposition in *Alali I* are annexed as **Exhibit B**.

20.      On or about August 2, 2007, the defendants in *Alali I* – Captain Gazzola, Commissioner Carroll and the City -- filed a motion for summary judgment on grounds of qualified and absolute immunity. The motion was supported by a Rule 56.1 Statement setting forth, *inter alia,* background facts concerning Alali's employment with the NRPD, including a listing of civilian complaints filed and command discipline imposed against Alali. A copy of the Rule 56.1 Statement submitted in support of defendants' qualified immunity motion in *Alali* is annexed hereto as **Exhibit C**.

21.      On November 19, 2007, Alali filed an opposition to the motion in *Alali I* consisting, *in its entirety*, of a single-page affirmation from his attorney. A copy of the affirmation is annexed as **Exhibit D**. Alali did not submit a counter Rule 56.1 statement or otherwise dispute any of the facts set forth in the defendants' Rule 56.1 Statement. Declaration of Lalit K. Loomba, Esq., dated May 29, 2008 ("Loomba Decl."), at ¶4. Accordingly, the factual statements asserted in the *Alali I* Rule 56.1 Statement are deemed admitted by Alali.

22.      The defendants' motion in *Alali I* was fully submitted as of December 3, 2007, and argued before the Court on December 7, 2007.

23.      By memorandum and order dated January 31, 2008, the Court (Brieant, *J.*) granted the defendants' motion for summary judgment and directed the Clerk to enter a final judgment dismissing all claims against all defendants in *Alali I*. A copy of the memorandum and order is annexed as **Exhibit E**. The Court held that Commissioner Carroll and Captain Gazzola were protected by the doctrine of *absolute* immunity against discrimination claims based upon

the preferment of disciplinary charges against Alali. The Court held that Carroll and Gazzola were protected by the doctrine of *qualified* immunity from Alali's claims under 42 U.S.C. §§1981 and 1983, as well as N.Y. Executive Law §296. The Court further held that Alali failed to state a claim against the City under 42 U.S.C. §§ 1981 and 1983, or under Title VII, 42 U.S.C. §2000e. Ex. E.

24.     Alali filed a notice of appeal from the January 31, 2008 memorandum and order. But on April 11, 2008, at the request of Alali's attorneys, the appeal was withdrawn without prejudice to be reactivated upon written notice to the appellate court on or before October 11, 2008. A copy of the stipulation withdrawing the appeal is annexed as **Exhibit F**.

B.     Proceedings in *Alali II*

25.     Alali filed his complaint in *Alali II* – the instant case -- on April 11, 2007, about six weeks after he filed the complaint in *Alali I*. A copy of the *Alali II* complaint is annexed as **Exhibit G**. In *Alali II*, Alali claimed that he was subjected to unlawful retaliation for his filing of the EEOC complaint and the complaint in *Alali I*. *Id.* at ¶¶14-19. He asserted violations of 42 U.S.C. §2000e (Title VII); 42 U.S.C. §§1981 and 1983; and Section 296 *et. Seq* of the New York State Executive Law. In addition, he named additional individual defendants: Lt. Alberto DeBara, Sgt. Kyle Wilson, Sgt. Edward Austin, Lt. George Marshall, Sgt. Humberto Morrell, Sgt. Matthew Brady and Deputy Commissioner Anthony Murphy. Ex. G.

26.     On May 24, 2007, the *Alali II* Defendants moved to dismiss the complaint for failure to state a claim.

27.     In a memorandum and order dated July 19, 2007, the Court (Brieant, J.) denied the motion. A copy of the memorandum and order is annexed as **Exhibit H**.

28.     The Defendants filed their answer in *Alali II* on July 30, 2007. A copy of the

answer is annexed as **Exhibit I**. The Individual Defendants raised the defense of qualified and absolute immunity. *Id.,* at ¶¶ 31-32.

29.     Alali's deposition for purposes of qualified immunity was taken on March 14, 2008, and continued on April 4, 2008. Copies of relevant pages from the deposition of Araz Alali in *Alali II* are annexed as **Exhibit J**.

