UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ARAZ ALALI,

                          Plaintiff,

                                                            07 Cv. 1296 (CLB)

              - against -

                                                            *Memorandum and Order*

ROBERT GAZZOLA, PATRICK J. CARROLL,
Individually, CITY OF NEW ROCHELLE,
NEW YORK,

                          Defendants.
------------------------------------------------------------x
Brieant, J.

        Before the Court in this action alleging employment retaliation and discrimination on the

basis of ethnicity and national origin, is a motion for summary judgment based on qualified

immunity. The motion was filed on August 8, 2007 (Doc. 9). Opposition papers were filed on

November 19, 2007 (Doc. 16). Reply papers were filed on December 3, 2007 (Doc. 18). The

motion was heard and fully submitted for decision on December 7, 2007.


*Background*

        The following facts are presumed true for the purposes of this motion only. Araz Alali

(the "Plaintiff") was, at all relevant times, employed as a Police Officer by the City of New

Rochelle (the "City"). At all relevant times the City employed Robert Gazzola, as Police

Captain and Patrick J. Carroll as Police Commissioner (collectively the "Defendants"). This is

one of two related cases filed by Plaintiff against these Defendants, alleging violations of

Plaintiff's rights as guaranteed by 42 U.S.C. § 2000e et seq (Title VII), 42 U.S.C. §§ 1981 and

1983, and N.Y. Exec Law § 296.

Plaintiff is of Iraqi national origin and claims that he is the only Police Officer of Middle Eastern descent who has ever been employed by the City of New Rochelle. Plaintiff alleges that he has been continually subjected to discriminatory and disparate treatment on account of his national origin, ethnicity and color. Plaintiff claims that the Individual Defendants acted with knowledge of and encouraged such treatment. Specifically, Plaintiff contends that he was repeatedly addressed using derogatory names including: "terrorist", "Ali Baba", "Camel Jockey", and "Ali", and that Defendants were aware of and encouraged such name calling. Additionally, Plaintiff contends that he was repeatedly denied any meaningful specialized training, which Plaintiff alleges was provided to other junior officers; forced to attend a seminar called "Tools for Tolerance Post 911" for the purpose of humiliating Plaintiff; purposely given false "below standard" job performance evaluations calculated to bar Plaintiff from working overtime; assigned to police posts in order to degrade Plaintiff; and subjected to "investigations" based on false accusations of wrongdoings. Plaintiff further alleges that Defendants agreed to retaliate against Plaintiff by filing frivolous disciplinary charges, after Defendants learned that Plaintiff filed an EEOC charge.

Plaintiff asserts that Defendants Carroll and Gazzolla had knowledge that Plaintiff was being called derogatory names and encouraged such conduct solely by reason of the Defendants' status, as Police Commission and Captain, respectfully. Additionally, Plaintiff maintains that Defendants' either engaged in or were aware of and encouraged the additional conduct alleged.

Plaintiff joined the New Rochelle Police Department on February 10, 2002. Between

that date and July 28, 2003, six civilian complaints were filed against him, most alleging that

Plaintiff was rude and discourteous during traffic stops.   As a result, Plaintiff was sent for

training in Verbal Judo, a tactical communications program designed to de-escalate tensions

during police-citizen encounters.  During this period, Plaintiff also received command discipline

letters; one  on October 29, 2002 for leaving his post and another on December 23, 2002 for

failing to respond to a supervisor over the police radio.

On July 28, 2003, Plaintiff was injured and did not return to active duty until October 1,

2004.   From October 1, 2004 until the end of that year, Plaintiff received two civilian

complaints for being rude and discourteous, and his job performance evaluation made note of

these complaints.

For the time period spanning January 1, 2005 through December 31, 2005, Plaintiff

received five civilian complaints and two command discipline letters, one for being rude to a

motorist and the other for illegally parking his car in front of a donut shop. During this year, a

supervisor was assigned to ride with Plaintiff to observe his performance and provide training.

Defendants maintain that Defendant Gazzola told Plaintiff that his performance may lead to a

"below standard" job evaluation.  Plaintiff received a "below standard" job evaluation for the

2005 year, and the evaluation stated that Plaintiff received more civilian complaints during the

evaluation period than any other officer.

