UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ARAZ ALALI,

                        Plaintiff,            07 Civ. (   )

      -against-                  **07 CIV. 2916**

ALBERTO DeBARA, individually,
KYLE WILSON, individually,
EDWARD AUSTIN, individually,
GEORGE MARSHALL, individually,      COMPLAINT
HUMBERTO MORRELL, individually,
MATTHEW BRADY, individually,
ANTHONY MURPHY, individually,
ROBERT GAZZOLA, individually,
PATRICK J. CARROLL, individually,
and the CITY OF NEW ROCHELLE,
New York,                                       Jury Trial Demanded

                      Defendants.
---------------------------------------------------------------x

      Plaintiff ARAZ ALALI, by his attorneys Lovett & Gould, LLP, for his complaint respectfully states:

### NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting from retaliatory conduct engaged in by the Defendants jointly and under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by 42 U.S.C. §§1981, 1983, and 2000e *et. seq.*

1

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. Plaintiff's state law claim is interposed in accordance with the Court's supplemental jurisdiction, 28 U.S.C. §1367.

## THE PARTIES

3. Plaintiff ARAZ ALALI is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint he was employed as a Police Officer by the City of New Rochelle, New York, having previously been employed as such by *inter alia* the City of New York. Plaintiff is of Iraqi national origin and as such is the only Police Officer of Middle Eastern descent who has ever been employed by the City of New Rochelle (hereinafter alternatively the "City").

4. Defendant ALBERTO DeBARA (hereinafter "DeBara"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as a police Lieutenant.

5. Defendant KYLE WILSON (hereinafter "Wilson"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as a police Sergeant.

6. Defendant EDWARD AUSTIN (hereinafter "Austin"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as a police Sergeant.

7. Defendant GEORGE MARSHALL (hereinafter "Marshall"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as a police Lieutenant.

8. Defendant HUMBERTO MORRELL (hereinafter "Morrell"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as a police Sergeant.

9. Defendant MATTHEW BRADY (hereinafter "Brady"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as a police Sergeant.

10. Defendant ANTHONY MURPHY (hereinafter "Murphy"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as Deputy Police Commissioner.

11. Defendant ROBERT GAZZOLA (hereinafter "Gazzola"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as a police Captain by the City.

12. Defendant PATRICK J. CARROLL (hereinafter "Carroll"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as Commissioner of Police.

13. Defendant CITY OF NEW ROCHELLE, New York (herein "City), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State of New York.

## THE FACTS

14. On February 12, 2007, Defendant Carroll was notified by fax that Plaintiff had filed a Charge of Discrimination (Charge #: 520-2007-01727) with the United States Equal Opportunity Commission alleging a violation of Title VII, 42 U.S.C. §2000e *et. seq.*

15. In that correspondence Carroll was also cautioned by Plaintiff's counsel:

> "In that connection you should be aware that any retaliation causally the result of that filing is independently actionable in Federal Court for damages. Under the circumstances I strongly suggest that you insure that no such retaliation occurs."

16. On February 15, 2007, Carroll, Murphy and Gazzola while acting in concert, preferred against Plaintiff frivolous, retaliatory disciplinary charges.

17. By reason of the retaliatory disciplinary action, on February 21, 2007, Plaintiff filed an action in this Court [Alali v. Gazzola, 07 Civ. 1296 (CLB)(hereinafter "Alali I")] asserting claims under *inter alia* 42 U.S.C. §§1981, 1983 and 2000e *et. seq.*

18. As a proximate result of Plaintiff's EEOC filing and the filing of Alali I, Defendants entered into a retaliatory plan and in that connection *inter alia*:

   a. At roll call on February 21, 2007, and in the presence of a number of Plaintiff's co-workers, DeBara intentionally assigned Plaintiff to a fixed hospital post (normally a post assigned to either probationary and/or junior officers) to watch a prisoner - - despite the availability of at least four probationary police officers any one of whom should have been given that assignment.

b. When Plaintiff inquired of Wilson as to why he was given the fixed hospital post when any of the four probationary officers should have been so assigned, Wilson responded (in the presence of several civilian members of the Police Department):

> "Get the fuck out of my face now Raz. Not another fucking word, get out of my face".

