------------------------------------------------X

in re the Disciplinary Proceedings by

City of New Rochelle,
               Charging Party

      Against

Aziz Alali,
               Charged Party
------------------------------------------------X

HEARING OFFICER'S
FINDINGS OF FACT
AND
RECOMMENDATIONS

APPEARANCES

For the City of New Rochelle
Littler Mendelson PC
By: Bruce R. Millman, Esq.

For the Charged Party
Lovett and Gould PC
By: Jonathan Lovett, Esq.

Witnesses
P.O. Aziz Alali
Lt. James H. Fortunato
Capt. Robert Gazzola
P.O. Edward P. Hayes, PBA President
Sgt. Myron Joseph
Nicandro Massaregli, Police Department System Engineer

      The Charged Party, Aziz Alali, has been employed by the Police Department of the City of New Rochelle as a Police Officer since February 2002. On February 15, 2007, the Department preferred disciplinary charges against Mr. Alali. [Ex. HO 2 and HO 3] Pursuant to Section 75 of the Civil Service Law, I was designated as the Hearing Officer in this case. [Ex. HO 1]

      A hearing in this matter was held in New Rochelle, New York on May 31, 2007; October 17, 2007; October 26, 2007; November 12, 2007; and November 30, 2007. The parties were afforded full opportunity to offer evidence and argument and to present, examine and cross-examine witnesses. The record was closed upon the timely submission of post-hearing briefs. A transcript of 328 pages was made of the hearing.

      The disciplinary charges were amended by letters dated April 17, 2007 and May 3, 2007.

Charge II, "Failure to log on to video camera," was withdrawn during the proceeding. The amended charges are as follows:

## CHARGE I - MISCONDUCT

### Specification 1

### Reckless Operation of a Department Vehicle

Rule 8.2 of the Rules and Regulations of the City of New Rochelle Police Department provides, in part, that members of the Department will operate Department vehicles in a careful and prudent manner in accordance with all Vehicle and Traffic laws and Departmental procedures, giving highest priority to the safety and welfare of the general public and to avoiding injuries to persons or damage to property. On or about June 15, 2006, at approximately 1220 hours, while operating Department vehicle RC #18 in or near Pershing Square, you responded to a request for assistance made by other New Rochelle police officers who were making or attempting to make an arrest on Pintard Avenue. While responding to Main Street and Pintard Avenue, you were driving at a high rate of speed and proceeded through a red light at the intersection of Huguenot Street and Division Street without slowing down. While at the intersection of Huguenot Street and Centre Avenue, you drove up onto the sidewalk in front of 330 Huguenot Street, although it did not appear necessary to do so. Your reckless operation of a Department vehicle constitutes misconduct in violation of Rule 8.2 of the Rules and Regulations of the City of New Rochelle Police Department.

### Specification 2

Rule 8.2 of the Rules and Regulations of the City of New Rochelle Police Department provides, in part, that members of the Department will operator Department vehicles in a careful and prudent manner in accordance with all Vehicle and Traffic laws and Departmental procedures, giving highest priority to the safety and welfare of the general public and to avoiding injuries to persons or damage to property. On or about June 15, 2006 at approximately 1220 hours, while operating Department vehicle RC #18 in or near Pershing Square, you responded to a request for assistance made by other New Rochelle police who were making or attempting to make an arrest on Pintard Avenue. While responding to Main Street and Pintard Avenue, you were driving at a high rate of speed and proceeded through a red light at the intersection of Huguenot Street and Division Street without slowing down. Before you reached the intersection of Huguenot Street and Centre Avenue, you and all other responding units were advised twice by the officers already on the scene that the incident was under control, and a road supervisor advised that anyone not already on the scene should disregard and resume patrol. Despite this, you continued to respond to the call and while at the intersection of Huguenot Street and Centre Avenue, you drove up onto the sidewalk in front of 330 Huguenot Street, although it did not appear necessary to do so. Your reckless operation of a Department vehicle after being advised that assistance was no longer necessary and to disregard the call and resume patrol constitutes

2

misconduct in violation of Rule 8.2 of the Rules and Regulations of the City of New Rochelle Police Department.

### CHARGE II - MISCONDUCT

[withdrawn]

### CHARGE III - MISCONDUCT

#### Specification 1

#### Leaving Designated Area of Patrol

Rule 1.5 of the Rules and Regulations of the City of New Rochelle Police Department provides in part that members assigned to a designated patrol area may not leave their designated area of patrol except for police necessity, personal necessity or meal period. During the period June 3, 2006, through September 12, 2006, your designated area of patrol was North Avenue between Hamilton Avenue and Main Street. Although you were advised that you were to remain within your designated area of patrol, on numerous occasions you issued parking violation summonses outside of your designated patrol area, including but not limited to the following dates: 6/3/06, 6/6/06, 6/8/06, 6/9/06, 6/12/06, 6/20/06, 7/1006, 7/14/06, 7/15/05, 7/21/06, 7/23/06, 7/24/06, 7/27/06, 8/3/06, 8/4/06, 8/5/06, 8/9/06, 8/10/06, 8/11/06, 8/12/06, 8/15/06, 8/18/06, 8/22/06, 8/24/06, 8/28/06, 8/29/06, 8/30/06, 8/31/06, 9/3/06, 9/4/06, 9/9/06, 9/10/06, 9/11/06, and 9/12/06. Your actions constitute misconduct in violation of Rule 1.5 of the Rules and Regulations of the City of New Rochelle Police Department.

