WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY  10604
(914) 323-7000
Attn:   Peter A. Meisels (PM-5018)
          Lalit K. Loomba (LL-9755)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x   07 Civ. 2916 (CLB)
ARAZ ALALI,

                      Plaintiff,

        -against-

ALBERTO DeBARA, individually, KYLE
WILSON, individually, EDWARD AUSTIN,
individually, GEORGE MARSHALL,
individually, HUMBERTO MORRELL,
individually, MATTHEW BRADY, individually,
ANTHONY MUPRHY, individually, ROBERT
GAZZOLA, individually, PATRICK J.
CARROLL, individually, and the CITY OF NEW
ROCHELLE, New York,

                      Defendants.
----------------------------------------------------------x


# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF MOTION FOR
# SUMMARY JUDGMENT


WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY  10604
(914) 323-7000

2004485.1

## TABLE OF CONTENTS

Page

Introduction................................................................................................1

Preliminary Statement...............................................................................1

Pertinent Facts and Procedural History ...................................................2

    A.    Alali's Employment with the NRPD .............................................2

    B.    The Allegations and Proceedings in *Alali I* ................................7

    C.    The Allegations and Proceedings in *Alali II* ...............................8

Argument

POINT I

THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO
QUALIFIED IMMUNITY ON THE RETALIATION CLAIMS
UNDER 42 U.S.C. §1981 AND SECTION 296 OF THE NEW YORK
HUMAN RIGHTS LAW ...................................................................9

    A.    Relevant Standards for Qualified Immunity ...............................9

    B.    Legal Standards for a Claim of Retaliation Under 42 U.S.C. §1981.........11

    C.    Commissioner Carroll is Entitled to Qualified Immunity..........................13

    D.    Deputy Commissioner Murphy is Entitled to Qualified Immunity ...........15

    E.    Captain Gazzola is Entitled to Qualified Immunity...................................17

    F.    Lieutenant Marshall is Entitled to Qualified Immunity.............................17

    G.    Lieutenant DeBara is Entitled to Qualified Immunity...............................18

    H.    Sergeant Wilson is Entitled to Qualified Immunity...................................19

    I.    Sergeant Austin is Entitled to Qualified Immunity....................................20

    J.    Sergeant Morrell is Entitled to Qualified Immunity .................................21

    K.    Sergeant Brady is Entitled to Qualified Immunity ...................................21

**POINT II**

    **THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO
QUALIFIED IMMUNITY ON THE RETALIATION CLAIM
UNDER 42 U.S.C. §1983** ....................................................................................22

**POINT III**

    **THE CITY IS ENTITLED TO SUMMARY JUDGMENT ON THE
RETALIATION CLAIMS UNDER SECTIONS 1981 AND 1983**.................23

**POINT IV**

    **THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S TITLE VII CLAIM** ...........................................................24

**Conclusion** ........................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Alali v. City of New Rochelle,* 07 Civ. 9912 (CLB) ............................................................24

*Araz Alali v. Robert Gazzola, Patrick J. Carroll, Individually,*
*City of New Rochelle, New York,* 07 Civ. 1296 (CLB) ........................................................1

*Burkybile v. Board of Ed.,* 411 F.3d 306 (2d Cir. 2005) ....................................................14

*Cerrone v. Brown,* 246 F.3d 194 (2d Cir. 2001) ................................................................10

*Curtis v. Citibank, N.A.,* 226 F.3d 133 (2d Cir. 2000) ........................................................24

*Davis v. Lynbrook Police Dep't,* 224 F. Supp.2d 463, 479-80 (E.D.N.Y. 2002) ..............23

*Demoret v. Zegarelli,* 451 F.3d 140 (2d Cir. 2006) ....................................................11, 24

*DuBois v. Brookdale Univ. Hosp. & Med. Ctr.,* 29 A.D.3d 731 (2d Dep't 2006) ..............11

*Gierlinger v. Gleason,* 160 F.3d 858 (2d Cir. 1998) ..........................................................22

*Hill v. Taconic Dev. Disabilities Servs. Office,*
2003 U.S. App. LEXIS 11 (2d Cir. Jan. 2, 2003) ..............................................................10

*Ifill v. United Parcel Service,* 2005 U.S. Dist. LEXIS 5230,
(S.D.N.Y. March 29, 2005) ..............................................................................................11

*Lizardo v. Denny's, Inc.,* 270 F.3d 94 (2d Cir. 2001) ........................................................11

*Malley v. Briggs,* 475 U.S. 335 (1986) ..............................................................................9

*Monell v. City of New York Dep't of Social Servs.,* 436 U.S. 658 (1978) ........................23

*Munafo v. Metropolitan Transp. Auth.,* 285 F.3d 201 (2d Cir. 2002) ................................9

*Parker v. Blauvelt Volunteer Fire Co.,*
93 N.Y.2d 343, 690 N.Y.S.2d 478 (1999) ........................................................................14

*Payami v. City of New York,* 2007 U.S. Dist. LEXIS 25821
(S.D.N.Y. Mar. 28, 2007) ....................................................................................13, 19, 20

*Peries v. New York City Board of Ed.,*
2001 U.S. Dist. LEXIS 23393 (2001) ..............................................................................10

*Racker v. St. Bonaventure Univ.,*
2005 U.S. Dist. LEXIS 32110 (W.D.N.Y. June 28, 2005) ................................................11

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                        **Page**

*Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151 (1981) ....................................................10

*Sullivan v. Newburgh Enlarged School Dist.,*
 281 F. Supp.2d 689 (S.D.N.Y. 2003)..............................................................................23

*Vann v. The City of New York,* 72 F.3d 1040 (2d Cir. 1995)............................................23

*Wang v. State Univ. of New York, etc.,* 470 F. Supp.2d 178 (E.D.N.Y. 2006).................10

*Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62 (2d Cir. 2000) ......................11

*Williams v. R.H. Donnelley Corp.,* 368 F.3d 123 (2d Cir. 2004)................................14, 19

*Wrighten v. Glowski,* 232 F.3d 119 (2d Cir. 2000)..........................................................24


***Statutes and Regulations***

Title VII, 42 U.S.C. §2000e....................................................................................................8

42 U.S.C. §2000e (Title VII) .................................................................................................9

42 U.S.C. §§1981 and 1983 ..................................................8, 9, 11, 14, 17, 18, 22, 23, 24

N.Y. Executive Law §296..................................................................................8, 9, 11, 14

2002836.1

## Introduction

Defendants Alberto DeBara, Kyle Wilson, Edward Austin, George Marshall, Humberto Morrell, Matthew Brady, Anthony Murphy, Robert Gazzola, Patrick J. Carroll (the "Individual Defendants") and the City of New Rochelle (the "City") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion for summary judgment on grounds of qualified immunity.

