UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ARAZ ALALI,

                              Plaintiff,                    07 Civ. 2916 (CLB)

        -against-                                          **PLAINTIFF'S
                                                           COUNTER-STATEMENT
ALBERTO DeBARA, individually, KYLE WILSON,                 OF MATERIAL FACTS
individually, EDWARD AUSTIN, individually,                 PURSUANT TO LOCAL
GEORGE MARSHALL, individually, HUMBERTO                    RULE 56.1**
MORRELL, individually, MATTHEW RADY, individually,
ANTHONY MUPRHY, individually, ROBERT GAZZOLA,
individually, PATRICK J. CARROLL, individually, and
the CITY OF NEW ROCHELLE, New York,

                              Defendants.

------------------------------------------------------------------X


        Plaintiff submits the following Counter-Statement of Material Facts in Dispute which

contains a concise statement of the material facts which are in dispute.  Following Plaintiff's

56.1 Statement, Plaintiff has responded to each of the statements contained in Defendant's 56.1

Statement.

                **PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS**

**The Parties**

        1.      Plaintiff Araz Alali is a citizen of the United States, a domiciliary of the State of

New York, and a resident of the Northern Counties (6/25/07 Alali Dep. 4, Nicaj Aff. Ex. 27;

3/14/08 Alali Dep. 7; Nicaj Aff. Ex. 29).

        2.      Alali has been employed as a Police Officer by the City of New Rochelle, New

York since February 2002, having previously been employed as such by *inter alia* the City of

New York (6/25/07 Alali Dep. 8-9, Nicaj Aff. Ex. 27). Alali is of Iraqi national origin and as

such is the only Police Officer of Middle Eastern descent who has ever been employed by the

City of New Rochelle (hereinafter alternatively the "City") (6/25/2007 Alali Dep. 4, Nicaj Aff.

Ex. 27).

      3.     Defendant Alberto DeBara (hereinafter "DeBara"), who is sued in his individual

and personal capacities only, at all times relevant, was employed by the City as a police

Lieutenant (Loomba Decl. Ex. G ¶4,; Loomba Decl. Ex. I ¶4).

      4.     Defendant Kyle Wilson (hereinafter "Wilson"), who is sued in his individual and

personal capacities only, at all times relevant was employed by the City as a police Sergeant

(Loomba Decl. Ex. G ¶5,; Loomba Decl. Ex. I ¶5).

      5.     Defendant Edward Austin (hereinafter "Austin"), who is sued in his individual

and personal capacities only, at all times relevant was employed by the City as a police Sergeant

(Loomba Decl. Ex. G ¶6,; Loomba Decl. Ex. I ¶6).

      6.     Defendant George Marshall (hereinafter "Marshall"), who is sued in his

individual and personal capacities only, at all times relevant was employed by the City as a

police Lieutenant (Loomba Decl. Ex. G ¶7,; Loomba Decl. Ex. I ¶7).

      7.     Defendant Humberto Morrell (hereinafter "Morrell"), who is sued in his

individual and personal capacities only, at all times relevant to this complaint was employed by

the City as a police Sergeant (Loomba Decl. Ex. G ¶8; Loomba Decl. Ex. I ¶8).

      8.     Defendant Matthew Brady (hereinafter "Brady"), who is sued in his individual

and personal capacities only, at all times relevant to this complaint was employed by the City as

a police Sergeant (Loomba Decl. Ex. G ¶9,; Loomba Decl. Ex. I ¶9).

9.      Defendant Anthony Murphy (hereinafter "Murphy"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as Deputy Police Commissioner (Loomba Decl. Ex. G ¶10; Loomba Decl. Ex. I ¶10).

10.     Defendant Robert Gazzola (hereinafter "Gazzola"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as a police Captain by the City (Loomba Decl. Ex. G ¶11; Loomba Decl. Ex. I ¶11).

11.     Defendant Patrick J. Carroll (hereinafter "Carroll"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as Commissioner of Police (Loomba Decl. Ex. G ¶12; Loomba Decl. Ex. I ¶12).

12.     Defendant City of New Rochelle, New York (herein "City"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State of New York (Loomba Decl. Ex. G ¶13; Loomba Decl. Ex. I ¶13).

**The History of Discriminatory, Disparate and Abusive Treatment To Which Alali Was Subjected On the Basis of His National Origin, Ethnicity and/or Color**

13.     Commencing almost immediately following Alali's transfer to the City's Police Department, and continuing to date, he has been systematically and deliberately subjected to discriminatory and disparate treatment by reason of his national origin, ethnicity and/or color (Loomba Decl. Ex. A ¶7; 6/25/07 Alali Dep. 9-10, Nicaj Aff. Ex. 27).

14.     In that connection, Alali has repeatedly been addressed as: "terrorist"; "Ali Baba", "Camel Jockey" and *inter alia*, "Ali" (Loomba Decl. Ex. A ¶8; 6/25/07 Alali Dep. 10, 14-16, 81-82, Nicaj Aff. Ex. 27).   Gazzola and other supervisors repeatedly referred to Plaintiff as a Terrorist (6/25/07 Alali Dep. 13, Nicaj Aff. Ex. 27).

15.    Alali has also been referred to as Bin Laden (6/25/07 Alali Dep. 17-18, Nicaj Aff. Ex. 27).

16.    Plaintiff has repeatedly communicated with Carroll about biased acts such as these but Carroll has failed to do anything about them (6/25/07 Alali Dep. 25-26, Nicaj Aff. Ex. 27).

17.    Alali has repeatedly been denied any meaningful specialized training, which training is routinely provided by Defendants to Police Officers junior to Plaintiff in seniority due to his national origin, ethnicity and/or color (6/25/07 Alali Dep. 30-31, Nicaj Aff. Ex. 27). In fact, numerous officers who were junior to Plaintiff received the training (6/25/07 Alali Dep. 32, Nicaj Aff. Ex. 27).

18.    Moreover, Alali was forced to attend a seminar concerning "Tools for Tolerance Post 911", which assignment was calculated by Defendants to humiliate and embarrass Plaintiff since he alone has been the departmental target of systemic intolerance by reason of his ethnicity (6/25/07 Alali Dep. 40-43, Ex. 27).

19.    Consequently, Alali advised Captain Gazzola that he (Alali) did not want to attend the class because after being referred to as a terrorist, Ali Babi, Camel Jockey it was humiliating for him to attend that class (6/25/07 Alali Dep. 42-43, Nicaj Aff. Ex. 27). Gazzola clearly intended to embarrass and humiliate Alali by sending him to the seminar (6/25/07 Alali Dep. 44-45, Nicaj Aff. Ex. 27).

20.    Moreover, Alali has been systematically been given calculatedly false "below standard" job performance evaluations (when in fact his job performance has consistently been above average), replete with fabrications and/or falsehoods, which evaluations have served as Defendants' predicate for barring Plaintiff from working on an overtime basis - - thus causing

4

him substantial pecuniary losses (6/25/07 Alali Dep. 47-48, 51-52, Nicaj Aff. Ex. 27; 6/3/2006 Rebuttal, Nicaj Aff. Ex. 1; 2/2/07 Rebuttal, Nicaj Aff. Ex. 2; 6/22/07 Rebuttal, Nicaj Aff. Ex. 3). Plaintiff has repeatedly rebutted his evaluations (Id.)

21.     Defendants Wilson, Brady, Austin and Morrell advised Alali that Gazzola has ordered them to falsely issue below standard evaluations (6/25/07 Alali Dep. 52-56, Nicaj Aff. Ex. 27; 2/2/07 Rebuttal, Nicaj Aff. Ex. 2).

22.     Alali has been assigned for months at a time as a "dispatcher" in the Police Department's Communications Room - - even though the dispatcher function is civilian in nature and otherwise performed by non-police employees of the Department (6/25/07 Alali , Nicaj Aff. Ex. 27 56-59).

23.     Alali was also forced to work walking posts during a midnight to 8:00 a.m. tour of duty, in heavy rain and/or snow, when there otherwise is no walking post assigned on such a shift (6/25/07 Alali Dep. 78-80, 81, 83-85, Nicaj Aff. Ex. 27).  Sergeants advised Alali that this post was meant as punishment (6/25/07 Alali Dep. 85-86, Nicaj Aff. Ex. 27).

24.     Alali has also been forbidden, for substantial periods of time, to operate a police vehicle (6/25/07 Alali Dep. 89, Nicaj Aff. Ex. 27).

25.     Alali was also prohibited, for substantial periods of time, to interact with members of the public while on duty (6/25/07 Alali Dep. 94-96, Nicaj Aff. Ex. 27).

26.     Plaintiff has been prohibited, by reason of the false "below standard" job performance evaluations, to engage in so-called "mutual switches" of job duty assignments with other sworn members of the Police Department (6/25/07 Alali Dep. 68-69, 72 Nicaj Aff. Ex. 27; 7/10/07 Alali Dep. 145-46, Nicaj Aff. Ex. 28; 3/22/07 Communication, Nicaj Aff. Ex. 24; 3/27/07 Communication, Nicaj Aff. Ex. 5).

5

27.    Alali was subjected repeatedly to "investigations" of supposed wrong doing under circumstances where no wrong doing occurred and Defendants knew that no wrong doing had occurred (6/27/07 Alali Dep. 96-101, 103-109, Nicaj Aff. Ex. 27).

**Further Discrimination and Plaintiff's Protected Complaints of Discrimination**

[1]29.    On November 14, 2006, Alali wrote to Carroll to complain of retaliation and bias concerning his assignments (11/14/06 Memorandum, Nicaj Aff. Ex. 7)

30.    As a result of the foregoing discriminatory conduct, on January 7, 2007, Alali non-disruptively expressed to Carroll again that he was the subject of "[p]ersecution based on heritage" and that he was the subject of retaliatory actions "solely based upon [his] middle-eastern heritage" (7/10/07 Alali Dep. 133-34, Nicaj Aff. Ex. 28; 1/11/07 Communication, Nicaj Aff. Ex. 8).

31.    On February 2, 2007, Alali advised Gazzola in a rebuttal to one of many calculated false "below standard" job performance evaluations: "I am being singled out due to my heritage. Being the sole middle-eastern police officer has been hopeless" (2/2/07 Rebuttal, Nicaj Ex. 2). Alali further wrote that "[s]everal supervisors have told me that the reason I have received this below standard evaluation as well as other below standard evaluation[s] is a direct result of your [Gazzola's] dictation to the supervisors that I must be below standards. This only supports my affirmation of the biased and prejudicial treatment I have suffered while being the top-producing member of the department. It is become increasingly clear that I am being singled out due to my heritage (Id.).

