WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn:   Peter A. Meisels, Esq.
        Lalit K. Loomba, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X   07 Civ. 2916 (CS)

ARAZ ALALI,                                                          :

                              Plaintiff,                             :

        -against-                                                    :

ALBERTO DeBARA, individually, KYLE WILSON,                           :
individually, EDWARD AUSTIN, individually,
GEORGE MARSHALL, individually, HUMBERTO                              :
MORRELL, individually, MATTHEW BRADY,
individually, ANTHONY MUPRHY, individually,                         :
ROBERT GAZZOLA, individually, PATRICK J.
CARROLL, individually, and the CITY OF NEW                           :
ROCHELLE, New York,

                                                                     :

                              Defendants.

-------------------------------------------------------------------- X

## DEFENDANTS' REPLY MEMORANDUM OF
## LAW IN FURTHER SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000

2119405.1

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

Introduction .................................................................................................................... 1

Preliminary Statement ................................................................................................... 1

Argument ....................................................................................................................... 2

POINT I    ALLEGED CONDUCT OCCURING AFTER THE FILING
OF *ALALI II* IS IRRELEVANT ....................................................... 2

POINT II   ALALI CANNOT ESTABLISH A *PRIMA FACIE* RETALIATION
CASE AGAINST THE INDIVIDUAL DEFENDANTS ........................... 6

       A.      Commissioner Carroll .................................................................. 8
       B.      Deputy Commissioner Murphy ..................................................... 9
       C.      Captain Gazzola ........................................................................ 13
       D.      Lieutenant Marshall .................................................................. 14
       E.      Lieutenant DeBara ..................................................................... 15
       F.      Sergeant Wilson ......................................................................... 17
       G.      Sergeant Austin ......................................................................... 18
       H.      Sergeant Morrell ....................................................................... 18
       I.      Sergeant Brady .......................................................................... 19

POINT III   THE CITY IS ENTITLED TO SUMMARY JUDGMENT
ON ALALI'S SECTION 1981 CLAIM ............................................... 19

POINT IV    THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S TITLE VII CLAIM ................................................ 21

Conclusion ................................................................................................................... 22

2119405.1

# TABLE OF AUTHORITIES

**CASES**

*Alexander v. Holden*, 66 F.3d 62 (4th Cir. 1995) ...............................................................10

*Algarin v. Town of Walkill*, 421 F.3d 137 (2d Cir. 2005)....................................................9

*Blanco v. Brogan*, 2007 U.S. Dist. LEXIS 86890 (Nov. 21, 2007)....................................10

*Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir. 1988)................................................13

*Brennan v. Straub*, 246 F. Supp.2d 360 (S.D.N.Y. 2003) ..................................................10

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ....................................................................11

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006) ........................................................................................................ 7, 15-18

*Chang v. Safe Horizons*, 254 Fed. Appx. 838, 2007 U.S. App. LEXIS 25752 (2d Cir. Nov. 5, 2007) .....................................................................................................12, 15

*Chin v. New York City Housing Auth.,* 2008 U.S. Dist. LEXIS 67983 (S.D.N.Y. Sept. 9, 2008) ...............................................................................................................20

*Choudry v. Polytechnic Institute of N.Y.*, 735 F.2d 38 (2d Cir. 1984).................................20

*Combined System v. Defense Tech. Corp.*, 230 F. Supp.2d 544 (S.D.N.Y. 2002) ...............2

*Community Health Care Associate of New York v. DeParle*, 69 F. Supp.2d 463 (S.D.N.Y. 1999) ...............................................................................................................19

*Contes v. Porr*, 345 F. Supp.2d 372 (S.D.N.Y. 2004) .......................................................21

*Croswell v. Triborough Bridge and Tunnel Authority*, 2007 U.S. Dist. LEXIS 58343 (S.D.N.Y. Aug. 7, 2007) ...................................................................................2, 9

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000).......................................................21

*Darquea v. Jarden Corp.*, 2008 U.S. Dist. LEXIS 17747 (S.D.N.Y. March 6, 2008) ...................................................................................................................................10

*Dobosz v. Walsh*, 892 F.2d 1135 (2d Cir. 1989).................................................................10

*Forrester v. White*, 484 U.S. 219 (1988) ........................................................................10

*Gronowski v. Spencer*, 424 F.3d 285 (2d Cir. 2005) .........................................................19

*IP Co. LLC v. General Communication Inc.*, 2007 U.S. Dist. LEXIS 81451
   (S.D.N.Y. Oct. 31, 2007) ...............................................................................................7

*Ifill v. United Parcel Service*, 2005 U.S. Dist. LEXIS 5230 (S.D.N.Y. March 29,
   2005) ..............................................................................................................................7

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000) ...................................................................19

*John E. Andrus Mem., Inc. v. Dawes*, 2008 U.S. Dist. LEXIS 18189 (S.D.N.Y.
   March 10, 2008) ............................................................................................................10

*Joseph v. Leavitt*, 465 F.3d 87 (2d Cir. 2006) ..................................................................12

*Kempkes v. Downey*, 2008 U.S. Dist. LEXIS 25981 (S.D.N.Y. March 31, 2008) ............20

*Kessler v. Westchester County Department of Social Services*, 461 F.3d 199 (2d
   Cir. 2006) .......................................................................................................................2

*LePore v. Generoso*, 2008 U.S. Dist. LEXIS 55641 (S.D.N.Y. July 18, 2008) ...............11

*Lizardo v. Denny's, Inc.*, 270 F.3d 94 (2d Cir. 2001) .........................................................7

*Magilton v. Tocco*, 379 F. Supp.2d 495 (S.D.N.Y. 2005) .................................................11

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006) ...................................................10

*Martinez v. New York City Department of Education*, 2008 U.S. Dist. LEXIS
   41454 (S.D.N.Y. May 27, 2008) ...............................................................................16, 17

*McMillan v. Monroe Co.*, 520 U.S. 781 (1997) .................................................................19

*Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978) ............19

*Montanile v. National Broadcast Co.*, 211 F. Supp.2d 481 (S.D.N.Y. 2002) ...............6, 14

*Munafo v. Metropolitan Transport Authority*, 285 F.3d 201 (2d Cir. 2002) .......................6

*Richards v. New York City Police Department*, 1999 U.S. Dist. LEXIS 722
   (S.D.N.Y. Jan. 22, 1999) ...........................................................................................6, 14

*Saenz v. Lucas*, 2008 U.S. Dist. LEXIS 52400 (S.D.N.Y. June 9, 2008) ...................19, 21

*Sankin v. Abeshouse*, 545 F. Supp.2d 324 (S.D.N.Y. 2008)................................................9

*Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87 (2d Cir. 2001)....................5, 7

*United States ex rel. Platinum Mechanical, LLC v. United States Surety Co.*, 2007
   U.S. Dist. LEXIS 94026 (S.D.N.Y. Dec. 21, 2007) ....................................................10

*Verbeek v. Teller*, 158 F. Supp.2d 267 (E.D.N.Y. 2001)....................................................11

## STATUTES

42 U.S.C. §1981............................................................................................................2, 18

42 U.S.C. §1983.................................................................................................................19

## Introduction

Defendants Alberto DeBara, Kyle Wilson, Edward Austin, George Marshall, Humberto Morrell, Matthew Brady, Anthony Murphy, Robert Gazzola, Patrick J. Carroll (the "Individual Defendants") and the City of New Rochelle (the "City") (collectively, the "Defendants") respectfully submit this reply memorandum of law in further support of their motion for summary judgment.

## Preliminary Statement

The instant case, *Alali II*, is a retaliation case based on two predicate acts: the filing of Alali's EEOC Charge on or about February 12, 2007, and the commencement of *Alali I* on February 21, 2007. The *Alali II* complaint alleges that after, and as a result of these events -- and during the interval of time between them and the filing of *Alali II* on April 11, 2007 -- Alali was subjected to retaliation at the hands of the Individual Defendants. A basic logical and legal requisite of this claim is that each Individual Defendant was specifically aware of the predicate acts when the alleged retaliatory conduct occurred. The Defendants demonstrated in their main motion that Alali cannot meet the burden of establishing this element of his retaliation claim. Alali failed to come forward with admissible evidence to show otherwise in his answering papers. In addition, even assuming prior knowledge, the retaliatory conduct alleged, and supplemented by Alali's deposition testimony, does not amount to adverse action which would dissuade a reasonable worker from engaging in protected activity. For these, and the additional reasons explained below, the Individual Defendants are entitled to qualified immunity from suit.

To establish municipal liability on his retaliation claim, Alali needed to show that his alleged injury was caused by a municipal policy or practice. Alali attempted to make that showing by claiming that Commissioner Carroll was a policymaker with final policy-making authority on behalf of the City. But even assuming Commissioner Carroll had final policy-

-1-

making authority, Alali presented no proof that Carroll participated in or failed to address the

retaliation alleged in the *Alali II* complaint. Moreover, while Alali bears the burden of proving

Carroll's policymaker status as a matter of state and local law, he failed to carry that burden.

Accordingly, there is no basis to hold the City of New Rochelle liable for the alleged retaliation

at issue in *Alali II*.

**Argument**

**POINT I**

**ALLEGED CONDUCT OCCURING AFTER
THE FILING OF *ALALI II* IS IRRELEVANT**

To prevail on a claim for retaliation in violation of 42 U.S.C. §1981, Alali must

demonstrate that he engaged in protected activity known to the defendants; that the defendants

took adverse action against him; and that "a causal connection exists between the protected

activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse action."

*Croswell v. Triborough Bridge and Tunnel Auth.,* 2007 U.S. Dist. LEXIS 58343, at *27

(S.D.N.Y. Aug. 7, 2007) (citing *Kessler v. Westchester County Dep't of Social Servs.,* 461 F.3d

199, 205-06 (2d Cir. 2006)). Where, as here, there is no direct evidence of a causal connection,

causation "can be established indirectly by showing that the protected activity was closely

followed in time by the adverse action.'" *Id.* at *49 (quoting *Cifra v. G.E. Co.,* 252 F.3d 205,

216 (2d Cir. 2001)). In this regard, courts within the Second Circuit utilize a two-month window

"to determine whether the temporal connection between the protected activity and alleged

retaliation is close enough or too attenuated. *Id.* at *51.

-2-

In opposing Defendants' motion for summary judgment, Alali's counsel[1] filed a declaration which attempts to place into the record alleged instances of retaliatory conduct that occurred subsequent to April 11, 2007, the date on which Alali filed the *Alali II* complaint. *See* Alali's Counter-Statement of Material Facts, at ¶¶53-63. Specifically, Alali claims that on April 20, 2007, he did not receive prompt assistance when he called for a back-up officer to assist with a traffic stop. *Id.* at ¶53. On May 30, 2007, he complained to Carroll about "recurring bigotry solely based on heritage," and that Sgt. Morrell had apparently stolen $300 from Alali's memo book. *Id.* at ¶54. On June 21, 2007, Alali requested a review of his interim 2007 performance evaluation, claiming that the below-standards evaluation was "based solely on heritage." *Id.* at ¶55. On June 23, 2007, he complained that Sgt. Morrell had ordered Alali to wear his uniform hat, even though Alali claims Morrell was not wearing his, and asserted this was yet another example of harassment based "exclusively on my heritage." *Id.* at ¶56. On June 12, 2007, Alali wrote to Carroll regarding harassment by Captain Gazzola, and further complained that Gazzola and his supervisors "have singled me out based on my heritage." *Id.* at 57.

