WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn:  Peter A. Meisels
       Lalit K. Loomba

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X    07 Civ. 2916 (CLB)

ARAZ ALALI,                                                              :

                         Plaintiff,                :

        -against-                                              :

ALBERTO DeBARA, individually, KYLE WILSON,           :    **DEFENDANTS' RESPONSE**
individually, EDWARD AUSTIN, individually,                **TO PLAINTIFF'S**
GEORGE MARSHALL, individually, HUMBERTO        :    **COUNTER-STATEMENT**
MORRELL, individually, MATTHEW BRADY,                     **OF MATERIAL FACTS**
individually, ANTHONY MUPRHY, individually,          :
ROBERT GAZZOLA, individually, PATRICK J.
CARROLL, individually, and the CITY OF NEW           :
ROCHELLE, New York,
                                                                         :
                    Defendants.
------------------------------------------------------------------------ X

       Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the

Southern District of New York, defendants Alberto DeBara, Kyle Wilson, Edward Austin,

George Marshall, Humberto Morrell, Matthew Brady, Anthony Murphy, Robert Gazzola, Patrick

J. Carroll (the "Individual Defendants") and the City of New Rochelle (the "City") (collectively,

the "Defendants") hereby submit the following response to plaintiff Araz Alali's "Counter-

Statement of Material Facts."

**The Parties**

      1.     Plaintiff Araz Alali is a citizen of the United States, a domiciliary of the State of

New York, and a resident of the Northern Counties (6/25/07 Alali Dep. 4, Nicaj Aff. Ex. 27;

3/14/08 Alali Dep. 7; Nicaj Aff. Ex. 29).

**Response:**    *Admit*

2.      Alali has been employed as a Police Officer by the City of New Rochelle, New

York since February 2002, having previously been employed as such by *inter alia* the City of

New York (6/25/07 Alali Dep. 8-9, Nicaj Aff. Ex.27).  Alali is of Iraqi national origin and as

such is the only Police Officer of Middle Eastern descent who has ever been employed by the

City of New Rochelle (hereinafter alternatively the "City") (6/25/2007 Alali Dep. 4, Nicaj Aff,

Ex. 27).

**Response:**    *Deny, except admit that Alali has been employed as a police officer by the City of*
               *New Rochelle since February 2002.*

3.      Defendant Alberto DeBara (hereinafter "DeBara"), who is sued in his individual

and personal capacities only, at all times relevant, was employed by the City as a police

Lieutenant (Loomba Decl. Ex. G ¶4,; Loomba Decl. Ex. 1 ¶4).

**Response**:    *Deny, except admit that DeBara was so employed during the period February 12*
               *through April 11, 2007.*

4.      Defendant Kyle Wilson (hereinafter "Wilson"), who is sued in his individual and

personal capacities only, at all times relevant was employed by the City as a police Sergeant

(Loomba Decl. Ex. G ¶5,; Loomba Decl. Ex. 1 ¶5).

**Response**:    *Deny, except admit that Wilson was so employed during the period February 12*
               *through April 11, 2007.*

5.      Defendant Edward Austin (hereinafter "Austin"), who is sued in his individual

and personal capacities only, at all times relevant was employed by the City as a police Sergeant

(Loomba Decl. Ex. G ¶6,; Loomba Decl. Ex. 1 ¶6).

**Response**:    *Deny, except admit that Austin was so employed during the period February 12*
*through April 11, 2007.*

6.    Defendant George Marshall (hereinafter "Marshall"), who is sued in his individual and personal capacities only, at all times relevant was employed by the City as a police Lieutenant (Loomba Decl. Ex. G ¶7,; Loomba Decl. Ex. 1 ¶7).

**Response**:    *Deny, except admit that Marshall was so employed during the period February 12*
*through April 11, 2007.*

7.    Defendant Humberto Morrell (hereinafter "Morrell"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as a police Sergeant (Loomba Decl. Ex. G ¶8; Loomba Decl. Ex. 1 ¶8).

**Response**:    *Deny, except admit that Morrell was so employed during the period February 12*
*through April 11, 2007.*

8.    Defendant Matthew Brady (hereinafter "Brady"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as a police Sergeant (Loomba Decl. Ex. G ¶9,; Loomba Decl. Ex. I ¶9).

**Response**:    *Deny, except admit that Brady was so employed during the period February 12*
*through April 11, 2007.*

9.    Defendant, Anthony Murphy (hereinafter "Murphy"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as Deputy Police Commissioner (Loomba Decl. Ex. G ¶10, Loomba Decl. Ex. 1 ¶10).

**Response**:    *Deny, except admit that Murphy was so employed during the period February 12*
*through April 11, 2007.*

10.     Defendant Robert Gazzola (hereinafter "Gazzola"), who is sued in his individual and personal capacities only, at all time relevant to this complaint was employed as a police Captain by the City (Loomba Decl. Ex. G ¶11; Loomba Decl. Ex. 1 ¶11).

