UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ARAZ ALALI,

                                    Plaintiff,

            - against -

ALBERTO DeBARA, individually, KYLE WILSON,                    07-CV-2916 (CS)
individually, EDWARD AUSTIN, individually,
GEORGE MARSHALL, individually, HUMBERTO            **MEMORANDUM DECISION**
MORRELL, individually, MATTHEW BRADY,                    **AND ORDER**
individually, ANTHONY MURPHY, individually,
ROBERT GAZZOLA, individually, PATRICK J.
CARROLL, individually, and the CITY OF NEW
ROCHELLE, New York,

                                    Defendants.
-----------------------------------------------------------------------x

Appearances:

Jonathan Lovett, Esq.
Drita Nicaj, Esq.
Lovett & Gould, LLP
White Plains, New York
*Counsel for Plaintiff*

Lalit K. Loomba, Esq.
Peter A. Meisels, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
White Plains, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

Before this Court is Defendants' motion for summary judgment, filed on May 30, 2008, (Doc. 32), and Plaintiff's motion for further discovery pursuant to Fed. R. Civ. P. 56(f), filed on October 3, 2008. (Doc. 49.) For the reasons stated below, Plaintiff's motion is granted and Defendants' motion is denied without prejudice to renewal following the completion of discovery.

## I. **Background**

Plaintiff Araz Alali is a police officer of Iraqi national origin employed by the New Rochelle Police Department ("NRPD"). (Defs. 56.1 ¶ 12.[1]) Plaintiff contends that he is "the only Police Officer of Middle Eastern descent who has ever been employed by the City of New Rochelle." (Pl. Counter. 1.[2]) This case (07-cv-2916, "Alali II") is the second of four related cases Plaintiff has filed alleging unlawful discrimination and retaliation by the City and various police officers in its employ on the basis of Plaintiff's Iraqi national origin.

### A. **Alali I**

Plaintiff filed his complaint in the first related case on February 21, 2007, (07-cv-1296, "Alali I"), alleging that Defendants NRPD Captain Robert Gazzola, NRPD Commissioner of Police Patrick J. Carroll and the City of New Rochelle, New York (the "City") subjected him to

---

[1] "Defs. 56.1" refers to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1, filed on May 30, 2008. (Doc. 33.)

[2] "Pl. Counter." refers to Plaintiff's Counter-Statement of Material Facts in Dispute, filed on August 15, 2008. (Doc. 43.)

unlawful discrimination and retaliation because of his Iraqi national origin and in retaliation for his filing of a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on February 13, 2007. (Alali I, Doc. 1, "Alali I Compl.") Plaintiff asserted violations of: (1) 42 U.S.C. § 1981; (2) 42 U.S.C. § 1983; (3) Title VII, 42 U.S.C. § 2000e, *et seq.*,; and (4) Section 296 of the New York State Executive Law.

The instances of discrimination and retaliation alleged in Alali I span the period from Plaintiff's February 2002 transfer from the New York Police Department through the date the Alali I Complaint was filed. Specifically, Plaintiff claimed that he was repeatedly addressed as: "terrorist"; "Ali Baba"; "Camel Jockey"; and "Ali", and that the Alali I Defendants were aware of and encouraged such name calling. (Pl. Counter. ¶ 14.) Plaintiff further alleged that he was repeatedly denied meaningful specialized training routinely provided to officers of lesser seniority than Plaintiff; forced to attend a seminar called "Tools for Tolerance Post 911" for the purpose of humiliating Plaintiff; purposely given false "below standard" job performance evaluations as a predicate for barring Plaintiff from working overtime; assigned to "walking posts" and restricted to issuing parking tickets in order to degrade Plaintiff; subjected to "investigations" based on false accusations of wrongdoings; and served with frivolous disciplinary charges in retaliation for his filing of the EEOC complaint. (Pl. Counter. ¶¶ 14-27.)