C.     Proceedings in *Alali III*

30.     Alali filed his complaint in *Alali III* on November 9, 2007. A copy of the complaint in *Alali III* is annexed as **Exhibit K**.

31.     *Alali III* is a Title VII case brought only against the City of New Rochelle. The allegations of discrimination in *Alali III* are also alleged in *Alali II*. *Cf.* Ex. K and Ex. G.

32.     The City filed its answer in *Alali III* on December 3, 2007, and a scheduling order was issued by the Court on December 11, 2007.

33.     The City served interrogatories and document demands, according to the scheduling order, on January 31, 2008.

D.     Proceedings in *Alali IV*

34.     Alali filed his complaint in *Alali IV* on May 6, 2008. A copy of the complaint is annexed hereto as **Exhibit L**.

35.     The complaint in *Alali IV* alleges that Alali was subjected to unlawful retaliation for filing his EEOC complaint in February 2007. The complaint also asserts claims that Alali's right to free speech, guaranteed by the First Amendment, and his right to equal protection of the law, guaranteed by the Fourteenth Amendment, were violated. Ex. L.

36.     Defendants filed an answer in *Alali IV* on May 29, 2008.

## Civilian Complaints Filed against Alali in his Capacity
## as an Officer with the New Rochelle Police Department

37.     Prior to joining the NRPD, Alali was a police officer with the New York City

Police Department.  He admitted in his *Alali II* deposition that while employed by the NYPD, he

received numerous civilian complaints, many of which involved traffic stops.  Alali could not

"recall" whether the complaints involving traffic stops alleged rude and discourteous conduct on

Alali's part.  *Alali II* Dep (Ex. J) (Part I), at 9:20-23; 12:4-14:12.

38.     Alali joined the NRPD effective February 10, 2002.  **Exhibit M**; *see* Deposition

of Araz Alali in *Alali I* ("*Alali I* Dep.") (Ex. B), at 230:9-16; *see also Alali I* Rule 56.1 Statement

(Ex. C), at ¶5.

39.     On or about June 12, 2002, a civilian complaint (#33/02) was brought against

Alali in connection with a traffic stop, alleging that Alali was rude and discourteous.  *See*

Affidavit of Det. Lt. James Fortunato, sworn to July 30, 2007 ("Fortunato Aff't"), at ¶5; *Alali I*

Rule 56.1 Statement (Ex. C), at ¶6.

40.     On or about August 12, 2002, a civilian complaint (#67/02) was brought against

Alali in connection with a motor vehicle accident, alleging that Alali was rude and yelled at the

complainant.  Fortunato Aff't, at ¶6; *Alali I* Rule 56.1 Statement (Ex. C), at ¶7.

41.     On or about August 12, 2002, a civilian complaint (#69/02) was brought against

Alali in connection with a traffic stop, alleging that Alali was rude and discourteous.  Fortunato

Aff't, at ¶7; *Alali I* Rule 56.1 Statement (Ex. C), at ¶8.

42.     On or about October 22, 2002, a civilian complaint (#96/02) was brought against

Alali in connection with a traffic stop on July 28, 2002, alleging that Alali was rude and

discourteous, and that he refused to give the complainant directions even though the complainant

stated she was lost.  Fortunato Aff't, at ¶8; *Alali I* Rule 56.1 Statement (Ex. C), at ¶9.

- 7 -

43.     On or about February 25, 2003, a civilian complaint (#5/03) was brought against Alali in connection with a parking ticket, alleging that Alali had no "ethical" basis to issue the ticket because Alali often parked his personal car in the same spot. Fortunato Aff't, at ¶9; *Alali I* Rule 56.1 Statement (Ex. C), at ¶10.

44.     On or about February 26, 2003, a civilian complaint (#4/03) was brought against Alali in connection with a traffic stop, alleging that Alali had racially profiled the complainant and issued a summons without a valid reason. Fortunato Aff't, at ¶10; *Alali I* Rule 56.1 Statement (Ex. C), at ¶11.

45.     Alali suffered an injury on or about July 28, 2003. He did not return to active duty until October 1, 2004. Fortunato Aff't, at ¶11; *Alali I* Rule 56.1 Statement (Ex. C), at ¶12.