From January 1, 2006 through May 31, 2006, Plaintiff received four civilian complaints

3

and a "below standard" evaluation for the same six-month period. During June 1, 2006 through December 31, 2006, Plaintiff received three additional civilian complaints and a command discipline for an incident in which, while responding to a call for officer assistance, Plaintiff, without slowing down, drove his police vehicle through a red light and onto a busy sidewalk. Plaintiff did so after the call had been rescinded and those officers not already present were ordered to disregard the call. Shortly thereafter, the New Rochelle Police Department sought the assistance of outside counsel to prepare formal disciplinary charges against Plaintiff. According to the exhibits presented to the Court, the charges were signed on February 15, 2007. Plaintiff filed this complaint in the instant action on February 21, 2007.

*Summary Judgment Standard*

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "The party against whom summary judgment is sought, however, 'must do more than simply show that there is some metaphysical doubt as to the material facts.... The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see* Fed. R. Civ. Pro. § 56(e) ("adverse party may not

rest upon the mere allegations or denials of his pleading, but his response...must set forth specific

facts showing that there is a genuine issue for trial").

In opposition to Defendants' motion for summary judgment, Plaintiff submits only an

attorney affirmation stating that Plaintiff believes the motion is premature because, although

Plaintiff was deposed, reasonable discovery has not been conducted, including depositions of the

Individual Defendants. This argument is of no avail, since the Court's resolution of the motion

assumes the truthfulness of the Plaintiff's deposition testimony, except to the extent, if any, of

facial absurdity. *See Poggioli v. Murphy*, 06 Civ. 12893 (CLB) (July 26, 2007).

*Commission Carroll and Captain Gazzola*

*Absolute Immunity*

The doctrine of absolute immunity is meant to "protect officials from personal liability

for the performance of certain discretionary acts." *Spear v. Town of West Hartford*, 954 F.2d 63,

66 (2d Cir. 1992). Absolute immunity protects officials from personal liability for the initiation

of administrative proceedings. However, a different situation arises when the official acts "as a

supervisor of public employees." *Dobosz v. Walsh*, 892 F.2d 1135, 1139 (2d Cir. 1989).

Plaintiff claims that Defendants Carroll and Gazzola violated Plaintiff's rights as

guaranteed under 42 U.S.C. § 1983 by engaging in selective prosecution and retaliation by filing

disciplinary charges against Plaintiff. The evidence produced establishes that, during his

5

employment as a New Rochelle Police Officer, Plaintiff had many civilian complaints filed against him.  Additionally, the evidence produced shows that Plaintiff engaged in multiple acts of misconduct in violation of the New Rochelle Police Department Manual of Procedure.

"The decision to initiate administrative proceedings against an individual...is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An [] official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought." *Butz v. Economou*, 438 U.S. 478, 515 (1978). "The doctrine of absolute immunity exists, among other reasons, to permit high-ranking officials to be able to carry-out their official duties without fear of suit." *See Algarin v. Town of Wallkill*, 421 F.3d 137 (2d Cir. 2005) (affirming *Algarin v. Town of Wallkill*, 313 F. Supp. 2d 257, 262 (S.D.N.Y. 2004). Defendants are specifically empowered to administer the affairs of the police department and had the obligation "to investigate [the] cascade of complaints" surrounding Plaintiff "and prepare a report chronicling [the] findings." *Id*. Such findings are a matter of "tremendous public importance." *Id*. Thus, Defendants' decision to initiate disciplinary proceedings against Plaintiff based on multiple acts of misconduct is entitled absolute immunity. For this reason, the claims of selective prosecution and retaliation against the Individual Defendants are dismissed insofar as the claims are predicated on the preferment of disciplinary charges.