At the conclusion of Plaintiff's hospital post shift he was relieved at that post by a probationary police officer.

c. Subsequently that day DeBara informed Plaintiff that prospectively he (Plaintiff) would be primarily assigned to a "utility car" - - a degrading assignment usually reserved for probationary officers and/or junior officers - - and in the event that utility car services were not required Plaintiff would be assigned to other such assignments including directing traffic, watching suicidal prisoners, performing civilian dispatch work, and transporting prisoners to the County jail.

d. At roll call on March 7, 2007, in the presence of a number of Plaintiff's co-workers, DeBara assigned Plaintiff to a fixed, foot patrol post in the snow - - to the laughter of Plaintiff's co-workers and despite the availability of a number of probationary police officers who should have been assigned to that post. When Plaintiff inquired of DeBara as to why he, rather than any of the probationary officers was given that degrading assignment, DeBara advised: "because we can, we could put you anywhere Bin Laden".

e. That same date when Plaintiff inquired of Morrell (who was serving as desk officer) as to why he, rather than a probationary police officer was put on that fixed

post, Morrell responded: "because even though you are the most talented police officer you are not above scrutiny and I don't like you, ok, so hurry up and go outside. It's really cold out - - bundle up".

f. On March 8, 2007, Austin and Morrell advised Plaintiff that he was routinely going to be given "undesirable assignments" because he (Plaintiff) was "a below standards officer" - - a descriptive falsely given to Plaintiff by reason of his skin color, national origin and/or ethnicity. In that connection Morrell further advised Plaintiff, in Austin's presence, that Gazzolla and Marshall had both directed him (Morrell) as well as other supervisors to give Plaintiff "bad assignments" by reason of his being rated "below standards".

g. On March 21, 2007, Gazzola advised Plaintiff in writing that he (Gazzola) rejected Plaintiff's then pending challenge to a job performance evaluation as authored by Wilson in which Wilson falsely characterized Plaintiff as "below standards".

h. On March 22, 2007, Gazzola issued to Plaintiff a calculatedly false memorandum describing him (Plaintiff) as "below standard" and advising him that as a result of that status he was: barred from performing overtime work; forbidden to perform special detail assignments; forbidden to engage in tour switches with other officers; and precluded from consideration for any specialized unit assignments.

i. At roll call on April 7, 2007, in the presence of a number of Plaintiff's co-workers Austin deliberately assigned Plaintiff to perform the civilian functions of dispatching police vehicles from the Department's radio room - - despite the availability of four probationary police officers any one of whom should have been given that assignment instead. In that connection first Austin advised Plaintiff:

6

"It looks like you are going backwards like the good old times",

and then Brady added: "you better get a good lunch at 800 [hours] since you won't be able to leave the [radio] room, good luck".

j. On April 8, 2007, Wilson assigned Plaintiff to work with civilian employees of the Department - - despite the availability of four probationary police officers any one of whom should have been given that assignment. When Plaintiff questioned Wilson as to why he rather than a probationary officer was given that degrading assignment, Wilson advised: "You are an Arab and its Easter. Camel jockeys don't celebrate Easter".

19. In furtherance of Defendants' retaliatory plan Murphy, with the agreement, approval and/or condonation of Gazzola and Carroll has intentionally withheld from Plaintiff college tuition reimbursement funds to which he is entitled. As a result Plaintiff is presently in arrears on tuition payments to Iona College in the amount of approximately $17,000.

20. By reason of Defendants' retaliatory conduct Plaintiff has been forced to suffer: pecuniary losses; public humiliation; public embarrassment; public degradation; shame; emotional upset; anxiety; impairment of his right to free speech and to petition government for the redress of grievances; punishment for having filed an EEOC Charge of Discrimination; punishment for having filed Alali I; and has otherwise been rendered sick and sore.

7

### AS AND FOR A FIRST CLAIM AGAINST
### THE CITY OF NEW ROCHELLE

21. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

22. Under the premises the Defendant's conduct violated Plaintiff's rights as guaranteed by Title VII, 42 U.S.C. §2000e et. seq.

### AS AND FOR A SECOND CLAIM
### AGAINST ALL DEFENDANTS

23. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

24. Under the premises Defendants' conduct violated Plaintiff's rights as guaranteed by 42 U.S.C. §§1981, 1983.

### AS AND FOR A THIRD CLAIM
### AGAINST ALL DEFENDANTS

25. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

26. Defendant City's conduct as Plaintiff's employer, and the conduct of the individually named Defendants as aiders and abettors, violated Plaintiff's rights as guaranteed by Section 296 et. seq of the New York State Executive Law.

WHEREFORE a judgment is respectfully demanded:

a. Awarding against the individually named Defendants such compensatory and punitive damages as the jury may determine,

b. Awarding as against the City such compensatory damages as the jury may determine,

c. Granting as against all Defendants an award of reasonable attorney's fees and costs, and,

d. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
April 11, 2007

LOVETT & GOULD, LLP
By: _____
Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401