#### Specification 2

#### Leaving Designated Area of Patrol

Rule 1.5 of the Rules and Regulations of the City of New Rochelle Police Department provides in part that members assigned to a designated patrol area may not leave their designated area of patrol except for police necessity, personal necessity or meal period. During the period June 3, 2006, through September 12, 2006, your designated area of patrol was North Avenue between Hamilton Avenue and Main Street. Although you were advised that you were to remain within your designated area of patrol, on numerous occasions you issued Uniform Traffic Tickets outside of your designated patrol area, including but not limited to the following dates: 6/16/06, 6/20/06, 7/14/06, 7/15/06, 7/17/06, 7/21/06, 7/23/06, 7/24/06, 7/27/06, 8/2/06, 8/3/06, 8/9/06, 8/16/06, 8/22/06, and 9/11/06. Your actions constitute misconduct in violation of Rule 1.5 of the Rules and Regulations of the City of New Rochelle Police Department.

3

### Specification 3

### Insubordination

Rule 1.5 of the Rules and Regulations of the City of New Rochelle Police Department provides in part that members assigned to a designated patrol area may not leave their designated area of patrol except for police necessity, personal necessity or meal period. During the period June 3, 2006, through September 12, 2006, your designated area of patrol was North Avenue between Hamilton Avenue and Main Street. Although you were advised that you were to remain within your designated area of patrol, on numerous occasions you issued parking violations summonses and Uniform Traffic Tickets outside of your designated patrol area, including but not limited to the following dates: 6/3/06, 6/6/06, 6/8/06, 6/9/06, 6/12/06, 6/16/06, 6/20/06, 7/10/06, 7/14/06, 7/15/06, 7/17/06, 7/21/06, 7/23/06, 7/24/06, 7/27/06, 8/2/06, 8/3/06, 8/4/06, 8/5/06, 8/9/06, 8/10/06, 8/11/06, 8/12/06, 8/15/05, 8/16/06, 8/18/06, 8/22/06, 8/24/06, 8/28/06, 8/29/06, 8/30/06, 8/31/06, 9/3/06, 9/4/06, 9/9/06, 9/10/06, 9/11/06, and 9/12/06. Although you were advised several times after you were assigned the above-designated area of patrol that this behavior is unacceptable, you continued to go outside of your designated patrol area. Your actions constitute insubordination.

### CHARGE IV - MISCONDUCT

### Specification 1

### Failure to Maintain Memorandum Book

Rule 1.29 of the Rules and Regulations of the City of New Rochelle Police Department provides, in part, that all sergeants, uniformed detectives, police officers and non-sworn uniformed personnel assigned to street duty will be provided with a memorandum book and that on each tour of duty the day, date, tour, post assigned, weather conditions, meal period, special assignments, local alarms and a complete and accurate accounting of all duty performed and post conditions will be entered into the memorandum book. During the period June 9, 2006, through September 3, 2006, you were assigned to street duty. During this same period of time, you made only 5 entries in your memorandum book. Your failure to maintain your memorandum book constitutes misconduct in violation of Rule 1.29 of the Rules and Regulations of the City of New Rochelle Police Department.

### CHARGE V - MISCONDUCT

### Specification 1

### Failure to Call Out on Meal Period/Off Post

Rule 1.5 of the Rules and Regulations of the City of New Rochelle Police Department

4

provides in part that members assigned to motorized patrol, foot patrol or a fixed post may not leave their designated area of patrol except for police necessity, personal necessity or meal period, that prior to leaving an assignment for personal necessity or meal period supervisory approval must first be obtained, and that when an officer calls out of service he/she must notify the dispatcher of the reason and his/her location. On September 10, 2006 your designated area of patrol was North Avenue between Hamilton Avenue and Main Street. On that date you left your designated area of patrol to take a meal period, but failed to obtain supervisory approval to leave your post and failed to advise the Department that you were leaving your post. Your actions constitute misconduct in violation of Rule 1.5 of the Rules and Regulations of the City of New Rochelle Police Department

### Specification 2

### Insubordination

Rule 1.5 of the Rules and Regulations of the City of New Rochelle Police Department provides in part that members assigned to motorized patrol, foot patrol or a fixed post may not leave their designated area of patrol except for police necessity, personal necessity or meal period, that prior to leaving an assignment for personal necessity or meal period supervisory approval must first be obtained, and that when an officer calls out of service he/she must notify the dispatcher of the reason and his/her location. On September 10, 2006 your designated area of patrol was North Avenue between Hamilton Avenue and Main Street. On that date you left your designated area of patrol to take a meal period, but failed to obtain supervisory approval to leave your post and failed to advise the Department that you were leaving your post. On or about November 22, 2006 you received a letter of reprimand for a violation of Rule 1.5 of the Rules and Regulations of the City of New Rochelle Police Department for being off your assigned post and at another diner in the City of New Rochelle. Your conduct on September 10, 2006 after being warned about similar misconduct in the past constitutes insubordination.