## Preliminary Statement

When a police officer conducts himself in such a way as to receive multiple civilian complaints, year in and year out, and then follows Departmental rules only when he seems to want to, his supervisors, and the Department as a whole, are justified in taking appropriate steps to re-train and, if necessary, discipline the officer. This, in a nutshell, tells the story of Police Officer Araz Alali and the New Rochelle Police Department.

This is the second of four cases filed in this Court by plaintiff Araz Alali ("Alali") alleging that he was subjected to unlawful discrimination and retaliatory conduct as a result of his alleged Iraqi national origin. Many of the factual and legal issues raised in the instant case were addressed, and decided, in this Court's memorandum and order dated January 31, 2008, granting summary judgment and dismissing all claims in the first of the four cases filed by Alali. *Araz Alali v. Robert Gazzola, Patrick J. Carroll, Individually, City of New Rochelle, New York,* 07 Civ. 1296 (CLB) ("*Alali I*"). The Court's ruling in *Alali I* is binding on Alali in the instant case under the doctrine of collateral estoppel.

The complaint in the instant case ("*Alali II*") was filed on April 11, 2007. In *Alali II*, Alali claims that he was subjected to unlawful retaliation for filing a complaint with the United States Equal Employment Opportunity Commission (EEOC) on or about February 12, 2007, and

-1-

for filing the complaint in *Alali I* on February 21, 2007.  To prevail on his retaliation claims,

Alali must prove, *inter alia,* that the Individual Defendants were each aware of the EEOC and

*Alali I* complaints and that, as a result of these filings, took adverse action against Alali.  As

demonstrated below, Alali cannot meet these basic requirements.  But even if he could, given

Alali's history of amassing large numbers of civilian complaints and command disciplines, the

Individual Defendants could reasonably believe that engaging in any of the conduct alleged by

Alali did not violate his federal or constitutional rights.  The Individual Defendants are therefore

entitled to qualified immunity.

### Pertinent Facts and Procedural History

A full statement of the pertinent facts and procedural history is set forth in the

accompanying statement submitted pursuant to Rule 56.1 of the Local Rules of the Southern

District of New York dated May 29, 2008 ("Rule 56.1 Statement"), to which the Court is

respectfully referred.  All exhibits referenced in the Rule 56.1 Statement and herein are annexed

to the accompanying declaration of Lalit K. Loomba, dated May 29, 2008 ("Loomba Decl.").

A.      Alali's Employment with the NRPD

Alali admitted, that while employed as a police officer with the City of New York, he

was the subject of a number of civilian complaints.  Rule 56.1 Statement, at ¶37.  After

transferring from the New York City Police Department in 2002, was previously demonstrated in

*Alali I,* Alali's tenure with the NRPD has been marked by an overwhelming number of civilian

complaints and internal command disciplines.

Alali joined the NRPD on February 10, 2002.  *Id.* at ¶38.  Between February 10, 2002

and July 28, 2003, he amassed six civilian complaints.  *Id.* at ¶¶39-44.  Many of these alleged

that Alali was rude and discourteous during traffic stops, and as a result, Alali was sent for

training in Verbal Judo, a tactical communications program designed to de-escalate tensions that may arise in police-citizen encounters. *Id.* at ¶¶39-44, 68-69.

On September 20, 2002, Alali received command discipline (a letter of reprimand) for an incident occurring on August 1, 2002, which was also the subject of a civilian complaint. Rule 56.1 Statement, at ¶¶73-74. He received command discipline (a letter of reprimand) for an incident occurring on October 29, 2002, in which he was charged with leaving his assigned post. *Id.* at ¶¶75-76. He received an additional command discipline for an incident occurring on December 23, 2002, in which Alali failed to respond to a supervisor who tried to reach him over the police radio. *Id.* at ¶¶77-78.

On July 28, 2003, Alali suffered an injury and did not return to active duty until October 1, 2004. Rule 56.1 Statement, at ¶45. Between October 1, 2004 and the end of the year, two more civilian complaints were brought against Alali, both for being rude and discourteous. *Id.* at ¶¶46-47. Alali received a job performance evaluation for the period November 26 to December 31, 2004. *Id.* at ¶96. The evaluation was "meets standards," but stated that Alali had failed to notify headquarters upon making traffic stops, and needed to work on his demeanor when interacting with the public. *Id.* at ¶¶96-97.

Between January 1 and December 31, 2005, five additional civilian complaints were brought against Alali. As before, these complaints alleged that Alai engaged in rude or harassing conduct. Rule 56.1 Statement, at ¶¶48-52. Alali received command discipline for an incident occurring on January 19, 2005 for being rude and discourteous to a motorist, which was the subject of one of the civilian complaints. *Id.* at ¶79-80. He received a separate command discipline for an incident occurring on April 14, 2005, where Alali parked his police car illegally in front of a donut shop. *Id.* at ¶¶81-82.

On August 31, 2005, Sergeant Austin was assigned to ride along with Alali to observe his performance and provide additional training. Rule 56.1 Statement, at ¶99. Sergeant Austin wrote a detailed "letter of counsel," listing specific areas where Alali needed to conform his performance to the Department's rules and procedures. *Id.* at ¶¶100-102. Captain Gazzola thereafter met with Alali and Sergeant Austin to discuss the "letter of counsel." *Id.* at ¶103. Alali was told that if he did not improve his performance he could receive a "below standards" job evaluation. *Id.* at ¶104. Alali's job performance evaluation for the period January 1 to December 31, 2005 was, in fact, "below standards." *Id.* at ¶105. The evaluation noted that Alali had received more civilian complaints during the evaluation period than any other officer. *Id.* at ¶106.

During the period January 1 through May 31, 2006, four additional civilian complaints were brought against Alali. These complaints alleged rude and discourteous conduct, that Alali engaged in excessive force and that he drove his police vehicle in a reckless fashion. Rule 56.1 Statement, at ¶¶53-56. Alali received an interim performance evaluation for the same 6-month period. The evaluation was "below standards." *Id.* at ¶107. The interim evaluation noted that Alali had already received four civilian complaints, and that he needed to improve his communication skills and use more discretion when dealing with the public. *Id.* at ¶108.