---

[1] Paragraph "28" has been omitted.

6

32.    By reason of the continuing discriminatory treatment and the retaliation imposed because Alali expressed his opposition to that treatment, on February 12, 2007, he duly filed a Charge of Discrimination ("race", "color" and "national origin") with the EEOC (EEOC Complaint, Nicaj Aff. Ex. 13; See Defendants' 56.1 Statement ¶ 16 *infra*).

33.    Also on February 12, 2007, Plaintiff through counsel notified Defendants by fax of the EEOC filing and cautioned that "any retaliation causally the result of that filing is independently actionable in Federal Court for damages" (2/12/07 Letter, Nicaj Aff. Ex. 14; 4/4/08 Alali Dep. 86, Nicaj Aff. Ex. 30).

34.    At this point, Defendants had denied Plaintiff tuition reimbursement in the amount of $10,180 which was payable to Iona College for courses taken by Plaintiff in accordance with police departmental policy (7/10/07 Alali Dep. 134-39, Nicaj Aff. Ex. 28).

35.    On February 15, 2007, with a series of frivolous disciplinary charges for the stated objective of penalizing him through the forfeiture of one month's salary.  By way of contrast certain other members of the Police Department and personnel employed in the City's Court, who are known to Defendants to have committed both felonies and misdemeanors, have not been subjected to similar disciplinary action - - much less arrest/prosecution (2/15/07 Disciplinary Charges, Loomba Decl. Ex. L & Y).

36.    On February 16, 2007, Alali wrote to Carroll with a copy to the Internal Affairs Officer, Lieutenant Fortunado and PBA President Ed Hayes of the "Continual retaliation based on heritage" (2/16/07 Communication, Nicaj Aff. Ex. 9).  In that memorandum, Alali advised Carroll that Lieutenant Debara praised by telling him that Alali was "one of the best police officers this department ever had."  Furthermore,

7

[DeBara] also stated that as per Captain Gazzola I was to have the least
desirable assignments. He[DeBara]also stated that if there were even
officers working to cover the nine patrol sectors I was to work utility and
be sent all over the city to handle the least desirable jobs. I am very
uncomfortable and afraid in such a hostile work environment created by
this department and Captain Gazzolla. As I numerously called upon you
to stop this arbitrary . . .treatment of me solely based upon my heritage"

37.     On February 18, 2007 Alali again wrote to Carroll with a copy to

Fortunado and PBA President Edward Hayes concerning the "[c]ontinual retaliation

based on heritage" (2/18/07 Memorandum, Nicaj Aff. Ex. 11).

38.     As a result of the foregoing, on February 21, 2007, Plaintiff filed an action in this

Court Alali v. Gazzola, et al., 07 Civ. 1296 (CLB) (hereinafter "Alali I") asserting claims under

inter alia 42 U.S.C. §§1981, 1983 and 2000e et. seq.

**The Material Facts of Alali II Which is the Subject of Defendants' Current Motion**

39.     From February to April 2007, Alali's supervisors were Wilson, Morrell, Austin,

and Brady (3/14/08 Alali Dep. 27, Nicaj Aff. Ex. 29). Shortly after Alali I was filed in this

Court, all Defendants learned that he had filed a lawsuit (3/14/08 Alali Dep. 33-34, 122-23, Nicaj

Aff. Ex. 29).

40.     At roll call on February 21, 2007, and in the presence of a number of Plaintiff's

co-workers, DeBara intentionally assigned Plaintiff to a fixed hospital post (normally a post

assigned to either probationary and/or junior officers) to watch a prisoner - - despite the

availability of at least four probationary police officers any one of whom should have been given

that assignment (3/14/08 Alali Dep. 32, 35-36, 38-39, Nicaj Aff. Ex. 29). Debara advised him

that the reason he was doing so was because he could (3/14/08 Alali Dep. 40-41, Nicaj Aff. Ex.

29).

8

41.    When Alali inquired of Wilson as to why he was given the fixed hospital post when any of the four probationary officers should have been so assigned, Wilson responded (in the presence of several civilian members of the Police Department):

> "Get the fuck out of my face now Raz. Not another fucking word,
>
> get out of my face" (3/14/08 Alali Dep. 39-40, Nicaj Aff. Ex. 29; 4/4/08 Alali
>
> Dep. 18-19, Nicaj Aff. Ex. 30).

At the conclusion of Plaintiff's hospital post shift he was relieved at that post by a probationary police officer (Id.).

42.    Subsequently DeBara informed Plaintiff that prospectively he (Plaintiff) would be primarily assigned to a "utility car" - - a degrading assignment usually reserved for probationary officers, junior officers or officers being punished - - and in the event that utility car services were not required Plaintiff would be assigned to other such assignments including directing traffic, watching suicidal prisoners, performing civilian dispatch work, and transporting prisoners to the County jail (3/14/08 Alali Dep. 43-44, Nicaj Aff. Ex. 29; 4/4/08 Alali Dep. 19, Nicaj Aff. Ex. 30).

43.    At roll call on March 7, 2007, in the presence of a number of Plaintiff's co-workers, DeBara assigned Plaintiff to a fixed, foot patrol post in the snow - - to the laughter of Plaintiff's co-workers and despite the availability of a number of probationary police officers who should have been assigned to that post. When Plaintiff inquired of DeBara as to why he, rather than any of the probationary officers was given that degrading assignment, DeBara advised: "because we can, we could put you anywhere Bin Laden" (3/14/08 Alali Dep. 47-50, 55-56, Nicaj Aff. Ex. 29; 4/4/08 Alali Dep. 37-38, Nicaj Aff. Ex. 30; 3/07/07 Communication, Nicaj Aff. Ex. 10).

9

44.    DeBara was aware that Plaintiff was Middle-Eastern and of Iraqi descent (3/14/08 Alali Dep. 50-51, Nicaj Aff. Ex. 29)

45.    On the same day, when Plaintiff inquired of Morrell (who was serving as desk officer) as to why he, rather than a probationary police officer was put on that fixed post, Morrell responded: "because even though you are the most talented police officer you are not above scrutiny and I don't like you, ok, so hurry up and go outside. It's really cold out - - bundle up" (3/14/08 Alali Dep. 47-51, 55-56, Nicaj Aff. Ex. 29).

46.    On March 8, 2007, Austin and Morrell advised Plaintiff that he was routinely going to be given "undesirable assignments" because he (Plaintiff) was "a below standards officer" - - a descriptive falsely given to Plaintiff by reason of his skin color, national origin and/or ethnicity. In that connection Morrell further advised Plaintiff, in Austin's presence, that Gazzola and Marshall had both directed him (Morrell) as well as other supervisors to give Plaintiff "bad assignments" by reason of his being rated "below standards" (3/14/08 Alali Dep. 41-42, 137-38, Nicaj Aff. Ex. 29; 3/8/07 Communication, Nicaj Aff. Ex. 12).

47.    On March 21, 2007, Gazzola advised Plaintiff in writing that he (Gazzola) rejected Plaintiff's then pending challenge to a job performance evaluation as authored by Wilson in which Wilson falsely characterized Plaintiff as "below standards" (3/21/07 Memorandum, Nicaj Aff. Ex. 6)

48.    On March 22, 2007, Gazzola issued to Plaintiff a calculatedly false memorandum describing him (Plaintiff) as "below standard" and advising him that as a result of that status he was: barred from performing overtime work; forbidden to perform special detail assignments; forbidden to engage in tour switches with other officers; and precluded from consideration for any specialized unit assignments (3/22/07 Gazzola Communication, Nicaj Aff. Ex. 24). In April

10

2007, Austin and Morrell advised Alali that he was to be given undesirable assignments and issued below standard evaluation at the direction of Marshall and Gazzola (4/4/08 Alali Dep. 41-42, Nicaj Aff. Ex. 30).

49.    At roll call on April 7, 2007, in the presence of a number of Plaintiff's co-workers Austin deliberately assigned Plaintiff to perform the civilian functions of dispatching police vehicles from the Department's radio room - - despite the availability of four probationary police officers any one of whom should have been given that assignment instead. In that connection first Austin advised Plaintiff:

> "It looks like you are going backwards like the
>
> good old times",

and then Brady added: "you better get a good lunch at 800 [hours] since you won't be able to leave the [radio] room, good luck" (4/4/08 Alali Dep. 20-21, Nicaj Aff. Ex. 30).

50.    On April 8, 2007, Wilson assigned Plaintiff to work with civilian employees of the Department - - despite the availability of four probationary police officers any one of whom should have been given that assignment. When Plaintiff questioned Wilson as to why he rather than a probationary officer was given that degrading assignment, Wilson advised: "You are an Arab and its Easter. Camel jockeys don't celebrate Easter" (4/4/08 Alali Dep. 36-37, 38-40, Nicaj Aff. Ex. 30).

51.    In furtherance of Defendants' retaliatory plan Murphy, with the agreement, approval and/or condonation of Gazzola and Carroll has intentionally withheld from Plaintiff college tuition reimbursement funds to which he is entitled. As a result Plaintiff is presently in arrears on tuition payments to Iona College in the amount of approximately $17,000 (4/4/08 Alali Dep. 8-15, Nicaj Aff. Ex. 30; see also Plaintiff's response to ¶127 *infra*.

52.    By reason of the foregoing retaliatory taken by the Defendants as a result of Plaintiff's protected activities, which including an EEOC Charge being filed on February 12, 2007 and the filing of Alali I in this Court, on April 11, 2007, Plaintiff then filed Alali v. DeBara, et al., 07 Civ. 2916 (CLB)("Alali II") which is the subject of Defendants' current motion (4/11/07 Complaint, Loomba Decl. Ex. G).

**Plaintiff Continues to Oppose Discrimination and Retaliation Taken Against Him**

53.    On April 20, 2007, Plaintiff wrote Detective Lieutenant Fortunato concerning the failure of the Department to provide police back-up to assist him in an arrest. In pertinent respect, he wrote,

> [t]he purpose of this communication is to advise you that on 4/20/07 I was attempting to affect a lawful arrest on the defendant. . .Communications advised this officer that the aforementioned defendant did have 6 revocations on his NYS non-drivers identification. This officer waited approximately 10 minutes and notified communications that back-up assistance was required to safely affect the arrest on the defendant. Not until then did communications send a back-up unit, which thankfully was dispatched. Sector 4, P.O. Auigilar responded and assisted this officer in apprehending the defendant without incident. As you are well aware of, it is when you are taking an individual into custody when the risk of being injured or killed is elevated. This was indicated in my incident report #14129, which has been filed and attached. When this was turned over to Sgt. Brady who was on the desk, he stated in sum and substance 'I know what happened was wrong, the dispatcher was reprimanded for that, however I am refusing to sign this [incident report] and am ordering you to omit this from your report.' **I followed his order but again feel that this is a concealment of the truth, and decisively contend that this is harassment is based on my heritage.** I pray that this will never happen again so I can safely go home and see my family at the end of the day."