In addition, on August 22, 2007, Alali wrote a memo to Lieutenant James Fortunato. In this memo, Alali referenced his complaint in *Alali II,* and claimed that despite being served with *that* complaint (*i.e.,* the *Alali II* complaint), the Individual Defendants "have continued to commit conspicuous acts of prejudice." Plaintiff's Counter-Statement, at ¶¶58-60. Alali then claimed that he delivered a copy of this memo to Commissioner Carroll on August 31, 2007, and that, later that day, Commissioner Carroll suspended Alali without pay. *Id.* Finally, Alali

---

[1] Notably, Alali's opposition papers do not contain an affidavit sworn to by Alali himself or by anyone else having personal knowledge of the alleged retaliatory conduct or who could authenticate any of the documents provided. Accordingly, Alali failed to comply with Rule 56(e) of the Federal Rules of Civil Procedure, which requires a party opposing a motion for summary judgment to do so with admissible evidence. *See Combined Sys. v. Defense Tech. Corp.,* 230 F. Supp.2d 544, 549 n.2 (S.D.N.Y. 2002).

claimed that he received another below-standards performance evaluation in March 2008, and
that Captain Gazzola refused to extend the five-day deadline in which Alali was entitled to
challenge the evaluation despite Alali's being out of town because of a family emergency. *Id.* at
¶¶61-63.

    None of the above conduct, which occurred subsequent to the filing of *Alali II,* is relevant
to the allegations raised in the *Alali II* complaint. First, any conduct subsequent to the filing of
*Alali II* was not (and could not have been) asserted in the *Alali II* complaint. In fact, the specific
instances of retaliatory conduct alleged in the *Alali II* complaint occurred during the period
February 21 to April 8, 2007, as summarized in the table below:

| Date | Alleged Retaliatory Conduct |
| --- | --- |
| 02/21/07 | DeBara assigned Alali to a fixed post at the Hospital. (¶18(a)) |
| 02/21/07 | Alali asked Wilson why he received the fixed post at the Hospital, and Wilson responded "Get out of my face now Raz. Not another fucking word, get out of my face." (¶18(b)) |
| 02/21/07 | DeBara told Alali that prospectively he would be assigned to a "utility car," or assigned to direct traffic, watch suicidal prisoners, transport prisoners or work in dispatch. (¶18(c)) |
| 03/07/07 | DeBara assigned Alali to a fixed post in snowy conditions. When Alali challenged the assignment, DeBara allegedly said, "we can put you anywhere Bin Laden." (¶18(d)) |
| 03/07/07 | When Alali complained to Sgt. Morrell about the fixed assignment, Morrell said, "you are not above scrutiny." "It's really cold out – bundle up." (¶18(e)) |
| 03/08/07 | Sgt. Austin and Sgt. Morrell told Alali that he was routinely going to be given "undesirable assignments" because he was "below standards." Sgt. Morrell said he had been directed to give Alali undesirable assignments by Captain Gazzola and Lt. Marshall because of Alali's below-standards rating. (¶18(f)) |
| 03/22/07 | Captain Gazzola issued a memo to Alali stating that because of Alali's below-standard rating, he would not be eligible for over-time, special-duty assignments, tour switches or assignments to specialized units within the Department. (¶18(g)) |
| 04/07/07 | Sgt. Austin assigned Alali to work dispatch in the communications room, and told Alali, "It looks like you are going backwards like the good old times." (¶18(h)) |

- 4 -

| Date | Alleged Retaliatory Conduct |
|------|------------------------------|
| 04/07/07 | Sgt. Brady told Alali, "you better get a good lunch . . . since you won't be able to leave the [radio] room, good luck." (¶18(i)) |
| 04/08/07 | Sgt. Wilson assigned Alali to work on Easter Sunday.  When Alali challenged the assignment, Wilson allegedly said, "You are an Arab and its Easter.  Camel jockeys don't celebrate Easter."  (¶18(j)) |

Alali never amended his complaint in *Alali II*, or sought permission to do so.

Furthermore, the complaints in *Alali III*, which was filed on November 9, 2007, and *Alali IV*,

which was filed on May 6, 2008, make no reference to the subsequent alleged retaliatory acts

introduced *for the first time* by Alali's attorneys in opposition to the Defendants' instant motion.

*See* Loomba Decl., Exs. K and L.  Indeed, while Alali was deposed in accordance with paragraph

3(d) of Judge Brieant's scheduling order for purposes of the qualified immunity motion, the

deposition was addressed to the allegations in the *Alali II* complaint which, by definition, does

not address conduct occurring after the complaint was filed.  Therefore, because the Individual

Defendants' motion for qualified immunity is addressed, necessarily, to the allegations contained

in *Alali II*, which do not (and could not) include any of the subsequent alleged conduct, such

conduct is irrelevant to the instant motion.

Second, even assuming, *arguendo,* that the subsequent alleged conduct could be

considered, the Individual Defendants are still entitled to qualified immunity because the conduct

occurred beyond the two-month window following the filing of the EEOC Charge and *Alali I.*

*See Croswell*, 2007 U.S. Dist. LEXIS 58343, at *51.  Alali can therefore not establish that the

subsequent alleged conduct, even assuming it qualifies as "adverse," was causally connected to

the filing of the *EEOC* Charge or *Alali I.*

Moreover, in evaluating whether a causal connection can be demonstrated by means of

temporal proximity, the Second Circuit has held that an inference of causation cannot arise

where there was a history of discipline straddling the allegedly protected conduct. *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had even engaged in any protected activity, an inference of retaliation does not arise."). Alali had an extensive history of civilian complaints and command discipline, all of which preceded the filing of his EEOC Charge and *Alali I* in February 2007. *See* Defendants' Rule 56.1 Statement, at ¶¶37-93. Given that history, Alali cannot demonstrate a causal connection between the filing of the EEOC Charge or *Alali I* and any of the alleged retaliatory conduct occurring thereafter.

For the reasons set forth above, the subsequent alleged retaliatory conduct introduced by Alali's counsel should be disregarded for purposes of ruling on the instant motion for qualified immunity.