**Response**:     *Deny, except admit that DeBara was so employed during the period February 12 through April 11, 2007.*

11.     Defendant Patrick J. Carroll (hereinafter "Carroll"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the City as Commissioner of Police (Loomba Decl. Ex. G ¶12; Loomba Decl. Ex. 1 ¶12).

**Response**:     *Deny, except admit that DeBara was so employed during the period February 12 through April 11, 2007.*

12.     Defendant City of New Rochelle, New York (herein "City"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State of New York (Loomba Decl. Ex. G ¶13; Loomba Decl. Ex. 1 ¶13).

**Response**:     *Deny, except admit that the City of New Rochelle is a municipal corporation organized under the laws of the state of New York.*

**The History of Discriminatory, Disparate and Abusive Treatment To Which Alali Was Subjected On the Basis of His National Origin, Ethnicity and/or Color**

13.     Commencing almost immediately following Alali's transfer to the City's Police Department, and continuing to date, he has been systematically and deliberately subjected to discriminatory and disparate treatment by reason of his national origin, ethnicity and/or color (Loomba Decl. E. A ¶7; 6/25/07 Alali Dep. 9-10, Nicaj Aff. Ex. 27).

**Response**:     *Deny, and refer to the Court's prior decision in Alai v. Gazzola, 07 Civ. 1296 (CLB), dated January 31, 2008, wherein the Court held that the discriminatory name calling alleged by Alali was not so severe or pervasive as to create a hostile*

- 4 -

*work environment. See Loomba Decl. (Ex. E), at 12.*

14.     In that connection, Alali has repeatedly been addressed as: "terrorist", "Ali Baba", "Camel Jockey" and *inter alia*, "Ali" (Loomba Decl. Ex. A ¶8; 6/25/07 Alali Dep. 10, 14-16, 81 82, Nicaj Aff. Ex. 27).  Gazzola and other supervisors repeatedly referred to Plaintiff as a Terrorist (6/25/07 Alali Dep. 13, Nicaj Aff. Ex. 27).

**Response**:     *Deny, and refer to the Court's prior decision in Alai v. Gazzola, 07 Civ. 1296 (CLB), dated January 31, 2008, wherein the Court held that being addressed by such terms did not amount to a violation of any of Alali's legal rights.  See Loomba Dec. (Ex. E), at 8.*

15.     Alali has also been referred to as Bin Laden (6/25/07 Alali Dep. 17-18, Nicaj Aff. Ex. 27).

**Response**:     *See Response to No. 14.*

16.     Plaintiff has repeatedly communicated with Carroll about biased acts such as these but Carroll has failed to do anything about them (6/25/07 Alali Dep. 25-26, Nicaj Aff. Ex. 27).

**Response**:     *Deny.  The cited evidence does not support plaintiff's statement of fact.*

17.     Alali has repeatedly been denied any meaningful specialized training, which training is routinely provided by Defendants to Police Officers junior to Plaintiff in seniority due to his national origin, ethnicity and/or color (6/25/07 Alali Dep. 30-31, Nicaj Aff. Ex. 27).  In fact, numerous officers who were junior to Plaintiff received the training (6/25/07 Alali Dep. 32, Nicaj Aff. Ex. 27).

**Response**:     *Deny, and refer to the Court's prior decision in Alai v. Gazzola, 07 Civ. 1296 (CLB), dated January 31, 2008, wherein the Court held that Alali failed to show*

*who denied him training or to identify any specific training program for which he*

*was denied. See Loomba Decl. (Ex. E), at 9.*

18.    Moreover, Alali was forced to attend a seminar concerning "Tools for Tolerance

Post 911", which assignment was calculated by Defendants to humiliate and embarrass Plaintiff

since he alone has been the department target of systemic intolerance by reason of his ethnicity

(6/25/07 Alali Dep. 40-43, Ex. 27).

**Response.**    *Deny, except admit that Alali, along with numerous other members of the New*

*Rochelle Police Department, were assigned to attend the seminar, and refer to the*

*Court's prior decision in Alai v. Gazzola, 07 Civ. 1296 (CLB), dated January 31,*

*2008, wherein the Court held requiring Alali to attend this seminar did not violate*

*any of Alali's legal rights. See Loomba Decl. (Ex. E), at 9.*

19.    Consequently, Alali advised Captain Gazzola that he (Alali) did not want to

attend the class because after being referred to as a terrorist, Ali Baba, Camel Jockey it was

humiliating for him to attend that class (6/25/07 Alali Dep. 42-43, Nicaj Aff. Ex. 27).    Gazzola

clearly intended to embarrass and humiliate Alali be sending him to the seminar (6/25/07 Alali

Dep. 44-45, Nicaj Aff. Ex. 27).