Plaintiff was deposed for the purpose of qualified immunity on June 25, 2007, and July 10, 2007, and on August 2, 2007, the Alali I Defendants moved for summary judgment on the grounds of qualified immunity and absolute immunity. (Defs. 56.1 ¶¶ 19, 20.) In opposition,

-3-

Plaintiff's counsel filed an affirmation submitting that the motion should be denied pursuant to Fed. R. Civ. P. 56(f) with leave to renew following the completion of discovery. (Pl. 56.1 ¶ 21.[3]) By memorandum and order dated January 31, 2008, the Court (Brieant, J.) granted the Alali I Defendants' motion for summary judgment on the grounds that: (1) Carroll and Gazzola were protected by the doctrine of absolute immunity against discrimination claims based upon the preferment of disciplinary charges against Plaintiff; (2) Carroll and Gazzola were protected by the doctrine of qualified immunity from Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983, as well as New York State Executive Law § 296; and (3) Plaintiff failed to state a claim against the City under 42 U.S.C. §§ 1981 and 1983, or under Title VII, 42 U.S.C. § 2000e. (Alali I, Doc. 19.) Plaintiff filed a notice of appeal on February 29, 2008. (Alali I, Doc. 21.)

**B.    Alali II**

Plaintiff commenced the present case on April 11, 2007. In the Alali II complaint, Plaintiff alleges that Defendants Gazzola, Carroll, NRPD Lieutenant Alberto DeBara, NRPD Sergeant Kyle Wilson, NRPD Sergeant Edward Austin, NRPD Lieutenant George Marshall, NRPD Sergeant Humberto Morrell, NRPD Sergeant Matthew Brady, NRPD Deputy Police Commissioner Anthony Murphy (collectively, the "Individual Defendants") and the City subjected Plaintiff to unlawful retaliation for his filing of the EEOC complaint and the Alali I Complaint. (Doc. 1, "Alali II Compl.") Plaintiff asserts three causes of action in this case: (1) against the City for retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*; (2) against all

---

[3] "Pl. 56.1" refers to Plaintiff's Response to Defendants' Statement Pursuant to 56.1, filed on August 15, 2008. (Doc. 43).

Defendants for retaliation in violation of 42 U.S.C. §§ 1981, 1983; and (3) against all Defendants for retaliation in violation of Section 296 of the New York State Executive Law.

The instances of retaliation alleged in Alali II span the seven-week period from Plaintiff's filing of the Alali I complaint on February 21, 2007, through his filing of the Alali II complaint on April 11, 2007. Plaintiff alleges that all Defendants became aware of the Alali I lawsuit early in this period and that they punished him with further degradation and adverse employment action in retaliation. (Alali II Compl. ¶ 18; Pl. Counter. ¶ 39.) Plaintiff alleges that, at roll call on February 21, 2007, and in the presence of a number of Plaintiff's co-workers, DeBara assigned Plaintiff to a fixed hospital post to watch a prisoner and that DeBara advised Plaintiff that the reason he was doing so was "because he could" (Alali II Compl. ¶ 18; Pl. Opp'n 8[4]; Pl. Counter. ¶ 40) and that, in response to Plaintiff's inquiry as to why he was assigned to the fixed hospital post, Wilson, in the presence of several civilian members of the Police Department, responded, "Get the fuck out of my face now Raz. Not another word, get out of my face." (Alali II Compl. 18; Pl. Opp'n 8; Pl. Counter. 41.) DeBara later allegedly informed Plaintiff that he would primarily be assigned to a "utility car" going forward, and in the event that utility car services were not required, then he would be assigned to directing traffic, watching suicidal prisoners, performing civilian dispatch work, and transporting prisoners to the County jail. (Alali II Compl. ¶ 18; Pl. Opp'n 8-9; Pl. Counter. ¶ 42.)

---

[4] "Pl. Opp'n" refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed on August 15, 2008. (Doc. 42.)