46.     On or about October 22, 2004, a civilian complaint (#80/04) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous, and issued multiple unnecessary summonses, possibly motivated by racial prejudice. Fortunato Aff't, at ¶12; *Alali I* Rule 56.1 Statement (Ex. C), at ¶13.

47.     On or about December 5, 2004, a civilian complaint (#91/04) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶13; *Alali I* Rule 56.1 Statement (Ex. C), at ¶14.

48.     On or about January 19, 2005, a civilian complaint (#6/05) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶14; *Alali I* Rule 56.1 Statement (Ex. C), at ¶15.

49.     On or about January 28, 2005, a civilian complaint (#12/05) was brought against Alali in connection with a traffic stop, alleging that Alali issued unnecessary summonses in order to harass the complainant. Fortunato Aff't, at ¶15; *Alali I* Rule 56.1 Statement (Ex. C), at ¶16.

50.      On or about April 14, 2005, a civilian complaint (#28/05) was brought against Alali in connection with a traffic stop, alleging that Alali had no valid basis to issue the summons. Fortunato Aff't, at ¶16; *Alali I* Rule 56.1 Statement (Ex. C), at ¶17.

51.      On or about August 4, 2005, a civilian complaint (#58/05) was brought against Alali in connection with a traffic stop, alleging that Alali looked at the complainant, a female, in an inappropriately suggestive way. Fortunato Aff't, at ¶17; *Alali I* Rule 56.1 Statement (Ex. C), at ¶18.

52.      On or about December 27, 2005, a civilian complaint (#95/05) was brought against Alali, alleging that Alali was driving his police car in a reckless and unsafe manner, after which Alali followed the complainant and argued with him. Fortunato Aff't, at ¶18; *Alali I* Rule 56.1 Statement (Ex. C), at ¶19.

53.      On or about January 12, 2006, a civilian complaint (#4/06) was brought against Alali, alleging that Alali used excessive force in an incident involving students at the New Rochelle Public High School. Fortunato Aff't, at ¶19; *Alali I* Rule 56.1 Statement (Ex. C), at ¶20.

54.      On or about March 3, 2006, a civilian complaint (#14/06) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶20 *Alali I* Rule 56.1 Statement (Ex. C), at ¶21.

55.      On or about March 19, 2006, a civilian complaint (#21/06) was brought against Alali, alleging that Alali yelled at the complainant (for parking on the wrong side of the road) and then sped away in his police car in a reckless and unsafe manner. Fortunato Aff't, at ¶21; *Alali I* Rule 56.1 Statement (Ex. C), at ¶22.

56.      On or about May 6, 2006, a civilian complaint (#31/06) was brought against Alali

in connection with a traffic stop, alleging that Alali issued numerous and unnecessary summonses. Fortunato Aff't, at ¶22; *Alali I* Rule 56.1 Statement (Ex. C), at ¶23.

57.     On or about July 21, 2006, a civilian complaint (#51/06) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶23; *Alali I* Rule 56.1 Statement (Ex. C), at ¶24.

58.     On or about August 11, 2006, a civilian complaint (#59/06) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶24; *Alali I* Rule 56.1 Statement (Ex. C), at ¶25.

59.     On or about September 13, 2006, a civilian complaint (#64/06) was brought against Alali by the same complainant who filed the August 11, 2006 complaint, alleging that Alali improperly placed him under arrest because of prior incidents. Fortunato Aff't, at ¶25; *Alali I* Rule 56.1 Statement (Ex. C), at ¶26; Affidavit of Lieutenant Gary Robinson, sworn to May 27, 2008 ("Robinson Aff't"), at ¶3.

60.     The complainant who filed civilian complaints against Alali on August 11 and September 13, 2006 was Edwin Veras, a Federal Express driver. Robinson Aff't, at ¶3.

61.     Alali had had a prior dispute with Veras concerning a package delivered to Alali's home. *Alali I* Dep. (Ex. B), at 65:21-66:17.