*Qualified Immunity*

A public official is entitled to qualified immunity for acts undertaken in his or her official capacity, unless those acts violated clearly established constitutional rights of which an objectively reasonable official would have known. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003). The analysis is three-part. First, the Court must decide whether the plaintiff has alleged a violation of a Constitutional right. Second, the right must have been well established at the time of the violation. Even assuming that a violation of a clearly established Constitutional right is proved, the official is still entitled to qualified immunity if the official acted objectively reasonable. *See id.* at 212. Taking Plaintiff's version of the facts as true, if a reasonable official would have believed that he or she was not violating Plaintiff's constitutional rights, the Court should find qualified immunity. *See Bizzaro v. Miranda*, 2005 U.S. App. LEXIS 258, *10 (2d Cir. 2005).

### *Section 1981 Claims*

Our Court of Appeals has held that, "[t]o establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Claims brought under N.Y. Executive Law § 296 are analyzed pursuant to the same criteria. *DuBois v. Brookdale University Hosp. and Medical Center*, 29 A.D.3d 731, (2d Dep't. 2006).

7

A plaintiff seeking to hold an individual personally liable under Section 1981 must demonstrate that the defendant was personally involved in the discrimination. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). Plaintiff has failed to make a sufficient showing of personal involvement necessary to support a claim of individual liability against either Defendant.

Plaintiff asserts that he was called various derogatory names by members of the Police Department. However, in his complaint, Plaintiff states that Defendants did not call him these names but only that they had knowledge of this practice and encouraged it. Plaintiff presents no evidence proving this accusation. Plaintiff claims that, due to their supervisory positions Defendants possessed knowledge of the name calling. Simply being in a supervisory position does not establish knowledge of or personal involvement in the alleged discriminatory behavior, and will not be sufficient to establish liability against a person so situated. *See Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 127 (2d Cir. 2004).

Plaintiff mentions in his deposition, but does not allege in his complaint, that Captain Gazzola did call him a "terrorist" one time. However, Plaintiff could not recall any additional facts about the incident, including when the event occurred. Although completely inappropriate, this incident does not rise to the level of violating § 1981. *See Payami v. City of New York*, 2007 U.S. Dist. LEXIS 25851 (S.D.N.Y. Mar. 28, 2007) (Court granted summary judgment on a §1981 claim brought by police officer of Iranian descent who was called "terrorist," "bin laden," etc.).

8

Plaintiff claims that he was denied specialized training, where other officers were provided with the same. Plaintiff has failed to show that either Defendant was personally involved in any decision to deny Plaintiff specialized training. Additionally, Plaintiff has not shown what specialized training he was denied. The Court finds that this claim is insufficient to allege a violation of Plaintiff's constitutional rights.

Plaintiff claims that he was required to attend a seminar, "Tools for Tolerance", in order to embarrass and humiliate him. The seminar addressed racial tolerance post-911. In addition to Plaintiff, eighteen other officers were required to, and did, attend the seminar. The Court is hard pressed to find that requiring Plaintiff to attend such a seminar violated any federal law, especially in light of the number of civilian complaints filed against Plaintiff on the basis of rude and discourteous behavior.

Plaintiff alleges that he was systematically given "below standard" job evaluations. However, Plaintiff does not allege that Commissioner Carroll was involved in the evaluation process. Plaintiff asserts that Captain Gazzolla was involved with the evaluations. Plaintiff makes much of the fact that he issued more tickets and had more arrests than any other officer in the department, however, as the NRPD Manual states, many other factors, including attitude, judgment, written reports, sensitivity, demeanor, oral communication, adaptability and problem solving, are all taken into account when rating an officer's performance. The Court finds that the determinations of "below standard" were reasonable in light of complaints and command discipline letters received during each relevant time period.

9

Plaintiff also claims that he was assigned to work as dispatcher for a length of time, during which he was forbidden to operate a police vehicle or interact with public. Both Individual Defendants told Plaintiff that the reason for such assignment was due to pending internal investigations of civilian complaints. The Court finds that such an assignment in light of a pending internal affairs investigation does not violated any established law.

Plaintiff also maintains that he was assigned to walking posts as well as being assigned to issue parking tickets on a particular street in order to degrade and humiliate him. However, Plaintiff's direct supervisors assigned him to this post. Defendants Carroll and Gazzola had no involvement with the alleged assignments. Although, after assigned to issue parking tickets, Plaintiff maintains that he discussed the assignment with Commissioner Carroll, this does not amount to involvement or participation on behalf of the Commissioner. Additionally, it has been shown that eliminating double parking on the street that Plaintiff was assigned would reduce traffic congestion and thus serve a valid function. Moreover, an employee's personal perception that a particular job is degrading or humiliating is not sufficient to establish a discrimination claim. *See Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). The Court finds that, to the extent either of the Individual Defendants were involved, such assignments do not violate any federal law or right.