# RELEVANT STATUTES

Chapter 7 Of the Consolidated Laws
Article V. Personnel Changes [Article 75]
Title B. Removal and Other Disciplinary Proceedings

2. Procedure.

>A person against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him and shall be allowed at least eight days for answering the same in writing. The hearing upon such charges shall be held by the officer or body having the power to remove the person against whom such charges are preferred, or by a deputy or other person designated by such officer or body in writing for that purpose. In case a deputy or other person is so designated, he shall, for the purpose of such hearing, be vested with all the powers of such officer or body and shall make a record of such hearing which shall, with his recommendations, be referred to such officer or body for review and decision. The person or persons holding such hearing shall, upon the request of the person against whom charges are preferred, permit him to be represented by counsel, or by a representative of a recognized or certified employee organization, and shall allow him to summon witnesses in his behalf. The burden of proving incompetency or misconduct shall be upon the person alleging the same. Compliance with technical rules of evidence shall not be required.

***

Chapter 71 of the Consolidated Laws
Title VII. Rules of the Road
Article 23. Obedience to and Effect of Traffic Laws

§1104. Authorized emergency vehicles

(a) The driver of an authorized emergency vehicle, when involved in an emergency operation, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b) The driver of an authorized emergency vehicle may:

1. Stop, stand or park irrespective of the provisions of this title;

2. Proceed past a steady red signal ... but only after slowing down as may be necessary for safe operation;

6

3.     Exceed the maximum speed limits as long as he does not endanger life or property;

4.     Disregard regulations governing directions of movement or turning in specified directions.

*** 

(d)     ... Notwithstanding any other law, rule or regulation to the contrary, a police ... bicycle operated as an authorized emergency vehicle shall not be prohibited from using any sidewalk ... during an emergency operation.

(e)     The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

## RELEVANT RULES AND REGULATIONS OF THE
## CITY OF NEW ROCHELLE POLICE DEPARTMENT

Chapter 1 - Performance Standards and Related Conduct

1.1   All members of the Department will adhere to all established departmental policies and procedures.

1.2   Members of the Department will perform their assigned duties in a competent manner. Members are accountable for their actions and cannot avoid the responsibilities of their positions....

1.3   Members of the Department will not engage in any activity or personal business that would cause them to neglect or to inattentive to their duties.

***

1.5   Members of the Department assigned to motorized patrol, foot patrol or a fixed post will not leave their designated area of patrol for any reason other than police necessity, personal necessity or meal period. Prior to leaving an assignment for personal necessity or meal period supervisory approval must be obtained. When an officer calls out of service he must notify the dispatcher by radio of the reason and his location. The same information must also be entered in his memo book along with the time period he was out of service ... [O]fficers are allowed 30 minutes for meal.

***

1.29  All ... police officers ... assigned to street duty will be provided with a memorandum book.... On each tour of duty the day, date, tour, post assigned, weather conditions, meal period, special assignments, local alarms and a complete and accurate accounting of all duty performed and post conditions will be entered into the memorandum book. At the conclusion of the tour of duty, the Department member will sign his name and enter his employee number. Pages will not be torn from the book.

***

Chapter 4 - Safe Vehicle Operation

4.1   Officers responding to an emergency situation must never lose sight of their responsibility to get to the incident scene quickly and safely....

4.2   Therefore, any officer operating an emergency vehicle will not enter into an intersection

8

without first slowing down and making certain that other vehicles entering or approaching the intersection have yielded the right of way.

Chapter 5 - Emergency Response

POLICY: Members of this Department will operator Department vehicles in a safe and prudent manner. The use of a Department vehicle as an emergency vehicle is only permitted in situations where the operator of the vehicle is responding to an actual emergency. The primary concern of an officer involved in an emergency response must be the safety of other motorists, pedestrians, and fellow officers.

\*\*\*

<u>Liability and Responsibility</u>: The operation of police vehicles under emergency circumstances creates a great potential of injury to the police officer(s) and the general public. New York State Law does not relieve the operator of an emergency vehicle from driving with due regard for the safety of all persons. Operators of emergency vehicles may be held liable for negligence resulting therefrom. Under no circumstances is an officer protected from the consequences of failing to exercise reasonable care and diligence in the operation of an emergency vehicle.

PROCEDURE

The Department's Emergency Response Policy is designed in part to achieve a safe, expeditious response to emergency situations. Rapid vehicle response is often necessary to get police presence to an incident scene. Therefore, policy controls cannot be so rigid as to impede field operations. When responding to an Emergency, Response officers will observe the following guidelines:

\*\*\*

Chapter 8 - Use of Department Vehicles

8.2    Members of the Department will operate department vehicles in a careful and prudent manner in accordance with all Vehicle and Traffic laws and department procedures. Members of the Department will, at all times, give the highest priority to the safety and welfare of the general public when operating a department vehicle and will operate all vehicles in such a manner as to avoid injuries to persons or damage to property.