During the period June 1 through September 13, 2006, three additional civilian complaints were brought against Alali. Rule 56.1 Statement, at ¶¶57-59. Two of these were filed by Edwin Veras, a Federal Express delivery driver. *Id.* at ¶60. In fact, Mr. Veras was no stranger to Alali. Alali admitted in his deposition in *Alali I* that he had had a prior dispute with Veras involving the delivery of a package to Alali's home. *Id.* at ¶61. The second of the two complaints filed by Veras was filed on September 13, 2006, the day after he had been arrested by

- 4 -

Alali for making an illegal lane change and allegedly resisting arrest. *Id.* at ¶62.[1] The NRPD

commenced an investigation of Veras's civilian complaint against Alali. *Id.* at ¶63. While the

investigation was pending, Alali was placed on restricted duty and assigned primarily to the

communications room in police headquarters. *Id.*

In addition, on August 29, 2006, Alali was presented with command discipline for an

incident occurring on June 15, 2006, during which, in responding to a call for officer assistance,

Alali drove through a red light without slowing down, and drove his police vehicle onto a busy

commercial-district sidewalk, even though the call had been rescinded and those not already

present were specifically ordered to disregard and resume patrol. Rule 56.1 Statement, at ¶84.

Alali declined to accept the proffered command discipline of a loss of one leave day for this

incident. *Id.* Shortly after August 29, 2006, the Department sought the assistance of outside

counsel to prepare formal disciplinary charges against Alali. *Id.* at ¶85. Disciplinary charges

concerning the June 2006 reckless driving incident were signed by Captain Gazzola on February

15, 2007. *Id;* Ex. Y. In addition, the Department added charges alleging, *inter alia,* that Alali

had left his designated patrol area thirty-four separate times between June 3 and September 12,

2006. Ex. Y, at p.4.

In or about mid February 2007, Alali resumed regular duties as a patrol officer. Rule

56.1 Statement, at ¶66. But within a few short weeks, on or about February 27, 2007, yet

another civilian complaint (#6/07) was brought against Alali. *Id.* at ¶67. The complainant

alleged that Alali had stopped him and issued a summons only because of a dispute between

_____

[1] The criminal charges against Veras were eventually withdrawn by the District Attorney's Office, and on December 11, 2007, Veras initiated a civil action against the City and Araz Alali, Docket No. 07 CV 11172. Rule 56.1 Statement, at ¶64. In his complaint, of which this Court may take judicial notice, Veras alleged that Alali abused his authority as a police officer, used excessive force and subjected Veras to a false arrest in retaliation for Veras having filed a civilian complaint against Alali. Subject to the approval of the New Rochelle City Council, the City agreed to pay a monetary settlement to resolve Veras's case. *Id.* at ¶65.

2004485.1

Alali and the complainant about work the complainant had performed on an apartment owned by Alali. *Id.* Additional civilian complaints alleging that Alali acted rudely and discourteously during traffic stops were filed on or about July 31, 2007 (#17/07) and August 3, 2007 (#18/07). *Id.* at ¶71.

On September 11, 2007, Captain Gazzola preferred a second set of disciplinary charges against Alali. Rule 56.1 Statement, at ¶90; Ex. BB. The charges allege that Alali (i) failed to maintain and make required entries in his Department-issued memo book on specific tours during May 2007; (ii) left his assigned post while working during the second tour of duty on July 4, 2007; (iii) failed to properly and promptly answer the radio while on duty on July 4, 2007; (iv) failed to make proper memo book entries for his tour of duty on July 4, 2007; and (v) left his home without prior authorization when out on sick leave on August 14, 2007. *Id.* The hearing on these charges commenced April 3, 2008, but has not yet concluded. *Id.* at 92.

Meanwhile, on March 29, 2008, the hearing officer assigned to hear and report on the first set of disciplinary charges issued her report and recommendations. Rule 56.1 Statement, at ¶91. The hearing officer found all charges against Alali were sustained and recommended a penalty of 30 days suspension without pay. *Id.* In language fully applicable to the instant case, the hearing officer described Alali as follows:

> Officer Alali has a history of disciplinary infractions similar to the violations with which he is charged now. Although some of the infractions . . . may seem minor, together they paint a picture of an insubordinate police officer who only follows the rules when he wants to. . . . . The police force of a major metropolitan area must maintain command discipline. It has to be able to expect that its officers can be depended upon to be where they are assigned to be at all times and to follow the rules.

Ex. CC, at pp.19-20. Indeed, in his deposition in the instant case, Alali admitted that on at least seven (7) occasions during the first six months of 2007, he simply went home "sick" receiving

-6-

assignments or comments that he perceived to be degrading. Ex. J, Part II, at 44:5-45:18.

Most recently, on or about May 5, 2008, Commissioner Carroll accepted the hearing officer's recommendation and Alali was suspended without pay for 30 days. Rule 56.1 Statement, at ¶93.

B.    The Allegations and Proceedings in *Alali I*

Alali filed the complaint in *Alali I* on February 21, 2007. Rule 56.1 Statement, at ¶17. The complaint alleged that, starting shortly after being hired by the City of New Rochelle in 2002, Alali was subjected to discriminatory name calling, given what he believed to be demeaning (low level) assignments and unfairly judged "below standards" on job performance evaluations, all because of his alleged Iraqi national origin. Ex. A, at ¶¶7-8. Alali claimed that on February 12, 2007, he notified Carroll and Gazzola that he had filed a charge of discrimination with the EEOC. Ex. A, at ¶12. Alali alleged that, in retaliation, Carroll and Gazzola preferred disciplinary charges against Alali on February 15, 2007.[2] Ex. A, at ¶13. The complaint in *Alali I* alleged a violation of 42 U.S.C. §1981; a violation of the equal protection clause of the 14th Amendment; a selective prosecution in violation of the 14th amendment; a violation of Title VII, 42 U.S.C. §2000e *et seq.*; and (v) a violation of Section 296 *et seq.* of the New York State Executive Law. Rule 56.1 Statement, at ¶18.