(4/20/07 Communication, Nicaj Aff. Ex. 15; 7/10/07 Alali Dep. 228-229, Nicaj Aff. Ex. 28)(emphasis added).

54.    On May 30, 2007, Plaintiff wrote to Carroll another concerning the "[r]ecurring bigotry solely based on heritage" (5/30/07 Communication, Nicaj Aff. Ex. 16).  Moreover, Plaintiff complained of Morrell's theft of $300.00 from Plaintiff's memo book (Id.)

55.    On June 21, 2007, Plaintiff requested in writing that Gazzolla -- which was copied to Carroll, Murphy and Fortunato among others -- review a "biased performance evaluation based solely on heritage.  In that connection, he advised:

> I am requesting a review of the **biased performance evaluation based solely on heritage** authored by Sgt. Brady on 6/21/07 and signed off by tour commander Lt. De Bara on the same date. I am looking forward in meeting with you once again to explicitly and unmistakably present an honest rebuttal to depict a fair and just evaluation rather than a falsified, immoral and corrupt performance appraisal" (6/21/07 Communication, Nicaj Aff. Ex. 17) (emphasis added).

56.    On June 23, 2007, Plaintiff then complained regarding the "[f]lagrant transgression by Sgt. Morrell once again", to wit:

> On today's date roll call was conducted by Sgt. Morrell and Lt. Schulman in the muster room at headquarters.  Prior to roll call commencing Sgt. Morrell ordered me to put on my uniform hat.  In a disgraceful taste of supervision after making that order Sgt. Morrell at no time put[] on his uniform hat.  Neither did the next ranking officer, Lt. Schulman.  Leading by example seems to have been deserted by Sgt. Morrell.  **It seems to be self-evident that Sgt. Morrell cannot help himself and continues to harass, humiliate, and degrade me exclusively on my heritage.**  I have lost absolute hope that the agency will stop rouge supervisors such as Sgt. Morrell (6/23/2007 Communication, Nicaj Aff. Ex. 18)(emphasis added).

57.    On July 12, 2007, Plaintiff again wrote to Carroll regarding the "[u]nceasing harassment directed by Captain Gazzolla" (7/12/07 Communication, Nicaj Aff. Ex. 17).  Plaintiff further complained "[t]his is again another one of many incidents that **Captain Gazzolla along with his supervisors have singled me out based on my heritage**" (7/12/07 Communication, Nicaj Aff. Ex. 19)(emphasis added).

13

58.     On August 31, 2007 at approximately 10:00 a.m., Alali handed Carroll a written

Interdepartmental Communication dated August 22, 2007 which was addressed to Fortunato and

copied to Carroll, Murphy, Gazzola, Hayes and Alali's attorney (8/31/07 Communication and

8/22/07 Communication, Nicaj Aff. Ex. 20; 3/14/08 Alali Dep. 87-88, Nicaj Aff. Ex. 29).

59.     The August 22, 2007 Communication in pertinent part states:

> Despite being served with a complaint which has been filed in
> federal court, the defendants in this action have continued to commit
> conspicuous acts of prejudice that are being delivered to me on a
> continuing basis. I have notified you, along with other Police
> Commissioner, Deputy Police Commissioner, Captain Gazzolla and other
> supervisory staff directly in control of myself concerning the cavalier
> dealing and other punitive assignments

> *       *       *       *

> Whenever I am working there are junior officers working that could have
> been sent to the jail however are not. This is calculating and deliberate. I
> am not attempting to pick my assignment. I am solely trying to be taken
> off punishment for no legitimate reason.

60.     After handing the August 22nd Communication to Carroll on August 31, 2007 at

10:00 a.m., later that day Carroll suspended Plaintiff without pay (8/31/07 Letter to

Commissioner and 8/22/07 Communication, Nicaj Aff. Ex. 20; 3/14/08 Alali Dep. 87-88, Nicaj

Aff. Ex. 29; 3/14/08 Alali Dep. 87-88, Nicaj Aff. Ex. 29).

61.     In or about March 2008 Alali received yet another below standards evaluation

(4/4/08 Alali Dep. 28-30, Nicaj Aff. Ex. 30). While Alali ordinarily has five days in which to

rebut an evaluation, his father suffered a severe stroke in March -- resulting in Alali rushing to be

at his father's side at John Hopkins Medical Center located in Baltimore, Maryland in March

2008 (4/4/08 Alali Dep. 28-30, Nicaj Aff. Ex. 30).

62.     Despite the fact that Alali advised Gazzola of the situation, Gazzolla issued a

communication stating that Alali did not comply with the five day rule the period in which

rebuttals are to be submitted following an evaluation (4/4/08 Alali Dep. 28-30, Nicaj Aff. Ex.

30). When Alali returned, he submitted correspondence to Gazzola advising him that it was

impossible for him to rebut the evaluation within the time frame provided because at his gravely

ill father's bedside (4/4/08 Alali Dep. 28-30, Nicaj Ex. 30).

    63.    Notwithstanding Alali's family emergency, Captain Gazzolla issued a letter on

March 5, 2008 stating that Alali was below standards and issued another directive stating that

Alali could not perform overtime and mutual switches (4/4/08 Alali Dep. 28-30, Nicaj Aff. Ex.

30)

**Plaintiff's Supervisors**

    64.    DeBara directly supervised Plaintiff (3/14/08 Alali Dep. 31-32, Nicaj Aff. Ex.

29). Alali advised DeBara that Alali I had been filed in this Court (3/14/08 Alali Dep. 34, Nicaj

Aff. Ex. 29). When Alali advised DeBara, he (DeBara) responded in a sarcastic manner (3/14/08

Alali Dep. 34-35, Nicaj Aff. Ex. 29).

    65.    During the period from February 2007 to March 14, 2008, Plaintiff's direct

supervisors were Sergeants Wilson, Morrell, Austin and Brady (3/14/08 Dep. 26-28, Nicaj Aff.

Ex. 29). Each of them advised Alali that he was not to work the front desk, be assigned on the

street and was to handle dispatch duties only (3/14/08 Alali Dep. 61-63, Nicaj Aff. Ex. 29). At

one point, Wilson warned "they" were hunting for Plaintiff (3/14/08 Alali Dep. 123-24, Nicaj

Aff. Ex. 29). DeBara communicated Plaintiff's assignments to Wilson, Austin, Morrell and

Brady (3/14/08 Alali Dep. 59-61, 74, Nicaj Aff. Ex. 29).

**The Court's Denial of Defendant Pre-Discovery Motion to Dismiss <u>Alali II</u>**

66.    After <u>Alali II</u> was filed, Defendants moved to dismiss pre-discovery (Loomba Decl. Ex. H).  The Court rejected Defendants' claims that <u>Alali II</u> contains duplicative claims as <u>Alali I</u> (Loomba Decl. Ex. H p. 3).  The Court also denied Defendants Gazzola, Carroll and Murphy's claimed entitlement to absolute immunity (Id. at 8).

**Related Actions**

67.    On November 9, 2007 Plaintiff filed another complaint in this Court (<u>Alali III</u>) alleging a violation of Title VII, 42 U.S.C. §20003 *et seq.*  (Loomba Decl. Ex. K).

68.    On May 6, 2008, Plaintiff filed another complaint in this Court (<u>Alali IV</u>) alleging that his First and Fourteenth Amendment rights were violated and he was additionally subjected to retaliation in violation of Title VII, 42 U.S.C. §2000e *et. seq.* (Loomba Decl. Ex. L).

**Summary Judgment on Alali I**

69.    Pursuant to this Court rules, Defendants moved for summary judgment on qualified immunity (Loomba Decl. Ex. C).

70.    Plaintiff, through counsel opposed on the basis that "the motion should be denied pursuant to FRCP 56(f) with leave to renew following the completion of discovery" (Loomba Decl. Ex. D).  Plaintiff's counsel also noted that all discovery sought by Plaintiff in Alali I was stayed by order of the Court (Id.).  Consequently, counsel noted "Plaintiff has been prevented from developing the evidence which in good faith he believes will demonstrate that the 'factual' assertions made by Defendants in support of the application for summary judgment are false." (Loomba Dec. Ex. C.).

16

71.    The Court granted summary judgment in Alali I but specifically held that "[t]he following facts are **presumed true for the purposes of this motion only** (Loomba Decl. Ex. E p. 1)(emphasis added). In view of the Court decision, facts found by the Court in that motion are limited to that decision (Loomba Decl. Ex. E p. 1).

## PLAINTIFF'S REPONSE TO DEFENDANTS' STATEMENT PURSUANT TO 56.1

1.    Plaintiff Araz Alali ("Alali") is, and at all relevant times has been, a Police
Officer with the New Rochelle Police Department ("NRPD" or the "Department").

**Response:    Admits.**

2.    Defendant Alberto DeBara ("DeBara") was at all relevant times herein a
Lieutenant with the NRPD. He is currently retired.

**Response:    Admits.**

3.    Defendant Kyle Wilson ("Wilson") is, and at all relevant times was, a Sergeant
with the NRPD.

**Response:    Admits.**

4.    Defendant Edward Austin ("Austin") is, and at all relevant times was, a Sergeant
with the NRPD.

**Response:    Admits.**

5.    Defendant George Marshall ("Marshall") is, and at all relevant times was, a
Lieutenant with the NRPD.

**Response:    Admits.**

6.    Defendant Humberto Morrell ("Morrell") is, and at all relevant times was, a
Sergeant with the NRPD.

**Response:    Admits.**

7.    Defendant Matthew Brady ("Brady") is, and at all relevant times was, a Sergeant
with the NRPD.

**Response:    Admits.**

8.    Defendant Anthony Murphy ("Murphy") is, and at all relevant times was, the

Deputy Commissioner of the NRPD.