## POINT II

### ALALI CANNOT ESTABLISH A *PRIMA FACIE* RETALIATION CASE AGAINST THE INDIVIDUAL DEFENDANTS

The Individual Defendants are entitled to qualified immunity if (i) Alali's version of the events does not make out a violation of a constitutional or federal right; or (ii) it was objectively reasonable to believe that each Individual Defendant's alleged conduct did not violate any such rights. *See Munafo v. Metropolitan Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002).

To prevail on a retaliation claim against the Individual Defendants, Alali must first establish that they were each specifically aware of the protected acts asserted in *Alali II – i.e.,* the filing of the EEOC Charge and *Alali I –* at the time that they engaged in the alleged retaliatory conduct. *See Richards v. New York City Police Dept.*, 1999 U.S. Dist. LEXIS 722, at *24 (S.D.N.Y. Jan. 1999). To establish an individual's specific prior knowledge, it is not enough for

Alali to claim that his filing of the EEOC Charge and *Alali I* was "common knowledge" within the Police Department or that the Individual Defendants might have been aware of the predicate acts by way of "word of mouth." Such vague allegations are "insufficient to establish knowledge . . . on the part of those allegedly retaliating against [him]." *Id.* at *27. Similarly, a defendant's prior knowledge of alleged protected conduct cannot be established by speculation. *See Montanile v. National Broadcast Co.,* 211 F. Supp.2d 481, 488 (S.D.N.Y. 2002).

Second, even if the Individual Defendants were specifically aware of the protected conduct, Alali must show that they took adverse action against him, and that there was a causal connection between the protected activity and the adverse action taken by each defendant. *See Lizardo v. Denny's, Inc.,* 270 F.3d 94, 105 (2d Cir. 2001). Conduct is considered "adverse" in this context when it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 57, 126 S. Ct. 2405, 2409 (2006). This is an objective, not a subjective standard. *Id.* Alali's personal perception that an assignment is "degrading" or "undesirable" is therefore irrelevant.

Third, as noted in Point I above, while an inference of causation can arise where the adverse action very closely follows the protected activity, where "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had even engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance America Corp.,* 248 F.3d 87, 94 (2d Cir. 2001). Finally, personal involvement is a pre-requisite for individual liability under Section 1981. *Ifill v. United Parcel Service,* 2005 U.S. Dist. LEXIS 5230, at *8 (S.D.N.Y. March 29, 2005).

-7-

Applying these basic principles, the Individual Defendants demonstrated in their main motion that each was entitled to qualified immunity from suit. In opposing the motion, Alali has failed to introduce admissible evidence demonstrating otherwise.

## A.    **Commissioner Carroll**

Commissioner Carroll was not personally involved in any of the alleged conduct which Alali claims was taken in retaliation for his filing the EEOC Charge on February 12, 2007 or the commencement of *Alali I* on February 21, 2007. *See* Complaint, at ¶18(a) – (j).[2]

Alali argues that Commissioner Carroll was personally involved because within two weeks of the filing of *Alali I,* Alali complained to Carroll that Gazzola was harassing him and singling him out. As proof of these complaints, Alali points to memos dated March 7, 2008 (Nicaj Decl., Ex. 10) and March 8, 2007 (Nicaj Decl., Ex. 12). *See* Opp. Mem. at 29. Alali does not provide a declaration attesting to the authenticity of these documents. Nevertheless, even assuming that he had, they do not establish personal involvement by Commissioner Carroll in the alleged retaliatory acts, only that he received memos. In fact, neither the March 7 nor the March 8, 2007 memo mentions retaliation. The March 7 memo only complains that Alali had been assigned to a foot post; there is no mention of a predicate protected act. *See* Nicaj. Decl., at Ex. 10. Similarly, the March 8 memo only claims that Captain Gazzola was treating Alali unfairly; there is no mention of retaliation. *See* Nicaj Dec., at Ex. 12. Alali also refers to additional written complaints addressed to Carroll all of which post-date the filing of *Alali II. See* Opp. Mem. at 29. For the reasons set forth in Point I above, however, such complaints are irrelevant to the allegations contained in *Alali II.*

---

[2] In paragraph 16 of the compliant, Alali alleges that Commissioner Carroll participated in the decision to initiate disciplinary charges against him. For the reasons discussed below, however, Commissioner Carroll is entitled to absolute immunity from any such claim.

- 8 -

While Alali's claim that he was suspended by Carroll on August 31, 2007 invokes the

Commissioner's personal involvement, this alleged conduct also occurred after the filing of *Alali*

*II,* and therefore is irrelevant to the question of whether Carroll is entitled to qualified immunity

from the acts of retaliation alleged in *Alali II.* Moreover, Alali's suspension on August 31, 2007

occurred over six months after the filing of the EEOC Charge and *Alali I.* It is too far removed

in time to support an inference that it was motivated by retaliation against the filing of the

predicate acts at issue here. Moreover, in light of Alali's long history of prior command

disciplines, no such inference is available in any event. *Slattery, supra,* at 94. Indeed, given

Alali's undisputed prior history of civilian complaints and command discipline problems,

Commissioner Carroll could reasonably believe that he was not violating any of Alali's

constitutional or federal rights in suspending him for a violation of Departmental rules. "[T]he

pendency of a discrimination complaint cannot and should not be transformed into a form of

immunity preventing an employer from disciplining an employee for legitimate workplace

infractions." *Croswell v. Triborough Bridge and Tunnel Auth.,* 2007 U.S. Dist. LEXIS 58343, at

*56 (S.D.N.Y. Aug. 7, 2007).

For the above reasons, Commissioner Carroll is entitled to qualified immunity from suit.

**B.     Deputy Commissioner Murphy**

In granting summary judgment to the Individual Defendants in *Alali I,* this Court

(Brieant, J.) held:

> Defendants are specifically empowered to administer the affairs of
> the police department and had the obligation 'to investigate [the]
> cascade of complaints' surrounding [Alali] 'and prepare a report
> chronicling [the] findings.' Such findings are a matter of
> 'tremendous public importance.' Thus, Defendants' decision to
> initiate disciplinary proceedings against Plaintiff based on multiple
> acts of misconduct is entitled [to] absolute immunity (quoting
> *Algarin v. Town of Walkill,* 421 F.3d 137 (2d Cir. 2005)).