**Response.**    *See Response to No. 18.*

20.    Moreover, Alali has been [sic] systematically been given calculated false "below

standard" job performance evaluations (when in fact his job performance has consistently been

above average), replete with fabrications and/or falsehoods, which evaluations have served as

Defendant's predicate for barring Plaintiff from working on an overtime basis – thus causing him

substantial pecuniary losses (6/25/07 Alali Dep. 47-48, 51-52, Nicaj Aff. Ex. 27; 6/3/2006

Rebuttal, Nicaj Aff. Ex. 1; 2/2/07 Rebuttal, Nicaj Aff. Ex. 2; 6/22/07 Rebuttal, Nicaj Aff. Ex. 3).

Plaintiff has repeatedly rebutted his evaluations (Id.)

**Response**:    *Deny, and refer to the Court's prior decision in Alai v. Gazzola, 07 Civ. 1296*
*(CLB), dated January 31, 2008, wherein the Court held that Alali's below*
*standard job performance evaluations were warranted in light of the civilian*
*complaints and command disciplines he received during each relevant time*
*period.  See Loomba Decl. (Ex. E), at 9.*

21.    Defendants Wilson, Brady, Austin and Morrell advised Alali that Gazzola has
ordered them to falsely issue below standard evaluations (6/25/07 Alali Dep. 52-56, Nicaj Aff.
Ex. 27; 2/2/07 Rebuttal, Nicaj Aff. Ex. 2).

**Response**:    *See Response to No. 20.*

22.    Alali has been assigned for months at a time as a "dispatcher" in the Police
Department's Communications Room – even though the dispatcher function is civilian in nature
and otherwise performed by non-police employees of the Department (6/25/07 Alali, Nicaj Aff.
Ex. 27 56-59).

**Response**:    *Deny, and refer to the Court's prior decision in Alai v. Gazzola, 07 Civ. 1296*
*(CLB), dated January 31, 2008, wherein the Court held that giving Alali*
*restricted duties and limiting his interaction with the public were reasonable steps*
*in light of pending internal investigations of civilian complaints.  See Loomba*
*Decl. (Ex. E), at 10.*

23.    Alali was also forced to work walking posts during a midnight to 8:00 a.m. tour of
duty, in heavy rain and/or snow, when there otherwise is no walking post assigned on such a
shift (6/25/07 Alali Dep. 78-80, 81, 83-85, Nicaj Aff. Ex. 27).  Sergeants advised Alali that this
post was meant as punishment (6/25/07 Alali Dep. 85-86, Nicaj Aff. Ex. 27).

- 7 -

**Response**:    *Deny.  Alali testified at pages 85-86 that he was assigned walking posts by*

*Sergeants Jones and Giannatti, neither of whom is a defendant in this case.*

24.    Alali has also been forbidden, for substantial periods of time, to operate a police

vehicle (6/25/07 Alali Dep. 89, Nicaj Aff. Ex. 27).

**Response**:    *See Response to No. 22.*

25.    Alali was also prohibited, for substantial periods of time, to interact with members

of the public while on duty (6/25/07 Alali Dep. 94-96, Nicaj Aff. Ex. 27).

**Response**:    *See Response to No. 22.*

26.    Plaintiff has been prohibited, by reason of the false "below standard" job

performance evaluations, to engage in so-called "mutual switches" of job duty assignments with

other sworn members of the Police Department (6/25/07 Alali Dep. 68-69, 72 Nicaj Aff. Ex. 27;

7/10/07 Alali Dep. 145-146, Nicaj Aff. Ex. 28; 3/22/07 Communication, Nicaj Aff. Ex. 24;

3/27/07 Communication, Nicaj Aff. Ex. 5).

**Response**:    *See Response to No. 20.*

27.    Alali was subjected repeatedly to "investigations" of supposed wrong doing under

circumstances where no wrong doing occurred and Defendants knew that no wrong doing had

occurred (6/27/07 Alali Dep. 96-101, 103-109, Nicaj Aff. Ex. 27).

**Response**:    *Deny.  See also Response to No. 22.*

**Further Discrimination and Plaintiff' Protected Complaints of Discrimination**

29.    On November 14, 2006, Alali wrote to Carroll to complain of retaliation and bias

concerning his assignments (11/14/06 Memorandum, Nicaj Aff. Ex. 7)

**Response**:    *Deny the characterization of the document, and object to its admissibility in the*

*absence of an authenticating declaration.  See also Response to No. 22.*

30.     As a result of the foregoing discriminatory conduct on January 7, 2007, Alali non-disruptively expressed to Carroll again that he was the subject of "[p]ersecution based on heritage" and that he was the subject of retaliatory actions "solely based upon [his] middle-eastern heritage" (7/10/07 Alali Dep. 133-34, Nicaj Aff. Ex. 28; 1/11/07 Communications, Nicaj Aff. Ex. 8).