Plaintiff further contends that, at roll call on March 7, 2007, in the presence of a number of Plaintiff's co-workers, DeBara assigned Plaintiff to a fixed, foot patrol post in the snow, and when Plaintiff inquired as to why he was given the assignment instead of the probationary officers, he was alleged advised by DeBara, "because we can, we could put you anywhere Bin Laden." (Alali II Compl. ¶ 18; Pl. Opp'n 9; Pl. Counter. ¶ 43.) Plaintiff claims that he asked Morell, who was serving as "desk officer" on March 7, 2007, why he was assigned to foot patrol in the snow, and that Morrell allegedly responded, "because even though you are the most talented police officer you are not above scrutiny and I don't like you, ok, so hurry up and go outside. It's really cold out - bundle up." (Alali II Compl. 18; Pl. Opp'n 9; Pl. Counter. 45.) On March 8, 2007, Morrell and Austin allegedly advised Palintiff that he was routinely going to be given "undesirable assignments" because he was "a below standards officer" and that Morrell further advised, in Austin's presence, that Gazzola and Marshall had both directed him and other supervisors to give Plaintiff "bad assignments" by reason of his "below standards" rating – a rating which Plaintiff contends was "a descriptive falsely given to Plaintiff by reason of his skin color, national origin and/or ethnicity." (Alali II Compl. ¶ 18; Pl. Opp'n 9; Pl. Counter. ¶ 46.)

At roll call on April 7, 2007, Austin allegedly assigned Plaintiff to perform the civilian functions of dispatching police vehicles from the NRPD's radio room, and when Plaintiff inquired why he was given this assignment despite the availability of four probationary officers, Austin allegedly responded, "It looks like you are going backwards like the good old times." (Alali II Compl. ¶ 18; Pl. Opp'n 10; Pl. Counter. ¶ 49). Plaintiff claims that, in connection with

his assignment to the radio room, Brady told him, "you better get a good lunch at 800 [hours] since you won't be able to leave the [radio] room, good luck." (Alali II Compl. ¶ 18; Pl. Opp'n 10; Pl. Counter. ¶ 49.) Plaintiff also alleges that Wilson assigned him to work with civilian employees on April 8, 2007, despite the availability of four probationary officers, and when questioned as to why he was given this assignment, Wilson allegedly responded, "You are an Arab and its Easter. Camel jockeys don't celebrate Easter." (Alali II Compl. ¶ 18; Pl. Opp'n 10; Pl. Counter. ¶ 50.)

On May 24, 2007, Defendants filed a motion to dismiss the Alali II complaint for failure to state a claim. By memorandum and order dated July 19, 2007, this Court (Brieant, J.) denied Defendants' motion to dismiss on all grounds, concluding that: (1) Plaintiff's claims in this action are not improperly duplicative of Plaintiff's claims in Alali I because the Alali II complaint alleges a continuing series of new and additional instances of discrimination and retaliation; (2) Plaintiff's assertions that he was assigned to inferior posts stated facts sufficient to state a claim of adverse employment actions for the purposes of a motion to dismiss; (3) Defendants Gazzola, Carroll and Murphy were not entitled to absolute immunity; and (4) the claim against the City could not be dismissed because of Plaintiff's allegations concerning "the three policy making Defendants," Murphy, Gazzola, and Carroll. (Doc. 24.)

Following a pretrial conference on December 7, 2007, the late Judge Brieant, to whom this case was initially assigned,[5] entered a civil discovery plan and scheduling order dated

---

[5] This case was reassigned to the undersigned on August 5, 2008. (Doc. 40.)

December 11, 2007. (Doc. 27, the "Scheduling Order.") The Scheduling Order required

Defendants, if they wanted to assert the defense of qualified immunity, to depose Plaintiff within

30 days of the Scheduling Order concerning all facts relevant to the issue of qualified immunity

and then, within 30 days thereafter, file a motion for judgment on the pleadings pursuant to Fed.

R. Civ. P. 12(c) or for summary judgment pursuant to Fed. R. Civ. P. 56, limited to the issue of

qualified immunity, with Plaintiff's version of the events assumed true for the purposes of the

motion.

At Defendants' request and with Plaintiff's consent, Judge Brieant extended the deadline

for Plaintiff's deposition on qualified immunity (Doc. 28.); extended the deadline for

Defendants' filing of a summary judgment motion on qualified immunity (Doc. 29.); and

extended the deadline for the completion of discovery to 90 days after this Court's decision on

qualified immunity. (Doc. 31.) Accordingly, Plaintiff's deposition was taken on March 14,

2008, and continued on April 4, 2008, and Defendants moved for summary judgment on May 30,

2008. (Doc. 32.) Opposition papers[6] were filed on August 15, 2008. (Doc. 42.) Reply papers