62.     In his September 13, 2006 civilian complaint, Veras alleged that the day before (September 12, 2006), Alali had arrested him while making deliveries on his regular route in New Rochelle in retaliation for Veras's filing the civilian complaints against Alali. Robinson Aff't, at ¶4.

63.     Alali was given restrictive duty as a result of Veras's complaint and the internal investigation that followed. *Alali I* Dep. (Ex. B), at 61:16-62:15; 89:9-90:5.

64.    The criminal charges against Veras for his arrest on September 12, 2006 were withdrawn by the District Attorney, and in December 2007, Veras filed a civil action in this Court against the City and Police Officer Alali. Docket No. 07 Civ. 11172. Veras alleged in his complaint that Alali abused his authority, used excessive force and subjected Veras to a false arrest in retaliation for Veras having filed civilian complaints against Alali.

65.    The City reached a monetary settlement of Veras's claims, subject to the approval of the New Rochelle City Council. Loomba Decl. at ¶45.

66.    In or about mid-February 2007, Alali resumed regular duties as a patrol officer. Robinson Aff't, at ¶6.

67.    On or about February 27, 2007, a civilian complaint (#6/07) was brought against Alali in connection with a traffic stop, alleging that Alali issued a summons only because of a dispute between Alali and the complainant about work certain construction/renovation work the complainant had performed on an apartment owned by Alali. Fortunato Aff't, at ¶26 *Alali I* Rule 56.1 Statement (Ex. C), at ¶27.

68.    As a result of the foregoing civilian complaints, the Department has, at various times during Alali's employment, taken various remedial measures including, sending Alali for retraining, counseling Alali to use courtesy and discretion in dealing with the public, and assigning Alali for Verbal Judo training. Fortunato Aff't, at ¶27; *Alali I* Rule 56.1 Statement (Ex. C), at ¶28.

69.    Verbal Judo is a tactical communications technique in which police officers are trained to use "presence and words" to calm difficult people who may be under severe emotional or other influences, redirect the behavior of hostile people, diffuse potentially dangerous situations, perform professionally under all conditions and achieve the desired outcome of an

- 11 -

encounter. Fortunato Aff't, at ¶28; *Alali I* Rule 56.1 Statement (Ex. C), at ¶29.

70.     The civilian complaints listed above were set forth in the Rule 56.1 Statement

submitted by defendants in *Alali I* in support of their motion for summary judgment. *Alali I* Rule

56.1 Statement (Ex. C), at ¶¶5-29. Alali did not file a counter Rule 56.1 Statement in opposition

to the motion for summary judgment submitted in *Alali I.*

71.     Two additional civilian complaints were filed against Alali that were not

mentioned in defendants' qualified immunity motion in *Alali I.* On or about July 31, 2007, Alali

received a civilian complaint (#17/07), alleging that he was rude and discourteous to a motorist

during a traffic stop. On or about August 3, 2007, Alali received another civilian complaint

(#18/07), again alleging that Alali was rude and discourteous to a motorist during a traffic stop.

Robinson Aff't, at ¶9.

**72.**     Alali admitted in his *Alali I* deposition that he received civilian complaints while

employed as an officer with the NRPD. *Alali I* Dep. (Ex. B), at 198:12-199:5.

**Command Discipline and Disciplinary Hearings Against Alali**

A.     Command Discipline

73.     On or about September 20, 2002, Alali accepted command discipline (a letter of

reprimand) for an incident occurring on August 1, 2002, in which Alali was involved in a motor

vehicle accident while driving his police car the wrong way on a one-way street, thereby

violating Section 8.2 of the NRPD Rules and Regulations ("R&R"). *See Alali I* Dep. (Ex. B), at

209:9-212:5. A copy of the NRPD Command Discipline Report is annexed as **Exhibit N**.

74.     Section 8.2 of the NRPD Rules and Regulations provides:

> Members of the Department will operate department vehicles in a
> careful and prudent manner in accordance with all Vehicle and
> Traffic laws and department procedures. Members of the
> Department will, at all times, give the highest priority to the safety

and welfare of the general public when operating a department
vehicle and will operate all vehicles in such a manner as to avoid
injuries to persons or damage to property.