Lastly, Plaintiff claims that he was subjected to false "investigations" by Captain Gazzola. However, all the investigations were prompted by civilian complaints or command disciplines. Each "investigation" was based on at least some credible evidence of Plaintiff's

10

violation of the NRPD Rules and Regulations, such as, straying from an assigned post and failing to use a required in-car camera. These investigations do not show a violation of a clearly established Constitutional right, and even assuming that such violation were proved, Capital Gazzola's actions were reasonable under the circumstances. The Police Commissioner and Captain have the authority, and the duty, to conduct such inquires when an officer receives civilian complaints and internal command disciplines for violations of the Police Manual.

For the reasons stated, the Court dismisses the claims against the Individual Defendants, Commissioner Carroll and Captain Gazzola, brought under 42 U.S.C. § 1981 and N.Y. Executive Law § 296.

*Section 1983 Claims*

In order to establish a violation of Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment, Plaintiff must show that (1) he was treated differently from other similarly situated individuals and (2) such differential treatment was based upon impermissible considerations, such as national origin. *See Skehan v. Village of Mamaroneck*, 465 F.3d 96, 110 (2d Cir. 2006). In addition, Plaintiff must prove each Individual Defendants' personal involvement in the alleged wrong. "An individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority,' but can be held liable if he was personally involved in the alleged deprivation." *See Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 127 (2d Cir. 2004) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).

11

Plaintiff's complaint fails to allege the Individual Defendants' personal involvement under any potential ground. As previously addressed, the assertion that Commission Carroll and Captain Gazzola were aware of the name calling due to their employment status, and due to receiving Plaintiff's complaint, are not sufficient grounds to allege personal involvement. Moreover, to establish a hostile work environment claim, Plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The name calling that Plaintiff alleges, although highly inappropriate, does not rise to such a level. *See Payami v. City of New York*, 2007 U.S. Dist. Lexis 25851 (2007). Nothing in the record indicates that this conduct altered the terms of Plaintiff's employment.

Nor has Plaintiff established a claim of disparate treatment under the Fourteenth Amendment. To establish such a claim, Plaintiff must show that he was treated differently from others similarly situated and that such "selective treatment was based on impermissible considerations," such as nation origin or race. *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005). Plaintiff has failed to show that he was treated differently by either Individual Defendants.

As stated above, Plaintiff has failed to sufficiently establish the Individual Defendants' personal involvement in the alleged conduct.

*City of New Rochelle - Sections 1981 and 1983 claims*

Liability against the City is premised on the liability of the Individual Defendants, pursuant to the *Monell/Pembaur* doctrine. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986). Plaintiff has failed to show that he experienced any injury due to a practice or policy of the City. Additionally, since the claims against the Individual Defendants are dismissed, the claims against the City must be dismissed.

*Title VII*

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color...or national origin." 42 U.S.C. § 2000e-2(a)(1). "Individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000).

Title VII is violated when the workplace is permeated with discriminatory intimidation so severe that the conditions of employment are altered and an abusive working environment is created. *See Harris*, 510 U.S. at 21. "[M]ere utterance of an ...epithet which engenders offensive feelings in an employee," does not sufficiently affect the conditions of employment to implicate Title VII. *Id.* The name-calling alleged by Plaintiff does not rise to a level sufficient to create a violation of Title VII. Likewise, Plaintiff has failed to show that the other conduct alleged was taken because of his race, color or national origin.

*Conclusion*

     For the forgoing reasons, the Court dismisses all claims against all Defendants. The Clerk shall file a final Judgment.

     The Clerk of the Court shall terminate all motions pending as of January 31, 2008 as moot and close the case.

SO ORDERED.

Dated: White Plains, New York
      January 31, 2008

                                 _____
                                 Charles L. Brieant, U.S.D.J.

14