8.4    A member of the Department will inspect a vehicle and its equipment for damage prior to taking custody of the vehicle. If any unreported damage to the vehicle is discovered or equipment is found missing, the member will immediately advise the supervisor. The vehicle will not be put into use until the supervisor has inspected the vehicle and initiated an investigation to ascertain the origin of the damage or the location of the missing property.

9

## BACKGROUND

Aziz Alali became an officer in the City of New Rochelle Police Department in February 2002 and was assigned to the Patrol Division at the time of the disputed events. Patrol officers work three tours: midnight to 8 AM, 8 AM to 4 PM, and 4 PM to midnight. Two lieutenants and five sergeants manage each shift. Capt. Robert Gazzola oversees the uniformed patrol division. [T 25-27]

Officer Alali was given a special patrol assignment on the second shift as of June 2, 2006. The patrol area included the North Avenue corridor from Hamilton Avenue south to Main Street. Officer Alali's duties were to keep traffic moving along North Avenue and concentrate enforcement on double-parked cars, cars parked on corners and cars in bus stops. [T 29-30] He would be allowed to respond to an emergency within his assigned area of patrol. Capt. Gazzola said that, if an emergency arose outside his patrol area, Officer Alali would not be expected to respond unless he was the only officer available. [Tr 137-139]

Capt. Gazzola asked Nicandro Masseregli, a Department systems analyst, to make computer-generated maps plotting the locations of tickets issued by Officer Alali between June and November, 2006. [Tr 133-134, 165-176. Exs. C-20, C-21] The City contends that the maps and other data sheets show that Officer Alali issued tickets outside his patrol area at least 34 times. [Exs. C-11, C-12, C-13, C-15, C-16]

Officer Alali said he was allowed to write tickets outside his patrol area when he was coming back from a detail. [Tr 288-289] According to Capt. Gazzola, Officer Alali was not on details outside his assigned area during this time. Capt. Gazzola testified that Officer Alali was instructed not to patrol on Lorton Street, but was observed issuing tickets there. He said the reason why Officer Alali was not to patrol Lorton Street was because complaints had been made about him by people on that street [Tr 82-83]

Officer Alali said the area around North Avenue to which he was assigned kept getting smaller and he needed to work outside the assigned boundaries so he could turn around. [Tr 288-289] He said his instructions at roll call were vague; he was to report to the patrol sergeant but also to report to the traffic sergeant for traffic conditions; [Tr 291] According to Officer Alali, Capt. Gazzola never told him he was outside his patrol area. [Tr 300] He testified that Capt. Gazzola met him at Main St. and Bonnefoy St. and said he should focus his efforts further north. [Tr 307]

Officer Alali was assigned to use Patrol Car 18 and, if that car was unavailable, to use another patrol car with in-car video equipment. [Tr 34] Each officer driving a patrol car with a video system is required to log on at the beginning of his or her tour. [Tr 256-257] The in-car video camera begins to record automatically if the Officer turns on the overhead lights; the equipment will also begin recording if an Officer turns it on manually while in the car or by activating a microphone. The camera program is configured to record for sixty seconds before

10

turning on the camera. [Tr 35-36]

The hard drive for the recording system in Car 18 was returned to the manufacturer sometime after June 2006. [Tr 244-247] Before the hard drive was returned, Sgt. Joseph made copies of the contents of the hard drive and marked the disks. [Tr 253] Sgt. Joseph recalls that Officer Alali complained the audio system was not working, but does not recall when that happened; he does not recall any complaint about the video portion of the recording system. [Tr 251]

On June 15, 2006, at about 12:20 P.M., a 10-13 call came over the radio, officers needed assistance at Main Street and Pintard Avenue. That intersection is outside Officer Alali's assigned patrol area. He turned on his lights and sirens and proceeded.

The video camera in his patrol car recorded the following sequence of events: Officer Alali made a U-turn on North Avenue and drove to Huguenot Street at a high rate of speed. He continued along Huguenot Street, driving through two red lights without slowing down. At the next intersection, cars in two lanes were stopped at a red light. Officer Alali moved to the left, mounted the curb and drove on the sidewalk in order to go around the stopped traffic. [Ex C-5] Officer Alali testified that he waited from five to seven seconds before driving onto the sidewalk. [Tr 296]

Officer Alali said that when responding to an emergency call in a marked emergency vehicle with overhead lights and sirens on, an officer may proceed through a red light. He drove on the sidewalk, he said, because the cars stopped at the red light did not move to the right to let him pass, even though he waited 5-7 seconds.

The Department alleged that Officer Alali and the other responding units were advised twice by radio that the incident was under control and anyone not already on the scene should resume patrol. [Ex. C-27] Officer Alali said he did not hear any radio transmissions after the 10-13 call. He testified that he could not hear the transmissions because he had the sirens on, but at other times when he had the siren on "intermittently," he could hear radio transmissions. [Tr 303-304]

Car 18 had an AM/FM radio which Officer Alali was playing while responding to the 10-13 call on June 15th. The radio was subsequently removed by Capt. Gazzola. [Tr 306]

Officer Alali had been charged before with driving a patrol car recklessly. According to the Department, in August 2002 Officer Alali was responding to a radio call, drove the wrong way on a one-way street and became involved in a motor vehicle accident with another vehicle. [Ex. C-28] Officer Alali did not contest the resulting disciplinary action.