After taking Alali's deposition, the defendants in *Alali I* – Captain Gazzola, Commissioner Carroll and the City -- filed a motion for summary judgment on grounds of qualified and absolute immunity. Rule 56.1 Statement, at ¶20. The motion was supported by a Rule 56.1 Statement setting forth, *inter alia,* background facts concerning Alali's employment

---

[2]    As noted above, the charges preferred on February 15, 2007 addressed the reckless driving incident that occurred on June 15, 2006. Work on drafting the charges began shortly after August 29, 2006, when Alali declined to accept proffered command discipline of the loss of a single day of leave. Rule 56.1 Statement, at ¶85.

-7-

with the NRPD, including a listing of civilian complaints filed and command discipline imposed against Alali. *Id.*; Ex. C. Alali's opposition to the motion consisted, *in its entirety*, of a single-page affirmation from his attorney. *Id.* at ¶21; Ex. D. Alali did not submit a counter Rule 56.1 statement or otherwise dispute any of the facts set forth in the *Alali I* Rule 56.1 Statement. *Id.* at ¶21. Pursuant to Local Rule 56.1, the factual statements asserted in the *Alali I* Rule 56.1 Statement are deemed admitted by Alali.

By memorandum and order dated January 31, 2008, the Court (Brieant, J.) granted the defendants' motion for summary judgment and directed the Clerk to enter a final judgment dismissing all claims against all defendants in *Alali I.* Rule 56.1 Statement, at ¶23; Ex. E. The Court held that Commissioner Carroll and Captain Gazzola were protected by the doctrine of *absolute* immunity against discrimination claims based upon the preferment of disciplinary charges. Ex. E. In addition, the Court held that Carroll and Gazzola were protected by the doctrine of *qualified* immunity from Alali's claims under 42 U.S.C. §§1981 and 1983, as well as N.Y. Executive Law §296. *Id.* The Court further held that Alali failed to state a claim against the City under Sections 1981 or 1983, or pursuant to Title VII, 42 U.S.C. §2000e. *Id.* Although Alali filed a notice of appeal from the Court's order, upon the request of his attorneys, the appeal was withdrawn without prejudice to reactivate upon written notice on or before October 11, 2008. Rule 56.1 Statement, at ¶24.

C.    The Allegations and Proceedings in *Alali II*

Alali filed his complaint in the instant case (*Alali II*) on April 11, 2007, about six weeks after he filed the complaint in *Alali I.* Rule 56.1 Statement, at ¶25. *Alali II* asserts claims of illegal retaliation. In particular, Alali claims that he was subjected to retaliation for filing the EEOC complaint and the complaint in *Alali I.* Ex. G. Alali asserts violations of 42 U.S.C.

-8-

§2000e (Title VII); 42 U.S.C. §§1981 and 1983; and Section 296 *et. seq* of the New York State

Executive Law.  He named additional individual defendants, including Lieutenant Alberto

DeBara ("DeBara"), Sergeant Kyle Wilson ("Wilson"), Sergeant Edward Austin ("Austin"),

Lieutenant George Marshall ("Marshall"), Sergeant Humberto Morrell ("Morrell"), Sergeant

Matthew Brady ("Brady") and Deputy Commissioner Anthony Murphy ("Murphy").  *Id.*

Alali was deposed for purposes of qualified immunity on March 14 and April 4, 2008.

Rule 56.1 Statement, at ¶29.

## Argument

## POINT I

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON THE RETALIATION CLAIMS UNDER 42 U.S.C. §1981 AND SECTION 296 OF THE NEW YORK HUMAN RIGHTS LAW

A.     Relevant Standards for Qualified Immunity

The standards applicable to a motion seeking qualified immunity from suit were set forth

in *Munafo v. Metropolitan Transp. Auth.,* 285 F.3d 201 (2d Cir. 2002):

> A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable[] . . . in light of the legal rules that were clearly established at the time it was taken.

*Id.* at 210 (internal quotes and citations omitted).

Qualified immunity protects "all but the plainly incompetent or those who knowingly

violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  If a government official is not "on

notice that his conduct would be clearly unlawful, summary judgment based on qualified

immunity is appropriate."  *Saucier v. Katz,* 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (1981).

- 9-

The first step in the qualified immunity analysis is to determine whether the individual's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Cerrone v. Brown,* 246 F.3d 194, 199 (2d Cir. 2001) (internal quotes omitted). If that is the case, qualified immunity is still available if it was "objectively reasonable" for the official to have believed that his actions were lawful at the time of the challenged conduct. *Id.*

The general proposition that Section 1981 prohibits national-origin discrimination is not sufficient to deny a motion for summary judgment on grounds of qualified immunity. *Peries v. New York City Board of Ed.,* 2001 U.S. Dist. LEXIS 23393, at *23 (E.D.N.Y. 2001). Rather, the analysis must be made on a more fact-specific level to determine whether law prohibiting the specific conduct alleged was "clearly established" at the relevant time. *Id.* at *24; *see, e.g., Wang v. State Univ. of New York, etc.,* 470 F. Supp.2d 178 (E.D.N.Y. 2006) (granting qualified immunity on national-origin discrimination claims). In this regard, when evaluating a qualified immunity motion, a district court must do more than review the totality of the circumstances alleged, and instead "particularize either the claims or facts relevant to each individual defendant." *Hill v. Taconic Dev. Disabilities Servs. Office,* 2003 U.S. App. LEXIS 11, at *6 (2d Cir. Jan. 2, 2003). Because -- indeed "[p]recisely because [--] 'qualified immunity analysis depends upon an individualized determination of the misconduct alleged,' . . . courts are obliged to consider whether the facts adduced against [each] particular defendant could establish 'a violation of a constitutional right at all,' and if so, whether the defendant's actions were objectively reasonable in light of then clearly established law." *Id.* at *6-7 (internal cites omitted).

B.    Legal Standards for a Claim of Retaliation under 42 U.S.C. §1981

"In order to establish a claim of retaliation cognizable under §1981, plaintiff must show

that she was (1) engaged in an activity protected under anti-discrimination statutes, (2) the

defendant was aware of plaintiff's participation in the protected activity, (3) the defendant took

adverse action against plaintiff based upon this activity, and (4) a causal connection existed

between plaintiff's protected activity and the adverse action taken by defendant." *Racker v. St.*

*Bonaventure Univ.,* 2005 U.S. Dist. LEXIS 32110, at 26 (W.D.N.Y. June 28, 2005), citing

*Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001).  Personal involvement is a pre-

requisite to hold any individual defendant liable under Section 1981.  *See Ifill v. United Parcel*

*Service,* 2005 U.S. Dist. LEXIS 5230, at *8 (S.D.N.Y. March 29, 2005), citing *Whidbee v.*

*Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 75 (2d Cir. 2000).  Finally, courts analyze claims

under 42 U.S.C. §1981 and Section 296 *et seq.* of the New York State Executive Law using the

same legal standards.  *Demoret v. Zegarelli,* 451 F.3d 140, 152-53 (2d Cir. 2006); *DuBois v.*

*Brookdale Univ. Hosp. & Med. Ctr.,* 29 A.D.3d 731 (2d Dep't 2006).