**Response:     Admits.**

9.     Defendant Robert Gazzola ("Gazzola" , and at all relevant times was, a Captain with the NRPD.

**Response:     Admits.**

10.     Defendant Patrick J. Carroll ("Carton") is, and at all relevant times was, the Commissioner of Police for the City of New Rochelle.

**Response:     Admits.**

11.     Defendant the City of New Rochelle ("City") is a municipal corporation existing under the laws of the state of New York.

**Response:     Admits.**

12.     The instant case (hereinafter, *"Alali 11")* is the second of four cases commenced in the United States District Court for the Southern District of New York in which Alali alleges unlawful discrimination and retaliation on the basis of his alleged Iraqi national origin.

**Response:     Admits.**

13.     The first case is entitled *Araz Alali v. Robert Gazzola, Patrick J. Carroll, Individually, City of New Rochelle, New York, 07 Civ. 1296* (CLB) (hereinafter, *"Alali T'*).

**Response:     Admits.**

14.     The third case is entitled *Araz Alali v. City of New Rochelle, 07 Civ. 9912* (CLB) (hereinafter, *"Alali IIT'*),

**Response:     Admits.**

15.     The fourth case is entitled *Araz Alali v. City of New Rochelle, 08 Civ. 4273* (CLB) (hereinafter, *"Alali IV'*).

**Response:**    **Admits.**

16.    In addition, on or about February *13, 2007,* Alali filed a complaint with the United States Equal Employment Opportunity Commission (EEOC), alleging that he was discriminated against because of his alleged Iraqi national origin. The EEOC issued a right to sue letter to Alali on or about August *24, 2007.*

**Response:**    **Admits.**

17.    Alali filed his complaint in *Alali I* on February 21, *2007.* A copy of the *Alali I* complaint is annexed as **Exhibit** A.1

**Response:**    **Admits.**

18.    The complaint in *Alali I* alleges that Alali was subjected to unlawful discrimination because of his claimed Iraqi national origin and in retaliation for his filing the EEOC complaint. He asserted violations of *42 U.S.C. §1981, 42 U.S.C.* X1983 (equal protection), *42 U.S.C. §1983* (selective prosecution), Title VII *(42 U.S.C. §2000e, et seq.), and* Section *296* of the New York State Human Rights Law. Ex. A.

**Response:**    **Admits.**

19. Plaintiff Araz Alali was deposed in *Alali I* for purposes of qualified immunity on June 25, 2007 and, July 10, 2007. Copies of relevant pages from Alali's deposition in *Alali I* are annexed as **Exhibit B.**

**Response:**    **Admits.**

20.    On or about August 2, 2007, the defendants in *Alali I* --- Captain Gazzola, Commissioner Carroll and the City -- filed a motion for summary judgment on grounds of qualified and absolute immunity. The motion was supported by a Rule 56.1 Statement setting forth, *inter alia,* background facts concerning Alali's employment with the NRPD, including a

listing of civilian complaints filed and command discipline imposed against Alali. A copy of the Rule 56.1 Statement submitted in support of defendants' qualified immunity motion in *Alali* is annexed hereto as **Exhibit C.**

**Response:**    **Admits.**

21.    On November 19, 2007, Alali filed an opposition to the motion in *Alali I* consisting, *in its entirety,* of a single-page affirmation from his attorney. A copy of the affirmation is annexed as **Exhibit D.** Alali did not submit a counter Rule 56.1 statement or otherwise dispute any of the facts set forth in the defendants' Rule 56.1 Statement. Declaration of Lalit K. Loomba, Esq., dated May 29, 2008 ("Loomba Decl."), at ¶4. Accordingly, the factual statements asserted in the *Alali* I Rule 56.1 Statement are deemed admitted by Alali.

**Response:**    **Denies. Plaintiff's Counsel's affirmation stated that "[i]n connection with Defendants' motion for judgment they rely, by way of 'evidence', upon the deposition of Plaintiff and two self-serving affidavits, one executed by Defendant Gazzola and the other by a police Lieutenant." (Loomba Decl. Ex. D) Counsel further stated that "Plaintiff has been prevented from developing the evidence which in good faith he believes will demonstrate that the 'factual' assertions made by Defendants in support of the application for summary judgment are false." Id. Finally, Plaintiff's counsel asserted "[u]nder the circumstances we submit that the motion should be denied pursuant to FRCP 56(f) with leave to renew following the completion of discovery." Id. Clearly recognizing at the time of the decision the number of Alali related cases before the Court, the Court compellingly found however, that "[t]he following facts are <u>presumed true for the purposes of this motion only</u> (Loomba Decl. Ex. E p. 1).**

22.    The defendants' motion in *Alali I* was fully submitted as of December 3, 2007, and argued before the Court on December 7, 2007.

**Response:    Admits.**

23.    By memorandum and order dated January 31, 2008, the Court (Brieant, J.) granted the defendants' motion for summary judgment and directed the Clerk to enter a final judgment dismissing all claims against all defendants in *Alali I*. A copy of the memorandum and order is annexed as **Exhibit E**. The Court held that Commissioner Carroll and Captain Gazzola were protected by the doctrine of *absolute* immunity against discrimination claims based upon the preferment of disciplinary charges against Alali. The Court held that Carroll and Gazzola were protected by the doctrine of *qualified* immunity from Alali's claims under 42 U.S.C. §§ 1981 and 1983, as well as N.Y. Executive Law §296. The Court further held that Alali failed to state a claim against the City under 42 U.S.C. §§ 1981 and 1983, or under Title VII, 42 U.S.C. §2000e. Ex. E.

**Response:    Denies materiality.**

24.    Alali filed a notice of appeal from the January 31, 2008 memorandum and order. But on April 11, 2008, at the request of Alali's attorneys, the appeal was withdrawn without prejudice to be reactivated upon written notice to the appellate court on or before October 11, 2008. A copy of the stipulation withdrawing the appeal is annexed as **Exhibit F. B.**

**Response:    Denies materiality.  In any event the stipulation specifically provides that it is a STIPULATION WRITHDRAWING APPEAL FROM ACTIVE CONSIDERATION WITHOUT PREJUDICE, WITH LEAVE TO ACTIVATE" (Loomba Decl. Ex. B).**

25.    Alali filed his complaint in *Alali II* – the instant case -- on April 11, 2007, about six weeks after he filed the complaint in *Alali I*. A copy of the *Alali II* complaint is annexed as

**Exhibit G.** In *Alali II*, Alali claimed that he was subjected to unlawful retaliation for his filing of the EEOC complaint and the complaint in *Alali I*. *Id.* at ¶¶14-19. He asserted violations of 42 U.S.C. §2000e (Title VII); 42 U.S.C. §§1981 and 1983; and Section *296 el. Seg* of the New York State Executive Law. In addition, he named additional individual defendants: Lt. Alberto DeBara, Sgt. Kyle Wilson, Sgt. Edward Austin, Lt. George Marshall, Sgt. Humberto Morrell, Sgt. Matthew Brady and Deputy Commissioner Anthony Murphy. Ex. G.

**Response:**    **Admits.**

26.    On May 24, 2007, the *Alali II* Defendants moved to dismiss the complaint for failure to state a claim.

**Response:**    **Admits.**

27.    In a memorandum and order dated July *19*, 2007, the Court (Brieant, J.) denied the motion. A copy of the memorandum and order is annexed as **Exhibit H.**

**Response:**    **Admits. It should be noted that the Court denied absolute immunity to Defendants in that case (Id.).**

28.    The Defendants filed their answer in *Alali II* on July 30, 2007. A copy of the answer is annexed as **Exhibit 1.** The Individual Defendants raised the defense of qualified and absolute immunity. *Id.,* at ¶¶ 31-32.

**Response:**    **Admits.**

29.    Alali's deposition for purposes of qualified immunity was taken on March 14, 2008, and continued on April 4, 2008. Copies of relevant pages from the deposition of Araz Alali in *Alali II* are annexed as **Exhibit J.**

**Response:**    **Admits.**

23

30. Alali filed his complaint in *Alali III* on November 9, 2007. A copy of the complaint in *Alali III* is annexed as **Exhibit K.**

**Response:**    **Admits.**

31. *Alali III* is a Title VII case brought only against the City of New Rochelle. The allegations of discrimination in *Alali III are* also alleged in *Alali 11. Cf.* Ex. K and Ex. G.

**Response:**    **Admits.**

32. The City filed its answer in *Alali III* on December 3, 2007, and a scheduling order was issued by the Court on December 11, 2007.

**Response:**    **Denies knowledge based on the fact Defendants produce any documents in support.**

33. The City served interrogatories and document demands, according to the scheduling order, on January 31, 2008.

**Response:**    **Denies materiality.**

34. Alali filed his complaint in *Alali IV* on May 6, 2008. A copy of the complaint is annexed hereto as **Exhibit L.**

**Response:**    **Admits.**

35. The complaint in *Alali IV* alleges that Alali was subjected to unlawful retaliation for filing his EEOC complaint in February 2007. The complaint also asserts claims that Alali's right to free speech, guaranteed by the First Amendment, and his right to equal protection of the law, guaranteed by the Fourteenth Amendment, were violated. Ex. L.

**Response:**    **Admits.**

36. Defendants filed an answer in *Alali IV* on May 29, 2008.

**Response:**    **Admits.**

37.      Prior to joining the NRPD, Alali was a police officer with the New York City Police Department. He admitted in his *Alali II* deposition that while employed by the NYPD, he received numerous civilian complaints, many of which involved traffic stops. Alali could not "recall" whether the complaints involving traffic stops alleged rude and discourteous conduct on Alali's part. *Alali II* Dep (Ex. J) (Part I), at 9:20-23; 12:4-14:12.

**Response:      Denies and further denies materiality.  In any event, Alali could not recall the number of complaints (3/14/08 Alali Dep. 12-14, Nicaj Aff. Ex. 29).  Instead, Defendants falsely claim that Alali testified that there were "numerous civilian complaints." Furthermore, Defendants engage in utterly disingenuous antics by claiming that they are providing this Court with material facts but they conveniently fail to provide this Court with page ten of Plaintiff's deposition on follow up questions put to Plaintiff as to whether he was ever brought up on disciplinary charges, issued command discipline or placed on modified duty.  Plaintiff responded no to all three questions. (3/14/08 Alali Dep. p. 9-10, Nicaj Aff. Ex. 29).  Furthermore, rather than undermining Plaintiff's claims, the civilian complaints lodged against Alali during his time with the NYPD supports the fact just because police officers receive such complaints does not mean there was any merit to any of those complaints because he was hired by the City of New Rochelle despite them.**

38.      Alali joined the NR-PD effective February 10, 2002. **Exhibit** *M; see* Deposition of Araz Alali in *Alali I ("Alali I Dep,")* (Ex. B), at 230:9-16; *see also Alali I* Rule 56.1 Statement (Ex. C), at T5.