- 9 -

Loomba Decl., Ex. E, at p.6.

This holding has preclusive effect on the instant case under the doctrine of collateral estoppel. Deputy Commissioner Murphy is therefore entitled to absolute immunity from the claim that he participated in a decision to prefer disciplinary charges against Alali. Complaint, at ¶16.

Alali attempts to avoid the preclusive effect of the prior decision in *Alali I* by focusing on a single sentence in which Judge Brieant stated: "The following facts are presumed true for the purposes of this motion only." Loomba Decl. Ex. E, at 1. Alali suggests, without support, that Judge Brieant injected this sentence into the decision to recognize the unique circumstances of Alali's dispute with the City of New Rochelle -- a dispute in which Alali has filed (at last count) four separate lawsuits over a single employer-employee relationship.

But there is nothing particularly unique about the language Judge Brieant employed. In fact, the same sentence appears in numerous recent decisions authored by Judge Brieant. *Sankin v. Abeshouse,* 545 F. Supp.2d 324 (S.D.N.Y. 2008); *John E. Andrus Mem., Inc. v. Dawes,* 2008 U.S. Dist. LEXIS 18189 (S.D.N.Y. March 10, 2008); *Darquea v. Jarden Corp.,* 2008 U.S. Dist. LEXIS 17747 (S.D.N.Y. March 6, 2008); *United States ex rel. Platinum Mechanical, LLC v. United States Surety Co.,* 2007 U.S. Dist. LEXIS 94026 (S.D.N.Y. Dec. 21, 2007); *Blanco v. Brogan,* 2007 U.S. Dist. LEXIS 86890 (Nov. 21, 2007); *IP Co. LLC v. General Comm. Inc.,* 2007 U.S. Dist. LEXIS 81451 (S.D.N.Y. Oct. 31, 2007). None of these cases deal with a single plaintiff filing multiple lawsuits over a single employment relationship, thus making Alali's counsel's interpretation of Judge Brieant's language highly doubtful.[3] Accordingly, as

---

[3] Indeed, the more natural interpretation of the sentence in question is that facts alleged in the complaint and set forth by Alali in his deposition will be assumed true only for purposes of the motion for qualified immunity in the

2119405.1

demonstrated in the Defendants' main motion, the decision in *Alali I* has preclusive effect in the instant case.

Even putting the application of collateral estoppel to one side, Alali's legal argument against application of absolute immunity, which appears in a lengthy footnote starting at page 31 of his memorandum of law, is incorrect. Whether absolute immunity attaches is determined by a functional analysis. *Mangiafico v. Blumenthal,* 471 F.3d 391, 394 (2d Cir. 2006). "[T]he critical inquiry is not the official position of the person seeking absolute immunity, but the specific action for which that person seeks immunity." *Id.* In each of the cases cited by Alali, the challenged conduct involved termination from employment, not a decision to initiate, or the initiation of disciplinary charges. *See Dobosz v. Walsh,* 892 F.2d 1135, 1140 (2d Cir. 1989) (police superintendent not entitled to absolute immunity where he suspended an officer who had admitted to perjury and the superintendent was acting in his capacity as an employment supervisor); *Alexander v. Holden,* 66 F.3d 62, 66 (4th Cir. 1995) (county officials not entitled to absolute legislative immunity for firing a clerk based on her political affiliation); *Brennan v. Straub,* 246 F. Supp.2d 360 (S.D.N.Y. 2003) (city officials not entitled to absolute legislative immunity from claim that plaintiff was improperly terminated); *see also Forrester v. White,* 484 U.S. 219, 229 (1988) (judge not entitled to absolute judicial immunity against claim that he fired a subordinate for discriminatory reasons).

Alali's reliance on these cases is misplaced because the complaint in *Alali II* does not assert that Deputy Commissioner Murphy terminated Alali's employment. The only action alleged is the preferment of disciplinary charges. *See Alali II* complaint, at ¶16. The decision to initiate and the preferment of disciplinary charges is a prosecutorial, not an administrative,

instant case. If the motion is denied, that assumption would no longer apply, and Alali would have to carry his burden of proof on any disputed facts.

2119405.1

function and absolute immunity therefore applies. *LePore v. Generoso,* 2008 U.S. Dist. LEXIS 55641, at \*49 (S.D.N.Y. July 18, 2008); *Magilton v. Tocco,* 379 F. Supp.2d 495, 503 (S.D.N.Y. 2005); *Verbeek v. Teller,* 158 F. Supp.2d 267, 281 (E.D.N.Y. 2001) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 272-73 (1993)). Deputy Commissioner Murphy is therefore entitled to absolute immunity for any claim based upon the preferment of disciplinary charges.[4]

The other claim regarding Deputy Commissioner Murphy concerns Alali's allegation that he withheld payments to Iona College in retaliation for Alali's filing of the EEOC Charge and *Alali I.* Complaint, at ¶19. The Defendants demonstrated in their main motion that each of Alali's applications for permission to receive tuition reimbursement, including the ones submitted on February 15 and August 8, 2007, were approved. *See* Rule 56.1 Statement, at ¶¶120-125. Defendants further demonstrated that Alali admitted that he did not make his share of tuition payments to Iona College for 2005, 2006 or 2008, and that regarding 2007, he did not "believe" that he had made such payments. *Id.* at ¶¶126-128; Nicaj Aff., Ex. 30, at 17-18.

In opposition, Alali did not contest his failure to pay his own share of the tuition payments to Iona College, nor did he submit an affidavit or other proof that Deputy Commissioner Murphy was aware of the predicate acts or had been presented with a tuition bill, for which he withheld payment, during the relevant period between the filing of the EEOC Charge and the filing of *Alali II.* Alali's only response is his attorney's un-sworn and un-supported statement in the opposition brief that "Murphy reimbursed Plaintiff's tuition substantially less than other members of the Department following Plaintiff filing *Alali I.*" Opp. Mem. at p.29. No admissible proof was submitted to support this statement. In light of Alali's admissions, it is clear that he cannot prevail on this aspect of his retaliation claim.