**Response**:     *See Response to No. 29.*

31.     On February 2, 2007, Alali advised Gazzola in a rebuttal to one of many calculated false "below standard" job performance evaluations: "I am being singled out due to my heritage. Being the sole middle-eastern police officer has been hopeless" (2/27/07 Rebuttal, Nicaj Ex. 2). Alali further wrote that "[s]everal supervisors have told me that the reason I have received this below standard evaluation as well as other below standard evaluation[s] is a direct result of your [Gazzola's] dictation to the supervisors that I  must be below standards.  This only supports my affirmation of the biased and prejudicial treatment I have suffered while being the top-producing member of the department.  It is become increasingly clear that I am being singled out due to my heritage (Id.).

**Response**:     *See Response to No. 29*

32.     By reason of the continuing discriminatory treatment and the retaliation imposed because Alali expressed his opposition to that treatment, on February 12, 2007, he duly filed a Charge of Discrimination ("race", "color" and "national origin") with the EEOC (EEOC Complaint, Nicaj Aff. Ex. 13; See Defendants' 56.1 Statement ¶ 16 *infra*).

**Response**:     *Deny, except admit that Alali filed an EEOC Charge.*

33.     Also on February 12, 2007, Plaintiff through counsel notified Defendants by fax of the EEOC filing and cautioned that "any retaliation casually the result of that filing is

independently actionable in Federal Court for damages" (2/12/07 Letter, Nicaj Aff. Ex. 14; 4/4/08 Alali Dep. 86, Nicaj Aff. Ex. 30).

**Response**:    *Deny, except admit that plaintiff's attorney sent a letter by fax addressed to Commissioner Carroll only.*

34.    At this point, Defendants had denied Plaintiff tuition reimbursement in the amount of $10,180 which was payable to Iona College for courses taken by Plaintiff in accordance with police departmental policy (7/10/07 Alali Dep. 134-39, Nicaj Aff. Ex. 28).

**Response**:    *Deny, and refer to Alali's deposition testimony wherein he admitted that he did not know whether amounts claimed owed by Iona College represented the portion of tuition that he owed himself, as opposed to the Department, and further admitted that he did not make any personal payments for tuition to Iona College for the years 2005, 2006 and 2008, and regarding 2007, stated "I do not believe so." See Nicaj Aff., Ex. 30, at 17-18; Loomba Decl. (Ex. J.), at 151:24-152:15.*

35.    On February 15, 2007, with a series of frivolous disciplinary charges for the stated objective of penalizing him through the forfeiture of one month's salary. By way of contrast certain other members of the Police Department and personnel employed in the City's Court, who are known to Defendants to have committed both felonies and misdemeanors, have not been subjected to similar disciplinary action – much less arrest/prosecution (2/15/07 Disciplinary Charges, Loomba Decl. Ex. L & Y).

**Response**:    *Deny, except admit that disciplinary charges against Officer Alali were preferred on February 15, 2007, that the decision to bring such charges was unrelated to the filing of Alali's EEOC Charge.*

36.    On February 16, 2007, Alali wrote to Carroll with a copy of the Internal Affairs

- 10 -

Officer, Lieutenant Fortunado and PBA President Ed Hayes of the "Continual retaliation based

on heritage" (2/16/07 Communication, Nicaj Aff. Ex. 9). In that memorandum, Alali advised

Carroll that Lieutenant DeBara praised by telling him that Alali was "one of the best police

officers this department ever had." Furthermore

> [DeBara] also stated that as per captain Gazzola I was to have the
> least desirable assignments. He[DeBara]also stated that if there
> were even officers working to cover the nine patrol sectors I was to
> work utility and be sent all over the city to handle the least
> desirable jobs. I am very uncomfortable and afraid in such a hostile
> work environment created by this department and Captain
> Gazzolla. As I numerously called upon you to stop this arbitrary
> … treatment of me solely based upon my heritage"

**Response**:     *Deny, and refer to the Court's prior decision in Alai v. Gazzola, 07 Civ. 1296*

*(CLB), dated January 31, 2008, wherein the Court held that Alali failed to*

*establish the existence of a hostile work environment. See Loomba Dec. (Ex. E),*

*at 12.*

37.     On February 18, 1007 Alali again wrote to Carroll with a copy to Fortunado and

PBA President Edward Hayes concerning the "[c]ontinual retaliation based on heritage" (2/18/07

Memorandum, Nicaj Aff. Ex. 11).

**Response**:     *Deny the characterization of the memorandum, and object to its admissibility in*

*the absence of an authenticating affidavit.*

38.     As a result of the foregoing, on February 21, 2007, Plaintiff filed an action in this

Court Alali v. Gazzola, et al., 07 Civ. 1296 (CLB) (hereinafter "Alali I") asserting claims under

*inter alia* 42 U.S.C. §§1981, 1983 and 2000e *et seq.*

**Response**:     *Deny, except admit that Alai v. Gazzola, 07 Civ. 1296 (CLB), was filed on or*

*about February 21, 2007.*

- 11 -

**The Material Facts of <u>Alali II</u> Which is the Subject of Defendants' Current Motion**

39.      From February to April 2007, Alali's supervisors were Wilson, Morrell, Austin,

and Brady (3/14/08 Alali Dep. 27, Nicaj Aff. Ex. 29), Shortly after Alali I was filed in this Court,

all Defendants learned that he had filed a lawsuit (3/14/08 Alali Dep. 33-34, 122-23, Nicaj Aff.