---

[6] In his opposition papers Plaintiff alleges, for the first time, additional purported instances of retaliatory conduct that occurred after April 11, 2007, the date on which the Alali II complaint was filed. These allegations include an instance on April 20, 2007, concerning the alleged failure of the NRPD to provide back-up to assist Plaintiff in an arrest, Morrell's alleged theft of $300 from Plaintiff's memo book on May 30, 2007, and Plaintiff's being suspended without pay on August 31, 2007. (Pl. Counter. ¶¶ 53-63). This Court will not consider these allegations in deciding this motion because it is inappropriate to consider claims not pleaded in the complaint in opposition to summary judgment. *Kearney v. County of Rockland*, 373 F. Supp. 2d 434, 440-441 (S.D.N.Y. 2005) (collecting cases); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10542, 2004 U.S. Dist. LEXIS 25336, at *20-21 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in Plaintiff's opposition papers, and hence such new allegations and claims should not be considered . . . .").

were filed on September 17, 2008. (Doc. 45.) Oral argument was heard on September 26, 2008, and, at the Court's request, on October 3, 2008, Plaintiff's counsel Drita Nicaj filed an affidavit in support of Plaintiff's motion for further discovery pursuant to Fed. R. Civ. P. 56(f). (Doc. 49, "Nicaj Aff.") Defendants filed a memorandum of law in opposition to Plaintiff's motion for further discovery on October 10, 2008. (Doc. 50, "Defs. 56(f) Opp'n.") Discovery was stayed in this case and all related cases pending this Court's decision on Defendants' summary judgment motion.[7]

## II. Discussion

### A. The Preclusive Effect of Alali I

As a threshold matter, this Court must determine the preclusive effect, if any, of Judge Brieant's order granting the Alali I Defendants' motion for summary judgment.[8] Defendants contend that the Alali I summary judgment order is binding on Plaintiff in the instant action

---

[7] Alali II was consolidated with Alali III (07-cv-9912) and Alali IV (08-cv-4273) for pretrial purposes. (Doc. 47.) Alali III, filed on April 11, 2007, concerns Plaintiff's allegations that the City subjected him to discriminatory treatment on the basis of his national origin, ethnicity and/or color and retaliated against him following the filing of Alali I and Alali II. (Alali III, Doc. 1). Plaintiff commenced Alali IV on May 6, 2008, alleging that the City subjected him to disparate treatment by imposing a sixty-day suspension without pay, which Plaintiff claims was motivated by reason of his national origin, assertion of his rights pursuant to Title VII, and/or his whistle-blowing with regard to departmental corruption. Alali IV also includes Plaintiff's claim that the prospective exercise of his First Amendment rights was chilled by Defendant's actions. (Alali IV, Doc. 1).

[8] Federal law is applied in determining the preclusive effect of a federal judgment. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. N.Y. 2002).

"because the factual and legal issues raised in *Alali I* are identical, the issues were necessarily decided on the merits and [Plaintiff] had a full and fair opportunity to litigate the Court's decision." (Defs. Mem. 14.[9]) Plaintiff argues that Judge Brieant's order denying Defendants' motion to dismiss Plaintiff's claims in *Alali II* renders the doctrines of collateral estoppel and res judicata inapplicable. (Pl. Opp'n 3, 30.[10])

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-289 (2d Cir. N.Y. 2002) (citations omitted). Collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d. Cir. 1998)). Claims adjudicated through summary judgment are regarded as final judgments on the merits. *Colonial Acquisition Partnership v. Colonial at Lynnfield, Inc.*, 697 F. Supp. 714, 718 n.5 (S.D.N.Y. 1988). "Collateral estoppel applies once final judgment is entered in a case, regardless of whether an appeal from that judgment is pending." *Christopher D. Smithers Found., Inc. v. St. Luke's-Roosevelt Hosp. Ctr.*, 00 Civ. 5502

---

[9] "Defs. Mem." refers to Defendants' Memorandum of Law in Support of Motion for Summary Judgment, filed on May 30, 2008. (Doc. 38.)

[10] "Pl. Opp'n" refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed on August 15, 2008. (Doc. 42).