**Exhibit O.**

75.    On or about December 26, 2002, Alali accepted command discipline (a letter of

reprimand) for an incident occurring on October 29, 2002, in which Alali was charged with

leaving his assigned post without a justified cause, thereby violating R&R Section 1.5. *See Alali*

*I* Dep. (Ex. B), at 204:12-205:10.  A copy of the NRPD Command Discipline Report is annexed

as **Exhibit P.**

76.    Section 1.5 of the NRPD Rules & Regulations provides, in relevant part:

"Members of the Department assigned to motorized patrol, foot patrol, or a fixed post will not

leave their designated area of patrol for any reason other than police necessity, personal necessity

or meal period." **Exhibit Q.**

77.    On or about January 13, 2003, Alali accepted command discipline (loss of one (1)

leave day) for an incident occurring on December 23, 2002, in which Alali failed to respond

when a superior officer repeatedly tried to contact Alali over the police radio, thereby violating

R&R Section 1.9.  In this same incident, Alali was found to have turned out for duty without

bringing his uniform hat after he had been reminded by a supervisor to do so at the start of the

tour. *See Alali I* Dep. (Ex. B), at 208:3-209:8.  A copy of the NRPD Command Discipline

Report is annexed as **Exhibit R.**

78.    Section 1.9 of the NRPD Rules & Regulations provides:  "Members of the

Department are responsible for properly and promptly answering the radio." **Exhibit S.**

79.    On or about March 10, 2005, Alali accepted command discipline (a letter of

reprimand) for an incident occurring on January 19, 2005, in which Alali violated Section 3.5 of

Article 2.03 of the NRPD Manual of Procedure by being discourteous and unprofessional to a motorist during a traffic stop. *See Alali I Dep.* (Ex. B), at 212:6-24. A copy of the NRPD Command Discipline Report is annexed as **Exhibit T**.

80.    Article 2.03, Section 3.5 of the NRPD Manual of Procedure provides:

> An officer will be courteous and professional in his conversation with the violator. He will not scold or lecture the violator. Verbal Judo will be employed by the officer. The objective of traffic enforcement is to improve the driving performance of the motoring public. The focus of the stop should be the offense committed by the violator. Conduct on the officer's part that is less than professional suggests that the offense committed was not against the Vehicle and Traffic Law but was a personal affront to the officer and, as such, may lead the violator to feel that he is a victim and not an offender.

**Exhibit U**.

81.    On or about June 29, 2005, Alali accepted command discipline (loss of two (2) leave days) for an incident occurring on April 14, 2005, in which Alali left his assigned sector and parked his police car illegally in front of a Dunkin Donuts shop, even though Alali was not responding to an emergency call for service, thereby violating R&R Sections 1.5 and 2.3. *See Alali I Dep.* (Ex. B), at 217:9-208:23. A copy of the Command Discipline Report is annexed as **Exhibit V**.

82.    Section 1.5 is set forth above. Section 2.3 of the Rules and Regulations provides:

> Members of the Department shall obey all laws of the United States, the State of New York and the City of New Rochelle. A violation of any law will be considered a departmental disciplinary offense as well as an illegal act subjecting the violator to criminal penalties.

**Exhibit W**.

83.    On or about August 29, 2006, Alali declined proffered command discipline of the loss of one (1) leave day in connection with an incident occurring on June 15, 2006, in which

2004535.1

Alali proceeded at high speed through a red light at a major intersection without slowing down and drove up onto a sidewalk in a busy commercial area in responding to an incident, even though the road supervisor had advised that the situation was under control and that anyone not already on the scene should disregard the call and resume patrol. *See Alali I* Dep. (Ex. B), at 224:4-228:5. A copy of the NRPD Command Discipline Report is annexed as **Exhibit X**.

B.    Disciplinary Charges and Hearings

84.    As of August 29, 2006, when he declined to accept command discipline in connection with the June 15, 2006 incident, Officer Alali understood that, as a consequence of declining command discipline, the NRPD would prefer formal disciplinary charges against him. *Alali I* Rule 56.1 Statement (Ex. C), at ¶41; Ex. X.