In 2005, Officer Alali was disciplined for parking illegally in front of a Dunkin' Donuts shop while not on an emergency call. The disciplinary charge noted that he had been told several

11

times previously by his supervisors not to park illegally unless an emergency situation made it unavoidable. [Ex. C-29] Officer Alali did not contest the disciplinary action.

The Department entered into evidence a copy of Officer Alali's memo book for March 31, 2006 through September 3, 2006. He was assigned to street duty between June 2006 and September 2006. He made five entries in his memo book between June 9, 2006, and September 3, 2006. The September 3, 2006, was made on page # 26. The pages following the September 3, 2006, entry are blank and page # 31 is missing.. [Tr 190-198, Ex. C-22] Officer Alali believes that members of the service who issue parking tickets are not required to make memo book entries. [Tr 287]

Officer Alali's memo book was inspected by Lt. Fortunato because of a civilian complaint about an incident that allegedly took place at the Thruway Diner on September 10., 2006 and was later found to be unsubstantiated. [Tr 169, 190] Officer Alali called out for a meal break using his police radio at 1:40 PM. He called for assistance with a disorderly person, the cashier at the Thruway Diner, at 1:46 P.M. [Tr 207-209; Exs. C-25, C-26] Lt. Fortunato did not ask Officer Alali whether had called the diner, ordered food and then entered the diner to pick up and pay for the food. [Tr 211]

The Department charged Officer Alali with failing to call out for a meal period on September 10, 2006. Officer Alali said he was in an area with poor radio reception, so he used his cellphone to request a meal break and ate lunch in his patrol car. [Tr 288] He does not remember when he made the phone call and denies eating lunch in the diner with his girlfriend and an off-duty police officer. [Tr 297] He does not remember whether he called out before or after reaching the diner, when he ordered his meal or when he paid for it. [Tr 299] PBA

In 2002, Officer Alali was charged with leaving his designated area of patrol. He was assigned to escort a piece of Con Edison equipment. He called in to report that Con Edison had not arrived and was told to remain at his assigned location until 2:30 P.M. At 2:15 P.M., Officer Alali was observed walking into a diner. He had not asked for permission to leave his post or called in for a meal break. Officer Alali did not contest the disciplinary action. [Ex. C-19]

At the time this hearing took place, Officer Alali had two federal civil rights suits pending against the Police Department, the Commissioner and other officials. [Tr 276] PBA President Hayes testified that Commissioner Carroll and Lt. Fortunato told him the City would drop the charges against Officer Alali if Officer Alali would withdraw his federal lawsuits against the City. [Tr 215, 280] Capt. Gazzola was one of the defendants in the lawsuits. [Tr 319]

In his post-hearing brief, Officer Alali stated that at a holiday party held after the close of this hearing, "police officers and superior officers indulged in a drunken free-for-all which culminated with the Taser shooting of one officer by another. That incident, which involves the commission of at least one felony, resulted in the imposition of a five-day payless suspension...." According to Officer Alali, the officer who lent the Taser to the shooter also received a five-day

suspension without pay. Officer Alali contends that these penalties call for a reopening of the penalty phase of the instant hearing, since they are much less onerous and were imposed for committing what Officer Alali says are felonies.

Officer Alali also contends that the Department and its attorney impermissibly amended the original charges against him. He argues that the City's attorney does not have the power to bring charges. Furthermore, he says, a person protected by Section 75 of the Civil Service Law cannot lawfully be convicted of charges proven but not asserted in the notice of charges. Therefore, any conviction on the amended charges would be reversible error. Thus, Charge I, Specifications 1 and 2, as well as Charge IV, Specification 1, must be disregarded.

## CONTENTIONS OF THE PARTIES

*The Charging Party*

The Department argues as follows:

### CHARGE I - MISCONDUCT

The evidence is overwhelming that Officer Alali drove his vehicle carelessly and imprudently, in violation of Rule 8.2 Officer Alali was assigned to Car 18 on June 15, 2006. In the video recorded in Car 18 that day (Ex. C-5) Officer Alali is shown operating the vehicle dangerously. The car moved to the left well before reaching an intersection where cars were stopped at a red light. The car barely slowed down as it approached the cars, then proceeded on the sidewalk in front of a delicatessen. Officer Alali did not wait 5-7 seconds before driving onto the sidewalk. Department witnesses established that Officer Alali was driving Car 18 while the video was recorded, that the video is authentic and the camera was operating at the time.

Section 1104 of the Vehicle and Traffic Law does not permit a police car to drive on a sidewalk in an emergency. Section 1104 expressly allows a police bicycle to be operated on a sidewalk during an emergency, thus implying that a police automobile is excluded from that provision.

Article 5.09 of the Department's Manual of Procedure states that an authorized emergency vehicle may proceed past a red light "only after slowing down as may be necessary for safe operation." It adds, however, that officers responding to emergency situations must operate their vehicles safely. Officer Alali did not operate his patrol car safely on June 15, 2006.