Alali sets forth a series of allegedly retaliatory acts in paragraphs 18(a) through 18(j) of

the complaint.  Ex. G.  In paragraph 18(a), Alali alleged that on February 21, 2007, Lieutenant

DeBara assigned him to a fixed hospital post normally assigned to probationary and/or junior

officers.  *Id.,* at ¶18(a).  In paragraph 18(b), Alali alleged that when he asked Sergeant Wilson

why DeBara had given him that assignment, Wilson responded by stating:  "Get the fuck out of

my face now Raz.  Not another fucking word, get out of my face."  *Id.,* at ¶18(b).  In paragraph

18(c), Alali alleged that subsequently on February 21, 2007, DeBara told Alali that going

forward he would be assigned to a list of what Alali considered to be degrading assignments,

- 11-

including driving a "utility car," directing traffic, watching suicidal prisoners, dispatching, and transporting prisoners to the County Jail. *Id.,* at ¶18(c).

In paragraph 18(d), Alali alleged that on March 7, 2007, Lieutenant DeBara assigned him to a fixed patrol post in the snow, and that when Alai asked DeBara why he was getting the assignment, DeBara responded, "because we could put you anywhere Bin Laden." Ex. G, at ¶18(d). In paragraph 18(e), Alali alleged that later on March 7, 2007, he asked Sergeant Morrell why he had been given the fixed foot patrol post on a snowy day, and Morrell responded, because "you are not above scrutiny and I don't like you, ok, so hurry up and go outside. It's really cold out – bundle up." *Id.* at ¶18(e). In paragraph 18(f), Alali alleged that on March 8, 2007, Sergeants Austin and Morrell advised Alali that he would be routinely given "undesirable assignments" because of Alali's below-standards job evaluation. Morrell, allegedly, told Alali that this was pursuant to instructions from Captain Gazzola and Lieutenant Marshall. *Id.* at ¶18(f).

In paragraph 18(g), Alali alleged that on March 21, 2007, he received a memo from Captain Gazzola rejecting Alali's challenge to a performance evaluation authored by Sergeant Austin which rated Alali "below standards." Ex. G, at ¶18(g). In paragraph 18(h), Alali alleged that Captain Gazzola delivered a memorandum to Alali advising him that, as a result of his below standards rating, Alali would not be entitled to overtime work, to perform special duty assignments, to engage in tour switches with other officers, or be posted to specialized unit assignments. *Id.* at ¶18(h). In paragraph 18(i), Alali alleged that on April 7, 2007, Austin assigned Alali to perform dispatch functions within the Department's communications room. Alali then claims that Austin said, "It looks like you are going backwards like the good old times." He also claims that Sergeant Brady said, "you better get a good lunch at 800 [hours]

since you won't be able to leave the [radio] room, good luck." *Id.* at ¶18(i). Finally, in

paragraph 18(j), Alali alleged that on April 8, 2007 (Easter Sunday), Sergeant Wilson assigned

Alali to work "with civilian employees of the Department," and when Alali asked him why,

Wilson responded, "You are an Arab and its Easter.  Camel jockey's don't celebrate Easter."

As demonstrated below, even assuming the truth of the above allegations, as expanded by

Alali's deposition testimony, the Individual Defendants are entitled to qualified immunity.

C.     Commissioner Carroll is Entitled to Qualified Immunity

Broadly construed, Alali's allegations describe that he was subject to discriminatory

name calling, given what he considered "undesirable" assignments more befitting a junior or

probationary officer, denied specialized training and incorrectly evaluated as being "below

standards."  However, Alali has not alleged, or testified, that Commissioner Carroll was

personally involved in such conduct, much less that Carroll acted in specific retaliation for the

filing of the EEOC charge or the complaint in *Alali I*, both of which Alali is required to establish

to prevail on his retaliation claim.

Moreover, in light of the decision in *Alali I*, Alali cannot prove that he has suffered an

"adverse employment action" on any of the facts alleged in the instant case, concerning

Commissioner Carroll or any of the other Individual Defendants.  Specifically, in *Alali I*, this

Court held:

- That even assuming the truth of the claim that Alali was called "terrorist," "bin laden," "camel jockey" and the like, such name-calling, while inappropriate and rude, "does not rise to the level of violating §1981."  Ex. E, at 8, citing *Payami v. City of New York,* 2007 U.S. Dist. LEXIS 25851 (S.D.N.Y. Mar. 28, 2007).

- That Alali "has not shown what specialized training he was denied," and that the claim that he was denied such training "is insufficient to allege a violation of Plaintiff's constitutional rights."  Ex. E, at 9.

- That despite Alali's claim that he was falsely given below standard job evaluations, such evaluations were "reasonable in light of complaints and command discipline letters received during each relevant time period." Ex. E, at 9.

- That Alali's complaints of being assigned to work as a dispatcher and forbidden to operate a police vehicle or interact with the public were reasonable in light of pending investigations, and that such assignments therefore did not violate "any established law." Ex. E, at 10.

- That an employee's personal perception that a particular job is degrading or humiliating is not sufficient to establish a discrimination claim, and thus Alali's complaint that he was assigned to issue parking tickets, walking posts and other subjectively "degrading" assignments does not allege a violation of any federal law or right. Ex. E, at 10, citing *Williams v. R.H. Donnelley Corp.,* 368 F.3d 123, 128 (2d Cir. 2004).

- And that the various allegedly false investigations of Alali were "based on at least some credible evidence of [Alali's] violation of the NRPD Rules and Regulations, and that the NRPD has "the authority, *and the duty,* to conduct such inquires when an officer receives civilian complaints and internal command disciplines for violations of the Police Manual." Ex. E, at 10-11 (emphasis added).