**Response:      Admits.  See Alali's response to ¶37** *supra.*

39.      On or about June 12, 2002, a civilian complaint (#33/02) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. *See*

Affidavit of Det. Lt. James Fortunato, sworn to July 30, 2007 ("Fortunato Aff t"), at ¶5; *Alali 1* Rule 56.1 Statement (Ex. C), at ~6.

**Response:    Denies materiality.    Plaintiff was advised that these complaints were unfounded (3/14/08 Dep. 127-128, Nicaj Aff. Ex. 29).**

40.    On or about August 12, 2002, a civilian complaint (#67/02) was brought against Alali in connection with a motor vehicle accident, alleging that Alali was rude and yelled at the complainant. Fortunato Aff t, at ¶6; *Alali 1* Rule 56.1 Statement (Ex. C), at ¶7.

**Response:    See response to ¶39 *supra*.**

41.    On or about August 12, 2002, a civilian complaint *(#69/02)* was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff t, at ¶7; *.4lali 1* Rule 56.1 Statement (Ex. C), at ¶8.

**Response:    See response to ¶39 *supra*.**

42.    On or about October 22, 2002, a civilian complaint (#96/02) was brought against Alali in connection with a traffic stop on July 28, 2002, alleging that Alali was rude and discourteous, and that he refused to give the complainant directions even though the complainant stated she was lost. Fortunato Aff't, at ¶8; *Alali 1* Rule 56.1 Statement (Ex. C), at N9.

**Response:    See response to ¶39 *supra*.**

43.    On or about February 25, 2003, a civilian complaint (#5/03) was brought against Alali in connection with a parking ticket, alleging that Alali had no "ethical" basis to issue the ticket because Alali often parked his personal car in the same spot. Fortunato Afft, at ~9; *Alali 1* Rule 56.1 Statement (Ex. C), at ¶10.

**Response:    See response to ¶39 *supra*.**

44.    On or about February 26, 2003, a civilian complaint (#4/03) was brought against Alali in connection with a traffic stop, alleging that Alali had racially profiled the complainant and issued a summons without a valid reason. Fortunato Aff t, at ¶10; *Alali I* Rule 56.1 Statement (Ex. C), at ¶11.

**Response:**    **See response to ¶39 *supra*.**

45.    Alali suffered an injury on or about July 28, 2003. He did not return to active duty until October 1, 2004. Fortunato Afft, at ¶11; *Alali I* Rule 56.1 Statement (Ex. C), at ¶12.

**Response:**    **Denies materiality.**

46.    On or about October 22, 2004, a civilian complaint (#80/04) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous, and issued multiple unnecessary summonses, possibly motivated by racial prejudice. Fortunato Aff t, at x(12; *Alali I* Rule 56.1 Statement (Ex. C), at ¶13.

**Response:**    **See response to ¶39 *supra*.**

47.    On or about December 5, 2004, a civilian complaint (#91/04) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Afft, at ¶13; *Alali* I Rule 56.1 Statement (Ex. C), at 1J14.

**Response:**    **See response to ¶39 *supra*.**

48.    On or about January 19, 2005, a civilian complaint (#6/0_5) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff t, at ¶14; *Alali I* Rule 56.1 Statement (Ex. C), at ¶15.

**Response:**    **See response to ¶39 *supra*.**

49.    On or about January 28, 2005, a civilian complaint (#12/05) was brought against Alali in connection with a traffic stop, alleging that Alali issued unnecessary summonses in

order to harass the complainant. Fortunato Aff t, at ¶15; *Alali I* Rule 56.1 Statement (Ex. C), at ¶16.

**Response:**    **See response to ¶39 *supra.***

50.    On or about April 14, 2005, a civilian complaint (#28/05) was brought against Alali in connection with a traffic stop, alleging that Alali had no valid basis to issue the summons. Fortunato Aff't, at ¶16; *Alali I* Rule 56.1 Statement (Ex. C), at ¶17.

**Response:**    **See response to ¶39 *supra.***

51.    On or about August 4, 2005, a civilian complaint (#58/05) was brought against Alali in connection with a traffic stop, alleging that Alali looked at the complainant, a female, in an inappropriately suggestive way. Fortunato Aff't, at *X17; Alali I* Rule 56.1 Statement (Ex. C), at ¶18.

**Response:**    **See response to ¶39 *supra.***

52.    On or about December 27, 2005, a civilian complaint (#95/05) was brought against Alali, alleging that Alali was driving his police car in a reckless and unsafe manner, after which Alali followed the complainant and argued with him. Fortunato Aff t, at ¶18; *Alali I* Rule 56.1 Statement (Ex. C), at ¶19.

**Response:**    **See response to ¶39 *supra.***

53.    On or about January 12, 2006, a civilian complaint (#4/06) was brought against Alali, alleging that Alali used excessive force in an incident involving students at the New Rochelle Public High School. Fortunato Aff t, at ¶19; *Alali I* Rule 56.1 Statement (Ex. C), at ¶20.

**Response:**    **See response to ¶39 *supra.***

54.    On or about March 3, 2006, a civilian complaint (#14/06) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff t, at 120 *Alali I* Rule 56.1 Statement (Ex. C), at ¶21.

**Response:    See response to ¶39 *supra.***

55.    On or about March 19, 2006, a civilian complaint (#21/06) was brought against Alali, alleging that Alali yelled at the complainant (for parking on the wrong side of the road) and then sped away in his police car in a reckless and unsafe manner. Fortunato Aff t, at x(21; *Alali I* Rule 56.1 Statement (Ex. C), at X22.

**Response:    See response to ¶39 *supra.***

56.    On or about May 6, 2006, a civilian complaint (#31/06) was brought against Alali in connection with a traffic stop, alleging that Alali issued numerous and unnecessary summonses. Fortunato Aff 1, at ¶22; *Alali I* Rule 56.1 Statement (Ex. C), at ¶23.

**Response:    See response to ¶39 *supra.***

57.    On or about July 21, 2006, a civilian complaint (#51/06) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff t, at ¶23; *Alali I* Rule 56.1 Statement (Ex. C), at ¶24.

**Response:    See response to ¶39 *supra.***

58.    On or about August 11, 2006, a civilian complaint (#59/06) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff t, at ¶24; *Alali I* Rule 56.1 Statement (Ex. C), at ¶25.

**Response:    See response to ¶39 *supra.***

59.    On or about September 13, 2006, a civilian complaint (#64/06) was brought against Alali by the same complainant who filed the August 11, 2006 complaint, alleging that

Alali improperly placed him under arrest because of prior incidents. Fortunato Af#"t, at ¶25; *Alali I* Rule 56.1 Statement (Ex. C), at ¶26; Affidavit of Lieutenant Gary Robinson, sworn to May 27, 2008 ("Robinson Aff't"), at ¶3.

**Response:** **See response to ¶39 *supra*. Denies materiality since Lieutenant Fortunato advised Alali that Veras' complaint was completely unfounded (6/25/07 Alali Dep. 74, Nicaj Aff. Ex. 27). Plaintiff was specifically advised that he was exonerated (7/10/07 Alali Dep. 182, Nicaj Aff. Ex. 28). Fortunato expressly cleared Plaintiff of any wrongdoing in connection with alleged Veras incident in the presence of PBA President Ed Hayes (7/10/07 Alali Dep. 162-63, Nicaj Aff. Ex. 29).**

60.    The complainant who filed civilian complaints against Alali on August 11 and September 13, 2006 was Edwin Veras, a Federal Express driver. Robinson Aff't, at ¶3.

**Response:** **See response to ¶39 and 59 *supra*.**

61.    Alali had had a prior dispute with Veras concerning a package delivered to Alali's home. *Alali I* Dep. (Ex. B), at 65:21-66:17.

**Response:** **Denies materiality. At the time Alali stopped Veras he did not recognize him (Loomba Decl. Ex. B p. 66). Furthermore, see response to ¶39 *supra*.**

62.    In his September 13, 2006 civilian complaint, Veras alleged that the day before (September 12, 2006), Alali had arrested him while making deliveries on his regular route in New Rochelle in retaliation for Veras's filing the civilian complaints against Alali. Robinson Aff't, at ¶4.

**Response:** **Denies materiality.**

63.    Alali was given restrictive duty as a result of Veras's complaint and the internal investigation that followed. *Alali I* Dep. (Ex. B), at 61:16-62:15; 89:9-90:5.

**Response:**    **Denies.  Plaintiff was advised by Fortunato that the Veras allegations were unfounded (6/25/07 Alali Dep. 74, Nicaj Aff. Ex. 27); see also ¶59 *supra*.**

64.    The criminal charges against Veras for his arrest on September 12, 2006 were withdrawn by the District Attorney, and in December 2007, Veras filed a civil action in this Court against the City and Police Officer Alali. Docket No. 07 Civ. 11172. Veras alleged in his complaint that Alali abused his authority, used excessive force and subjected Veras to a false arrest in retaliation for Veras having filed civilian complaints against Alali.

**Response:**    **Denies.  See response to ¶59 *supra*. Commissioner Carroll asked the District Attorney's Office to drop the charges (6/25/07 Alali Dep. 75, Nicaj Aff. Ex. 27).  More importantly, the City's answer in the Veras denied the allegations contained in the Veras complaint. (Veras v. City of New Rochelle Answer, 07 Civ. 11172 (CLB), Nicaj Aff. Ex. 22). The ridiculous nature of Defendants' assertions now is underscored by the fact that the City is represented by the same attorneys in this case who represented the City in the Veras case.  While contending in the Veras case there was no validity -- Defendants now incredibly suggest otherwise.**

65.    The City reached a monetary settlement of Veras's claims, subject to the approval of the New Rochelle City Council. Loomba Decl. at ¶45.

**Response:**    **Denies materiality.  See Plaintiff's response to ¶ 64 *supra*.**

66.    In or about mid-February 2007, Alali resumed regular duties as a patrol officer. Robinson Aff't, at ¶6.

**Response:**    **Admits.**

67.    On or about February 27, 2007, a civilian complaint (#6/07) was brought against Alali in connection with a traffic stop, alleging that Alali issued a summons only because of a

dispute between Alali and the complainant about work certain construction/renovation work the complainant had performed on an apartment owned by Alali. Fortunato Aff't, at ¶26 *Alali I* Rule 56.1 Statement (Ex. C), at ¶27.