---

[4] This same analysis applies equally to Commissioner Carroll, who is also referenced in paragraph 16 of the Alali II complaint.

- 12-

For the reasons set forth above, Deputy Commissioner Murphy is entitled to qualified immunity from suit.

**C.    Captain Gazzola**

Captain Gazzola preferred disciplinary charges against Alali on February 15, 2007. As explained above, Captain Gazzola is entitled to absolute immunity from any claim based on the preferment of such charges.

Regarding alleged retaliatory conduct taken by Captain Gazzola, Alali's counsel states that "Gazzola told Plaintiff's supervisors to rate Alali below standards." Opp. Mem. at 28. But there is no admissible evidence that Gazzola made this statement. In fact, the allegation in the *Alali II* complaint, which is assumed true for purposes of this qualified immunity motion, is that Gazzola rejected Alali's challenge to a below-standards evaluation that was written by Sergeant Austin, *Alali II* Complaint at ¶18(g), and the next day, wrote a memo to Alali stating that, as a result of the below-standards rating, Alali would not be eligible for overtime, special duty assignments, tour switches and specialized unit assignments. *Id.* at ¶18(h).

Even assuming the truth of these allegations, they do not constitute adverse action because when an employer merely enforces its pre-existing disciplinary policies in a reasonable manner, it does not engage in adverse action for purposes of a retaliation claim. *See Chang v. Safe Horizons,* 254 Fed. Appx. 838, 839, 2007 U.S. App. LEXIS 25752, at 2-3 (2d Cir. Nov. 5, 2007), citing *Joseph v. Leavitt,* 465 F.3d 87, 91 (2d Cir. 2006). Section 2.47 of the New Rochelle Police Department's Rules and Regulations states: "Members of the Department who have an abusive sick leave record, a pattern of disciplinary problems, or substandard work performance may be barred from the following: (a) Additional compensation assignments, including but not limited to, special detail employment and overtime; (b) Tour switches with

- 13-

oneself or other employees; (c) Consideration for a specialized unit/assignment." *See* Nicaj

Decl., Ex. 5; Affidavit of Lt. Gary Robinson, sworn to September 11, 2008.[5]

Alali received his below-standard evaluation for the year 2006 on February 2, 2007, prior

to the filing of the EEOC Charge or *Alali I.* Further, it is undisputed that Alali had an extensive

history of civilian complaints and command disciplines. Under these circumstances, enforcing

the provisions of Rule 2.47 was a reasonable application of the Department's pre-existing rules,

and thus does not qualify as "adverse" for purposes of a retaliation claim. Moreover, the

employment evaluation issued on February 2, 2007, was detailed and thorough. *See* Loomba

Decl., Ex. HH. At the very least, Captain Gazzola could have reasonably believed that he was

not violating Alali's rights when he restricted Alali's work assignments pursuant to existing rules

and regulations. Captain Gazzola is therefore entitled to qualified immunity from suit.

### D.    Lieutenant Marshall

"[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an

issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of

evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of

Colchester,* 863 F.2d 205, 210-11 (2d Cir. 1988).

The only allegation against Lieutenant Marshall is a hearsay statement contained in an

alleged conversation on March 8, 2007, between Alali and Sergeant Morrell. Alali claims that

Morrell told him he had been directed by Lieutenant Marshall to give Alali "undesirable"

assignments in light of his below-standards rating. Complaint, at ¶18(f). The Defendants

demonstrated in their main motion that Alali could not establish that Lieutenant Marshall was

specifically aware of either the EEOC Charge or *Alali I* when, at some point prior to March 8,

2007, he allegedly directed Sergeant Morrell to give Alali undesirable assignments. *See*

---

[5] Lt. Robinson's affidavit is annexed to the reply declaration of Lalit K. Loomba, Esq., dated September 16, 2008.

2119405.1

Defendants' Memo of Law at 17-18. Alali did not introduce any additional evidence in his opposition concerning Lieutenant Marshall's specific knowledge.

As demonstrated above, Alali may not rely on speculation, "word of mouth," or asserted "common knowledge" to show that a specific individual defendant was aware of the predicate protected acts at the time when he engaged in allegedly retaliatory conduct. *See Richards v. New York City Police Dept.,* 1999 U.S. Dist. LEXIS 722, at *27 (S.D.N.Y. Jan. 1999); *Montanile v. National Broadcast Co.,* 211 F. Supp.2d 481, 488 (S.D.N.Y. 2002). Without proof that Lieutenant Marshall was specifically aware of the predicate protected acts, Alali's retaliation claim against him fails. Lieutenant Marshall is therefore entitled to qualified immunity.

### E.    Lieutenant DeBara

Alali's argument against extending qualified immunity to Lieutenant DeBara is based entirely upon temporal proximity. He states that "within days" of the filing of the EEOC Charge and *Alali I,* DeBara punitively assigned him to a fixed hospital post, and then gave Alali the "degrading" assignment of riding in a utility car. Two weeks thereafter, Alali claims he was assigned by DeBara to a foot patrol in snowy conditions and when Alali complained about the assignment,[6] DeBara allegedly responded "we could put you anywhere Bin Laden." Opp. Mem. at 26.

Regardless of whether DeBara was aware of the EEOC Charge and *Alali I* when these remarks were made, Alali's *prima facie* case against DeBara fails because he cannot demonstrate that DeBara's alleged conduct constitutes an "adverse action" against Alali under the relevant standard. As noted above, conduct is considered "adverse" for purposes of a retaliation claim

---

[6] Defendants demonstrated that Alali actually never fulfilled the assigned foot post and, instead, went home sick. Alali does not contest this fact. In fact, Alali admitted that Sergeant Morrell had told him that he did not have to walk the foot post, but could rather utilize a car. Nicaj Decl., Ex. 29, at p.51.