Ex. 29).

**Response**:      *Deny. The cited testimony does not support the statement of fact.*

40.      At roll call on February 21, 2007, and in the presence of a number of Plaintiff's

co-workers, DeBara intentionally assigned Plaintiff to a fixed hospital post (normally a post

assigned to either probationary and/or junior officers) to watch a prisoner – despite the

availability of at least four probationary police officers any one of whom should have been given

that assignment 93/14/08 Alali Dep. 32, 35-36, 38-39, Nicaj Aff. Ex. 29).  DeBara advised him

that the reason he was doing so was because he could (3/14/08 Alali Dep. 40-41, Nicaj Aff. Ex.

29).

**Response**:      *Deny.  The cited testimony does not establish that DeBara engaged in adverse*

*action for purposes of a retaliation claim.*

41.      When Alali inquired of Wilson as to why he was given the fixed hospital post

when any of the four probationary officers should have been so assigned, Wilson responded (in

the presence of several civilian members of the Police Department): "Get the fuck out of my face

now Raz.  Not another fucking word, get out of my face" (3/14/08 Alali Dep. 39-40, Nicaj Aff.

Ex. 29; 4/4/08 Alali Dep. 18-19, Nicaj Aff. Ex. 30).  At the conclusion of Plaintiff's hospital post

shift he was relieved at that post by a probationary police office (<u>Id.</u>).

**Response**:      *Deny.  The cited testimony does not establish that Wilson was aware of the filing*

*of the EEOC Charge or Alali I.*

42.    Subsequently DeBara informed Plaintiff that prospectively he (Plaintiff) would be primarily assigned to a "utility car" -- a degrading assignment usually reserved for probationary officers, junior officers or officers being punished -- and in the event that utility car services were not required Plaintiff would be assigned to other such assignments including directing traffic, watching suicidal prisoners, performing civilian dispatch work, and transporting prisoners to the County jail (3/14/08 Alali Dept. 43-44, Nicaj Aff. Ex. 29; 4/4/08 Alali Dep. 19, Nicaj Aff. Ex. 30).

**Response**:    *See Response to No. 40.*

43.    At roll call on March 7, 2007, in the presence of a number of Plaintiff's co-workers, DeBara assigned Plaintiff to a fixed, foot patrol post in the snow -- to the laughter of Plaintiff's co-workers and despite the availability of a number of probationary police officers who should have been assigned to that post.  When Plaintiff inquired of DeBara as to why he, rather than any of the probationary officers was given that degrading assignment, DeBara advised: "because we can, we could put you anywhere Bin Laden" (3/14/08 Alali Dep. 47-50, 55-56, Nicaj Aff. Ex. 29; 4/4/08 Alali Dep. 37-38, Nicaj Aff. Ex. 30; 3/07/07 Communication, Nicaj Aff. Ex. 10).

**Response**:    *See Response to No. 40.*

44.    DeBara was aware that Plaintiff was Middle-Eastern and of Iraqi descent (3/14/08 Alali Dep. 50-51, Nicaj. Aff. Ex. 29)

**Response**:    *See Response to No. 40.*

45.    On the same day, when Plaintiff inquired of Morrell (who was serving as desk officer) as to why he, rather than a probationary police officer was put on that fixed post, Morrell responded: "because even though you are the most talented police officer you are not above

- 13 -

scrutiny and I don't like you, ok, so hurry up and go outside. It's really cold out -- bundle up."

(3/14/08 Alali Dep. 47-51, 55-56, Nicaj Aff. Ex. 29).

**Response**:    *Deny. The cited testimony does not establish that Morrell was aware of the filing*

*of the EEOC Charge or Alali I.*

46.    On March 8, 2007, Austin and Morrell advised Plaintiff that he was routinely

going to be given "undesirable assignments" because he (Plaintiff) was "a below standards

officer" – a descriptive falsely given to Plaintiff by reason of his skin color, national origin

and/or ethnicity. In that connection Morrell further advised Plaintiff, in Austin's presence, that

Gazzola and Marshall had both directed him (Morrell) was well as other supervisors to give

Plaintiff "bad assignments" by reason of his being rated "below standards" (3/14/08 Alali Dep.

41-42, 137-38, Nicaj Aff. Ex. 29; 3/8/07 Communication, Nicaj Aff. Ex. 12).