(WHP), 2003 U.S. Dist. LEXIS 373, at *6 (S.D.N.Y. Jan. 13, 2003) (citing *Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998)). Although the Alali I summary judgment order is a final judgment on the merits, it does not have a collateral estoppel effect on Plaintiff's allegations of retaliatory conduct occurring subsequent to the filing of Alali I because those facts were not before the Court and therefore the specific issues they raise were never litigated or decided. *See El v. City of New York*, 04 Civ. 1591 (LMM), 2007 U.S. Dist. LEXIS 46443, at *16-17 (June 26, 2007) (collateral estoppel inapplicable to summary judgment order where plaintiff alleged facts in subsequent action not before the Court in prior action).

The doctrine of res judicata is equally inapplicable to the retaliatory conduct alleged in the Alali II Complaint. "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Marvel Characters*, 310 F.3d at 286-87 (citations omitted). Whether a claim that was not raised in the previous action could have been raised therein "depends in part on 'whether the facts essential to support the second were present in the first.'" *Id.* (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)). Consequently, claim preclusion "does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). Therefore, the Alali I summary judgment order has no res judicata effect on Plaintiff's allegations of retaliatory conduct occurring after the date the Alali I complaint was filed. *See id.* ("The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast

of subsequent events; [a] plaintiff may simply bring a later suit on those later-arising claims.")

The question of the collateral estoppel effect of Alali I on the issue of absolute immunity in this case follows a more winding path to the same conclusion. Tracing the chronology of the orders at issue, first, on July 19, 2007, Judge Brieant denied Defendants' motion to dismiss Plaintiff's claims in this case against Gazzola, Carroll and Murphy, reasoning that their alleged agreement to prefer disciplinary charges against Plaintiff was akin to the situation where an official acts as a supervisor of public employees and therefore did not give rise to absolute immunity from liability. Second, on January 31, 2008, Judge Brieant granted Defendants' summary judgment motion in Alali I, dismissing Plaintiff's claims against Gazzola and Carroll on the grounds that their "decision to initiate disciplinary proceedings against Plaintiff based on multiple acts of misconduct is entitled to absolute immunity." Unsurprisingly, Defendants contend that this Court is bound by the Alali I order (Defs. Mem. 14-15.), while Plaintiff argues that the Alali II order controls. (Pl. Opp'n 31 n.11.)

Fortunately, I need not venture much further into this thicket because the alleged frivolous disciplinary charges are not at issue in this case. Although Plaintiff's Alali II Complaint does refer to the disciplinary charges (Alali II Compl. ¶ 16), those allegations were already made in the Alali I Complaint. (Alali I ¶ 13.) Accordingly, Plaintiff's references in the Alali II Complaint and in his opposition papers to the frivolous preferment of disciplinary charges – as well as the other specific allegations previously asserted in Alali I – are construed as relevant in this case for background purposes only. *See Curtis*, 226 F.3d at 139 ("[P]laintiffs

have no right to maintain two actions on the same subject in the same court, against the same defendant[s] at the same time."). Indeed, Plaintiff himself lists the disciplinary charges among the facts which culminated in the filing of Alali I (Pl. Opp'n 4-6) rather than including it in the material facts of Alali II. (Pl. Opp'n 8-11.) Plaintiff's counsel confirmed this distinction at oral argument, stating that, "with respect to the issues in this claim, in this case, there are no assertions of preferring of disciplinary charges." (Summ. J. Hr'g Tr. 22, Sep. 26, 2008.) With this point now clarified, it is clear that Judge Brieant's decision in Alali I that Gazzola and Carroll have absolute immunity from liability for their preferment of disciplinary charges against Plaintiff has no preclusive effect on the distinct alleged retaliatory conduct at issue in this case. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006) ("[T]he critical inquiry is not the official position of the person seeking absolute immunity, but the specific action for which that person seeks immunity.").