85.    Within a few days after August 29, 2006, the assistance of outside counsel was sought to prepare disciplinary charges against Alali. A copy of the disciplinary charges, dated February 15, 2007, is annexed as **Exhibit Y**.

86.    In addition to the charge that Alali operated his police vehicle in a reckless fashion, an additional charge was added alleging that Alali had left his designated area of patrol on at least 34 separate occasions between June and September 2006. Ex. Y, at Charge III.

87.    The conduct addressed by the reckless driving charge was captured by Alali's police vehicle's in-car digital audio and video recording system. A copy of the audio and video captured from Alali's police vehicle on June 15, 2006 is annexed as **Exhibit Z**. Throughout the incident, Alali had the volume on his AM/FM radio at a high level. *Id.*[2]

88.    A copy of Article 2.11 of the NRPD Manual of Procedure, which sets forth the rules relating to in-car videos, is annexed as **Exhibit AA**.

---

[2] The DVD (audio and video) should play on Windows Media Player.

2004535.1

89.     The hearing on the disciplinary charges preferred in February 2007 was conducted in New Rochelle, New York, on May 31, 2007, October 17, 2007, October 26, 2007, November 12, 2007 and November 30, 2007.  Robinson Aff't, at ¶12.

90.     On September 11, 2007, while the proceedings on the first set of disciplinary charges were still pending, Captain Gazzola preferred a second set of disciplinary charges against Alali.  The first charge in the second set of charges was for misconduct in connection with Alali's alleged failure to properly maintain and make required entries in his department-issued memo book on various dates in May 2007.  Charge 2 was for misconduct in connection with Alali's alleged failure to stay within his designated area of patrol on July 4, 2007.  Charge 3 was for misconduct in connection for Alali's alleged failure to properly and promptly answer the police radio while on duty on July 4, 2007.  Charge 4 was for misconduct in connection with Alali's alleged failure to make proper entries in his memo book on July 4, 2007.  Charge 5 was for Alali's alleged failure to remain at home while he was out on sick leave on August 14, 2007. A copy of the charges and specifications, dated September 11, 2007, is annexed as **Exhibit BB**.

91.     On March 29, 2008, the hearing officer, Janet McEneaney, Esq., issued a hearing report recommending that Alali be found guilty of Charges I, III, IV and V (Charge II was withdrawn), and that the appropriate penalty would be 30 days suspension without pay.  A copy of the hearing officer's report is annexed as **Exhibit CC**

92.     The hearing on the second set of disciplinary charges commenced on April 3, 2008 .  The hearing has not yet concluded.  Robinson Aff't, at ¶15.

93.     On or about May 5, 2008, Commissioner Carroll adopted the recommendations of the hearing officer and formally suspended Alali 30 days without pay.  Robinson Aff't, at ¶16.

2004535.1

### Performance Evaluations

94.     Alali testified at his *Alali I* deposition that he could not recall his performance evaluations for 2002, 2003 and 2004, except that they were not below standard. *Alali I* Dep. at 70:14-71:3.

95.     Due to injury, Alali was not working from July 28, 2003 until September 23, 2004, when he returned for light duty.  He was assigned to full duty on October 1, 2004. *Alali I* Rule 56.1 Statement (Ex. C), at ¶44.

96.     Alali was thereafter evaluated for the period November 26 to December 31, 2004. A copy of the performance evaluation is annexed as **Exhibit DD**.  He received a "meets standard" evaluation for that period. *Id.*

97.     The 2004 evaluation states that Alali needed to improve on certain areas, including:  (i) advising Central when he makes a vehicle stop; and (ii) improving his demeanor and being more courteous when communicating with the public, as manifested by civilian complaints lodged against him.  Ex. DD.

98.     Section 3.5 of Article 2.03 of the NRPD Manual of Procedure states that "[w]henever an officer makes a vehicle stop, he will notify the police dispatcher . . . prior to exiting the police vehicle."  Ex. U.