There were two radio transmissions cancelling the code 10-13 call for assistance before Officer Alali reached the intersection. Officer Alali said he could not hear the transmissions because he was using the sirens and had the car's AM/FM radio on. If it were true that Officer Alali did not hear the radio transmissions, playing the AM/FM radio was a contributing factor.

This constitutes a violation of Rule 1.3 of the Rules of the Department.

## CHARGE II - MISCONDUCT

From June 3, 2006, through September 12, 2006, Officer Alali was assigned to patrol the North Avenue corridor from Hamilton Avenue to Main Street. His duties were to keep traffic moving and enforce parking regulations. Captain Gazzola observed Officer Alali outside the boundaries of his patrol area on June 12, 2006, and advised Officer Alali about the boundaries of his patrol area.

Officer Alali continued to patrol outside his assigned area and issued parking tickets outside his area on many days between June and November, 2006. Capt Gazzola was able to identify these occasions by using the Department's database. Officer Alali violated Rule 1.5 of the Department's Rules and Regulations by leaving his assigned patrol without permission. He presented no evidence that police necessity, personal necessity or a meal period excused him for leaving his designated patrol area to issue tickets.

The evidence is overwhelming and clear that Officer Alali repeatedly issued parking violations summonses and Uniform Traffic Tickets outside his designated area of patrol. Officer Alali knew or should have known that by ignoring Capt. Gazzola's instructions, he was violating Rule 1.5 of the Department's Rules and Regulations.

## CHARGE IV - MISCONDUCT

Officer Alali worked 48 days between June 9, 2006, and September 2, 3006. He made only 5 memo book entries during that time. Officer Alali is not a parking enforcement officer; he is a police officer who is required by the Rules and Regulations of the Department to make a memo entry for every day he works. He has violated Rule 1.29 of the Department's Rules and Regulations.

## CHARGE V - MISCONDUCT

Calls made by Officer Alali on September 10, 2006, came to the attention of Lt. Fortunato during an investigation of a civilian complaint. Officer Alali called out for a meal break using his police radio at 1:40 PM. He called for assistance with a disorderly person at the Thruway Diner at 1:46 P.M. Officer Alali says he remembers calling out on his cell phone but does not remember anything else: when he called out, when he got to the diner, how he placed his order, how long it took the food to arrive and whether he paid immediately. The evidence supports the conclusion that Officer Alali did not order his food out and eat in his car, as he testified, and that he did not call out for his meal, as he should have done. Since he was assigned to patrol the North Avenue corridor that day, he should have called out for the meal break before he left for the diner.

14

Officer Alali was disciplined in 2002 when he was observed at a diner when he was supposed to be on his post. The letter of reprimand stated that further misconduct would result in discipline. Officer Alali's absence from his post in 2006 without calling out for a meal break constitutes insubordination.

*The Charged Party*

Officer Alali argues as follows:

### CHARGE I - MISCONDUCT

Officer Alali was assigned a patrol car with an in-car video system. Capt. Gazzola reviewed video footage brought to his attention by Lt. Marshal, that allegedly came from the patrol car to which Officer Alali was assigned on June 15, 2006. That video recording was supposedly duplicated by Sgt. Myron Joseph. The original video is not in the City's care, custody and control, since the hard drive was returned to the manufacturer. On the basis of the video, Capt. Gazzola determined that Officer Alali did not operate the vehicle in a careful and prudent manner.

Officer Alali did not recklessly operate a police vehicle. He was responding to a radio call that an officer needed assistance, the highest priority call an officer can receive. He responded with his roof lights and siren on. He carefully circumvented vehicles that unlawfully impeded his forward movement. Upon arrival at the location, he assisted in taking into custody one of the defendants.

This was not a serious matter, as evidenced by the fact that the City waited 7 months to file disciplinary charges for this incident and disciplined the officers in the holiday party incident immediately. Officer Alali concludes from this that, "if you commence federal lawsuits against the Department you become a departmental pariah to be grossly punished for routine police activity. If you jeopardize the life of another officer by use of a Taser at a drunken party and you are one of the good ole boys, it's time for a slap on the wrist." The charge should be dismissed.

### CHARGE III - MISCONDUCT

The specifications were not proven by substantial evidence. Pursuant to an ever-changing verbal directive, dictating an ever-changing geographic area in which Officer Alali was supposed to issue summonses and parking tickets, it is now claimed that from time to time he did so outside the later conceived and irregularly shaped "red box." Capt. Gazzola observed Officer Alali writing a ticket outside his patrol area, but could not remember whether it happened on June 12th, August 8th or August 12th of 2006.

The series of directives from Capt. Gazzola and the Police Commissioner were intended

15

as a trap for the unwary. If that were not the intent, we would assume that they would have been put in writing. In addition, Capt. Gazzola would have made the charges in writing sometime between June and September, 2006.

Mr. Massaregli testified that his source of information for the "red line" maps was information from Capt. Gazzola which he did not check independently. He does not know whether the program he used to create the maps is accurate.