\* \* \*

These findings are binding on Alali in the instant action under the doctrine of collateral estoppel because the factual and legal issues raised in *Alali I* are identical, the issues were necessarily decided on the merits and Alali had a full and fair opportunity to litigate the Court's decision. *Burkybile v. Board of Ed.,* 411 F.3d 306, 313 (2d Cir. 2005); *Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 349, 690 N.Y.S.2d 478, 482 (1999).

Because Alali cannot establish the Commissioner's personal involvement in any of the alleged retaliatory conduct, Commissioner Carroll is entitled to qualified immunity on the retaliation claim under 42 U.S.C. §1981, as well as under Section 296 *et seq.* of the New York State Executive Law. In addition, to the extent Alali asserts a claim against Commissioner Carroll for preferring disciplinary charges on February 15, 2007 in retaliation for Alali filing his

2004485.1

EEOC charge, this Court already ruled in *Alali I* that Commissioner Carroll is entitled to absolute immunity from any such claim. Ex. E, at 5-6.

D.    Deputy Commissioner Murphy is Entitled to Qualified Immunity

There are two allegations against Deputy Commissioner Murphy. First, Alali claims that Murphy preferred frivolous, retaliatory disciplinary charges, Ex. G, at ¶16. Second, Alali claims that in furtherance of a retaliatory plan, Murphy withheld tuition reimbursements funds to which Alali was otherwise entitled. *Id.* at ¶19.

Regarding the disciplinary charges, this Court already decided in *Alali I* that any individual defendant facing a claim based on the preferral of disciplinary charges is entitled to absolute immunity. Ex. E, at 5-6. Moreover, Alali failed to come forward with any evidence that Murphy signed or had anything to do with the disciplinary charges preferred. Ex. E.

Alali's claim that Deputy Commissioner Murphy illegally retaliated against him by withholding tuition reimbursement funds also fails. Article X, Section 11 of the agreement between the City and the New Rochelle Police Association ("PBA") contains a tuition reimbursement plan. Rule 56.1 Statement, at ¶116. Under the plan, officers are entitled to reimbursement, on certain conditions, for college-level course work credited towards an undergraduate or graduate degree in criminal justice or public administration. *Id.* at ¶117. To be eligible for reimbursement, course work must be approved in advance by the Police Commissioner, successfully completed, and the officer must further submit proof of course cost, content and grade received. *Id.* at ¶118. The plan, however, does not guaranty 100 percent reimbursement, even if a course in an appropriate subject is successfully completed. Rather, section 11(G) of the plan states: the "total amount of City tuition reimbursement that may be

approved for the unit membership as a whole shall not exceed $30,000 for 2005 and $40,000 per year effective 2006." *Id.* at ¶119.

Alali applied to the Department for permission to receive reimbursement for "part or all of the fees and tuition" for classes he planned to take at Iona College. His applications were submitted on November 11, 2005, February 23, 2006, August 13, 2006, November 2006, February 15, 2007 and August 8, 2007. Rule 56.1 Statement, at ¶¶120-125; Exs. MM-RR. Each application was granted by Commissioner Carroll. *Id.*

Alali admitted that the tuition reimbursement program did not provide for full reimbursement of all tuition costs. Rule 56.1 Statement, at ¶126. Alali further admitted that he did not know whether the amounts he claims are owed to Iona College represent a portion that the Department was supposed to pay, or that Alali was individually obligated to pay. *Id.* at ¶127. And Alali further admitted that he did not personally make any payments to Iona College for tuition for the years 2005, 2006 and 2008, and regarding 2007, stated "I do not believe so." *Id.* at ¶128.

The logical premise of Alali's retaliation claim based on the alleged failure to reimburse tuition is that the Department, in fact, failed to do so. However, Alali admittedly did not make any personal payments to the college and cannot say that amounts allegedly owed to Iona are based on the Department's, as opposed to his own, failure to pay. In addition, to prevail on his retaliation claim, Alali must demonstrate that Deputy Commissioner Murphy was presented with a bill from Iona College sometime between February 12, 2007 and April 11, 2007, and cognizant of the EEOC complaint and the complaint in *Alali I,* decided to deny Alali reimbursement under the program. Given Alali's admissions that he failed to pay his own share of Iona's bills, and lack of knowledge concerning the City's payments, Alali cannot prevail on this claim.

- 16-

For the above reasons, Deputy Commissioner Murphy is entitled to qualified immunity.

E.    Captain Gazzola is Entitled to Qualified Immunity

The only allegations involving Captain Gazzola in the *Alali II* complaint are that Gazzola rejected Alali's challenge to a below-standards evaluation authored by Sergeant Wilson, Ex. G, at ¶18(g), and that, the next day, Gazzola wrote a memorandum to Alali stating that, as a result of his below-standards rating, Alali would be forbidden to work overtime, special duty assignments, engage in tour switches or be considered for specialized unit assignments. *Id.* at ¶18(i). In his deposition, Alali also claimed that Gazzola sent an e-mail to Alali's supervisors directing that they limit Alali's duty assignments. *Alali I* Dep. (Ex. B), at 60:17-61:12.

This Court already ruled in *Alali I,* however, that Alali's below-standards rating was justified in light of the large number of civilian complaints and command discipline letters received, and that limiting Alali's duties and assignments did not violate any established law. Ex. E, at 9-10. In addition, as this Court already held in *Alali I,* Captain Gazzola is entitled to absolute immunity on any claim based on the preferral of disciplinary charges. Ex. E, at 5-6. Therefore, Captain Gazzola is entitled to qualified immunity.

F.    Lieutenant Marshall is Entitled to Qualified Immunity

The only allegation against Lieutenant Marshall is that sometime prior to March 8, 2007, he directed Sgt. Morrell and other supervisors to give Alali undesirable assignments. Ex. G, at ¶18(f). However, when asked if Lieutenant Marshall was even aware of the EEOC Charge or the filing of the complaint in *Alali I* at such time, all Alali could say was, "I don't presently recall." Dep. (59) Part I, at 137:18-23. Moreover, even if Alali could respond with admissible evidence about what Lieutenant Marshall knew, this Court has already held in *Alali I* that, in light of pending investigations of civilian complaints against Alali, restricted assignments were

reasonable and did not violate any of Alali's constitutional rights. Ex. E, at 10. Accordingly,

Lieutenant Marshall is entitled to qualified immunity.