**Response:    Denies materiality.  See Plaintiff's response to ¶39 *supra*.  In addition, Fortunato's Affidavit certainly does not claim that there was any merit to that complaint or any of the other complaints.   Furthermore, conveniently, Defendants do not produce any of the so-called civilian complaints.**

68.    As a result of the foregoing civilian complaints, the Department has, at various times during Alali's employment, taken various remedial measures including, sending Alali for retraining, counseling Alali to use courtesy and discretion in dealing with the public, and assigning Alali for Verbal Judo training. Fortunato Afft, at ¶27; *Alali I* Rule 56.1 Statement (Ex. C), at ¶28.

**Response:    Denies.  Plaintiff sharply disputes Defendants' assertions.  See response to ¶39 *supra.***

69.    Verbal Judo is a tactical communications technique in which police officers are trained to use "presence and words" to calm difficult people who may be under severe emotional or other influences, redirect the behavior of hostile people, diffuse potentially dangerous situations, perform professionally under all conditions and achieve the desired outcome of an encounter. Fortunato Afft, at ¶28; *Alali I* Rule 56.1 Statement (Ex. C}, at ¶29.

**Response:    Denies materiality.**

70.    The civilian complaints listed above were set forth in the Rule 56.1 Statement submitted by defendants in *Alali I* in support of their motion for summary judgment. *Alali I*

Rule 56.1 Statement (Ex. C), at ¶¶5-29. Alali did not file a counter Rule 56.1 Statement in

opposition to the motion for summary judgment submitted in *Alali I.*

**Response:**    **Denies materiality.**

71.    Two additional civilian complaints were filed against Alali that were not

mentioned in defendants' qualified immunity motion in *Alali I.* On or about July 31, 2007, Alali

received a civilian complaint (#17/07), alleging that he was rude and discourteous to a motorist

during a traffic stop. On or about August 3, 2007, Alali received another civilian complaint

(#18107), again alleging that Alali was rude and discourteous to a motorist during a traffic stop.

Robinson Aff t, at ¶9.

**Response:**    **Denies materiality. See Plaintiff's response to ¶39** *supra.*

72.    Alali admitted in his *Alali I* deposition that he received civilian complaints while

employed as an officer with the NRPD. *Alali I* Dep. (Ex. B), at 198:12-199:5.

**Response:**    **Denies materiality. See Plaintiff's response to ¶39** *supra.*

73.    On or about September 20, 2002, Alali accepted command discipline (a letter of

reprimand) for an incident occurring on August 1, 2002, in which Alali was involved in a motor

vehicle accident while driving his police car the wrong way on a one-way street, thereby

violating Section 8.2 of the NRPD Rules and Regulations ("R&K"). *See Alali I* Dep. (Ex. B), at

209:9-212:5. A copy of the NRPD Command Discipline Report is annexed as **Exhibit** N.

**Response:**    **Denies materiality.**

74.    Section 8.2 of the NRPD Rules and Regulations provides:

Members of the Department will operate department vehicles in a careful and prudent manner in

accordance with all Vehicle and Traffic laws and department procedures. Members of the

Department will, at all times, give the highest priority to the safety and welfare of the general

public when operating a department vehicle and will operate all vehicles in such a manner as to avoid injuries to persons or damage to property.

**Exhibit O.**

**Response:**    **Denies materiality**

75.    On or about December 26, 2002, Alali accepted command discipline (a letter of reprimand) for an incident occurring on October 29, 2002, in which Alali was charged with leaving his assigned post without a justified cause, thereby violating R&R Section 1.5. *See Alali I Dep.* (Ex. B), at 204:12-205:10. A copy of the NRPD Command Discipline Report is annexed as **Exhibit P.**

**Response:**    **Denies materiality.  In any event, Alali affirmatively denied any wrong doing. Alali accepted the command discipline because disciplinary charges would be preferred against him and the outcome was already pre-determined by Carroll (7/10/07 Alali Dep. 203-204, Nicaj Aff. Ex. 28).**

76.    Section 1.5 of the NRPD Rules & Regulations provides, in relevant part: "Members of the Department assigned to motorized patrol, foot patrol, or a fixed post will not leave their designated area of patrol for any reason other than police necessity, personal necessity or meal period." **Exhibit Q.**

**Response:**    **Denies materiality.**

77.    On or about January 13, 2003, Alali accepted command discipline (loss of one (1) leave day) for an incident occurring on December 23, 2002, in which Alali failed to respond when a superior officer repeatedly tried to contact Alali over the police radio, thereby violating R&R Section 1.9. In this same incident, Alali was found to have turned out for duty without

bringing his uniform hat after he had been reminded by a supervisor to do so at the start of the tour. *See Alali I* Dep. (Ex. B), at 208:3-209:8. A copy of the NRPD Command Discipline Report is annexed as **Exhibit R.**

**Response:**    **Denies and denies materiality. In fact it was false, Alali was advised that if he challenged the allegations and did not accept the command discipline, he would be destined to lose a biased hearing in which Carroll appointed the hearing officer (7/10/07 Alali Dep. 208-209, Nicaj Aff. Ex. 28). Indeed, there are recurring problems with transmitting or receiving transmissions over the radio in the Department (6/30/08 Disc. Tr. 223-225, Nicaj Aff. Ex. 25). By reason of utter failure of police radios and other communications equipment in the Department, the City issued a Bond resolution "dated February 12, 2008 authorizing the issuance of bonds of the City, in the principal amount of $350,000, or an installment purchase obligation, to finance the acquisition of new Police radios and related communications equipment" (2/6/08 City Council Agenda, Nicaj Aff. Ex. 23).**

78.    Section 1.9 of the NRPD Rules & Regulations provides: "Members of the Department are responsible for properly and promptly answering the radio." **Exhibit S.**

**Response:    Denies materiality.**

79.    On or about March 10, 2005, Alali accepted command discipline (a letter of reprimand) for an incident occurring on January 19, 2005, in which Alali violated Section 3.5 of Article 2.03 of the NRPD Manual of Procedure by being discourteous and unprofessional to a motorist during a traffic stop. *See Alali I Dep. (Ex. B),* at 212:6-24. A copy of the NRPD Command Discipline Report is annexed as **Exhibit T.**

35

**Response:    Denies materiality. Alali was encouraged to accept the command discipline or he would be subjected to a biased hearing where the hearing officer was appointed by Carroll and Carroll was the ultimate decision maker (7/10/07 Alali Dep. 212-13, Nicaj Aff. Ex. 28). When Alali conducted a traffic stop and the motorist failed to abide and left the scene, Alali had to get in his car and was constrained to use the PA system to direct to motorist to stop the vehicle (7/10/07 Alali Dep. 215-17, Nicaj Aff. Ex. 28).**

80.    Article 2.03, Section 3.5 of the NRPD Manual of Procedure provides:

An officer will be courteous and professional in his conversation with the violator. He will not scold or lecture the violator. Verbal Judo will be employed by the officer. The objective of traffic enforcement is to improve the driving performance of the motoring public. The focus of the stop should be the offense committed by the violator. Conduct on the officer's part that is less than professional suggests that the offense committed was not against the Vehicle and Traffic Law but was a personal affront to the officer and, as such, may lead the violator to feel that he is a victim and not an offender.

**Exhibit U.**

**Response:    Denies materiality.**

81.    On or about June 29, 2005, Alali accepted command discipline (loss of two (2) leave days) for an incident occurring on April 14, 2005, in which Alali left his assigned sector and parked his police car illegally in front of a Dunkin Donuts shop, even though Alali was not responding to an emergency call for service, thereby violating R&R Sections 1.5 and 2.3. *See Alali 1* Dep. (Ex. B), at 217:9-208:23. A copy of the Command Discipline Report is annexed as **Exhibit** V.

**Response:**     **Denies materiality.  Indeed, despite the fact that there are numerous times in which other police officers parked at the same Dunkin Donuts location with impunity, Plaintiff was issued the foregoing command discipline which was originally for a loss one day's pay and but was increased by Gazzola to two days (7/10/07 Alali Dep. 217-220, Nicaj Aff. Ex. 28).  PBA President Hayes advised that no member of the Department had ever been issued a command discipline for parking  illegally in front of a Dunkin Donuts despite the fact that supervisors and patrol officers regularly parked illegally there (Id.).**

82.     Section 1.5 is set forth above. Section 2.3 of the Rules and Regulations provides: Members of the Department shall obey all laws of the United States, the State of New York and the City of New Rochelle. A violation of any law will be considered a departmental disciplinary offense as well as an illegal act subjecting the violator to criminal penalties, **Exhibit** W.

**Response:**     **Denies materiality.**

83.     On or about August 29, 2006, Alali declined proffered command discipline of the loss of one (1) leave day in connection with an incident occurring on June 15, 2006, in which Alali proceeded at high speed through a red light at a major intersection without slowing down and drove up onto a sidewalk in a busy commercial area in responding to an incident, even though the road supervisor had advised that the situation was under control and that anyone not already on the scene should disregard the call and resume patrol. *See Alali I* Dep. (Ex. B), at 224:4-228:5. A copy of the NRPD Command Discipline Report is annexed as **Exhibit X.**

**Response:**     **Denies.  At the time a call 1013 call came in requesting assistance to aid in an arrest, Plaintiff went to assist but did not hear radio transmission telling him to slow down.**

Alali eventually assisted two other police officers with arresting one of two suspects who were under the influence of drugs (7/10/07 Alali Dep. 224-228, Nicaj Aff. Ex. 28)

84.    As of August 29, 2006, when he declined to accept command discipline in connection with the June 15, 2006 incident, Officer Alali understood that, as a consequence of declining command discipline, the NRPD would prefer formal disciplinary charges against him. *Alali I* Rule 56.1 Statement (Ex. C), at ¶41; Ex. X.