- 15-

where the conduct is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 57, 126 S. Ct. 2405, 2409 (2006). This is an objective, not a subjective standard. *Id.* Alali's personal perception that an assignment is "degrading" or "undesirable" is therefore irrelevant.

A reasonable officer would not be dissuaded from making or supporting a charge of discrimination if confronted with any of Lieutenant DeBara's allegedly retaliatory conduct. Alali was, and remains, a member of the New Rochelle Police Department. He is under a sworn obligation to follow orders and undertake his assigned responsibilities to the best of his ability. Hospital posts and foot patrols are the kinds of assignments that New Rochelle Police Officers receive. In fact, Alali admitted that a hospital post may only be manned by a police officer. *See* Nicaj Decl., Ex. 29, at 35:15-36:2. Alali's personal perception that such assignments are degrading or demeaning is irrelevant under the objective standard set forth in *Burlington.* Clearly, a reasonable officer would not be dissuaded from engaging in protected activity just because he was given assignments within the basic responsibilities of his job.

DeBara's alleged[7] use of the term "Bin Laden" was rude, but as this Court held in *Alali I,* such comment does not violate Section 1981, Title VII or the Constitution. Even under the standard set forth in *Burlington,* such a comment would amount to no more than the "petty slights or minor annoyances that often take place at work and that all employees experience," and which do not form the basis of an actionable retaliation claim. *Burlington,* 548 U.S. at 68; *see also Chang v. Safe Horizons,* 254 Fed. Appx. 838, 2007 U.S. App. LEXIS 25752 (2d Cir.

---

[7] It should be noted that while Alali's complaint alleges that DeBara told Alali: "because we can, we could put you anywhere Bin Laden," Complaint, at ¶18(d), Alali's memo to Commissioner Carroll, written on the very day that DeBara allegedly made his comments, only claims that DeBara said "because we can." The memo does not include the words "Bin Laden." Nicaj Dec. at Ex. 10.

Nov. 5, 2007) (oral warnings were not "materially adverse" under the *Burlington* standard); *Martinez v. New York City Dep't of Education,* 2008 U.S. Dist. LEXIS 41454, at *40 (S.D.N.Y. May 28, 2008). For the above reasons, Lieutenant DeBara is entitled to qualified immunity.

**F.    Sergeant Wilson**

The Defendants demonstrated that there was no proof that Sergeant Wilson was specifically aware of the EEOC Charge or *Alali I* when, as alleged by Alali, Wilson told Alali to "get out of my face now Raz. Not another fucking word, get out of my face," or when Wilson assigned Alali to work with civilian employees on Easter Sunday, and allegedly told Alali, "you are an Arab and its Easter. Camel Jockeys don't celebrate Easter." Def's Memo of Law, at 19.

In opposition, Alali did not present any admissible evidence to prove otherwise. Alali only assumes that Wilson knew about the predicate acts. But as noted above, speculation, word of mouth and asserted general knowledge is insufficient to establish that a particular defendant had prior knowledge of allegedly protected activity. Alali's *prima facie* case against Sergeant Wilson therefore fails. *Richards, supra,* at *27; *Montanile, supra,* at 488.

Moreover, even assuming that Alali had come forward with evidence that Sergeant Wilson was aware of the EEOC Charge and *Alali I,* the comments allegedly uttered by Wilson amount to no more than the "petty slights or minor annoyances that often take place at work and that all employees experience," which are not actionable in a retaliation case. *Burlington,* 548 U.S. at 68. While Wilson's alleged comments are rude, they are not conduct that would dissuade a reasonable worker from engaging in protected activity. *See Martinez v. New York City Dep't of Education,* 2008 U.S. Dist. LEXIS 41454, at *40-41 (S.D.N.Y. May 28, 2008) (publicly yelling at plaintiff and calling him "shit" not actionable in a retaliation case). Sergeant Wilson is therefore entitled to qualified immunity.

### G.     Sergeant Austin

A similar analysis compels the conclusion that Sergeant Austin is entitled to qualified immunity. The Defendants demonstrated that Alali could not prove that Austin was specifically aware of the EEOC Charge or *Alali I* when Austin allegedly told Alali that he would be getting "undesirable" assignments because of Alali's below-standard rating, or when he later allegedly commented to Alali that it "looks like you are going backwards like the good old times." In opposition, Alali did not submit any evidence showing that Sergeant Austin was in fact aware of the alleged predicate acts. As noted above, word of mouth, or asserted "general knowledge" is insufficient to establish this element of Alali's *prima facie* case. *Richards, supra,* at *27; *Montanile, supra,* at 488.

In addition, the statements attributed to Sergeant Wilson by Alali, even assuming Wilson was aware of the predicate acts when they were uttered, do not arise to adverse acts under the relevant standard. *Burlington,* 548 U.S. at 68; *Chang, supra; Martinez, supra,* at *40-41.

### H.     Sergeant Morrell

The same analysis applies to Sergeant Morrell. Alali claims that Morrell assigned him to a foot patrol in snowy conditions, and told him "you are not above scrutiny and I don't like you, ok., so hurry up and go outside. It's really cold out – bundle up."[8] He also claims that Morrell, along with Austin, told Alali that he would be getting undesirable assignments because of his below-standards rating. *See* Def's Memo of Law at 21. There is no proof that Morrell was specifically aware of the EEOC Charge or *Alali I* when he allegedly made these statements, and Alali's claim that the predicate acts were general knowledge in the Department is not sufficient to establish Morrell's specific knowledge. *Richards, supra,* at *27; *Montanile, supra,* at 488.

---

[8] As noted above, Alali admitted that Morrell later told him that he did not have to walk the post, and could instead utilize a car. *See* Nicaj Decl., Ex. 29, at 51.

- 18-

In addition, like Wilson's statements, the statements attributed to Morrell clearly fall within the category of "petty slights or minor annoyances" insufficient to meet the adverse action standard for retaliation cases. *Burlington,* 548 U.S. at 68; *Chang, supra; Martinez, supra,* at *40-41.