**Response**:    *Deny. The cited testimony does not establish that Austin or Morrell was aware of*

*the filing of the EEOC Charge or Alali I.*

47.    On March 21, 2007, Gazzola advised Plaintiff in writing that he (Gazzola)

rejected Plaintiff's then pending challenge to a job performance evaluation as authored by Wilson

in which Wilson falsely characterized Plaintiff as "below standards" (3/21/07 Memorandum,

Nicaj Aff. Ex. 6)

**Response**:    *Deny, and refer to the Court's prior decision in Alai v. Gazzola, 07 Civ. 1296*

*(CLB), dated January 31, 2008, wherein the Court held that Alali's below*

*standard job performance evaluations were warranted in light of the civilian*

*complaints and command disciplines he received during each relevant time*

*period. See Loomba Decl. (Ex. E), at 9.*

48.    On March 22, 2007, Gazzola issued to Plaintiff a calculatedly false memorandum

describing him (Plaintiff) as "below standard" and advising him that as a result of that status he

was: barred from performing overtime work; forbidden to perform special detail assignments;

forbidden to engage in tour switches with other officers; and precluded from consideration for

any specialized unit assignments (3/22/07 Gazzola Communication, Nicaj Aff. Ex. 24). In April

2007, Austin and Morrell advised Alali that he was to be given undesirable assignments and

issued below standard evaluation at the direction of Marshall and Gazzola (4/4/08 Alali Dep. 41-

42, Nicaj Aff. Ex. 30).

**Response**:    *See Response to No. 47. Regarding the last sentence, see Response to No. 46.*

49.    At roll call on April 7, 2007, in the presence of a number of Plaintiff's co-workers

Austin deliberately assigned Plaintiff to perform the civilian functions of dispatching police

vehicles from the Department's radio room -- despite the availability of four probation police

officers any one of whom should have been given that assignment instead. In that connection

first Austin advised Plaintiff: "It looks like you are going backwards like the good old times",

and then Brady added: "you better get a good lunch at 800 [hours] since you won't be able to

leave the [radio] room, good luck" (4/4/08 Alali Dep. 20-21, Nicaj Aff. Ex. 30).

**Response**:    *Deny. The cited testimony does not establish that Austin or Brady was aware of*
*the filing of the EEOC Charge or Alali I.*

50.    On April 8, 2007, Wilson assigned Plaintiff to work with civilian employees of

the Department -- despite the availability of four probationary police officers any one of whom

should have been given that assignment. When Plaintiff questioned Wilson as to why he rather

than a probationary officer was given that degrading assignment, Wilson advised: "You are an

Arab and its Easter. Camel jockeys don't celebrate Easter" (4/4/08 Alali Dep. 36-37, 38-40,

Nicaj Aff. Ex. 30).

**Response**:    *Deny.  The cited testimony does not establish that Wilson was aware of the filing*
*of the EEOC Charge or Alali I.*

51.    In furtherance of Defendants' retaliatory plan Murphy, with the agreement,
approval and/or condonation of Gazzola and Carroll has intentionally withheld from Plaintiff
college tuition payments to Iona College in the a mount of approximately $17,000 (4/4/08 Alali
Dep. 8-15, Nicaj Aff. Ex. 30; see also Plaintiff's responses to ¶127 *infra*.

**Response**:    *See Response to No. 34.*

52.    By reason of the foregoing retaliatory taken by the Defendants as a result of
Plaintiff's protected activities, which including an EEOC Charge being filed on February 12,
2007 and the filing of Alali I in this Court, on April 11, 2007, Plaintiff then filed Alali v. DeBara,
*et al.,* 07Civ. 2916 (CLB)("Alali II") which is the subject of Defendants' current motion (4/11/07
Complaint, Loomba Decl. Ex. G).

**Response**:    *Deny, except admit that the complaint in the instant case was filed on or about*
*April 11, 2007.*

**Plaintiff Continues to Oppose Discrimination and Retaliation Taken Against Him**

53.    On April 20, 2007, Plaintiff wrote Detective Lieutenant Fortunato concerning the
failure of the Department to provide police back-up to assist him in an arrest.  In pertinent
respect, he wrote,

> [t]he purpose of this communication is to advise you that on 4/20/07 I was
> attempting to affect a lawful arrest on the defendant. . .Communications advised
> this officer that the aforementioned defendant did have 6 revocations on his NYS
> non-drivers identification.  This officer waited approximately 10 minutes and
> notified communications that back-up assistance was required to safely affect the
> arrest on the defendant.  Not until then did communication send a back-up unit,
> which thankfully was dispatched.  Sector 4, P.O. Auigilar responded and assisted
> this officer in apprehending the defendant without incident.  As you are well
> aware of, it is when you are taking an individual into custody when the risk of
> being injured or killed is elevated.  This was indicated in my incident report

- 16 -

#14129, which has been filed and attached. When this was turned over to Sgt. Brady who was on the desk, he stated in sum and substance 'I know what happened was wrong, the dispatcher was reprimanded for that, however I am refusing to sign this [incident report] and am ordering you to omit this from your report.' I followed his order but again feel that this is a concealment of the truth, and decisively contend that this is harassment is based on my heritage. I pray that this will never happen again so I can safely go home and see my family at the end of the day"

(4/20/07 Communication, Nicaj Aff. Ex. 15; 7/10/07 Alali Dep. 228-229, Nicaj Aff. Ex.