### B.    Qualified Immunity and the Need for Additional Discovery

A government official sued in his individual capacity is entitled to qualified immunity: (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was "objectively legally reasonable . . . in light of the legal rules that were clearly established at the time it was taken." *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002) (internal citations

-13-

omitted).[11] On a motion for summary judgment, the plaintiff must first make out a prima facie case of discrimination or retaliation. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). The burden of proof at the prima facie stage is *de minimis*. *Id.* If the plaintiff meets this burden, the defendant must offer a legitimate non-retaliatory reason for its actions. *Id.* If the defendant puts forth such a reason, the plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is a mere pretext for retaliation. *Id.*[12]

To establish retaliation, Plaintiff must show that: (1) he was engaged in an activity protected under anti-discrimination statutes; (2) Defendants were aware of Plaintiff's participation in the protected activity; (3) Defendants took adverse action against Plaintiff based upon his protected activity; and (4) there is a causal connection between Plaintiff's protected activity and the adverse action taken by defendants. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105

---

[11] "Because the immunity not only protects against a judgment for damages but also is in part an entitlement not to be forced to litigate, early resolution of the qualified immunity defense is encouraged, and a defendant may properly move for summary judgment dismissing the plaintiff's claim on that basis where there are no genuinely disputed factual issues material to the defense." *Munafo*, 285 F.3d at 210 (internal citations omitted).

[12] This framework applies to all four claims in this case. *See, e.g., Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (burden shifting framework applies to both § 1981 and Title VII); *Weinstock*, 224 F.3d at 42 n.1 (identical standards apply to employment discrimination claims brought under Title VII and New York Executive Law § 296); *Thomas v. New York City Health & Hosps. Corp.*, 02 Civ. 5159 (RJH), 2004 U.S. Dist. LEXIS 17694, at *54 n.7 (S.D.N.Y. Sept. 1, 2004) ("While *McDonnell Douglas* and *Burdine* involved claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., courts have held that discrimination and retaliation claims brought under 42 U.S.C. §§ 1981 and 1983 follow the same analysis.")

(2d Cir. 2001). Finally, while individuals are not subject to liability under Title VII, *Wrigthen v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000), a Plaintiff seeking to hold an individual personally liable for retaliation under Sections 1981 and 1983, 42 U.S.C. §§ 1981, 1983, must demonstrate that the defendant was "personally involved" in the retaliatory conduct at issue. *Ifill v. UPS*, No. 04 Civ. 5963 (LTS) (DFE), 2005 U.S. Dist. LEXIS 5230, at *8 (S.D.N.Y. Mar. 29, 2005) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)).

Defendants argue that Plaintiff has failed to establish the awareness of protected activity and causal connection elements of his prima facie case. Defendants' further argue that Plaintiff has failed to demonstrate that certain Defendants had any personal involvement in the alleged retaliatory conduct at issue. In addition to opposing on the merits, Plaintiff has filed a motion for further discovery pursuant to Fed. R. Civ. P. 56(f).

A party resisting summary judgment on the ground that it needs additional discovery pursuant to Rule 56(f) "must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. N.Y. 2003) (internal quotation marks and citations omitted). "Fed. R. Civ. P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had

the opportunity to take discovery and rebut the motion." *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001). Accordingly, "summary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks omitted) (alterations in original) (emphasis in original). The nonmoving party "should not be 'railroaded' into his offer of proof in opposition to summary judgment" and "must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (internal quotations and citations omitted); *Hellstrom*, 201 F.3d at 97 ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").

However, "[e]ven where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001). Courts are particularly reluctant to allow additional discovery in the face of a summary judgment motion where the requests are "put forth by parties who were dilatory in pursuing discovery." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1139 (2d Cir. 1994) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 927 (2d Cir. 1985)); *see Nat'l Union*, 265 F.3d at 117 (denying motion for further discovery where, after 17

-16-

month investigation followed by 11 months of formal document discovery, plaintiff sought "opportunity to explore the possibility" of alternative cause of production line flaw that was not supported by existing evidence); *Bilal v. Best Buy Co.*, No. 06-CV-4015 (KMK), 2008 U.S. Dist. LEXIS 53468, at *14 (S.D.N.Y. June 30, 2008) (denying motion for additional discovery where the plaintiff waited until three weeks before the close of discovery and eight months after filing his complaint to make any discovery requests or notice any depositions).