99.     On or about August 31, 2005, the NRPD assigned Alali's evaluating supervisor, Sgt. Edward Austin, to ride along with Alali to review his performance. *Alali I* Rule 56.1 Statement (Ex. C), at ¶48.

100.     On the basis of his ride-along review, Sgt. Austin prepared a "letter of counsel," dated September 29, 2005, addressed to Alali. *Alali I* Dep. (Ex. B), at 197:10-21.  A copy of the letter is annexed as **Exhibit EE**.

101.    The letter of counsel praised Alali for the number of traffic summonses and parking tickets that he issued. Ex. EE. The letter also raised certain problem areas, including Alali's: (i) failure to provide headquarters with prior notification of traffic stops; (ii) failure to use "verbal judo"; (iii) failure to have certain forms on hand; (iv) relatively insubstantial enforcement of City Code violations; (v) inability to diffuse confrontations with the public when his authority is challenged; (vi) concentration on main roads within his assigned sector, at the expense of patrolling side streets; and (vii) failure to use discretion, among others. *Id.*

102.    The letter of counsel states that Alali is "expected to be a more rounded officer addressing [] needs of the community other than just [traffic] enforcement." Ex. EE, at p.2. The letter then provides a specific list of expectations, with citations to relevant provisions of the NRPD Rules & Regulations and Manual of Procedure:

1.    Traffic stops are to follow Department Rule regarding calling out stops, use of verbal judo, and other procedures;

2.    Required equipment will be carried, for example, all necessary summonses, required uniform equipment and reports and forms needed for patrol. Ensuring vehicle is properly stocked;

3.    Patrol and be familiar with all streets of assigned areas as well as primary roads;

4.    Use discretion in dealing with the public when issuing summonses or making a[n] arrest;

5.    Maintain composure in situations where your authority is challenged or discourteous[ness] is directed at you but no other reason for action is present;

6.    Enforce violations of the City Code when appropriate;

7.    Follow search and seizure laws and Department policy regarding same;

8.    Follow proper use of 10 codes including calling out on scene and calling clear from scene; [and]

9.    Obey and comply with any lawful order given by a superior officer.

2004535.1

Ex. EE.

103.    On or about November 9, 2005, Captain Gazzola, Sgt. Austin and Lt. Schulman, met with Alali to discuss the letter of counsel. *Alali I* Rule 56.1 Statement (Ex. C), at ¶52.

104.    In the November 9, 2005 meeting, Alali was advised that his failure to conform with the specific expectations outlined in the letter of counsel could lead to a "below standard" evaluation. *Alali I* Rule 56.1 Statement (Ex. C), at ¶53.

105.    On or about January 27, 2006, Alali received a below-standard performance evaluation for the previous year (2005). *Alali I* Dep. (Ex. B), at 192:16-24.  A copy of the performance evaluation is annexed as **Exhibit FF**.

106.    One of the stated reasons for Alali's below-standard performance evaluation for the year 2005 was that he received more civilian complaints during 2005 than any other officer. Ex. FF.

107.    On or about June 1, 2006, Alali received an interim performance evaluation for the period January 1 through May 31, 2006.  Alali's interim 2006 evaluation was also below standard.  A copy of the evaluation is annexed as **Exhibit GG**.

108.    The interim 2006 evaluation notes that Alali: (i) needs to improve his communication skills; (ii) had already received four civilian complaints during the 6-month rating period; (iii) needlessly escalates tensions in many traffic stops by issuing a "seemingly punitive number of summonses"; and (iv) demonstrates a lack of discretion.  Ex. GG.

109.    On or about February 2, 2007, Alali received his performance evaluation for the 12-month period January 1 through December 31, 2006.  He was rated below standard.  A copy of the evaluation is annexed as **Exhibit HH**.

110.    The full evaluation for 2006 again noted Alali's problem with communicating

2004535.1

with the public on traffic stops, which led to a large number of civilian complaints. Ex. HH.