In any event, the geographic area was repeatedly altered by Capt. Gazzola, a circumstance corroborated by the "red box." Even the width of the boundary line as depicted in the non-box exceeds the width of many of the streets depicted on the same map. Disciplinary charges should not be concocted on the basis of such unconvincing circumstances. The charge should be dismissed.

## CHARGE IV - MISCONDUCT

Charge IV, Specification 1 is substantially frivolous. On this disciplinary record it is beyond dispute that when an officer issues parking tickets and/or summonses, no memo book entry is ever made. Since during the time in question, Officer Alali was restricted to traffic enforcement duty, it is to be expected that he made only 5 entries in his memo book. Under the circumstances, virtually no memo book entries were required, none were expected, ad the absence of entries is not a violation of Rule 1.28 or, as illegally amended by the City's attorney, Rule 1.29. The charge should be dismissed.

## CHARGE V - MISCONDUCT

Charge V, premised upon Capt. Gazzola's lack of understanding of the facts, was not proven by a preponderance of the evidence. On the factually baseless premise that Officer Alali took a full meal break on September 10, 2006, entered the Thruway Diner, sat down for lunch, ordered same, ate the lunch and paid for it within a span of six minutes, Capt. Gazzola leveled Charge V on the premise that Officer Alali had not properly reported the actual time and/or duration of his lunch break. Unfortunately, Capt. Gazzola's ignorance does not make for a viable disciplinary charge.

As Officer Alali testified without contradiction, he ordered take-out food from the diner, called in his break, entered the diner and paid for the food which he then consumed in his police vehicle. Put differently, there was no unaccounted-for lunch period. There was no disciplinary infraction. The charge should be dismissed.

## **FINDINGS OF FACT**

At the outset, I will address Officer Alali's procedural objections. Title B(2) of Chapter

16

7, Section 75 of the Consolidated Laws of New York State provides that, "[a] person against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him and shall be allowed at least eight days for answering the same in writing." The Department amended the original charges in April and May, 2007, several weeks before the first hearing date and 18 months before the end of the proceeding. Officer Alali had adequate notice of the amended charges against him and was not prejudiced in his ability to mount a defense.

Numerous mentions were made during the proceeding of contemporaneous lawsuits by the officer against the Department on the grounds of discrimination. There was testimony that the Chief of Police offered to drop these disciplinary charges if Officer Alali would withdraw his lawsuits. While the Chief may have made such an offer, it does not necessarily follow that Officer Alali is not guilty of wilfully violating numerous Department rules and regulations.

Officer Alali asks that the penalty phase of this hearing be reopened because of an alleged inequity between his disciplinary penalty and disciplinary penalties received by other officers as a result of an incident in December, 2007. It may be, as Officer Alali asserts, that the Department is more lenient with officers who do far worse than what he is charged with doing. Even if that is the case, however, it is not within the province of this proceeding, which is to determine whether Officer Alali is guilty of the infractions with which he is charged and, if so, what the penalty should be.

Officer Alali argues that the video and audio exhibits in the record may have been compromised, or that in some other way the exhibits are technically unreliable. Such tampering would require a level of technical sophistication that seems unlikely in the Police Department of the City of New Rochelle. The testimony of Sgt. Joseph and Lt. Fortunato established authenticity and a chain of custody. Most courts now accept copies of data records as long as their proponents have established how, where and when the copies were made, as was done here.

Officer Alali has never claimed he was not driving Car 18 on June 15, 2006. The only way his account of that incident differs from the City's is that he testified he waited 5 to 7 seconds before driving up on the sidewalk. An elision of that nature is not apparent in the video and Officer Alali has not shown enough to convince a reasonable outside observer that the video was altered.

From viewing the video recorded in Car 18 on June 15, 2006, it is clear that Officer Alali did not behave prudently and with care. He drove the patrol car onto the sidewalk without stopping long enough to ascertain whether he would be endangering the public by doing so. Officer Alali testified that two lanes of cars were stopped at a red light and did not move to the right to let him pass; however, he did not allow enough time for those cars to yield.

I understand that a 10-13 call is the highest priority for a police responder and may indicate that a fellow officer's life is in danger. However, Officer Alali was not the only

responder in the City of New Rochelle and could have waited several seconds to clear the intersection without driving on the sidewalk, an action which is prohibited by the Vehicle and Traffic Law and the Rules and Regulations of the Department.

The Department alleges that patrol units were twice recalled, by radio, after the 10-13 call went out over the radio. These directions were given before Officer Alali reached the blocked intersection and drove on the sidewalk. If Officer Alali heard the original 10-13 call, he ought to have heard the subsequent radio transmissions cancelling the call for assistance and instructing him to return to his patrol assignment. If he did not, it may have been because he was playing an AM/FM radio in the patrol car while speeding towards Pintard Street.

All in all, Officer Alali showed poor judgment in this incident. In addition, he was insubordinate in not following directions to return to his post. While it is understandable that an officer would want to assist a colleague in need, this incident illustrates a thread running throughout these charges: a propensity on Officer Alali's part to ignore command orders and rules in favor of whatever he wished to do at the moment. I find Officer Alali guilty of Charge 1 for the actions he took on June 15, 2006.