G.    Lieutenant DeBara is Entitled to Qualified Immunity

Alali alleges that during role call at the start of his (8:00 a.m. to 4:00 p.m.) tour on

February 21, 2007, Lieutenant DeBara assigned Alali to a fixed hospital post in retaliation for

Alali's prior filing of the EEOC charge and the filing, that same day, of the complaint in *Alali I.*

Ex. G, at ¶18(a); Dep (Ex. J) Part II, at 18:14-19:3. Alali further alleges that later in the day,

while DeBara visited Alali at the hospital, he told Alali that he would be assigned to ride in a

"utility car," direct traffic, watch suicidal prisoners, transport prisoners to the County Jail and

work in the communications room in Headquarters, all of which Alali considered "degrading"

and beneath his station as a sworn member of the Department. Ex. G, at ¶18(c); Dep (Ex. J) Part

II, at 19:14-24.

The contention that DeBara's actions were taken in retaliation for the filing of the EEOC

complaint and/or the filing of *Alali I* cannot be sustained. When asked if DeBara was aware of

the EEOC charge when he interacted with Alali on February 21, 2007, all Alali could muster

was, "I don't presently recall." Dep (Ex. J) Part I, at 33:7-11. And regarding the *Alali I*

complaint, by Alali's own account he did not tell DeBara that the complaint had been filed until

*after* DeBara gave him the hospital post assignment. *Id.* at 34:11-24. In fact, Alali later

conceded that he was not really sure what he told DeBara at that time. *Id.* at 41:22-42:3. Alali's

contention that DeBara gave him "degrading" assignments in retaliation for the EEOC Charge

and/or the *Alali I* complaint is logically flawed and has no merit.

Moreover, even if Alali could establish the logical predicate for a retaliation claim – *i.e.,*

that DeBara was aware of the EEOC Charge and the *Alali I* complaint before February 21, 2007 -

- 18-

- the allegedly "degrading" assignments do not constitute adverse employment action. This

Court already held in *Alali I* that restricted assignments were reasonable and did not violate any

of Alali's rights given the pending internal affairs investigations against Alali, Ex. E, at 10, and

further that an employee's personal perception that a particular assignment is degrading does not

support a claim of employment discrimination. *Id.,* citing *Williams v. R.H. Donnelley Corp.,* 368

F.3d 123, 128 (2d Cir. 2004).

On March 7, 2007, Alali alleges that Lieutenant DeBara assigned him to a foot patrol in

snowy conditions, and that when Alali complained about the assignment DeBara responded, "we

could put you anywhere Bin Laden." Ex. G, at ¶18(d). DeBara's comment, assuming that he

said it, was rude, but this Court already held in *Alali I* that such comments do not rise to the level

of a violation of Section 1981, Title VII or the Constitution. Ex. E, at 8, citing *Payami v. City of

New York,* 2007 U.S. Dist. LEXIS 25821 (S.D.N.Y. Mar. 28, 2007). It is worth noting that Alali

never even went on the foot patrol, but instead took the rest of the day off sick, Dep. (Ex. J), Part

I, at 51:21-23, as was his custom when he received an assignment that he did not like. *Id.,* Part

II, at 44:5-45:18.

H.    Sergeant Wilson is Entitled to Qualified Immunity

Alali alleges that on March 7, 2007, he asked Sergeant Wilson why he had been given the

fixed hospital post assignment back on February 21, 2007, and Sergeant Wilson responded, "get

out of my face now Raz. Not another fucking word, get out of my face." Ex. G, at ¶18(b); Dep.

(Ex. J) Part II, at 19:3-11; Part I, at 40:9-23. Alali then alleges that on Easter Sunday, Sergeant

Wilson assigned Alali to work with civilian employees, and when Alali complained, Sergeant

Wilson said, "you are an Arab and its Easter. Camel Jockeys don't celebrate Easter." Ex. G, at

¶18(j); Dep (Ex. J) Part II, at 37:2-11, 40:2011, 64:22-65:5.

In his deposition, Alali did not testify that Sergeant Wilson specifically was aware of either the EEOC complaint or the complaint in *Alali I*. He only assumed that to be the case based on changes in his duty assignment after February 15, 2007. Dep (Ex. J) Part I, at 115:10-116:6; Dep (59) Part II, at 89:23-90:16. The logical predicate for a retaliation claim is therefore missing. Moreover, even assuming Alali could prove what Wilson knew at the relevant time, this Court already held in *Alali I* that Wilson's comments, though rude, do not rise to the level of a violation of Section 1981 or the Constitution. Ex. E, at 8, citing *Payami v. City of New York*, 2007 U.S. Dist. LEXIS 25821 (S.D.N.Y. Mar. 28, 2007). Sergeant Wilson is therefore entitled to qualified immunity from suit.

I.     Sergeant Austin is Entitled to Qualified Immunity

Alali claims that on March 8, 2007, Sergeant Austin told Alali that he would be getting "undesirable" assignments because of his below-standards rating. Ex. G, at ¶18(f). On April 7, 2007, Alali claims he was assigned to the communications room, and that Sergeant Austin allegedly told him, it "looks like you are going backwards like the good old times." Ex. G, at ¶18(i); Dep (Ex. J) Part II, at 21:24-22:14; 39:2-14.

Again, Alali did not testify that Austin specifically was aware of either the EEOC or the *Alali I* complaints when these alleged statements were made. He only talked about "word of mouth," and based on the generalized claim that "everyone" knew about the complaints, he assumed that Austin also knew. Dep (Ex. J) Part II, at 63:14-64:22. This is not admissible evidence of what Austin knew at the time. But even assuming that Austin was aware of the EEOC and *Alali I* complaints, this Court already held in *Alali I* that restricted assignments were reasonable and did not violate Alali's rights in light of the pending internal investigations against him. Ex. E, at 10.

2004485.1

J.    Sergeant Morrell is Entitled to Qualified Immunity

Alali claims that after he was assigned to the foot post on March 7, 2007 – *i.e.,* the foot post that Alali skipped because he went home sick – he asked Sergeant Morrell why he got the assignment, and Morrell responded, "you are not above scrutiny and I don't like you, ok, so hurry up and go outside. It's really cold out – bundle up." Ex. G, at ¶18(e). The next day, March 8, 2008, Alali claims that Sergeant Morrell advised Alali that he had been directed by Captain Gazzola and Lt. Marshall to limit Alali's assignments on the basis of Alali's below-standards evaluation. Ex. G, at ¶18(f); Dep (Ex. J) Part II, at 41:3-42:3.