**Response:    Denies state of mind of Plaintiff.**

85.    Within a few days after August 29, 2006, the assistance of outside counsel was sought to prepare disciplinary charges against Alali. A copy of the disciplinary charges, dated February 15, 2007, is annexed as **Exhibit Y.**

**Response:    Denies. Defendants' citation does not support their assertions. In fact, Defendants did not prefer any charges until the multiple communications from Plaintiff, commencing in November 2006 culminating with EEOC Charge being filed in or about February 12, 2007 concerning that he was being subjected to discrimination on the basis of national origin, ethnicity and/or color.**

**The disciplinary charges were clearly retaliatory for Carroll told PBA President Hayes that if Alali withdrew "the federal lawsuits, that he could start with a clean slate, that all of the charges of, that were incurred or that were brought in the disciplinaries would be gone" (11/12/07 Disc. Tr. p. 280, Nicaj Aff. Ex. 26). Lieutenant Fortunato similarly told Hayes that if Alali dropped the federal lawsuits the Department could drop the disciplinaries and Alali could start with a "clean slate" (11/12/07 Disc. Tr. p. 281, Nicaj Aff. Ex. 26). In short, the preferral of disciplinary charges against Plaintiff was clearly in retaliation for Plaintiff opposing discrimination in the workplace, including but not limited**

**to Alali bringing a Charge of Discrimination with the EEOC and filing multiple actions in this Court.**

86.    In addition to the charge that Alali operated his police vehicle in a reckless fashion, an additional charge was added alleging that Alali had left his designated area of patrol on at least 34 separate occasions between June and September 2006. Ex. Y, at Charge III.

**Response:    Admits that those were the charges.**

87.    The conduct addressed by the reckless driving charge was captured by Alali's police vehicle's in-car digital audio and video recording system. A copy of the audio and video captured from Alali's police vehicle on June 15, 2006 is annexed as **Exhibit Z.** Throughout the incident, Alali had the volume on his AM/FM radio at a high level. *Id.*

**Response:    Denies.  Plaintiff did not receive a copy of Exhibit Z in this action.  See Plaintiff's response to ¶84 *supra.***

88.    A copy of Article 2.11 of the NRPD Manual of Procedure, which sets forth the rules relating to in-car videos, is annexed as **Exhibit AA.**

**Response:    Denies materiality.**

89.    The hearing on the disciplinary charges preferred in February 2007 was conducted in New Rochelle, New York, on May 31, 2007, October 17, 2007, October 26, 2007, November 12, 2007 and November 30, 2007. Robinson Afft, at ¶12.

**Response:    Admits.**

90.    On September 11, 2007, while the proceedings on the first set of disciplinary charges were still pending, Captain Gazzola preferred a second set of disciplinary charges against Alali. The first charge in the second set of charges was for misconduct in connection with Alali's alleged failure to properly maintain and make required entries in his department

issued memo book on various dates in May 2007. Charge 2 was for misconduct in connection

with Alali's alleged failure to stay within his designated area of patrol on July 4, 2007. Charge

3 was for misconduct in connection for Alali's alleged failure to properly and promptly answer

the police radio while on duty on July 4, 2007. Charge 4 was for misconduct in connection

with Alali's alleged failure to make proper entries in his memo book on July 4, 2007. Charge 5

was for Alali's alleged failure to remain at home while he was out on sick leave on August 14,

2007. A copy of the charges and specifications, dated September 11, 2007, is annexed as

**Exhibit BB.**

**Response:**    **Admits those are the charges. As set forth *supra,* the disciplinary charges**

**were clearly retaliatory. Carroll told PBA President Hayes that if Alali withdrew "the**

**federal lawsuits, that he could start with a clean slate, that all of the charges of, that were**

**incurred or that were brought in the disciplinaries would be gone" (11/12/07 Disc. Tr. p.**

**280, Nicaj Aff. Ex. 26). Lieutenant Fortunato similarly told Hayes that if Alali dropped**

**the federal lawsuits the Department could drop the disciplinary proceedings and Alali**

**could start with a "clean slate" (11/12/07 Disc. Tr. p. 281, Nicaj Aff. Ex. 26). In short, the**

**disciplinary proceedings were meant to intimidate Alali into withdrawing his multiple**

**lawsuits. Further retaliatory action ensued for after the second set of disciplinary charges**

**were preferred, Alali was assigned exclusively to the duties and responsibilities of**

**dispatcher (6/25/07 Alali Dep. 77, Nicaj Aff. Ex. 27).**

91.    On March 29, 2008, the hearing officer, Janet McEneaney, Esq., issued a hearing

report recommending that Alali be found guilty of Charges I, III, IV and V (Charge II was

withdrawn), and that the appropriate penalty would be 30 days suspension without pay. A copy

of the hearing officer's report is annexed as **Exhibit CC**

**Response:**    **Admits.**

92.    The hearing on the second set of disciplinary charges commenced on April 3, 2008. The hearing has not yet concluded. Robinson Afft, at ¶15.

**Response:**    **Admits.**

93.    On or about May 5, 2008, Commissioner Carroll adopted the recommendations of the hearing officer and formally suspended Alali 30 days without pay. Robinson Afft, at ¶16.

**Response:    Admits and further adds that Carroll's actions were illegal. When Alali was suspended 30 days without pay in February 2007 concerning the first set of charges, Carroll's actions in assessing yet another 30 days suspension without pay is clearly retaliatory and illegal.**

94.    Alali testified at his *Alali I* deposition that he could not recall his performance evaluations for 2002, 2003 and 2004, except that they were not below standard. *Alali I* Dep. at 70:14-71:3.

**Response:**    **Admits.**

95.    Due to injury, Alali was not working from July 28, 2003 until September 23, 2004, when he returned for light duty. 1-Ie was assigned to full duty on October 1, 2004. *Alali I* Rule 56.1 Statement (Ex. C), at ¶44.

**Response:**    **Admits.**

96.    Alali was thereafter evaluated for the period November 26 to December 31, 2004. A copy of the performance evaluation is annexed as **Exhibit DD.** He received a "meets standard" evaluation for that period. *Id.*

**Response:**    **Admits.**

97.     The 2004 evaluation states that Alali needed to improve on certain areas, including: (i) advising Central when he makes a vehicle stop; and (ii) improving his demeanor and being more courteous when communicating with the public, as manifested by civilian complaints lodged against him. Ex. DD.

**Response:     Denies materiality.**

98.     Section 3.5 of Article 2.03 of the NRPD Manual of Procedure states that "[w]henever an officer makes a vehicle stop, he will notify the police dispatcher ... prior to exiting the police vehicle." Ex. U.

**Response:     Denies materiality.**

99.     On or about August 31, 2005, the NRPD assigned Alali's evaluating supervisor, Sgt. Edward Austin, to ride along with Alali to review his performance. *Alali I* Rule 56.1 Statement (Ex. C), at ¶48.

**Response:     Denies materiality.**

100.    On the basis of his ride-along review, Sgt. Austin prepared a "letter of counsel," dated September 29, 2005, addressed to Alali. *Alali I* Dep. (Ex. B), at 197:10-21. A copy of the letter is annexed as **Exhibit EE.**

**Response:     Denies. Indeed, Austin admitted that Plaintiff had done nothing wrong during Austin's so-called ride-along (10/10/04 Rebuttal, Nicaj Aff. Ex. 4).**

101.    The letter of counsel praised Alali for the number of traffic summonses and parking tickets that he issued. Ex. EE. The letter also raised certain problem areas, including Alali's: (i) failure to provide headquarters with prior notification of traffic stops; (ii) failure to use "verbal judo"; (iii) failure to have certain forms on hand; (iv) relatively insubstantial enforcement of City Code violations; (v) inability to diffuse confrontations with the public

42

when his authority is challenged; (vi) concentration on main roads within his assigned sector, at

the expense of patrolling side streets; and (vii) failure to use discretion, among others. *Id.*

**Response:    Denies veracity of the letter of counsel but admits one was issued.**

**Defendants conveniently fail to provide Plaintiff's rebuttal which states in relevant respect,**

**that Sergeant Austin has never been present when Alali had received a complaint (10/10/05**

**Rebuttal, Nicaj Aff. Ex. 4). Alali further stated "[s]peculation affirmed by Sgt. Austin as to**

**the reasoning behind previous unsubstantiated complaints is an improper practice for a**

**police supervisor" (10/10/05 Rebuttal, Nicaj Aff. Ex. 4). In short, Plaintiff's rebuttals**

**denies all the contents of Austin's letter of counsel (Id.).**

102.    The letter of counsel states that Alali is "expected to be a more rounded officer

addressing [] needs of the community other than just [traffic] enforcement." Ex. EE, at p.2.

The letter then provides a specific list of expectations, with citations to relevant provisions of

the NRPD Rules & Regulations and Manual of Procedure:

      1.    Traffic stops are to follow Department Rule regarding calling out stops,

use of verbal judo, and other procedures;

      2.    Required equipment will be carried, for example, all necessary

summonses, required uniform equipment and reports and forms needed for patrol.

Ensuring vehicle is properly stocked;

      3.    Patrol and be familiar with all streets of assigned areas as well as primary

roads;

      4.    Use discretion in dealing with the public when issuing summonses or

making a[n] arrest;

     5.      Maintain composure in situations where your authority is challenged or discourteous[ness] is directed at you but no other reason for action is present;

     6.      Enforce violations of the City Code when appropriate;

     7.      Follow search and seizure laws and Department policy regarding same;

     8.      Follow proper use of 10 codes including calling out on scene and calling clear from scene; [and]

     9.      Obey and comply with any lawful order given by a superior officer.

Ex. EE

**Response:**    **Denies materiality.**

103.    On or about November 9, 2005, Captain Gazzola, Sgt. Austin and Lt. Schulman, met with Alali to discuss the letter of counsel. *Alali 1* Rule 56.1 Statement (Ex. C), at ¶52.

**Response:**    **Admits that is what is claimed.**

104.    In the November 9, 2005 meeting, Alali was advised that his failure to conform with the specific expectations outlined in the letter of counsel could lead to a "below standard" evaluation. *Alali I* Rule 56.1 Statement (Ex. C), at ¶53.

**Response:**    **Admits that is what is claimed.**

105.    On or about January 27, 2006, Alali received a below-standard performance evaluation for the previous year (2005). *Alali I* Dep. (Ex. B), at 192:16-24. A copy of the performance evaluation is annexed as **Exhibit FF**.

**Response:**    **Admits receipt but denies veracity. On the second page of that evaluation, Plaintiff stated while he received the evaluation, but he "strongly" disagreed with it (Loomba Decl. Ex. FF). Furthermore the citation by Defendant to Plaintiff's transcript**

concerns an evaluation he received in June 2006 – not on January 2006 (Loomba Decl. Ex. B p. 192).

106.    One of the stated reasons for Alali's below-standard performance evaluation for the year 2005 was that he received more civilian complaints during 2005 than any other officer. Ex. FF.