## I.    <u>Sergeant Brady</u>

Finally, Sergeant Brady is entitled to qualified immunity for similar reasons.  There was no proof that Sergeant Brady was specifically aware of the EEOC Charge or *Alali I* when Brady allegedly told Alali, "you better get a good lunch at 800 (hours) since you won't be able to leave the room, good luck."  Alali has not added any additional evidence on this point in response to the Defendants' motion.  In addition, even assuming that Brady had been aware of the predicate acts, the statement attributed to him does amount to an adverse action for purposes of a retaliation claim under Section 1981.  *Burlington,* 548 U.S. at 68; *Chang, supra; Martinez, supra,* at *40-41.

## POINT III

### THE CITY IS ENTITLED TO SUMMARY JUDGMENT ON ALALI'S SECTION 1981 CLAIM

Alali contends that the City of New Rochelle, a municipality, should be liable on his Section 1981[9] retaliation claim because "Carroll, Murphy and Gazzola's role in the retaliatory actions and/or their failure to address [Alali's] complaints of discrimination."  Opp. Mem. at 31.  This path to municipal liability, however, is barred by the basic rule that municipal liability under Section 1981 and 1983 must be premised upon a municipal policy, custom or practice.  A municipality cannot be liable under these provisions based upon the doctrine of *respondeat*

---

[9] Apparently, Alali does not contend that he is bringing a separate retaliation claim under 42 U.S.C. §1983, as opposed to using Section 1983 as the procedural device for raising his Section 1981 claim.  In any event, for the reasons set forth in Defendants' main memorandum of law, any independent retaliation claim under Section 1983 fails as a matter of law.

*superior. Monell v. City of New York Dep't of Social Servs.,* 436 U.S. 658 (1978); *Chin v. New York City Housing Auth.,* 2008 U.S. Dist. LEXIS 67983, at *12-13 (S.D.N.Y. Sept. 9, 2008). In the absence of a municipal policy, there is no basis to hold the City liable.

Alternatively, Alali contends that the City is liable because of Commissioner Carroll's alleged status as a "policymaker," but this argument is also without merit. "Where a city official has final authority over significant matters involving the exercise of discretion, his choices represent government policy." *Gronowski v. Spencer,* 424 F.3d 285, 296 (2d Cir. 2005). And where, as here, there is no proof that the assumed policy-maker directly participated in any discriminatory and/or retaliatory conduct, a plaintiff can still prevail by showing that a policy-maker acted with deliberate indifference to allegations of illegal conduct. *See Chin, supra,* at *20. To prove deliberate indifference, however, Alali must demonstrate: "(1) that municipal officials with final policy-making authority had notice of the illegal conduct; (2) that the need for corrective action was 'obvious'; and (iii) that the officials nevertheless chose to ignore the issue. *Id.* (citing *Amnesty Am. v. Town of W. Hartford,* 361 F.2d 113, 128 (2d Cir. 2004)).

Here, even assuming that Commissioner Carroll had final policy-making authority, and assuming further that he was on notice of unlawful conduct in violation of Section 1981 (as alleged in the *Alali II* complaint), Alali cannot establish that Carroll chose to ignore such conduct. Alali never alleged in *Alali II* that Commissioner Carroll failed to address the alleged retaliatory conduct listed in paragraph 18 of the complaint. In addition, Alali has not submitted any evidence of any such failure to address such conduct. Rather, the only statement offered by Alali is the unsupported assertion in his opposition brief that the City should be liable under the policy-maker rule, given Carroll's "role in the retaliatory actions and/or [his] failure to address

Plaintiff's complaints of discrimination." Opp. Mem. at 31. This unsupported factual assertion is not sufficient to avoid summary judgment.

In fact, the only specific conduct asserted against Commissioner Carroll is his alleged participation in the decision to initiate disciplinary charges against Alali. *Alali II* Complaint, at ¶16. As noted above, however, Commissioner Carroll is entitled to absolute immunity for such conduct. Where, as here, an individual defendant is absolutely immune, immunized conduct cannot be the predicate to hold the municipal employer liable. *Contes v. Porr*, 345 F. Supp.2d 372, 379 (S.D.N.Y. 2004).

Finally, where, as here, Alali relies upon the actions of a final "policymaker" to establish municipal liability under Section 1981, "it is incumbent on [Alali] to establish [the policymaker] element as a matter of law." *Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000). The relevant showing must be made as a matter of state and local law. *See McMillan v. Monroe Co.*, 520 U.S. 781, 786 (1997). Alali has not carried his burden of demonstrating, as a matter of law, that Commissioner Carroll is a policymaker for the City of New Rochelle.

For the reasons set forth above, the City is entitled to summary judgment.

## POINT IV
### THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIM

Alali concedes that his Title VII claim is not viable as against the Individual Defendants.

Regarding the City, the Title VII claim should be dismissed for two main reasons. First, the same claim was dismissed by the Court in *Alali I*. For the reasons set forth in Defendants' main memorandum of law, that decision has preclusive effect in the instant case. Second, the analysis of a retaliation claim under Title VII is identical to the analysis of a retaliation claim under Section 1981. *Choudry v. Polytechnic Inst. of N.Y.*, 735 F.2d 38, 44 (2d Cir. 1984).

- 21-

Hence, for the reasons set forth above, the Title VII retaliation claim should also fail.  Finally, and in the alternative, the Title VII claim asserted in *Alali II* is identical to the Title VII claim asserted in *Alali III*.  The Title VII claim in the instant case should therefore be dismissed. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000).

## Conclusion

For the reasons set forth above, the Defendants' motion should be granted in its entirety.

Dated:  White Plains, New York
         September 17, 2008

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants

By:  Lalit K. Loomba, Esq.

3 Gannett Drive
White Plains, NY  10604
(914) 323-7000
File No. 07367.00059

- 22-

2119405.1