28)(emphasis added).

**Response**:    *Deny. The document is beyond the scope of the allegations of the complaint in*

*Alali II. In addition, object to the admissibility of the document in the absence of*

*an authenticating affidavit.*

54.    On May 30, 2007, Plaintiff wrote to Carroll another concerning the "[r]ecurring

bigotry solely based on heritage" (5/30/07 Communication, Nicaj Aff. Ex. 16). Moreover,

Plaintiff complained of Morrell's theft of $300.00 from Plaintiff's memo book (<u>Id.</u>)

**Response**:    *See Response to No. 53.*

55.    On June 21, 207, Plaintiff requested in writing that Gazzolla -- which was copied

to Carroll, Murphy and Fortunato among others – reviews a "biased performance evaluation

based solely on heritage. In that connection, he advised:

I am requesting a review of the biased performance evaluation bases solely on heritage authored by Sgt. Brady on 6/21/07 and signed off by tour commander Lt. De Bara on the same date. I am looking forward in meeting with you once again to explicitly and unmistakably present an honest rebuttal to depict a fair and just evaluation rather than a falsified immoral and corrupt performance appraisal" (6/12/07 Communication, Nicaj Aff. Ex. 17)(emphasis added).

**Response**:    *See Response to No. 53.*

56.    On June 23, 2007, Plaintiff then complained regarding the "[f]lagrant

transgression by Sgt. Morrell once again", to wit:

> On today's date roll call was conducted by Sgt. Morrell and Lt.
> Schulman in the muster room at headquarters. Prior to roll call
> commencing Sgt. Morrell ordered me to put on my uniform hat. In
> a disgraceful taste of supervision after making that order Sgt
> Morrell at no time put on his uniform hat. Neither did the next
> ranking officer, Lt. Schulman. Leading by example seems to have
> been deserted by Sgt. Morrell. It seems to be self-evident that Sgt.
> Morrell cannot help himself and continues to harass, humiliate, and
> degrade me exclusively on my heritage. I have lost absolute hope
> that the agency will stop rouge supervision such as Sgt. Morrell
> (6/23/2007 communication, Nicaj Aff. Ex. 18)(emphasis added).

**Response**:    *See Response to No. 53.*

57.    On July 12, 2007, Plaintiff again wrote to Carroll regarding the "[u]nceasing

harassment directed by Captain Gazzolla" (7/12/07 Communication, Nicaj Aff. Ex. 17). Plaintiff

further complained "[t]his is again another one of many incidents that Captain Gazzolla along

with his supervisors have singled me out based on my heritage" (7/12/07 communication, Nicaj

Aff. Ex. 19)(emphasis added).

**Response**:    *See Response to No. 53.*

58.    On August 31, 2007 at approximately 10:00 a.m., Alali handed Carroll a written

Interdepartmental Communication dated August 22, 2007 which was addressed to Fortunato and

copied to Carroll, Murphy, Gazzola, Hayes and Alali's attorney (8/31/07 Communication and

8/22/07 Communications, Nicaj Aff. Ex. 20; 3/14/08 Alali Dep. 87-8, Nicaj Aff. Ex. 29).

**Response**:    *See Response to No. 53.*

59.    The August 22, 2007 Communication in pertinent states:

> Despite being served with a complaint which has been filed
> in federal court, the defendants in this action have continued to
> commit conspicuous acts of prejudice that are being delivered to
> me on a continuing basis. I have notified you, along with other
> Police Commissioner, Deputy Police Commissioner, Captain
> Gazzolla and other supervisory staff directly in control of myself

concerning the cavalier dealing and other punitive assignments

                    *        *        *        *

Whenever I am working there are junior officers working that
could have been sent to the jail however are not. This is
calculating and deliberate. I am not attempting to pick my
assignment. I am solely trying to be taken off punishment for no
legitimate reason.

**Response**:    *See Response to No. 53.*

60.    After handing the August 22nd Communication to Carroll on August 31, 2007 at

10:00 a.m., later that day Carroll suspended Plaintiff without pay (8/31/07 Letter to

Commissioner and 8/22/07 Communication, Nicaj Aff. Ex. 20; 3/14/08 Alali Dep. 87-88, Nicaj

Aff. Ex. 29; 3/14/08 Alali Dep. 87-88, Nicaj Aff. Ex. 29).

**Response**:    *See Response to No. 53.*

61.    In or about March 2008 Alali received yet another below standards evaluation

(4/4/08 Alali Dep. 28-30, Nicaj Aff. Ex. 30). While Alali ordinarily has five days in which to

rebut an evaluation, his father suffered a severe stroke in March -- Alali rushing to be at his

father's side at John Hopkins Medical Center located in Baltimore, Maryland in March 2008

(4/4/08 Alali Dep. 28-30, Nicaj Aff. Ex. 30).