Plaintiff's motion seeks further discovery as to "Defendants' motives and knowledge" concerning Plaintiff's filing of a charge of discrimination with the EEOC and filing of Alali I. (Nicaj Aff. ¶ 3.) Plaintiff claims that he "has been prevented from developing the evidence which in good faith he believes will demonstrate the retaliatory and/or discriminatory motivations of Defendants which is in Defendants' possession, custody and/or control." (Nicaj Aff. ¶ 4.). Defendants argue that Plaintiff's motion for further discovery should be denied because he "has not described what this evidence is or how he intends to obtain it," and, therefore, his request is no more than a "bare assertion" that is "based on speculation as to what potentially could be discovered." (Defs. 56(f) Opp'n 1, 3.) Specifically, Defendants argue that Plaintiff's deposition testimony "offers only rank speculation that the Individual Defendants were aware of the EEOC charge and the commencement of Alali I at the time they allegedly engaged in retaliatory conduct." (Defs. 56(f) Opp'n 2.)

In a retaliation action based on the filing of a prior discrimination complaint, the plaintiff must establish that each defendant was personally aware of the prior complaint at the time he

-17-

engaged in the alleged retaliatory conduct at issue. *See Richards v. New York City Police Dep't*, 97 Civ. 5828 (RPP), 1999 U.S. Dist. LEXIS 722 (S.D.N.Y. Jan. 22, 1999) (plaintiff's "vague allegation" that it was "common knowledge" that she filed prior discrimination complaints held insufficient to establish knowledge on the part of those allegedly retaliating against her). Unsubstantiated speculation that an individual with awareness of a prior complaint "must have" informed a defendant of the prior complaint based merely on their relationship with one another is insufficient to establish awareness. *Montanile v. NBC*, 211 F. Supp. 2d. 481, 488 (S.D.N.Y. 2002).

Here, Plaintiff's argument that Defendants Wilson, Austin, Marshall, Morrell, and Brady[13] were aware of the EEOC complaint or the Alali I complaint at the time of their alleged retaliatory conduct is based exclusively on Plaintiff's deposition testimony that "the whole department was talking about it" and that "[t]here was talk in the radio room and the locker room among all the other officers." (Alali Dep. 121-22., Mar. 14, 2008.) This alone is insufficient to establish (or determine that Plaintiff cannot establish) the awareness element of Plaintiff's prima

---

[13] The awareness element is not at issue for Carroll and Gazzola because they were identified as perpetrators of alleged discrimination in Alali I. *See Uddin v. City of New York*, 427 F. Supp. 2d 414, 427 (S.D.N.Y. 2006) (defendant's knowledge of prior discrimination lawsuit established where defendant was alleged discriminator in prior action). This element is also not at issue regarding DeBara because Plaintiff testified that he discussed the Alali I lawsuit with DeBara at the time DeBara assigned Plaintiff to a fixed hospital post. (Alali Dep. 33-34, Mar. 14, 2008.) In a letter to the Court dated September 26, 2008, Plaintiff claims that Murphy's awareness is established by a letter from Plaintiff's counsel regarding the EEOC Complaint that was faxed to Carroll and Murphy's office on February 12, 2007. (Doc. 48.)

facie case against these individuals.[14] Accordingly, further discovery is necessary. In this regard, this case is distinguishable from *Montanile*, where summary judgment was granted *after* the plaintiff had the opportunity to depose the defendant and the defendant testified that she had no knowledge of the plaintiff's complaint prior to firing her. 211 F. Supp. 2d. at 488. Further, although insufficiently vague to survive a motion for summary judgment at the close of discovery, Plaintiff's testimony that he overheard officers talking in the radio room and locker room about his prior complaints distinguishes this case from the utter lack of any evidentiary basis for establishing awareness in *Richards*. 1999 U.S. Dist. LEXIS 722, at *27-28, 28 n.3 ("Plaintiff testified repeatedly that she was depending on 'a rule of thumb,' 'that it's automatic,' that 'when you . . . go outside the Police Department' you are retaliated against . . . and she refused to identify any person who mentioned or specifically manifested knowledge of her [prior complaint].")