111.    The full 2006 evaluation also noted Alali's inability to stay within his assigned post, and an incident in which Alali drove recklessly in responding to a call, even though all officers were advised that the situation was under control and to disregard the call. Ex. HH.[3] The evaluation further states that "[c]ivilian complaints and department discipline were negative issues last year [2005] and there has not been a discernible improvement over this rating period." *Id.*

112.    On or about June 21, 2007, Alali received an interim performance evaluation for the period January 1 through May 31, 2007, necessitated by his below-standard evaluation for the year 2006. Alali's interim 2007 evaluation was also below standard. A copy of the evaluation is annexed as **Exhibit II**.

113.    By memorandum dated July 25, 2007, Captain Gazzola amended the 2007 interim evaluation to "meets standard." A copy of the memorandum is annexed as **Exhibit JJ**.

114.    Alali admitted that, under Section 13.1 of the NRPD Administrative Manual, a New Rochelle police officer's performance is evaluated on the basis of both qualitative and quantitative factors. *See* Alali *I* Dep (Ex. B). at 240:7-25.

115.    A copy of Section 13.1 of the NRPD Administrative Manual is annexed as **Exhibit KK**.

### The NRPD Tuition Reimbursement Plan

116.    Article X, Section 11 of the agreement between the City of New Rochelle and the New Rochelle Police Association ("PBA") contains a tuition reimbursement plan. *Alali I* Rule 56.1 Statement (Ex. C), at ¶77. A copy of the Agreement between the City and the PBA is

---

[3] This incident became the central underlying incident addressed in the Reckless Driving Charges discussed above. *See also* the CD Rom annexed as Exhibit Z.

2004535.1

annexed as **Exhibit LL**.

117.    Under the tuition reimbursement plan, officers are entitled to reimbursement for college-level course work credited towards an undergraduate or graduate degree in Criminal Justice or Public Administration. *Alali I* Rule 56.1 Statement (Ex. C), at ¶78; Ex. LL, at §11(B).

118.    To be eligible for reimbursement, course work must be approved in advance by the Police Commissioner, successfully completed, and the officer must submit proof of course cost, content and grade received. *Alali I* Rule 56.1 Statement (Ex. C), at ¶79; Ex. LL, at §§ 11(B), 11(D), and 11(E).

119.    Section 11(G) of the tuition reimbursement plan states, in relevant part: the "total amount of City tuition reimbursement that may be approved for the unit membership as a whole shall not exceed $30,000 for 2005 and $40,000 per year effective 2006." *Alali I* Rule 56.1 Statement (Ex. C), at ¶80; Ex. LL, at ¶11(G).

120.    On November 11, 2005, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the winter trimester (2005) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit MM**.

121.    On February 23, 2006, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the spring trimester (2006) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit NN.**

122.    On August 13, 2006, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the fall trimester (2006) at Iona College. A copy of the

memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit OO.**

123.    On November 20, 2006, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the winter trimester (2006) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit PP.**

124.    On February 15, 2007, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the spring trimester (2007) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit QQ.**

125.    On August 8, 2007, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the fall trimester (2007) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit RR.**

126.    Alali admitted in his *Alali II* deposition that, under the tuition reimbursement program, an officer is only entitled to reimbursement for a class successfully completed, that reimbursement would not be made until after the class was finished, and that reimbursement might be for only part of the tuition fee. Dep. (Ex. J) Part I, at 144:6-145:6.

127.    Alali further admitted in his *Alali II* deposition that he did not know whether amounts that Iona College claimed were due from Alali represented portions that the Department was supposed to pay under its tuition reimbursement program, or amounts that Alali was individually obligated to pay. Dep. (Ex. J) Part I, at 151:24-152:15.

2004535.1

128.    Alali further admitted that he did not personally make any payments to Iona College for tuition for the years 2005, 2006 and 2008, and regarding 2007, stated "I do not believe so." Dep. (Ex. J) Part I, at 17:4-24.


Dated: White Plains, New York
        May 29, 2008


                                WILSON, ELSER, MOSKOWITZ,
                                EDELMAN & DICKER LLP
                                Attorneys for Defendants


                                By:  Lalit K. Loomba (LL-9755)

                                3 Gannett Drive
                                White Plains, NY  10604
                                (914) 323-7000
                                File No. 07367.00059

2004535.1