The Department assigned Officer Alali to enforce traffic regulations in a small area of the city. One might speculate that, given the officer's history of disciplinary infractions and civilian complaints, the command officers assigned him where he could be supervised carefully and frequently. Even in this assignment, however, Officer Alali did not follow instructions: he had to go outside his assigned area to turn around, he said, and the instructions and boundaries were vague. Where another officer might have decided to redeem himself by following orders, Officer Alali continually pushed his boundaries. This is a classic case of insubordination.

Officer Alali argues that by not putting the patrol area assignment in writing, Capt. Gazzola and Commissioner Carroll were setting a trap for him and forcing him to fail. There was no showing that patrol assignments are ordinarily put in writing for other officers. Thus, it cannot be adduced that Officer Alali was treated differently.

Officer Alali should have been familiar enough with the geography of the North Avenue corridor to understand his assignment, whether or not he liked it or believed he should have been assigned to traffic enforcement in a small area. The only conclusion to be drawn from the fact that Officer Alali was so frequently outside his assigned patrol area is that he wilfully disobeyed orders and violated the Rules and Regulations of the Department. For that reason, he is guilty of Charge III.

Rule 1.29 of the Department's Rules and Regulations provides:

All ... police officers ... assigned to street duty will be provided with a memorandum book.... On each tour of duty the day, date, tour, post assigned, weather conditions, meal period, special assignments, local alarms and a complete and

18

accurate accounting of all duty performed and post conditions will be entered into the memorandum book. At the conclusion of the tour of duty, the Department member will sign his name and enter his employee number. Pages will not be torn from the book.

Officer Alali is charged with violating Rule 1.29 because there were only 5 entries in his memo book between June and September, 2006. In addition, a page was missing from the book. In his defense, he says he was acting as a parking violations or traffic control officer, and those personnel are not required to keep memo books. Officer Alali has not shown anything beyond this assertion to prove that he was not required to note in his memo book for each day, at minimum, the "day, date, tour, post assigned, weather conditions, meal period, special assignments, local alarms and a complete and accurate accounting of all duty performed and post conditions," no matter what kind of duty he was assigned. It may not have made sense to Officer Alali, but he was required to do it. Therefore, he is guilty of Charge IV.

Officer Alali maintains that, on September 10, 2006, he called out his meal break on his cell phone at a time he does not recall, ordered take-out food from the Thruway Diner, entered the diner to pick up and pay for his food, and then ate in his patrol car. He said he used his cell phone because radio reception is bad throughout the City of New Rochelle.

There was passing mention in the testimony that the unruly person was the cashier at the diner and that Officer Alali was eating there with two friends; however, these details were not proven. The civilian complaint against Officer Alali arising from this incident was not substantiated. There are no facts in the record about what happened at the diner except for the timing of the two radio transmissions from Officer Alali. According to the Department's customary recording of radio calls, Officer Alali called out his meal break by radio at 1:40 PM. Six minutes later, Officer Alali called in a report by radio of a disorderly person at the diner.

Officer Alali says he does not recall much of what happened that day, although he does remember the cell phone call he says he made because of poor radio reception. This means he would have called out for meal twice that day, which seems unlikely; if he had called out for meal on his cell phone from his assigned post, there would have been no need to call again on the radio from the diner at 1:40 PM. It is more likely that Officer Alali used his radio to call out for meal break at 1:40 PM and never used his cell phone. Since he was paying for his food at the diner by 1:46 PM, he could not have called out for break before leaving his post. He is charged with violating Rule 1.5 of the Department's Rules and Regulations, which requires officers to remain at their posts until obtaining supervisory approval for meal break. Officer Alali did not follow this rule on September 10, 2006. Therefore, he is guilty of Charge V, abandoning his post without permission.

Officer Alali has a history of disciplinary infractions similar to the violations with which he is charged now. Although some of the infractions with which he is charged may seem minor, together they paint a picture of an insubordinate police officer who only follows the rules when

19

he wants to. Whether this makes him better or worse than any other police officer in the City of New Rochelle is immaterial to this proceeding.

The police force of a city in a major metropolitan area must maintain command discipline. It has to be able to expect that its officers can be depended upon to be where they are assigned to be at all times and to follow the rules.

Accordingly, the undersigned Hearing Officer, having heard the proofs and allegations of the parties, renders the following

## RECOMMENDATION

1. The Charged Party should be found guilty of the following:

    Charge I
    Charge III
    Charge IV
    Charge V

## PENALTY

Having considered the Charged Party's history of previous disciplinary infractions, as well as the seriousness of the violations with which he is currently charged, the penalty of 30 days suspension without pay, which the Charged Party says he has already served, is appropriate.

Dated: Bayside, New York
March 29, 2008

*Janet McEneaney*
Janet McEneaney, Esq.
Hearing Officer

I, Janet McEneaney, Esq., affirm that I am the individual described in and who executed the foregoing instrument which is my Findings of Fact and Recommendation.

*Janet McEneaney*
Janet McEneaney, Esq.