Alali has failed to prove that Sergeant Morrell was specifically aware of the EEOC Charge or the *Alali I* complaint when these remarks were made. Dep (Ex. J) Part II, at 91:8-19. But even if he was, while Morrell's alleged comment might be unpleasant (and a bit sarcastic), it does not rise to the level of a violation of Section 1981, Title VII or the Constitution. Ex. E, at 8, 12, 13. Similarly, the Court has already held in *Alali I* that giving Alali restricted assignments was reasonable and did not violate his constitutional rights in light of pending investigations. *Id.* at 10.

K.    Sergeant Brady is Entitled to Qualified Immunity

Finally, Alali alleges that on April 7, 2007, after he had been assigned to work in the communications room, Sergeant Brady told him, "you better get a good lunch at 800 (hours) since you won't be able to leave the room, good luck." Ex. G, at ¶18(i). Again, Alali cannot present admissible evidence of what Sergeant Brady knew at the time. Dep (Ex. J) Part II, at 65:23-66:9. And even if he had been aware, the comment may be a bit sarcastic, but it does not rise to the level of a violation of Section 1981, Title VII or the Constitution. Ex. E, at 8, 12, 13.

2004485.1

Regarding all of the Individual Defendants, to the extent this Court finds that Alali has established a violation of a federal or constitutional right, the Individual Defendants are still entitled to qualified immunity because given Alali's remarkable history of civilian complaints and command discipline problems they could reasonably believe that the alleged conduct did not violate any such rights.

## POINT II

### THE INDIVIDUAL DEFENDANTS ARE
### ENTITLED TO QUALIFIED IMMUNITY ON
### THE RETALIATION CLAIM UNDER 42 U.S.C. §1983

"In order to prove a §1983 claim for retaliation, a plaintiff bears the burden of demonstrating that [his] engagement in protected conduct was at least a substantial or motivating factor in the adverse action taken against [him] by the state defendant." *Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir. 1998) (internal quotes and citations omitted). "If the plaintiff satisfies [his] burden, the defendant has the opportunity to escape liability by proving that he would have taken the same adverse action in the absence of the protected conduct." *Id.* (internal quotes and citations omitted).

Here, Alali's alleged protected conduct is his filing the EEOC complaint and the complaint in *Alali I.* As demonstrated above, Alali cannot establish that most of the Individual Defendants were aware of either complaint when they allegedly took actions that Alali claims to be adverse. But even assuming that Alali could meet that burden, this Court has already held that the defendants were justified in giving Alali restricted assignments in light of ongoing investigations, that Alali's below-standards evaluations were justified in light of the alarming number of civilian complaints, and that references to "bin laden," "camel jockey," and similar terms, while unpleasant and rude, did not amout to a violation of Alali's civil rights. Ex. E, at p.8.

- 22-

2004485.1

As with any police department, the NRPD must monitor its own members and take appropriate corrective and, if necessary, disciplinary action when an officer acts inappropriately. Alali's history with the NRPD is a case study of an officer who has problems dealing with the public and following departmental rules and regulations. *See Vann v. The City of New York,* 72 F.3d 1040, 1050-51 (2d Cir. 1995) (failure to investigate civilian complaints could lead to a finding of deliberate indifference); *Davis v. Lynbrook Police Dep't,* 224 F. Supp.2d 463, 479-80 (E.D.N.Y. 2002) (same). Alali's alleged membership in a protected class should not insulate him from investigation nor give him license to violate Departmental rules with impunity.

## POINT III

### THE CITY IS ENTITLED TO SUMMARY JUDGMENT ON THE RETALIATION CLAIMS UNDER SECTIONS 1981 AND 1983

To establish liability against the City on his claims brought pursuant to 42 U.S.C. §1981 and 1983, Alali must establish that his injuries were directly caused by a municipal policy, custom or practice. *Monell v. City of New York Dep't of Social Servs.,* 436 U.S. 658 (1978); *Sullivan v. Newburgh Enlarged School Dist.,* 281 F. Supp.2d 689, 708 (S.D.N.Y. 2003) (Section 1981 claim must be brought under framework of 42 U.S.C. §1983). A municipality cannot be liable under 42 U.S.C. §1981 or 1983 under the theory of *respondeat superior. Id.* This Court already held in *Alali I* that Alali has failed to establish a municipal policy, practice or custom that could support a Section 1981 or Section 1983 claim against the City. Ex. E, at 13. That holding is binding on Alali in the instant case under the doctrine of collateral estoppel.

Moreover, Alali has not alleged, nor did he testify, in the instant case as to any City policy, custom or practice that would create the basis for municipal liability under Section 1981or Section 1983. In addition, where, as here, defendants are entitled to summary judgment dismissing Alali's claim under 42 U.S.C. §1981, any claim brought under Section 296 of the

- 23-

N.Y. State Executive Law should also be dismissed. *See Demoret,* 451 F.3d at 152-53.

Accordingly, the City of New Rochelle is entitled to summary judgment on all Alali's retaliation

claims brought under 42 U.S.C. §§ 1981 and 1983, as well as under Section 296.

**POINT IV**

**THE DEFENDANTS ARE ENTITLED
TO SUMMARY JUDGMENT ON
PLAINTIFF'S TITLE VII CLAIM**

"[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski,* 232 F.3d

119, 120 (2d Cir. 2000). Therefore the complaint does not set forth a violation of Title VII as

against any of the Individual Defendants.

Regarding the City, Alali is bound by this Court's ruling in *Alali I* that he failed to allege

a viable claim against the City under Title VII. Ex. E, at 13. In the alternative, Alali has already

filed a separate action against the City alleging violations of Title VII for the same factual

incidents alleged in this case. *Alali v. City of New Rochelle,* 07 Civ. 9912 (CLB) ("*Alali III*").

The Title VII claim against the City in the instant action is purely duplicative of the Title VII

claim set forth in *Alali III*, and should therefore be dismissed. *Curtis v. Citibank, N.A.,* 226 F.3d

133, 138-39 (2d Cir. 2000).

2004485.1

### Conclusion

For the reasons set forth above, the Defendants' motion should be granted in its entirety.

Dated: White Plains, New York
    May 29, 2008

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants

By:  Lalit K. Loomba (LL 9755)

3 Gannett Drive
White Plains, NY  10604
(914) 323-7000
File No. 07367.00059

- 25-

2004485.1