**Response:    Denies veracity.  While the appraisal says Alali had six civilian complaints due to "discourtesy" – no action was taken "due to lack of evidence" (Loomba Decl. Ex. FF).  Moreover, as Alali explained "I also would like to explain that when you have the number amount of contacts with the public, as I doing as being a top producing officer in aspects, such as arrests and summonses, the likelihood of getting civilian complaint[s] against you is greater, obviously.  And if you take the number of arrests and the number of moving violations and parking summonses, the number of contacts I have versus the number of complaints, it's much less than an officer who has much fewer activity, with few complaints but their percentage of ratio of their complaints would be higher than [mine] (4/4/08 Alali Dep. 53-54, Nicaj Aff. Ex. 30).  Alali explained further by stating "I am not offering a justification.  I'm just offering statistically speaking, the greater number of contacts that you have with the public increases your exposure to civilian complaints.  By the nature of our [police] work issue someone a ticket or taking them into custody, obviously [that] would not make them happy or satisfied and the greater amount of times you do so, would increase the potential of that happening (4/4/08 Alali Dep. 54-55, Nicaj Aff. Ex. 30).**

107.   On or about June 1, 2006, Alali received an interim performance evaluation for the period January 1 through May 31, 2006. Alali's interim 2006 evaluation was also below standard. A copy of the evaluation is annexed as **Exhibit GG**.

**Response:    Admits receipts but denies veracity.   Defendants again fail to provide this Court with the material disputed facts by failing to produce Plaintiff's rebuttal. (6/3/06 Rebuttal, Nicaj Aff. Ex 1).**

108.   The interim 2006 evaluation notes that Alali: (i) needs to improve his communication skills; (ii) had already received four civilian complaints during the 6-morrih rating period; (iii) needlessly escalates tensions in many traffic stops by issuing a "seemingly punitive number of summonses"; and (iv) demonstrates a lack of discretion. Ex. GG.

**Response:    Admits receipt but denies veracity.  Plaintiff's three-page rebuttal in part states "[t]he purpose of this letter is to strongly disagree with, respectfully, the deplorable and frivolous evaluation that Sgt. Wilson prepared for me for 2006." (6/3/06 Rebuttal, Nicaj Aff. Ex. 1).**

109.   On or about February 2, 2007, Alali received his performance evaluation for the 12-month period January 1 through December 31, 2006. He was rated below standard. A copy of the evaluation is annexed as **Exhibit HH**.

**Response:    Denies veracity but admits receipt (See Plaintiff's 2/2/07 Rebuttal, Nicaj Aff. Ex. 2).**

110.   The full evaluation for 2006 again noted Alali's problem with communicating with the public on traffic stops, which led to a large number of civilian complaints. Ex. HH.

**Response:    Admits receipt but denies veracity.  In fact, Plaintiff objected to his evaluation and with respect to the so-called civilian complaints (2/2/07 Rebuttal, Nicaj Aff.**

Ex. 2). **In his rebuttal, Alali states "Sgt. Wilson comments that both my lack of discretion and communication skills led to civilian complaints. What complaints? Are those complaints substantiated and I don't know about them. I am being penalized for complaints in this very evaluation that I have no knowledge about." (2/2/07 Rebuttal, Nicaj Aff. Ex. 2).**

111.    The full 2006 evaluation also noted Alali's inability to stay within his assigned post, and an incident in which Alali drove recklessly in responding to a call, even though all officers were advised that the situation was under control and to disregard the call. Ex. HH.[3] The evaluation further states that "[c]ivilian complaints and department discipline were negative issues last year [2005] and there has not been a discernible improvement over this rating period." *Id.*

**Response:     Denies veracity. With respect to civilian complaints, see Plaintiff's response to ¶110 *supra*. In his rebuttal – Alali specifically denies recklessly responding to the call (2/2/07 Rebuttal, Nicaj Aff. Ex. 2).**

112.    On or about June 21, 2007, Alali received an interim performance evaluation for the period January 1 through May 31, 2007, necessitated by his below-standard evaluation for the year 2006. Alali's interim 2007 evaluation was also below standard. A copy of the evaluation is annexed as **Exhibit II.**

**Response:     Admits but denies veracity. Sergeant Brady was the evaluating officer (4/4/08 Alali Dep. 27-28, 32-33, Nicaj Aff. Ex. 30). Plaintiff rebutted this evaluation contending  evaluation was a biased performance appraisal based solely on Plaintiff's heritage (6/22/07, Nicaj Aff. Ex. 3).**

113.  By memorandum dated July 25, 2007, Captain Gazzola amended the 2007

interim evaluation to "meets standard." A copy of the memorandum is annexed as **Exhibit JJ.**

**Response:**      **Admits.**

114.  Alali admitted that, under Section 13.1 of the NRPD Administrative Manual, a

New Rochelle police officer's performance is evaluated on the basis of both qualitative and

quantitative factors. *See* Alali I Dep (Ex. B). at 240:7-25.

**Response:**      **Denies materiality.**

115.  A copy of Section 13.1 of the NRPD Administrative Manual is annexed as

**Exhibit** KK.

**Response:**      **Denies materiality.**

116.  Article X, Section 11 of the agreement between the City of New Rochelle and the

New Rochelle Police Association ("PBA") contains a tuition reimbursement plan. *Alali I* Rule

56.1 Statement (Ex. C), at ¶77. A copy of the Agreement between the City and the PBA is

annexed as **Exhibit LL.**

**Response:**      **Denies materiality.**

117.  Under the tuition reimbursement plan, officers are entitled to reimbursement for

college-level course work credited towards an undergraduate or graduate degree in Criminal

Justice or Public Administration. *Alali I* Rule 56.1 Statement (Ex. C), at ¶78; Ex. LL, at § 11(B).

**Response:**      **Denies materiality.**

118.  To be eligible for reimbursement, course work must be approved in advance by

the Police Commissioner, successfully completed, and the officer must submit proof of course

cost, content and grade received. *Alali I* Rule 56.1 Statement (Ex. C), at ¶79; Ex. LL, at § §

11(B), 11(D), and 11(E).

**Response:**    **Admits. Every time Plaintiff has attended classes, Plaintiff has applied for tuition reimbursement (3/14/08 Alali Dep. 141, Nicaj Aff. Ex. 29). Plaintiff understood that the fees would be paid for all courses that were successfully completed. Plaintiff successfully completed all his courses (3/14/08 Alali Dep. 144, Nicaj Aff. Ex. 29).**

119.    Section 11(G) of the tuition reimbursement plan states, in relevant part: the "total amount of City tuition reimbursement that may be approved for the unit membership as a whole shall not exceed $30,000 for 2005 and $40,000 per year effective 2006." *Alali I* Rule 56.1 Statement (Ex. C), at ¶80; Ex. LL, at ¶11(G).

**Response:**    **Admits and adds that the money allocated for tuition must be distributed evenly but it was not (3/14/08 Alali Dep. 141; see Plaintiff's response to ¶127 *infra*).**

120.    On November 11, 2005, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the winter trimester (2005) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as Exhibit MM.

**Response:**    **Admits.**

121.    On February 23, 2006, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the spring trimester (2006) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as Exhibit NN.

**Response:**    **Admits.**

122.    On August 13, 2006, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the fall trimester (2006) at Iona College. A copy of the

memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit OO**.

**Response:**     **Admits.**

123.     On November 20, 2006, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the winter trimester (2006) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit PP**.

**Response:**     **Admits.**

124.     On February 15, 2007, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the spring trimester (2007) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit QQ**.

**Response:**     **Admits.**

125.     On August 8, 2007, Alali applied for and received permission from Commissioner Carroll to receive tuition reimbursement for "part or all of the fees and tuition" for classes Alali planned to take during the fall trimester (2007) at Iona College. A copy of the memorandum from Alali requesting tuition reimbursement is annexed as **Exhibit RR**.

**Response:**     **Admits.**

126.     Alali admitted in his *Alali II* deposition that, under the tuition reimbursement program, an officer is only entitled to reimbursement for a class successfully completed, that reimbursement would not be made until after the class was finished, and that reimbursement might be for only part of the tuition fee. Dep. (Ex. J) Part I, at 144:6-145:6.

**Response:**     **Admits.**

127.    Alali further admitted in his *Alali 11* deposition that he did not know whether amounts that Iona College claimed were due from Alali represented portions that the Department was supposed to pay under its tuition reimbursement program, or amounts that Alali was individually obligated to pay. Dep. (Ex. J) Part I, at 151:24-152:15.

**Response:    Denies.  In fact, in 2006, the Department had not reimbursed Alali or made any payment to the school for tuition (4/4/08Alali Dep. 8, Nicaj Aff. Ex. 30).  Initially Murphy refused to pay any part of Plaintiff's tuition (4/4/08 Alali Dep. 8, 10-11, Nicaj Aff. Ex.). Plaintiff owed approximately $10,000 for 2006.  After Plaintiff filed the EEOC and a copy of it was faxed to Carroll and Murphy's office, Murphy stated that he was going to pay Plaintiff $5700 which Murphy claimed was in excess of what Murphy paid the other members (4/4/08 Alali Dep. 9-11, Nicaj Aff. Ex. 30).  As it turns out, Murphy's statement was false the Department paid substantially more of other officers' tuition compared to than Plaintiff's (4/4/08 Alali Dep. 10-11, Nicaj Aff. Ex. 30).  As a result Alali owned $17,000 in arrears intuition for 2006 (4/4/08 Alali Dep. 14-15, Nicaj Aff. Ex. 30).**

128.    Alali further admitted that he did not personally make any payments to Iona College for tuition for the years 2005, 2006 and 2008, and regarding 2007, stated "I do not believe so." Dep. (Ex. J) Part I, at 17:4-24.

**Response:    Denies.  Plaintiff stated he did not recall with respect to the 2007 tuition (4/4/08 Alali Dep. 17, Nicaj Aff. Ex. 30).**

Wherefore, upon the foregoing Plaintiff's Counter-Statement made pursuant to local Rule 56.1 and Plaintiff's Response to Defendants' 56.1 Statement, the Affidavit of Drita Nicaj with annexed exhibits thereto, and the Memorandum of Law in opposition to Defendants' motion, Defendants' motion for summary judgment should in all respects, be denied.

Dated:          White Plains, New York
                August 15, 2008

                                    LOVETT & GOULD, LLP

                                    By: _Drita Nicaj_____
                                    Drita Nicaj
                                    Attorneys for Plaintiff
                                    222 Bloomingdale Road
                                    White Plains, New York 10605
                                    (914) 428-8401