**Response**:    *See Response to No. 53.*

62.    Despite the fact that Alali advised Gazzola of the situation, Gazzolla issued a

communication stating that Alali did not comply with the five day rule the period in which

rebuttals are to be submitted following an evaluation (4/4/08 Alali Dep. 28-30, Nicaj Aff. Ex.

30). When Alali returned, he submitted correspondence to Gazzola advising him that it was

impossible for him to rebut the evaluation within the time frame provided because at his gravely

ill father's bedside (4/4/08 Alali Dep. 28-30, Nicaj, Ex. 30).

- 19 -

**Response**:    *See Response to No. 53.*

63.    Notwithstanding Alali's family emergency, Captain Gazzolla issued a letter on March 5, 2008 stating that Alali was below standards and issued another directive stating that Alali could not perform overtime and mutual switches (4/4/08 Alali Dep. 28-30, Nicaj Aff. Ex. 30)

**Response**:    *See Response to No. 53.*

**Plaintiff's Supervisors**

64.    DeBara directly supervised Plaintiff (3/14/08 Alali Dep. 31-32, Nicaj Aff. E. 29). Alali advised DeBara that Alali I had been filed in this Court (3/14/08 Alali Dep. 34, Nicaj Aff. Ex. 29). When Alali advised DeBara, he (DeBara) responded in a sarcastic manner (3/14/08 Alali Dept. 34-35, Nicaj Aff. Ex. 29).

**Response**:    *Deny. DeBara's alleged conduct does not amount to an adverse action for purposes of a Section 1981 retaliation claim.*

65.    During the period from February 2007 to March 14, 2008, Plaintiff's direct supervisors were Sergeants Wilson, Morrell, Austin and Brady (3/14/08 Dep. 26-28, Nicaj Aff. Ex. 29). Each of them advised Alali that he was not to work the front desk, be assigned on the street and was to handle dispatch duties only (3/14/08 Alali Dep. 61-63, Nicaj Aff Ex. 29). At one point, Wilson warned "they" were hunting for Plaintiff (3/14/08 Alali Dep. 123-24, Nicaj Aff. Ex. 29). DeBara communicated Plaintiff's assignments to Wilson, Austin, Morrell and Brady (3/14/08 Alali Dep. 59-61, 74, Nicaj Aff. Ex. 29).

**Response**:    *Deny, except admit that Sergeants Wilson, Morrell, Austin and Brady supervised Alali at certain points of time between February 12 and April 11, 2007.*

66.    After Alali II was filed, Defendants moved to dismiss pre-discovery (Loomba

Decl. Ex. H). the Court rejected Defendants' claims that <u>Alali II</u> contained duplicative claims as <u>Alali I</u> (Loomba Decl. Ex. H. p.3). The Court also denied Defendants Gazzola, Carroll and Murphy's claimed entitlement to absolute immunity (Id. at 8).

**Response:**    *Deny and refer to the Court's decision (Loomba Decl. Ex. H) for the true contents thereof.*

**Related Actions.**

67.    On November 9, 2007 Plaintiff filed another complaint in this Court (<u>Alali III</u>) alleging a violation of Title VII, 42 U.S.C. §2003 *et seq.* (Loomba Decl. Ex. K).

**Response:**    *Admit.*

68.    On May 6, 2008, Plaintiff filed another complaint in this Court (<u>Alali IV</u>) alleging that his First and Fourteenth Amendment rights were violated and he was additionally subjected to retaliation in violation of Title VII, 42 U.S.C. §2003 *et seq.* (Loomba Decl. Ex. L).

**Response:**    *Admit.*

**Summary Judgment on Alali I**

69.    Pursuant to this Court rules, Defendants moved for summary judgment on qualified immunity (Loomba Decl. Ex. C).

**Response:**    *Admit.*

70.    Plaintiff, through counsel opposed on the basis that "the motion should be denied pursuant to FRCP 56(f) with leave to renew following the completion of discovery" (Loomba Decl. Ex. D). Plaintiff's counsel also noted that all discovery sought by Plaintiff in Alali I was stayed by order or the Court (<u>Id.</u>). Consequently, counsel noted "Plaintiff has been prevented from developing the evidence which in good faith he believes will demonstrate that the "factual" assertions made by Defendants in support of the application for summary judgment are false."

2119251.1

(Loomba Dec. Ex. C).

**Response:**    *Deny as immaterial.*

71.    The Court granted summary judgment in Alali I but specifically held that "[t]he

following acts are **presumed true for the purposes of this motion only** (Loomba Decl. Ex. E

p.1)(emphasis added).  In view of the Court decision, facts found by the Court in that  motion are

limited to that decision (Loomba Decl. Ex. E p. 1).

**Response:**    *Deny.*


Dated:  White Plains, New York
          September 16, 2008


                                   WILSON, ELSER, MOSKOWITZ,
                                   EDELMAN & DICKER LLP
                                   Attorneys for Defendants


                                   By:  Lalit K. Loomba

                                   3 Gannett Drive
                                   White Plains, NY  10604
                                   (914) 323-7000
                                   File No. 07367.00059

2119251.1