Despite Defendant's claim that Plaintiff has failed to identify what evidence he seeks or how he intends to obtain it, it is clear that Plaintiff intends to obtain evidence of the Individual Defendants' motives and knowledge through depositions of them and others. This Court will not hold Plaintiff to a high standard of precision in describing what information he hopes to obtain because the information sought is at least largely in the Defendants' possesion, and Plaintiff has not had the opportunity to develop the record through discovery. *See Hellstrom*, 201 F.3d at 97

---

[14]    The Court recognizes that Defendants did not file their motion for summary judgment on the basis of qualified immunity prematurely, but rather acted in accordance with the Scheduling Order.

(reversing grant of summary judgment in First Amendment retaliation case where plaintiff was precluded from taking deposition of defendant to support his claim that employer was motivated to demote him because of his protected speech); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 374 (reversing "over-hasty" and "premature" grant of summary judgment in an employment discrimination case where plaintiff had insufficient opportunity "to explore the motivations and reasons for terminating her employment"); *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001) (observing that where the district court denied the plaintiff any opportunity to conduct discovery and considered a partial summary judgment motion filed two months after the filing of the complaint, "faulting [plaintiff] for failure to make a showing of . . . matters that would . . . be beyond her personal knowledge [] was incompatible with the court's denial of discovery").

Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382 (S.D.N.Y. 2005), and *Delena v. Verizon N.Y. Inc.*, 02-CV-0372C(F), 2006 U.S. Dist. LEXIS 53576 (W.D.N.Y. Aug. 2, 2006), on which Defendants rely, are distinguishable. In *Kate Spade*, the Court denied the plaintiff's motion for additional discovery on the grounds that the evidence sought "could not alter the analysis" as to the viability of the plaintiff's claims. 388 F. Supp. at 395. For the reasons stated above, it is clear that new evidence regarding the Individual Defendants' awareness of the prior complaints could alter the analysis of Plaintiff's claims. Further, additional discovery was denied in *Delena* on multiple grounds not present here, including that the plaintiff sought disclosure of evidence previously denied by the Court prior to the close of discovery; the plaintiff had ample opportunity to pursue the evidence sought during

discovery; the plaintiff failed to demonstrate how the evidence sought would create a genuine issue of material fact; and the plaintiff was already in possession of evidence sufficient to establish the facts she claimed the additional evidence would support. *Delena*, 2006 U.S. Dist. LEXIS 53576, at *5-8.

Finally, Defendants appropriately do not argue that Plaintiff was dilatory in failing to notice depositions prior to opposing summary judgment. To the contrary, when Defendants wrote to the Court on January 29, 2008, requesting an extension of the deadline to take Plaintiff's deposition testimony for the purposes of their summary judgment motion, they cited "circumstances beyond [Plaintiff's counsel's] control." (Doc. 28.) Discovery is not closed in this case and it is clear that the parties intended discovery to commence should Plaintiff's claims survive Defendants' summary judgment motion on qualified immunity grounds. Indeed, Judge Brieant granted Defendants' request that the discovery cutoff in this action be extended to a date 90 days after this Court's decision on qualified immunity. (Doc. 31.)

For the reasons stated above, Plaintiff's motion for additional discovery is granted. Depositions should clarify the facts of the case as they relate to the elements of Plaintiff's claims against each of the Individual Defendants. Should Defendants decide to renew their motion for summary judgment at the close of discovery, I will expect Plaintiff's opposition to cite to specific facts in support of his claims against each Individual Defendant, including but not limited to: that Defendant's awareness of the prior complaints, that Defendant's personal involvement in the alleged retaliatory conduct; and individualized evidence, if any, of that Defendant's retaliatory

animus. Vague "group pleadings" will not be sufficient to survive summary judgment.

**III.** <u>**Conclusion**</u>

It is hereby **ORDERED** that Plaintiff's motion for further discovery pursuant to Fed. R.

Civ. P. 56(f) is **GRANTED**, and that Defendants' motion for summary judgment pursuant to

Fed. R. Civ. P. 56 is **DENIED** without prejudice to renewal following the completion of

discovery.

The Parties shall have until January 26, 2009 to complete discovery. The parties are

directed to appear for a subsequent conference on February 13, 2009 at 9:30 a.m.

The Clerk of Court is respectfully directed to terminate the pending motion. (Doc. 32.)

**SO ORDERED.**

Dated: October 24, 2008
      White Plains, New York

                                CATHY SEIBEL, U.S.D.J.